**THE HONORABLE JAMAL N. WHITEHEAD**

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

O.H., an individual; C.D., an individual,

                     Plaintiffs,

    vs.

SECRET HARBOR, a non-profit corporation,

                     Defendant.

NO. 2:23-cv-00060-JNW

**DECLARATION OF DARRELL L. COCHRAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS**

DECLARATION OF DARRELL L. COCHRAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

No. 2:23-cv-00060-JNW

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

I, **DARRELL L. COCHRAN**, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      I am over the age of 18, competent to testify as to the matters stated herein and make this declaration based on my personal knowledge. I am an attorney of record for the Plaintiffs in this matter.

2.      This declaration serves as Plaintiffs' fee petition submitted as ordered by the Court in its Order on Plaintiffs' Motion to Compel, Dkt. 173, at 10-11.  The Court ordered that Defendant will pay the costs incurred for obtaining a court reporter for Secret Harbor's first 30(b)(6) deposition in this matter and the cost of obtaining the transcript of that deposition, as well as the reasonable attorney fees incurred in filing the motion to compel and reply brief in support of the motion to compel.  *Id.*  This declaration sets for those costs and reasonable fees incurred as ordered by the Court.

3.      Attached to my declaration as **Exhibit A** is a true and correct copy of the invoice my office received for the services of a court reporter for the first 30(b)(6) deposition of Secret Harbor in this matter and to obtain a copy of the transcript.  The amount of the invoice was $1,580.10.

**A.      PCVA'S Reasonable Time Spent on the Motion to Compel and Supporting Reply Brief**

4.      Plaintiffs request that the Court enter an order approving as the reasonable attorney fee time incurred in preparing the motion to compel and supporting reply brief a total of $3,170. This fee amount arises from the work done on the motion and reply brief by three attorneys, myself, Andrew Ulmer, and Alexander Dietz.  All attorneys at PCVA maintain contemporaneous time records reflecting the time spent on this and other matters.  My firm has kept contemporaneous records documenting in detail all time spent on this matter, including all time spent on the briefing for Plaintiff's motion to compel and supporting reply.

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 1 | No. 2:23-cv-00060-JNW



5. The breakdown of Plaintiffs' fee request is based on the contemporaneous records kept by my firm and shows the following breakdown for Plaintiffs' request:

    a. **Darrell Cochran** – $450 for 0.5 hours at a rate of $900 per hour. Time was spent reviewing and editing the two briefs prior to filing.

    b. **Andrew Ulmer** - $720 for 1.2 hours at a rate of $600 per hour. Time was spent reviewing Secret Harbor's response to the motion and researching and drafting for the reply brief.

    c. **Alexander Dietz** - $2,000 for 4.0 hours at a rate of $500 per hour. Time was spent researching and drafting the motion to compel and compiling supporting materials for the motion and declaration in support.

6. The reasonableness of the rates set forth herein are based on the experience and skill level of the attorneys and the market rates for attorneys with comparable levels of expertise and reputation in the Seattle area.

**B. PCVA'S Attorney's Experience Levels**

7. I am a 1993 graduate of the University of Michigan Law School in Ann Arbor, Michigan. I have been a member of the Washington State Bar since 1993, and I am admitted to practice before the United States District Courts for the Western and Eastern Districts of Washington, the United States Court of Appeals for the Ninth Circuit, as well as the United States Supreme Court. From 1993 until 1997, I was an associate at the law firm Gordon Thomas Honeywell (GTH) in Tacoma, Washington, until I became a partner in 1998. I was partner at GTH until I helped co-found PCVA in 2008.

8. In 2015, I was named as the 'Trial Lawyer of the Year' by the Washington State Association for Justice (WSAJ) and I served as WSAJ's President for the 2017-2018 term. I have

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 2 | No. 2:23-cv-00060-JNW



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

been selected to Washington Law & Politics Magazine's list of Super Lawyers for the past 20 years and have been rated in the Top 100 for Washington State since 2015. I am rated by Martindale-Hubbell as AV Preeminent. I am also a member of the Damages Award Round Table (DART) and a member of the Washington State Supreme Court's Pattern Jury Instruction Committee. Over the past 29 years, I have won a significant number of multimillion-dollar verdicts and settlements for my clients, both in Washington state and around the country.  My legal philosophy is guided by the desire to assist those severely injured or damaged by well-funded defendants who have abused their power, acted recklessly in their disregard for others, or violated their civil rights.  A few examples of my casework include a $7.5 million settlement against the Puyallup School District and injunction requiring special negotiations and procedures in the school district to remediate discrimination; a nationally-recognized damages award, injunction, and consent decree secured for Latino school students against the Brewster School District requiring measures to eliminate racism; a $1 million settlement with Pierce County regarding illegal strip search practices against a jail detainee; a $95 million class action verdict against the Washington DSHS for breach of contract; a $7.5 million class action settlement against Multicare Health System for deceptive billing practices; a $60 million settlement for Oso landslide victims against Washington State and the timber company; and a $28.5 million settlement of an insurance bad faith case arising from sexual abuse at the Olympia Early Learning Center.

9.      My practice areas include catastrophic injury or death, medical malpractice, sexual abuse, insurance bad faith, product liability, class action and general serious personal injury.  Many of my cases attract local and national media attention, including high-profile litigation involving Puget Sound Energy, Hunter Donaldson, Washington DSHS, Apple Computers, Washington State

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 3 | No. 2:23-cv-00060-JNW



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

DOC and various school districts. I often accept difficult case requests from across the Northwest, and several of my jury verdicts have prompted important changes in Washington state law.

10. Some of my representative cases include the following:

a. *Rekhter v. DSHS*, Thurston County Cause No. 07-2-00895-8, $95,000,000 judgment on jury verdict;

b. *Oso Landslide Lawsuit*, King County Cause No. 14-2-18401-8 SEA, $60,000,000 settlement;

c. *Joyce v. Department of Corrections*, Pierce County Cause No. 99-2-10179-6, $22,500,000 jury verdict;

d. *Couch v. State of Washington,* Pierce County Cause No. 99-2-11902-4, $15,000,000 jury verdict;

e. *Aba Sheikh v. King County, DSHS & Shell Oil*, King County Cause No. 02-2-05199-5, $10,300,000 jury verdict;

f. *Hunter Donaldson and Multicare Class Action*, Pierce County Cause No. 13-2-08746-0, $7,500,000 settlement;

g. *Thomas v. Puyallup School District,* Pierce County Cause No. 01-2-08646-0, $7,500,000 settlement;

h. *Confidential v. Confidential*, US District Court Cause No. Confidential, $5,000,000 settlement;

i. *Seyler v. Blair Construction*, Pierce County Cause No. 01-2-08881-1, $4,750,000 settlement;

j. *Larson v. Department of Corrections*, Pierce County Cause No. 09-2-13355-2, $4,250,000 settlement;

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 4 | No. 2:23-cv-00060-JNW

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

  k.  *Carlisle v. CTI, Inc.*, King County Cause No. 93-2-19696-2, $3,500,000 settlement;

  l.  *J.M. v. DSHS*, Clark County Cause No. 16-2-02502-5, $3,100,000 settlement;

  m.  *R.R. v. DSHS*, Pierce County Cause No. 12-2-08056-4, $3,000,000 settlement;

  n.  *Thomas v. Puyallup School District*, Pierce County Cause No. 01-2-08646-0, $7,500,000 settlement and injunction requiring anti-discrimination procedures within the school district;

  o.  *Mendoza v. Brewster School District*, U.S.D.C. E. Wa. Cb-05-327-rhw, large damages award, injunction, and consent decree requiring anti-racial discrimination measures within school district; and

  p.  *Plemmons v. Pierce County*, Pierce County Cause No. 04-2-07032-1, $1,000,000 settlement with Pierce County for illegal strip searches of jail detainee.

11. Over the years, I have been involved in a number of complex civil claims, frequently involving large numbers of plaintiffs. I have extensive civil and criminal trial experience as well as extensive appellate experience, including appellate advocacy at all levels in the State of Washington, the Ninth Circuit Court of Appeals and in the United States Supreme Court.

12. I have been involved in all aspects of this case since shortly after its inception. I supervised a team of attorneys, a paralegal, and a legal assistant from PCVA in doing the work necessary to develop the factual record in this case and conduct litigation. Working with me on this matter were the following PCVA partner and senior associate:

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 5 | No. 2:23-cv-00060-JNW

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

13. **Andrew S. Ulmer** is a partner at PCVA. He graduated from University of Washington School of Law in 2016. Following law school, he worked as an attorney for a general practice civil litigation firm for approximately one year before serving for approximately three years as a law clerk. He joined PCVA in 2019. He has been selected to Thomas Reuters *Washington Super Lawyers* Rising Stars every year since 2022 and has received the "Abogado Exceptional Award" by the Latino/a Bar Association of Washington. During his time at PCVA, Mr. Ulmer has worked on complex litigation involving catastrophic injury or death, sexual abuse, product liability, class actions and general serious personal injuries. Mr. Ulmer has tried multiple cases to jury verdict in both federal and state courts and has first-chair experience in trial. Some representative cases include the following:

    a. *Madeleine Garza v. National Railroad Passenger Corporation d/b/a Amtrak*, W.D. Wash. No. 3:18-cv-05106-BHS, $4,500,000 jury verdict.

    b. *Sara Bachman-Rhodes v. Cheney School District*, Spokane County Cause No. 21-2-02187-32, $3,000,000 jury verdict, as well as a fee and cost award post-verdict for over $400,000.

    c. *M.S., et al v. State of Washington*, Thurston County Cause No. 19-2-06192-34, $16,950,000 settlement after an eight-week jury trial.

    d. *Than Orn et. al v. City of Tacoma et. al.*, W.D. Wash. No. 3:13-cv-05974, $8,000,000 settlement after a seven-day jury trial.

    e. *Michael Vandivere, et al v. C3 Manufacturing*, King County No. 19-2-27385-2, $6,000,000 total settlement during trial.

    f. *T.V. v. State of Washington*, Pierce County Superior Court Cause No. 21-2-06819-9, $1,500,000 settlement after an eleven-day jury trial.

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

g. *C.B. v. Black Hills Football Club, et al.*, Thurston County Cause No. 18-2-02416-34, $7,500,000 settlement.

h. *R.K. et al v. Kiwanis International et. al*, Pierce County Cause No. 18-2-13370-5, $6,000,000 settlement.

i. *T.M. v. United States Bowling Congress, et al.*, King County Cause No. 18-2-56563-4 SEA, $6,000,000 settlement.

j. *S.K. et al v. Secret Harbor et. al*, Skagit County Cause No. 22-2-00252-29, $10,000,000 partial settlement, with two claimants' claims still pending.

k. *J.S. et al v. Secret Harbor et. al*, Skagit County Cause No. 18-2-01384-29, $4,000,000 partial settlement, with two claimants' claims still pending.

l. *Maria Joyner v. Aberdeen School District No. 5, et. al.*, Snohomish County Cause No. 19-2-01675-31, $2,000,000 settlement.

m. *S.C. v. Black Hills Football Club, et ano.*, W.D. Wash. No. 3:21-cv-05147-RAJ, $1,500,000 settlement.

n. *J.L. v. United States Bowling Congress, Inc. et. al*, King County Cause No. 19-2-15185-4, $750,000 settlement.

o. *Mary Sanchez v. Aberdeen School District No. 5, et al.*, W.D. Wash. No. 3:21-cv-05236-RAJ, $750,000 settlement.

14. **<u>Alexander Dietz</u>** is a senior associate at PCVA. He graduated from Duke University School of Law in 2018. Following law school, he served for two years as an appellate law clerk for The Honorable Stephen J. Dwyer at the Washington State Court of Appeals, Division One. He joined PCVA as an associate in 2020. He has been selected to Thomas Reuters *Washington Super Lawyers* Rising Stars every year since 2022. During his time at PCVA, Mr. Dietz has tried multiple

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 7 | No. 2:23-cv-00060-JNW



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

cases to verdict in state and federal courts and worked on complex litigation involving catastrophic injury or death, civil rights violations, sexual abuse, insurance bad faith, product liability, class actions, and general serious personal injuries. Some representative cases include the following:

    a.    *Than Orn et. al v. City of Tacoma et. al*, U.S. District Court No. 3:13-cv-05974, $8,000,000 settlement after a seven-day jury trial.

    b.    $28,500,000 settlement of an insurance bad faith case arising from sexual abuse at the Olympia Early Learning Center.

    c.    *S.K. et. al v. Secret Harbor et. al*, Skagit County Cause No. 22-2-00252-29, $10,000,000 partial settlement, with two claimants' claims still pending.

    d.    *J.S. et. al v. Secret Harbor et. al*, Skagit County Cause No. 18-2-01384-29, $4,000,000 partial settlement, with two claimants' claims still pending.

    e.    *R.K. et. al v. Kiwanis International et. al*, Pierce County Cause No. 18-2-13370-5, $6,000,000 settlement.

    f.    $5,850,000 settlement in a construction injury case in U.S. District Court for the Western District of Washington.

    g.    *Christie Merrick et. al v. State of Washington et. al*, Kittitas County Cause No. 19-2-00099-19, $800,000 in settlements.

    h.    *J.L. v. United States Bowling Congress, Inc. et. al*, King County Cause No. 19-2-15185-4, $750,000 settlement.

    i.    *Diane Young v. Standard Fire Ins. Co.* U.S. District Court No. 2:18-cv-00031, $25,000 jury verdict on PIP insurance claim.

15. Based on my nearly thirty years of complex litigation and appellate experience as an attorney, my hourly rate for 2024 is $900.00. Using our 2024 rates, my firm calculated the lodestar

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 8 | No. 2:23-cv-00060-JNW



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

rates in this matter at $600.00 for partner Andrew Ulmer, a 2016 law school graduate with eight years of complex litigation experience, and at $500.00 for senior associate Alexander Dietz, a 2018 law school graduate with 6 years of complex litigation and appellate experience.

**C.    PCVA's Rates are Consistent with Prevailing Market Rates and Court Rulings on Appropriate Rates**

16.    In setting the above hourly rates, my firm consulted with attorneys with national reputations, experience and practices like ours. We determined that the rates we charge are reasonable for attorneys of our experience, reputation and expertise and are consistent with the prevailing market rates for attorneys of comparable levels of expertise and reputation at Seattle-Tacoma area law firms that practice complex litigation. The following supporting documents validate our rates:

a.    Attached as **Exhibit 1** is a true and correct copy of a 2017 Order in *IDS Property and Casualty Ins. Co. v. Fellows*, No. 2:15-cv-02031, 2017 WL 4122565 (W.D. Wash. 2017) authorizing a reasonable award of attorney fees in a contingency fee case involving successful bad faith and CPA claims against an insurer.  In this now four years old order, the Court approves rates for partners at $475/hour and a rate of $600/hour for a senior partner with decades of experience.  It is my opinion as a current active practitioner in the Washington legal market that reasonable hourly rates for attorneys have increased since 2017, so the rates approved in 2017 should not serve as a ceiling on what is currently reasonable.

b.    Attached as **Exhibit 2** is a true and correct copy of a 2019 Order in *Byles v. Ace Parking Management, Inc.*, No. 2:16-cv-00834, 2019 WL 3936663 (W.D. Wash. 2019), approving of PCVA's hourly rates from 2016 of

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 9 | No. 2:23-cv-00060-JNW

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

$550/hour for Darrell Cochran, $400/hour for Loren Cochran, and $300/hour for then associates Christopher Love and Kevin Hastings following settlement of an ADA class action lawsuit.  In keeping with the rise in market rates, PCVA's hourly rates have increased since 2016.

c. Attached as **Exhibit 3** is a true and correct copy of a 2021 Order Denying in Part Granting in Part Plaintiff's Motion for Attorneys' Fees and Motion for Judgment Notwithstanding the Verdict in *Hopkins v. Integon Gen. Ins. Corp.*, No. 2:18-cv-01723, 2021 WL 568243 (W.D. Wash. 2021), approving of hourly rates of $575/hour for name partners and $500 for non-name partners in a bad faith insurance case.

d. Attached as **Exhibit 4** is a true and correct copy of the National Law Journal's 2011 survey of nation-wide billing rates.

e. Attached as **Exhibit 5** is a true and correct copy of the National Law Journal's 2015 survey of nation-wide billing rates.

f. Attached as **Exhibits 6 and 7** are true and correct copies of the Declaration of Darrell L. Cochran In Support of Plaintiffs' Motion for Attorneys' Fees and Litigation Costs and the resulting June 21, 2023 Order Granting Plaintiffs' Motion for Attorneys' Fees and Litigation Costs in *Michael Vandivere et. al v. Vertical World, Inc. et. al*, King County Cause No. 19-2-27385-2, which awarded fees based on rates of $725 per hour for me, $500 per hour for attorney Andrew Ulmer, and $400 per hour for attorney Alexander Dietz.  In keeping with market rates and the increased experience of our attorneys, our hourly rates have risen since last year.

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 10 | No. 2:23-cv-00060-JNW

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

SIGNED this 6th day of November, 2024, in Tacoma, Washington.

By: /s/ Darrell L. Cochran
DARRELL L. COCHRAN
WSBA NO. 22851

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 11 | No. 2:23-cv-00060-JNW



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

**CERTIFICATE OF SERVICE**

I, **Katie Hedger**, hereby declare under penalty of perjury under the laws of the United States of America that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date, I placed for service the foregoing via **CM/ECF** in compliance with Fed. R. Civ. P.5(b)(2)(E) and LCR 5(b) by directing delivery to the following individuals:

Christopher Keay
Johnson Graffe Keay Moniz & Wick, LLP
2115 N. 30th St., Ste. 101
Tacoma, WA  98403-3318
(253) 572-5323

Barry A. Moscowitz
Cassie Dallas
Todd Donohue
Thompson, Coe, Cousins & Irons, LLP
700 North Pearl St., Ste. 2500
Dallas, TX 75201
(214) 871-8200

*Counsel for Defendant Secret Harbor*

DATED this 6th day of November, 2024.

/s/ Katie Hedger
Katie Hedger
Legal Assistant

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND COSTS

Page 12 | No. 2:23-cv-00060-JNW



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

# EXHIBIT A

# I N V O I C E

1 of 1



1325 Fourth Avenue, Suite 1840
Seattle, Washington 98101
206.287.9066

| Invoice No. | Invoice Date | Job No. |
|---|---|---|
| 100897 | 7/31/2024 | 80127 |
| **Job Date** | **Case No.** | |
| 7/18/2024 | 2:23-CV-00060-JNW | |
| **Case Name** | | |
| O.H. and C.D. v. Secret Harbor, et al. | | |
| **Payment Terms** | | |
| Due upon receipt | | |

Andrew S. Ulmer
Pfau Cochran Vertetis Amala
909 A Street
Suite 700
Tacoma, WA 98402

---

ORIGINAL TRANSCRIPT OF:

| | | | |
|---|---|---|---|
| 30(b)(6) Jennifer A. Ryan | 161.00 | Pages | 861.35 |
| Attendance Fee | 6.75 | Hours | 573.75 |
| Electronically Certified Transcript:  E-Tran and PDF Format | 1.00 | | 50.00 |
| Exhibit Processing (Including Production of Original Exhibits) | 108.00 | | 75.00 |
| Delivery of Original Transcript | 1.00 | | 20.00 |
| | **TOTAL DUE  >>>** | | **$1,580.10** |

## LOCALLY OWNED  I  CERTIFIED  I  PERSONAL SERVICE

We appreciate your business!

In an effort to further reduce litigation costs, the original-ordering party may decline a physical sealed original transcript. Your transcript charges will be reduced by 0.40/per page, in addition to any associated delivery fee. If needed at a future date for filing with the court, the physical sealed original transcript may be requested for delivery.

**Please notify us prior to the transcript's completion if you would like to decline the physical sealed original transcript.**

Once the transcript has been completed, standard turnaround for the physical sealed original transcript is 3-5 business days. As always, expedited delivery will be available if needed sooner.

Buell is in compliance with WAC 308-14-130(1) in offering court reporting services and fees to all parties on equal terms.

---

**Tax ID:** 91-2101641

*Please detach bottom portion and return with payment.*

Andrew S. Ulmer
Pfau Cochran Vertetis Amala
909 A Street
Suite 700
Tacoma, WA 98402

Invoice No.  : 100897
Invoice Date  : 7/31/2024
**Total Due**  : **$1,580.10**

Remit To: **BUELL REALTIME REPORTING, LLC**
**1325 Fourth Avenue**
**Suite 1840**
**Seattle, WA 98101**

Job No.  : 80127
BU ID  : MAIN
Case No.  : 2:23-CV-00060-JNW
Case Name  : O.H. and C.D. v. Secret Harbor, et al.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IDS PROPERTY AND CASUALTY
INSURANCE COMPANY,

               Plaintiff,

     v.

CHARLES H. FELLOWS,

               Defendant.

C15-2031 TSZ

ORDER

THIS MATTER comes before the Court on defendant/counterclaimant Charles H. Fellows's motion for attorney fees and costs, docket no. 206. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

IDS Property and Casualty Insurance Company ("IDS") initiated this declaratory judgment action to obtain a ruling that, under a homeowners' policy issued to Fellows and his former wife, Michaela Osborne, it did not owe coverage for the following losses: (i) damage to the residence caused by Osborne and her two children, (ii) additional living expenses ("ALE") necessarily incurred by Fellows to reside elsewhere while the dwelling

ORDER - 1

was uninhabitable, and (iii) theft or other improper disposition of Fellows's personal property, including business attire and formal wear. Fellows brought six counterclaims against IDS. Two of them, for constructive fraud and negligence, were dismissed with prejudice on IDS's oral motion pursuant to Federal Rule of Civil Procedure 50(a). *See* Minute Order at ¶¶ 1(a) & (b) (docket no. 198). In addition, all counterclaims premised on the lost business attire and formal wear were dismissed. *See id.* at ¶ 1(c). After a six-day trial, the jury rendered a verdict in favor of Fellows on his four remaining counterclaims, for breach of contract, violation of the Insurance Fair Conduct Act ("IFCA"), violation of Washington's Consumer Protection Act ("CPA"), and insurance bad faith. *See* Verdict (docket no. 201). Based on the jury's factual findings, the Court ruled against IDS on its claim for declaratory relief, holding that coverage is owed for the damage to residence caused by Osborne and/or her children, as well as for Fellows's related ALE. *See* Order (docket no. 204). Judgment was entered in favor of Fellows and against IDS with respect to coverage and in the following amounts: (i) $164,798.24 in contract damages; (ii) $494,394.72 in increased damages under the IFCA; (iii) $102,600 in actual damages on the CPA and bad faith counterclaims; (iv) $10,000 in increased damages under the CPA; and (v) $145,000 in noneconomic damages on the bad faith counterclaim, for a total of $916,792.96, together with costs to be taxed as set forth in Local Civil Rule 54(d) and post-judgment interest. Judgment (docket no. 205).

The pending motion for attorney fees and costs was filed before IDS sought judgment as a matter of law or, in the alternative, a new trial or remittitur. The Court has since denied IDS's post-judgment motions, *see* Order (docket no. 241), and IDS has

ORDER - 2

appealed, *see* Notice (docket no. 243).  The Court, however, continues to have jurisdiction to resolve the issues of attorney fees and costs.  *See Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955 (9th Cir. 1983).  Fellows seeks:  (i) $32,876 for legal services provided by Lether & Associates PLLC, as well as deposition and trial testimony given by Thomas Lether; (ii) $626,523.50 for work performed by Keller Rohrback L.L.P., taking into account agreed reductions and fees incurred after the pending motion was filed; and (iii) $88,399.91 in costs.  Fellows also requests a multiplier of 2.0 with respect to the fees associated with Keller Rohrback's efforts.

**Discussion**

Both the IFCA and the CPA authorize the Court to award attorney fees and costs to Fellows.  Because the jury found an unreasonable denial of a claim for coverage or payment of benefits, *see* Verdict (docket no. 201); Instruction No. 14 (docket no. 196), the IFCA allows Fellows to recover "reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees."  RCW 48.30.015(3).  The CPA entitles Fellows to "the costs of the suit, including a reasonable attorney's fee."  RCW 19.86.090.  The Court may also grant Fellows reasonable attorney fees pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), which holds that "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees."  *Id.* at 54.  For purposes of *Olympic Steamship*, reasonable attorney fees include "expenses necessary to establish coverage," including expert witness fees.  *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 143-45, 26 P.3d 910 (2001).  In response to the pending

ORDER - 3

motion, IDS has disputed the reasonableness of both the attorney fees and costs requested by Fellows.

**A.      Attorney Fees**

When a fee-shifting statute is silent concerning how reasonable attorney fees should be calculated, Washington courts generally employ the lodestar method.  *See Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 666, 989 P.2d 1111 (1999).  The lodestar method involves two steps:  first, computing a lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter; and second, adjusting the lodestar figure either up or down to reflect factors that have not already been taken into account, namely the contingent nature of success and the quality of the work performed.  *See id.*; *see also Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-99, 675 P.2d 193 (1983) (quoting *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir. 1982), and citing *Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980)).  The Court is not bound by the lodestar value, but rather, is charged with making "an independent decision" as to what represents a reasonable amount of attorney fees.  *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987).  With regard to reasonableness, an attorney's billing records, although relevant, are "in no way dispositive."  *Id.*  The fee applicant bears the burden of proving the reasonableness of the amount requested, *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993), and of justifying any upward deviation from the lodestar result, *see Bowers*, 100 Wn.2d at 598.

ORDER - 4

## 1. **Lether & Associates**

In this action, Lether & Associates never appeared as counsel of record on Fellows's behalf, but the firm represented Fellows until December 31, 2015, the day after this action was commenced, in extrajudicial efforts to obtain coverage for him under the homeowners' policy at issue. With respect to those services, Fellows owes fees pursuant to a written agreement with Lether & Associates, which sets forth a rate of $325 per hour for Thomas Lether's services and a rate of $275 per hour for the work of associates. *See* Ex. A to Lether Decl. (docket no. 209-1). The fee agreement contemplated that Fellows would be responsible for compensating Lether & Associates not only for its legal representation, but also for any time reasonably spent transferring the matter to another attorney. *See* *id.*

With respect to the period from September 10, 2015, to December 31, 2015, IDS challenges several billing entries. *See* Hill Decl. at ¶ 4 (docket no. 226). Having reviewed the explanations provided by Lether & Associates, *see* Colito Decl. at ¶¶ 4-9 (docket no. 234), the Court is satisfied that all but three (3) of IDS's objections lack merit. The Court agrees with IDS that Fellows is not entitled to fees for time spent pursuing contempt proceedings against Osborne or on the unsuccessful personal property claim, and the 0.6 hours ($165) recorded on November 3, 9, and 17, 2015 will be excluded.

As to billing entries after December 31, 2015, IDS has taken the position that no fees are owed because Lether & Associates did not represent Fellows after such date, and that, with regard to time expended by Thomas Lether in his capacity as a fact witness,

ORDER - 5

which might be treated as a litigation cost, Fellows has waived any recovery.  The Court is of a different view.  The Court concludes that, with one exception,[1] the services rendered in January, February, and March 2016 were necessary to transfer the representation to Keller Rohrback, and Fellows will be awarded fees for such efforts.  With regard to Lether's deposition, trial testimony, and related preparations, the Court rejects the notion that Fellows's request for attorney fees operates as a waiver of the right to have such time compensated as witness fees.  The Court treats Fellows's motion as seeking reimbursement of expenses associated with Lether's role as a witness, and addresses the merits of such request in the next section concerning costs.

For the foregoing reasons, the following amounts are awarded to Fellows as reasonable attorney fees for legal services provided by Lether & Associates:

| | |
|---|---|
| September 2015 | $2,325.50 |
| October 2015 | $1,667.00 |
| November 2015 | $2,440.00 |
| December 2015 | $2,059.50 |
| January 2016 | $3,324.50 |
| February 2016 | $302.50 |
| March 2016 | $2,532.00 |
| **TOTAL** | **$14,651.00** |

---

[1] The 0.2 hours ($65) spent on January 27, 2016, in a telephone call with Bruce Winchell concerning IDS's attorney, Daniel Thenell, has been excluded.  *See* Ex. B to Lether Decl. (docket no. 209-2 at 19).

ORDER - 6

## 2. **Keller Rohrback**

With regard to the attorney fees sought for work performed by Keller Rohrback, IDS challenges the reasonableness of both the requested hourly rates and the amount of time spent on this matter. Some of IDS's arguments have merit and others do not.

### a. **Rates**

Keller Rohrback's services were provided in three different calendar years, 2015, 2016, and 2017, but Fellows seeks fees based on the rates charged in 2017. IDS has not objected to the use of current rather than historic rates in calculating the lodestar, and applying current rates is supported by Ninth Circuit jurisprudence. *See Gates v. Deukmejian*, 987 F.2d 1392, 1406-07 (9th Cir. 1992). With respect to the rates of the various members of the Keller Rohrback firm who worked on this matter, IDS disputes only those of Birk and Smart. Although, as IDS observes, Birk's rate for 2017 is higher than what Lether, a more experienced attorney, charges, *see* Lether Decl. at ¶ 3 (docket no. 209) ($395/hour), the Court is persuaded that Birk's rate is nevertheless consistent with the prevailing rates in the local legal community for comparable work, and with the range of rates applied in the last few years when the Court has computed attorney fees. *See Kroneman v. Country Mut. Ins. Co.*, No. C14-1223 TSZ, Talmadge Decl. at ¶ 5 (docket no. 94 at 19) (offering declarant's rate of $400/hour for comparison) & Minute Order at ¶ 1(d) (docket no. 110) (W.D. Wash. Jan. 12, 2016) (awarding $350/hour for lead counsel); *see also Straitshot Commc'ns, Inc. v. Telekenex, Inc.*, 2012 WL 5880293 at *3 (W.D. Wash. Nov. 20, 2012) (applying rate of $425/hour for partners).

ORDER - 7

Smart's rate for 2017, however, seems excessive.  Smart has indicated that over ninety percent (90%) of his work is performed on a contingency basis, which he believes reflects the inability of most of his clients to afford an attorney at any price.  Smart Decl. at ¶ 10 (docket no. 208).  Thus, Smart's billing rates are not routinely tested by the crucible of the marketplace, and the Court is reluctant to view them as what a reasonable homeowner would be willing to pay to pursue a first-party insurance coverage claim.  The Court will apply a rate of $600 per hour for Smart's services in this matter, which is reasonable in light of Smart's experience, the nature of his practice, and the type of litigation at issue.

### b.    Services

IDS faults Keller Rohrback for (i) engaging in block billing, (ii) charging for intra-office meetings, (iii) including time spent on clerical or administrative tasks, and (iv) seeking payment for excessive, redundant, or unnecessary hours.  IDS appears to propose reducing by half (50%) every block-billed entry in which an objectionable or non-compensable task appears, citing *Lehman v. Nelson*, 2015 WL 11233094 (W.D. Wash. Aug. 4, 2015), *aff'd in part & rev'd in part*, 862 F.3d 1203 (9th Cir. 2017) (vacating award of attorney fees).  The Ninth Circuit, however, has discouraged blanket or across-the-board deductions for block billing, *see Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), and the Court declines to adopt such approach.

Moreover, Birk, who spent far more time on this case than any other timekeeper at Keller Rohrback, did not engage in block billing.  Instead, Birk consistently identified discrete efforts and the time associated therewith, often recording multiple entries on the

ORDER - 8

same day.[2] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 & n.12 (1983) (a lawyer should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

IDS contends that Keller Rohrback should not be paid for intra-office meetings. The Court disagrees. To the extent that Smart and Birk delegated time-consuming work to associates or paralegals with lower billing rates, the relatively small amount of time they spent assigning tasks and reviewing the results operated to IDS's advantage by producing overall lower fees. In addition, in numerous instances, when Smart and Birk conferred with each other, only one of them billed for such time, alleviating any significant concern about duplicative entries. Finally, unlike in *Welch* (which was cited in *Lehman*, the case on which IDS relies), in which the experienced attorney who was seeking fees had "assumed *sole* responsibility for several hundred" similar cases and was therefore not compensated for time spent in intra-office conferences, *see* 480 F.3d at 949 (emphasis added), in this matter, a team of individuals at Keller Rohrback worked together to conduct discovery and motion practice, prepare for trial, and obtain a favorable verdict. A reasonable amount of intra-office communication was required and is recoverable.

Keller Rohrback is not entitled, however, to compensation for non-legal services, purely clerical or administrative tasks, or time spent on unsuccessful claims or arguments

---

[2] For example, on February 5, 2016, Birk billed for this matter on four (4) different occasions, once for 1.2 hours (reviewing correspondence from Thenell), again for 0.6 hours (finalizing amended answer), then for another 0.2 hours (editing Rule 30(b)(6) deposition notice), and finally for 0.7 hours (emailing opposing counsel about deposition scheduling). *See* Ex. A to Birk Decl. (docket no. 235-1 at 6).

ORDER - 9

or on matters unrelated to the IFCA, CPA, or insurance bad faith claims.[3] The Court has carefully and thoroughly reviewed the spreadsheets submitted by Keller Rohrback, *see* Ex. B to Smart Decl. (docket no. 208); Exs. A & B to Birk Decl. (docket no. 235), as well as IDS's specific objections, *see* Hill Decl. at ¶ 5 (docket no. 226), and concludes that the following fees are reasonable, given the nature of the counterclaims on which Fellows prevailed, the course of the proceedings, the results achieved at trial and post judgment, and the purposes underlying the IFCA, the CPA, and the *Olympic Steamship* doctrine.

| Timekeeper[4] | Hours | Rate | Fees |
|---|---|---|---|
| William Smart | 265.6 | $600/hr | $159,360.00 |
| Ian Birk | 522 | $475/hr | $247,950.00 |
| Isaac Ruiz | 5.0 | $475/hr | $2,375.00 |
| Kathryn Knudsen | 202.8 | $310/hr | $62,868.00 |
| Gabe Verdugo | 25.9 | $310/hr | $8,029.00 |
| Nicole Dyakanoff | 205.8 | $250/hr | $51,450.00 |
| **TOTAL** | | | **$532,032.00** |

[3] The Court has excluded fees associated with attempts to identify alternative housing for Fellows, locating deposition exhibits or transcripts, intra-office meetings about scheduling, cleaning the witness room, efforts to disparage opposing counsel (Thenell), and contempt proceedings against Osborne. Fellows has conceded that he may not recover fees connected with unfiled motions or motions on which he did not prevail, but he has not discounted for motions or oppositions that were partially unsuccessful, as to which he is entitled to only a pro rata share of the correlated fees, and the Court has reduced the hours at issue accordingly.

[4] The Court has not awarded fees for time billed by associate Beth Strosky, paralegals Paige Lewis and Shannon McKeon, or information specialists Jennifer Hill, John Evans, and Carly Eyler. Strosky merely participated in the "roundtable" or focus group for which Keller Rohrback has agreed not to seek fees. *See* Ex. B to Smart Decl. (docket no. 208-2 at 45-46). Lewis devoted a total of two hours to the matter, one of which was spent on a verdict form that was not used by the Court. *See id.* (docket no. 280-2 at 53). All of McKeon's time (2 hours) and over half of Eyler's time (1.6 hours) was dedicated to collecting material about Thenell, a task for which the Court declines to require IDS to pay fees. *See id.* (docket no. 280-2 at 5, 31). Finally, no credit was given for Eyler's other billings (1.1 hours) or the time charged by Hill (0.7 hours) or Evans (2.5 hours), which appear to be in the nature of overhead. *See id.* (docket no. 280-2 at 13, 21-22, 51).

ORDER - 10

### 3. <u>Multiplier</u>

Fellows seeks to double *all* of the attorney fees associated with Keller Rohrback's services, asserting that such departure from the lodestar amount is justified by both the contingent nature of such fees and the quality of the law firm's work. Fellows has not made the requisite showing for any multiplier. Contingency enhancements are generally not available under federal fee-shifting statutes, *City of Burlington v. Dague*, 505 U.S. 557 (1992), and they are reserved for "rare" occasions under Washington law, *see Sanders v. Washington*, 169 Wn.2d 827, 869, 240 P.3d 120 (2010); *see also Van Pham v. City of Seattle*, 159 Wn.2d 527, 542, 151 P.3d 976 (2007). A contingency adjustment considers the experience of the marketplace, which indicates that lawyers might not provide legal representation on a contingent basis unless they receive a premium for taking the risk that they might not be compensated for their time and effort. *See Bowers*, 100 Wn.2d at 598 (quoting Samuel R. Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U. PA. L. REV. 281, 324-25 (1977)). Because such enhancement applies only when a risk exists concerning the recovery of attorney fees, a multiplier may not be awarded with respect to time expended after payment is assured, for example, on post-judgment motion practice or in seeking attorney fees and costs. *See id.* at 599. Thus, Fellows's request to double the fees related to Keller Rohrback's post-judgment efforts lacks merit.

An increase for the quality of the representation is appropriate only when the services provided were unusually good, "*taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the 'lodestar.'"

ORDER - 11

*Bowers*, 100 Wn.2d at 599 (emphasis in original, quoting *Copeland*, 641 F.2d at 893). The Court is satisfied that neither the contingent-fee agreement between Fellows and Keller Rohrback nor the manner in which this matter was litigated justify a lodestar multiplier. In seeking a multiplier, Fellows focuses primarily on IDS's conduct toward its insured. Fellows, however, was amply compensated by the jury for the improper ways in which IDS handled the first-party insurance claim at issue, and to the extent that, in response to Thenell's practices or those of his client, the lawyers at Keller Rohrback expended more time than would ordinarily be required in a coverage dispute, the lodestar amount reflects the resulting attorney fees.

**B.    Costs**

**1.    Witnesses**

Fellows seeks witness fees in the amount of $49,203.72, related to (i) the work of his experts Roger Howson, Paul Pederson, and Dennis Smith, (ii) the deposition of IDS's expert Mark Lawless, (iii) consultation with Jeff Fishbach, a cell data expert, (iv) a real property appraisal performed by Lamb Hanson Lamb Appraisal Associates, Inc., and (v) fees paid in connection with the depositions of Robby Dickerson, Michaela Osborne, and Sheila Phillips. *See* Ex. E to Smart Decl. (docket no. 208-5 at 53-55 & 57-81). IDS has specifically disputed only the appraisal fee, on the ground that the appraisal was not offered as evidence at trial, and the fee associated with Dickerson's deposition, because she did not testify at trial. The Court agrees that Fellows is not entitled to the appraisal fee because the value of the home in April 2016, when the appraisal was performed, as opposed to before August 31, 2015, when the damage was discovered, was not an issue in

ORDER - 12

the case.  Fellows may, however, recover the fee related to Dickerson's deposition; Dickerson, who is Osborne's sister, submitted a declaration in the state court proceedings between Fellows and Osborne, which was used as an exhibit by IDS in dispositive motion practice.  *See* Ex. 13 to Thenell Decl. (docket no. 61).

Fellows has also asked for fees associated with Thomas Lether's deposition and trial testimony.  Contrary to IDS's assertion, Fellows has not waived this request, and the Court concludes that such actual litigation costs are recoverable, *see* RCW 48.30.015(3); *see also Panorama Vill.*, 144 Wn.2d at 144 (an insured is entitled to "**all** of the expenses necessary to establish coverage" (emphasis in original)).  The Court awards witness fees for Lether's deposition, trial, and preparation time, as well as for his firm's efforts in securing payment, calculated at the rate that Lether ($325/hr) and his associates ($275/hr) charge for legal services, as opposed to the higher rate ($450/hr) for testimony.  *See* Lether Decl. at ¶ 3 & Exs. A & B (docket no. 209).  No showing has been made that either Fellows or Keller Rohrback actually paid witness fees to Lether at the higher rate of $450 per hour, and Lether's firm will be adequately compensated by fees computed at its standard rates.  The witness fees to be included as litigation costs are reflected in the following table.

| Witness | Costs Awarded |
|---|---|
| Roger Howson (ICDR, Inc.) | $10,878.35 |
| Paul Pederson (Pederson Associates, Inc.) | $5,829.19 |
| Dennis Smith - Attorney at Law | $26,280.00 |
| Mark Lawless (Constr. Sys. Mgmt. Inc.) | $510.00 |

ORDER - 13

| Witness | Costs Awarded |
|---|---|
| Jeff Fishbach (SecondWave, Inc.) | $5,000.00 |
| Robby Dickerson ($67.00); Michaela Osborne ($46.48); Sheila Phillips ($42.70) | $156.18 |
| Thomas Lether (Lether & Associates) | $11,982.50 |

| Task | Attorney | Hrs | Rate | Amount | |
|---|---|---|---|---|---|
| Preparation for Deposition | Lether | 6.4 | 325 | $2,080.00 | |
| | Colito | 1.1 | 275 | $302.50 | |
| Deposition | Lether | 5.7 | 325 | $1,852.50 | |
| | Colito | 3.0 | 275 | $825.00 | **TOTAL:** |
| Preparation for Trial Testimony | Lether | 5.8 | 325 | $1,885.00 | **$60,636.22** |
| | Colito | 5.2 | 275 | $1,430.00 | |
| Trial Testimony | Lether | 9.9 | 325 | $3,217.50 | |
| Declaration Regarding Fees | Lether | 1.2 | 325 | $390.00 | |

## 2. <u>Court Reporter and Videographer Charges</u>

Fellows seeks to tax $22,063.76 in costs for court reporter and videographer charges. IDS contends that none of these expenses should be allowed because Fellows has not indicated which, if any, of the transcripts or videos were used at trial or in connection with successful motions or oppositions. IDS's position ignores the distinction between (i) actual costs, which are authorized by the IFCA, and (ii) statutory costs, which are more limited than actual costs. *Compare* RCW 48.30.015(3) *with* RCW 4.84.010 *and* RCW 4.84.090; *see also* 28 U.S.C. § 1920(2) (allowing fees "for printed or electronically recorded transcripts necessarily obtained for use in the case"). Fellows is awarded costs associated with deposing IDS's witnesses or potential witnesses and obtaining transcripts

ORDER - 14

of the depositions of his own witnesses, which total $20,378.26. *See* Ex. E to Smart Decl. (docket no. 208-5 at 83, 85-95, 97, 99-103, 105-14). Transcript charges, however, for discovery or telephonic conferences, as well as for opening statement on an expedited basis, are excluded.

### 3. Document Reproduction

Keller Rohrback paid vendors for the reproduction of trial exhibits, some of which were mounted onto foam core. *See id.* (docket no. 208-5 at 117-18). The firm should be reimbursed for these costs. Keller Rohrback also paid vendors to print almost 2,000 electronic documents onto paper (also known as "blowback") and to perform over 9,000 Tag Image File Format ("TIFF") conversions. *See id.* (docket no. 208-5 at 119-20). These activities did not occur near the date of trial, and the firm has not explained whether they were related to discovery or motion practice and, if the latter, whether the motion or opposition was successful. These costs, in the amount of $874.89, are therefore excluded.

With respect to the requested $8,430.90 in in-house document reproduction charges, the Court agrees with IDS that insufficient information has been provided concerning whether such expenses were related to counterclaims or motions on which Fellows prevailed. Because the bulk of the color copies were generated during the month leading up to trial, *see id.* (docket no. 208-5 at 44-46), most of those costs (*i.e.*, from March 3, 2017, forward) will be allowed, but the other copying charges, *see id.* (docket no. 208-5 at 5-43), will be reduced by forty percent (40%) to reflect the extent to which they were likely related to unsuccessful claims, arguments, motions, or oppositions. The

ORDER - 15

amounts awarded for document reproduction are therefore as follows: $1,389.46 for trial exhibits produced by vendors, $1,282.50 for in-house color copies, and $4,159.65 for all other in-house document reproduction, for a total of $6,831.61.

### 4. Legal Research

In seeking $3,229.55 in Westlaw charges, *see id.* (docket no. 208-5 at 51), Keller Rohrback offers no evidence that such costs were incurred in the pursuit of successful counterclaims. The Court will again use the forty percent (40%) figure to account for the counterclaims and motions practice on which Fellows did not prevail, and Fellows shall receive $1,937.73 for Westlaw expenses.

### 5. Miscellaneous Charges

Fellows also seeks messenger, delivery, and process service fees, postage, long distance and conference calling charges, parking fees, and travel and meal expenses. IDS has not specifically disputed any of these costs, and the Court will allow all but the parking fees incurred by Keller Rohrback personnel merely at the firm's office, *see id.* (docket no. 208-5 at 127-34), and the expenses of attorneys' meals on non-trial days, *see id.* (docket no. 208-5 at 135-37). The following costs, computed from the receipts and other documentation provided, *see id.* (docket no. 208-5 at 2-3, 47-50, 122-25, 139-42), are allowed:

| Item of Cost | Amount |
|---|---|
| Messenger and Delivery Fees | $570.34 |
| Process Service Fees | $367.00 |
| Postage | $32.44 |

ORDER - 16

| Item of Cost | Amount |
|---|---|
| Long Distance and Conference Calling | $5.98 |
| Parking and Mileage (settlement conference) | $73.20 |
| Travel (airfare, hotel, meals, taxis, and parking) | $1,117.78 |
| **TOTAL** | $2,166.74 |

## Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant Charles H. Fellows's motion for attorney fees and costs, docket no. 206, is GRANTED in part and DENIED in part.

2. Attorney fees in the following amounts are awarded to Fellows pursuant to the Insurance Fair Conduct Act, Washington's Consumer Protection Act, and *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), and its progeny:

Lether & Associates **$14,651.00**

Keller Rohrback **$532,032.00**

Because the fees for the legal services of Lether & Associates were incurred before Keller Rohrback began representing Fellows, they should **not** be included in calculating the contingent fee owed to Keller Rohrback. *See* Agreement at ¶ 4 (docket no. 222-1).

3. Costs in the total amount of **$91,950.56** are awarded to Fellows. All costs, including witness fees owed to Lether & Associates, may be considered in computing the contingent fee owed to Keller Rohrback. *See id.*

ORDER - 17

4. The Clerk is DIRECTED to enter a supplemental judgment consistent with this order and to send a copy of such supplemental judgment and this order to all counsel of record.

IT IS SO ORDERED.

Dated this 14th day of September, 2017.

Thomas S. Zilly
United States District Judge

ORDER - 18

# EXHIBIT 2

Case 3:23-cv-05106-JNW   Document 85-14   Filed 10/30/24   Page 35 of 131

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRUCE BYLES, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

ACE PARKING MANAGEMENT, INC.,

Defendant.

CASE NO. C16-0834-JCC

ORDER

This matter comes before the Court on Plaintiff's unopposed motion for attorney fees and costs and for class representative service award (Dkt. No. 36). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained herein.

## I.   BACKGROUND

The facts of this case have been discussed in prior orders, and the Court will not repeat them here. (*See* Dkt. Nos. 24, 33, 42.) Most recently, the Court granted Plaintiff's unopposed motion for final approval of class action settlement. (*See* Dkt. No. 42.) Plaintiff now moves for an award of attorney fees.

//

//

ORDER
C16-0834-JCC
PAGE - 1

## II.    DISCUSSION

### A.  Attorney Fee Request

Before the Court may award attorney fees to a prevailing party, the Court must determine that the award is "reasonable." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). District courts employ a two-step process to calculate a reasonable fee award. *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the Court calculates "the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Second, the Court may adjust this figure based on several factors not included in the lodestar calculation. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). There is a "strong presumption" that the lodestar figure represents the reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

To determine a reasonable billing rate, the Court generally looks to "the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The reasonable hourly rate is determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). The Court finds that the proposed rates for the attorneys—$550 per hour for Darrell L. Cochran, $300 per hour for Christopher E. Love, $400 per hour for Loren A. Cochran, $450 per hour for Thoams B. Vertetis, and $300 per hour for Kevin M. Hastings—are reasonable compared to similar attorneys in the Seattle area. (*See* Dkt. No. 37.)

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Hensley*, 461 U.S. at 434. The Court finds that the number of hours expended was reasonable.

ORDER
C16-0834-JCC
PAGE - 2

First, counsel put forward significant effort in ensuring that the majority of the work was performed by junior attorneys who billed at lower rates. (Dkt. No. 37 at 19–23.) Second, the total amount of hours spent on this litigation—288.3—is reasonable considering the age of the case, the procedural history which included an appeal, settlement negotiations, and dispositive motions practice. (*See* Dkt. No. 37.) Therefore, the Court finds that Plaintiff's calculation of a lodestar figure of $94,660 is accurate and reasonable.

Finally, under a percentage-of-recovery cross check, a requested fee award under fee shifting statutes is reasonable when it does not exceed "half of the total amount of money going to class members and their counsel." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, slip op. at 14 (C.D. Cal. 2015) (quoting *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)). The amount requested here—$80,000—constitutes half of the total $160,000 going to class members and their counsel. Additionally, class counsel is requesting $80,000, instead of the total $94,660 lodestar figure. This further supports the finding that class counsel's requested fee award of $80,000 is reasonable.

### B. Plaintiff Byles's Service Award

Service awards given to lead plaintiffs help promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiff Byles participated meaningfully in a contested lawsuit, remained willing to provide assistance to the parties for over three years, and provided class counsel with evidence of the claims and his consent to make strategic decisions about the case. (*See* Dkt. No. 36 at 10.) Therefore, the Court finds that class counsel's request of a $15,000 award for Plaintiff Byles is reasonable.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's unopposed motion for attorney fees and costs and for class representative service award (Dkt. No. 36) is GRANTED.

//

ORDER
C16-0834-JCC
PAGE - 3

DATED this 20th day of August 2019.

Richard A. Jones
UNITED STATES DISTRICT JUDGE

ORDER
C16-0834-JCC
PAGE - 4

# EXHIBIT 3

Case 2:18-cv-01723-MJP Document 123 Filed 02/16/21 Page 41 of 131

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL HOPKINS, | CASE NO. C18-1723 MJP |
| Plaintiff, | ORDER DENYING IN PART GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND LIMITATION OF UIM VERDICT; |
| v. | |
| INTEGON GENERAL INSURANCE CORPORATION, | |
| Defendant. | DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT |

This matter comes before the Court upon Defendant's Motion for Judgment as a Matter of Law and Limitation of Verdict on Plaintiff's UIM claim (Dkt. No. 95) and upon Plaintiff's Motion for Attorneys' Fees and Motion for Judgment Notwithstanding the Verdict (Dkt. No. 96). Having read the Motions, the Responses (Dkt. Nos. 98, 100), the Replies (Dkt. Nos. 102, 104), the supplemental briefing (Dkt. Nos. 115, 116, 118), and the related record, the Court DENIES

ORDER DENYING IN PART GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND LIMITATION OF UIM VERDICT; - 1

in part GRANTS in part Defendant's Motion and DENIES in part, GRANTS in part Plaintiff's Motion.

**Background**

Plaintiff, Daniel Hopkins, brought this case against his insurer, Defendant Integon General Insurance Corporation, after he was rear-ended by another driver in 2016. The other driver's policy with Progressive Insurance Company was limited to $25,000, which Progressive paid to Plaintiff for his injuries. (Dkt. No. 78 at 3.) But when Plaintiff began experiencing severe vertigo shortly after the accident, exacerbated by a traumatic brain injury he sustained from a previous car accident, he understood that he would require additional coverage from Integon, who insured Plaintiff under an underinsured motorist ("UIM") policy.

The severity of Plaintiff's injury was contemplated by his neurologist, Dr. Carolyn Taylor, who evaluated Plaintiff after the accident. Dr. Taylor noted "[t]he impact [of the collision] did cause an inner ear disturbance resulting in new gravitational vertigo due to damage to the inner ear utricle." (Trial Ex. 6 at 2.) She concluded that Plaintiff suffered from "[r]ecurrent post-concussive symptoms likely as a result of his brain's inability to compensate as well because of his fatigue from the vertigo, or he may actually have sustained another mild concussion." (Id.)

On March 26, 2018, Plaintiff submitted a request to Defendant for payment of his UIM policy limit of $250,000. Integon's claims' adjustor, Mary Gordon, summarized her first conversation with Plaintiff's attorney in a note in Plaintiff's claim file: "Main injury is vertigo, which his attorney relates will not improve, according to his neurologist." (Trial Ex. 1 at 28.) Ms. Gordon understood that because of Plaintiff's prior brain injury "he was a potential eggshell," or someone who is more susceptible to injury. (Dkt. No. 109 at 79:1-2.) In an email

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 2

to her supervisor on April 17th, 2018, Ms. Gordon wrote: "His attorney claims that he'll never return to his pre-collision status, and his neurologist said it may never resolve but hopes it will continue to improve." The following week, Ms. Gordon offered $17,340, telling Plaintiff's lawyer that Integon "was not considering any permanency." (Dkt. No. 109 at 35:3-6; Trial Ex. 1 at 23.) Plaintiff rejected Integon's offer and once again demanded the policy limits.

Integon then searched for a doctor who would conduct an independent review of Plaintiff's medical situation, asking for a recommendation from one of Integon's defense attorneys. (Dkt. No. 109 at 40:5-13.) According to the claims file, the defense attorney told Ms. Gordon that in his experience doctors will not agree to review the records in a traumatic brain injury case without meeting with the patient because "[r]ecords won't show them what they need in order to provide an opinion." (Dkt. No. 109 at 57:10-58:1; 60:7-8.) When Ms. Gordon asked the defense attorney "if there's any downside to having an [in person medical exam], if that's the route we choose to go," his response was "not really, other than if you do an [in person medical exam], you'll have to share it with [Plaintiff]." (Id. at 62:21-25.) On the other hand, Ms. Gordon noted that if Integon only did a records review, "we don't have to give it to [Plaintiff] or tell [him] who we consulted with." (Id. at 63:3-4.) Integon hired neurologist Dr. Roman Kutsy who agreed to provide an opinion without evaluating Plaintiff in person. Dr. Kutsy concluded that with physical therapy Plaintiff could recover from his injuries within three months. (Dkt. No. 109 at 74:15-19; Trial Ex. 1 at 13.) After receiving Dr. Kutsy's report, Integon extended a second offer to Plaintiff, this time for $40,000. (Dkt. No. 109 at 75:4-8.)

On October 16, 2018, Plaintiff filed suit in King County Superior Court. Defendant removed the matter to this Court on November 30, 2018. Following a seven day jury trial beginning on October 5, 2020, the jury returned a verdict in favor of Plaintiff on his claim for

benefits under his UIM policy in the amount of $751,491; his Consumer Protection Act ("CPA") claim in the amount of $16,931; and his claim that Defendant acted in bad faith in the amount of $180,231. (See Dkt. Nos. 92-94.)  The jury also found that Defendant did not violate the Insurance Fair Conduct Act ("IFCA") or act with negligence.  (Id.)

**Discussion**

**I.       Defendant's Motion for Judgment as a Matter of Law and Limitation of UIM Verdict**

**A.  Judgment as a Matter of Law**

Defendant moves for judgment as a matter of law on Plaintiff's CPA Claim, arguing that the jury's award of unpaid medical bills and expert witness fees was improper as neither category is compensable under the CPA.  (Dkt. No. 95.)

1.   Medical Expenses

To begin, Plaintiff's unpaid medical bills are compensable under the CPA, as the Washington Supreme Court has held that "the deprivation of contracted-for insurance benefits is an injury to 'business or property' regardless of the type of benefits secured by the policy." Peoples v. United Servs. Auto. Ass'n, 194 Wash. 2d 771, 779 (2019).  While Integon argues that the Peoples holding applies only to the PIP claims at issue in that case, the Court's analysis rooted the plaintiffs' injuries in the insurer's violation of their rights under the insurance contract:

> An insured, therefore, has a legally protected property interest in benefits due under the contract and a related right to insurance dealings free from bad faith. Claims mishandling and wrongful denial of benefits invade this property interest, regardless of the type of event that triggers coverage.

Id. at 780.  Defendant has failed to explain why Plaintiff's UIM policy does not afford him the same property interest in benefits due.

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 4

Integon also argues that Plaintiff cannot demonstrate that its denial of benefits is the "but for" cause of Plaintiff's medical expenses because these expenses were covered by the $25,000 from Progressive and $10,000 in PIP coverage from Integon. (Dkt. No. 116 at 5.) But Plaintiff incurred the $931 in unreimbursed medical expenses <u>after</u> these payments were made. (<u>See</u> Dkt. No. 118 at 5 (citing Dkt. No. 55, Ex. 1).) As determined by the jury, Integon's offers in combination with the Progressive payment and the PIP coverage were insufficient to compensate Plaintiff for his injuries and medical expenses. There is nothing to indicate, therefore, that these payments covered all future medical expenses. Plaintiff has established that Integon's failure to pay the UIM benefits caused his out-of-pocket medical expenses, which are compensable under the CPA. <u>See</u> <u>Peoples</u>, 194 Wash. 2d at 781 ("[T]o the extent proved, the plaintiffs may recover actual damages, including out-of-pocket medical expenses that should have been covered[.]")

Finally, Integon argues that Plaintiff waived his right to recover unreimbursed medical expenses by conceding in response to Integon's present motion, "that medical expenses are not recoverable under the CPA." (Dkt. No. 98 at 3 n. 2.) Because the Washington Supreme Court has held otherwise, <u>see</u> <u>Peoples</u>, <u>supra</u>, Plaintiff quickly corrected the mistaken concession in the hearing on the motion (Dkt. No. 113), and Defendant had an additional opportunity to brief Plaintiff's argument after the retracted concession (Dkt. No. 116), the Court declines to hold Plaintiff to a concession that was contrary to the law, especially where Integon has not demonstrated any prejudice.

2. <u>Expert Witness Fees</u>

Integon argues that the fees for Plaintiff's expert, Steven Strzelec, are not compensable under the CPA because Plaintiff did not hire Mr. Strzelec until after filing this lawsuit. Integon relies on <u>Lock v. Am. Family Ins. Co.</u>, 12 Wash. App. 2d 905, 928 (2020), where the court held

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 5

that "[i]nvolvement in prosecuting a CPA claim is insufficient to show injury to business or property." Plaintiff argues that Integon relies on a false dichotomy between investigation and litigation, especially where Mr. Strzelec was only able to fully investigate Plaintiff's claim once Integon produced materials through discovery and it was only this investigation "that confirmed Mr. Hopkin[s'] belief that Integon had violated the CPA." (Dkt. No. 118 at 9.)

This Court has held that expert witness fees constitute "harm" under the CPA where the insured demonstrates the fees are the result of the insurer's "unfair or deceptive practices." Wall v. Country Mut. Ins. Co., 319 F. Supp. 3d 1227, 1235 (W.D. Wash. 2018) (citing Coventry v. American States Ins. Co., 136 Wash.2d 269, 281-83 (1998)). In this case, there was evidence that Integon was not fully transparent with Plaintiff (see Dkt. No. 109 at 62:21-25 (Integon's claims' adjustor discussing the benefits of hiring a doctor who would conduct a records-only review: "we don't have to give [the results] to [Plaintiff] or tell [him] who we consulted with"), the Court therefore finds persuasive Plaintiff's argument that Mr. Strzelec was only able to fully evaluate Plaintiff's claim after the discovery process.

The remainder of Integon's argument—that expert fees are not compensable at all under the CPA—has been addressed by this Court on three previous occasions and is contrary to Washington law. (See Dkt. Nos. 37, 67, 88.) The Court will not address this argument again here.

**B. Limitation of UIM Verdict**

Integon also moves to decrease the jury's verdict on the UIM benefits claim to the contractual limits of $250,000. (Dkt. No. 95 at 7.) Plaintiff concedes that in the first party UIM context, an award for benefits cannot exceed the UIM policy limits. (Dkt. No. 98 at 7.) The

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 6

Court therefore reduces the judgment to the policy limit of $250,000 on Plaintiff's UIM benefits claim.

## II. Plaintiff's Motion for Judgment Notwithstanding the Verdict

Plaintiff asks the Court to (1) amend the judgment to find Defendant violated IFCA, (2) treble the IFCA damages, (3) treble the damages under the CPA up to the $25,000 limit, (4) award reasonable attorneys' fees and expenses pursuant to Olympic Steamship or the CPA, (5) apply a lodestar multiplier between 1.5 and 2.0 to Plaintiff's attorneys' fees, and (6) award prejudgment interest and costs. Defendant objects to each request.

### A. IFCA Violation

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff moves to alter the jury's judgment that Defendant did not violate IFCA. "'Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion.'" Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir.1999) (en banc) (per curiam)). "But amending a judgment after its entry remains 'an extraordinary remedy which should be used sparingly.'" Allstate, 634 F.3d at 1111 (quoting McDowell, 197 F.3d at 1255 n.1).

The jury valued Plaintiff's UIM benefits claim at $750,000, more than 18 times Defendant's highest offer to Plaintiff. (Dkt. Nos. 92-94.) Plaintiff argues that Defendant's offer was therefore "unreasonably low" as a matter of law, which constitutes an IFCA violation. While courts in this district "have concluded that the 'payment of benefits' prong of IFCA covers scenarios where an insurer makes an unreasonably low offer" Heide v. State Farm Mut. Auto. Ins. Co., 261 F. Supp. 3d 1104, 1107 (W.D. Wash. 2017); see also Kovarik v. State Farm Mut. Auto. Ins. Co., No. C15-1058-TSZ, 2016 WL 4555465, at *2 (W.D. Wash. Aug. 31, 2016), the

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 7

Court finds that the difference between Integon's offer and the jury's valuation is insufficient evidence that the jury erred, and does not justify the "extraordinary remedy" of reversing the jury's judgment.

While Plaintiff asks the Court to find damages caused by the IFCA violation in the same amount as the jury's award for Integon's violation of good faith, "[c]laims under IFCA are similar to, but not identical with, related bad faith or Consumer Protection Act (CPA) claims." Cmt., Insurance Fair Conduct Act, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 320.06.01 (7th ed.). This is apparent when evaluating the elements of an IFCA violation, which requires Plaintiff to prove the insurer "<u>unreasonably</u> denied payment of benefits" (Jury Instruction No. 22 (emphasis added)), whereas the claim for failure to act in good faith requires Plaintiff to prove that Integon's "conduct was unreasonable, frivolous, <u>or</u> <u>unfounded</u>" (Jury Instruction No. 23 (emphasis added)). The jury could therefore have determined that Integon's offer was unfounded without determining that its conduct was unreasonable. The jury's finding that Integon was not negligent is additional evidence that the jury determined Integon's conduct was something less than unreasonable. The Court therefore DENIES Plaintiff's motion to amend or alter the judgment.

### III. Treble CPA Damages

Plaintiff asks the Court to treble the Jury's award of $16,931 to the statutory maximum of $25,000. Such an award is within the Court's discretion and "may not exceed twenty-five thousand dollars [$25,000.00]." <u>N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co.</u>, No. C14-1680JLR, 2016 WL 1643979, at *5 (W.D. Wash. Apr. 26, 2016) (citing <u>Edmonds v. John L. Scott Real Estate, Inc.</u>, 942 P.2d 1071, 1081 (Wash. Ct. App. 1997); RCW 19.86.090). While Integon's claims' adjustor concluded "[if Plaintiff's] injury complaints are substantiated, it's

very possible this case could potentially be worth the policy limits," Integon inexplicably "did not consider permanency" in making an initial offer to Plaintiff, disregarding the opinions of Plaintiff's treating physicians. (Trial Ex. 1 at 23; Dkt. No. 109 at 79:1-2.) When Integon's first offer was challenged, Integon sought out a doctor who would offer an opinion on Plaintiff's condition without evaluating him in person, even after being warned by Integon's own defense attorney that most doctors will not offer an opinion without meeting with the patient because "[r]ecords won't show them what they need in order to provide an opinion." (Dkt. No. 109 at 57:10-12; 60:7-8.) Nevertheless, Integon found such a doctor, noting that in case Integon did not approve of the doctor's opinion, "we don't have to give it to [Plaintiff] or tell [him] who we consulted with." (Id. at 63:3-4.) In light of this conduct, and Plaintiff's role in uncovering it, the Court finds Plaintiff is entitled to treble damages of $25,000, the maximum allowable amount under the CPA.

### IV.   Attorneys' Fees

#### 1.   Olympic Steamship Fees

Plaintiff contends he is entitled to attorneys' fees as the prevailing party on his breach of contract claim, pursuant to Olympic Steamship Co. v. Centennial Ins. Co., 117 Wn.2d 37, 52-54 (1991), where the Washington Supreme Court held that an insured should be awarded attorneys' fees "in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Id. at 54. Where the insurer does not deny coverage, but disputes the proper value of the claim, however, attorneys' fees are not warranted under Olympic Steamship. Pinney v. Am. Family Mut. Ins. Co., No. C11-175 MJP, 2012 WL 584961, at *5 (W.D. Wash. Feb. 22, 2012)).

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 9

In this case, Plaintiff has conceded that Integon accepted coverage immediately, and "[i]n response to Plaintiff's demand for the policy limits of $250,000, Defendant offered $17,340.00 on April 24, 2018." (Dkt. No. 78, Pretrial Order, Admitted Facts, ¶ 17.)  It is therefore clear that this litigation concerns a dispute over the value of Plaintiff's claim and Olympic Steamship fees do not apply.

2.  Pursuant to the CPA

Plaintiff seeks to recover all attorneys' fees and expenses pursuant to the CPA, while Integon argues he can only recover those fees directly related to his CPA claim.  While Integon cites cases involving a CPA claim and a variety of other claims (see Dkt. No. 100 at 9 (citing Sing v. John L. Scott, Inc., 83 Wash. App. 55, 72 (1996), rev'd on other grounds, 134 Wash. 2d 24 (1997))), in cases involving the claims at issue here—breach of the insurance contract, bad faith, negligence, and violation of the CPA—courts have found the work done in support of the CPA claim could not be separated from that of the other claims.  See, e.g., Miller v. Kenny, 180 Wash. App. 772, 824 (2014) (where the Court found the several causes of action involved "a common core of facts and circumstances, in which the time devoted to discovery, pretrial motions and preparation and trial of this intertwined action cannot be reasonably segregated"); see also MKB Constructors v. Am. Zurich Ins. Co., 83 F. Supp. 3d 1078, 1089 (W.D. Wash. 2015) (finding it was not possible to segregate time spent on claims for breach of contract, violation of IFCA, and bad faith from the CPA claims: "The court cannot say, for example, that MKB would have spent less time in depositions, crafting written discovery questions or responses, or at trial, if MKB had never asserted its CPA claim.").

Here, each of Plaintiff's claims involves the same set of facts surrounding Integon's conduct and the extent of Plaintiff's injuries.  Further, many of the witnesses overlapped between

the UIM and extra-contractual claims.  (Dkt. No. 45 at 4.)  Without the CPA claim, Plaintiff would still have had to conduct depositions regarding Integon's claims' handling process, review the claims file, and hire expert Steven Strzelec, actions also required to prove elements of his CPA claim including Integon's deceptive acts or practices.  The Court cannot say, therefore, that Plaintiff would have spent less time in depositions, on discovery, or at trial, if he had never asserted his CPA claim.  The Court therefore finds that Plaintiff is entitled to recover his attorneys' fees pursuant to the CPA.

3.   Reasonableness of Fees

Defendant challenges the reasonableness of Plaintiff's requested fees, arguing: (1) Plaintiff's CPA fees have not been segregated and (2) counsel's rates are unreasonable.  As discussed above, the Court finds that work performed on Plaintiff's CPA claims cannot be reasonably segregated from work performed on other claims.  The Court therefore analyzes whether the requested rates for Plaintiff's attorneys are reasonable and finds that that they are.

District courts have broad discretion to determine the reasonableness of fees.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).  A determination of reasonable attorney fees begins with a calculation of the "lodestar," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  Mahler v. Szucs, 135 Wash.2d 398, 433-34 (1998).  Integon has conceded that Plaintiff's requested rates for his paralegal, intern, and legal assistant are reasonable (Dkt. No. 116 at 13 n.5), but objects to Plaintiff's requested hourly rates for his attorneys.  (Id. at 12.)  Plaintiff requests $575 an hour for attorneys Michael Wampold, Ann Rosato, and Felix Luna, and $500 an hour for attorney Thomas Gahan.

The Court finds these rates are commensurate with the work performed in this matter and is not persuaded otherwise by the few hand-picked cases selected by Integon where the attorneys

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 11

were awarded less. This is especially so where Integon has not provided a tally of its own fees, a telling indication of the reasonableness of Plaintiff's request. See Miller, 180 Wash. App. at 821. Further, the Court approved an hourly rate of $550 for Mr. Wampold and $450 for Ms. Rosato and Mr. Luna nearly six years ago (see Dkt. No. 119, Ex. 4); Cox v. Cont'l Cas. Co., No. C13-2288 MJP, 2015 WL 3844270, at *7 (W.D. Wash. June 19, 2015), aff'd in part, vacated in part on other grounds, 703 F. App'x 491 (9th Cir. 2017), and has awarded fees at higher hourly rates for attorneys of comparable or even lesser experience and skill.

The Court also finds that Plaintiff's attorneys may apply their current hourly rates to all work performed in this matter. While Integon concedes that the Washington Supreme Court allows "using current rates or adjusting historic rates to account for inflation to compensate attorneys for delay in payment," it contends that such adjustment is only permissible in the "context of public litigation, but not for a dispute between two private parties." (Dkt. No. 100 at 13 (citing Fisher Properties, Inc. v. Arden-Mayfair, Inc., 115 Wn. 2d 364, 376-77 (1990).) But Washington courts have been explicit that "private prosecution of Consumer Protection Act violations is backed by public policy." Miller, 180 Wash. App. at 826. And "[t]he legislature has expressly declared that the insurance business is one 'affected by the public interest.'" Peoples, 194 Wash. 2d at 778.

4. Multiplier

Plaintiff requests that the Court apply a 1.5 to 2.0 multiplier to his attorneys' fees award. Typically, the quality of work performed will not justify an enhancement because "in virtually every case the quality of the work will be reflected in the reasonable hourly rate." Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 599 (1983). The Court finds that Plaintiff has failed to justify a multiplier here. Much of the egregious conduct Plaintiff contends justifies the

multiplier—for example, Integon's "regular[] assert[ion] of improper defenses and arguments" (Dkt. No. 96 at 5)—can alternatively be described as advocacy on behalf of a client. And Plaintiff points to no other factors that indicate this matter was the rare occasion that justifies a multiplier. Plaintiff's request is DENIED.

### 5. Prejudgment Interest

Plaintiff seeks prejudgment interest on his UIM breach of contract claim. Under Washington law, "[a] party is entitled to prejudgment interest where the amount due is 'liquidated.'" Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co., 160 Wash.App. 912, 925 (2011) (citing Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654 (2000)). "A liquidated claim is one where the evidence furnishes data 'which, if believed, make it possible to compute the amount due with exactness, without reliance on opinion or discretion.'" Unigard, 160 Wash. App. at 925 (quoting Weyerhaeuser, 142 Wash.2d at 685.) Plaintiff's UIM claim is not liquidated. The jury was tasked with determining the extent of Plaintiff's injury and its effect on his life going forward, such effects cannot be computed with exactness. Further, although the claim was for the policy limit, a set amount, the jury's verdict could have been any amount up to the policy limit of $250,000, including no award. Because the UIM award was uncertain until the jury returned its verdict, Plaintiff is not entitled to prejudgment interest.

**Conclusion**

In conclusion, the Court holds:

(1) Defendant's Motion for Judgment as a Matter of Law Regarding Plaintiff's CPA

Claim and Limitation of Verdict on UIM Benefits (Dkt. No. 95) is DENIED in part

GRANTED in part:

a. Defendant's Motion is DENIED as to Plaintiff's CPA claim;

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 13

b. Defendant's Motion is GRANTED as to the limitation of benefits claim.

Plaintiff's UIM benefits claim is limited to $250,000.

(2) Plaintiff's Motion for Fees and Motion Notwithstanding the Verdict on IFCA (Dkt. No. 96) is DENIED in part GRANTED in part:

a. Plaintiff's Motion Notwithstanding the Verdict on IFCA is DENIED;

b. Plaintiff's request for treble damages under the CPA is GRANTED and Plaintiff is awarded the statutory maximum of $25,000 on his CPA claim;

c. Plaintiff's Motion for attorneys' fees is GRANTED:

i. The Court finds that Plaintiff's attorneys' fees for his CPA claim cannot be reasonably segregated from his remaining fees;

ii. The requested hourly rates of Plaintiff's attorneys are reasonable;

d. Plaintiff's request for a fee multiplier is DENIED;

e. Plaintiff is not entitled to prejudgment interest.


The clerk is ordered to provide copies of this order to all counsel.

Dated February 16, 2021.

Marsha J. Pechman
United States Senior District Judge

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 14

# EXHIBIT 4

# 2011 BILLING SURVEY
### A SPECIAL REPORT

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys* | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker, Donelson, Bearman, Caldwell & Berkowitz | Memphis, Tenn. | 527 | $311 | $310 | $595 | $250 | $357 | $345 | $315 | $160 | $228 |
| Best Best & Krieger | Riverside, Calif. | 195 | $358 | $360 | $575 | $275 | $417 | $420 | $375 | $205 | $265 |
| Briggs and Morgan | Minneapolis | 185 | | | $625 | $325 | | | $305 | $230 | |
| Broad and Cassel | Orlando, Fla. | 160 | $377 | $350 | $575 | $295 | $435 | $395 | $350 | $180 | $265 |
| Bryan Cave | St. Louis | 908 | $475 | $460 | $795 | $375 | $565 | $553 | $540 | $200 | $356 |
| Butzel Long | Detroit | 176 | | | $700 | $325 | $440 | | $425 | $225 | $274 |
| Carlton Fields | Tampa, Fla. | 270 | $397 | $400 | $815 | $320 | $470 | $470 | $380 | $195 | $262 |

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys* | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kaye Scholer | New York | 425 | $661 | $665 | $1080 | $685 | $831 | $835 | $705 | $310 | $519 |
| Kelley Drye & Warren | New York | 321 | $474 | $400 | $925 | $480 | $634 | $645 | $595 | $275 | $425 |
| Knobbe, Martens, Olson & Bear | Irvine, Calif. | 268 | $439 | $415 | $735 | $415 | $525 | $500 | $495 | $295 | $346 |
| Lane Powell | Seattle | 180 | $405 | $425 | $645 | $340 | $460 | $450 | $360 | $225 | $295 |
| Lathrop & Gage | Kansas City, Mo. | 281 | $337 | $340 | $735 | $275 | $390 | $390 | $410 | $205 | $246 |
| Lewis, Rice & Fingersh | St. Louis | 162 | $275 | | $470 | $270 | | | $320 | $150 | |
| Lowenstein Sandler | Roseland, N.J. | 249 | $478 | $480 | $895 | $435 | $613 | $595 | $660 | $250 | $400 |
| Manatt, Phelps & Phillips | Los Angeles | 322 | $602 | $620 | $850 | $540 | $676 | $670 | $550 | $215 | $464 |
| McElroy, Deutsch, Mulvaney & Carpenter | Morristown, N.J. | 272 | $245 | $275 | $575 | $295 | $350 | $375 | $325 | $185 | $250 |

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys* | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nexsen Pruet | Columbia, S.C. | 178 | | | $550 | $235 | | | $265 | $170 | |
| Patton Boggs | Washington | 512 | $546 | $540 | $990 | $410 | $659 | $645 | $570 | $240 | $410 |
| Pepper Hamilton | Philadelphia | 459 | | | $825 | $380 | $557 | | $460 | $235 | $344 |
| Perkins Coie | Seattle | 693 | $462 | | $875 | $285 | $550 | $545 | $590 | $215 | $368 |
| Phelps Dunbar | New Orleans | 280 | $236 | $225 | $465 | $190 | $281 | $275 | $245 | $150 | $189 |
| Polsinelli Shughart | Kansas City, Mo. | 466 | | | $630 | $275 | | | $335 | $205 | |
| Saul Ewing | Philadelphia | 220 | $431 | $450 | $750 | $350 | $502 | $490 | $495 | $245 | $326 |
| Schulte Roth & Zabel | New York | 406 | $615 | $630 | $935 | $770 | $846 | $840 | $675 | $285 | $608 |
| Seyfarth Shaw | Chicago | 702 | $437 | $425 | $790 | $355 | $528 | $525 | $505 | $225 | $341 |
| Sheppard, Mullin, Richter & Hampton | Los Angeles | 465 | | | $860 | $505 | | | $635 | $275 | |

# EXHIBIT 5



**2015 NLJ Billing Survey**

**Source: National Law Journal**

**Category: National Law Journal**

ALM Legal Intelligence, in association with The National Law Journal, collected 2015 hourly billing rates for partners, associates, of counsel and paralegals. The data sources include the published rates from the 20 largest federal bankruptcy jurisdictions and a survey of the nation's 350 largest firms conducted during October and November of 2015.  Individual firm rates are not identified.

## Hourly Billing Rates for 2015

| | Partner | | | Associate | | |
|---|---|---|---|---|---|---|
| | **High** | **Low** | **Median** | **High** | **Low** | **Median** |
| **Overall Hourly Rates** | $1,295 | $90 | $395 | $950 | $50 | $350 |

### Rates by Firm Size

| | High | Low | Median | High | Low | Median |
|---|---|---|---|---|---|---|
| 1 - 25 lawyers | $1,080 | $90 | $350 | $950 | $90 | $300 |
| 26 - 150 lawyers | $1,050 | $190 | $460 | $900 | $100 | $300 |
| 151 or more lawyers | $1,295 | $100 | $595 | $975 | $125 | $325 |

### Rates by State

| | High | Low | Median | High | Low | Median |
|---|---|---|---|---|---|---|
| AL | $725 | $200 | $375 | $375 | $175 | $300 |
| AZ | $750 | $125 | $375 | $750 | $175 | $250 |
| CA | $1,080 | $200 | $495 | $950 | $300 | $350 |
| CO | $893 | $350 | $443 | $642 | $150 | $325 |
| CT | $1,200 | $295 | $350 | $625 | $175 | $350 |
| DC | $1,095 | $975 | $1,035 | $655 | $350 | $375 |
| DE | $1,050 | $295 | $650 | $850 | $260 | $388 |
| FL | $625 | $175 | $375 | $525 | $100 | $300 |
| GA | $500 | $250 | $358 | $450 | $110 | $275 |
| IL | $985 | $200 | $420 | $710 | $150 | $300 |
| IN | $400 | $250 | $305 | $400 | $200 | $275 |
| KY | $340 | $200 | $290 | $350 | $200 | $275 |
| LA | $575 | $150 | $333 | $500 | $100 | $250 |
| MA | $650 | $300 | $475 | $500 | $260 | $350 |
| MD | $560 | $250 | $363 | $580 | $150 | $325 |
| MI | $375 | $190 | $265 | $400 | $125 | $275 |
| NC | $675 | $250 | $425 | $435 | $150 | $275 |

| | | | | | | |
|---|---|---|---|---|---|---|
| NJ | $880 | $250 | $400 | $400 | $150 | $298 |
| NM | n/a | n/a | n/a | $350 | $175 | $200 |
| NV | $450 | $295 | $375 | $500 | $200 | $325 |
| NY | $1,295 | $100 | $420 | $975 | $90 | $350 |
| OH | $545 | $250 | $313 | $330 | $155 | $250 |
| OR | $485 | $315 | $370 | $325 | $230 | $300 |
| PA | $875 | $200 | $350 | $565 | $86 | $257 |
| PR* | $300 | $100 | $200 | $350 | $100 | $200 |
| TN | $735 | $225 | $300 | $350 | $150 | $250 |
| TX | $925 | $90 | $395 | $650 | $150 | $298 |
| VA | $545 | $220 | $335 | $495 | $175 | $295 |
| WA | $965 | $275 | $460 | $375 | $150 | $350 |
| WI | $595 | $560 | $578 | n/a | n/a | n/a |

| | Of Counsel | | | Paralegal | | |
|---|---|---|---|---|---|---|
| | High | Low | Median | High | Low | Median |
| **Overall Hourly Rates** | $1,120 | $125 | $350 | $325 | $25 | $125 |

**Rates by Firm Size**

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 - 25 lawyers | $645 | $125 | $350 | $325 | $25 | $115 |
| 26 - 150 lawyers | $620 | $225 | $393 | $305 | $75 | $173 |
| 151 or more lawyers | $1,120 | $270 | $610 | $325 | $35 | $220 |

**Rates by State**

| | | | | | | |
|---|---|---|---|---|---|---|
| AL | $495 | $290 | $393 | n/a | n/a | n/a |
| AZ | $750 | $250 | $300 | $250 | $75 | $125 |
| CA | $595 | $175 | $450 | $325 | $25 | $150 |
| CO | $400 | $325 | $363 | $285 | $75 | $158 |
| CT | $550 | $325 | $438 | $290 | $75 | $100 |
| DC | $775 | $275 | $750 | n/a | n/a | n/a |

# EXHIBIT 6

THE HONORABLE SUZANNE R. PARISIEN

**SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY**

MICHAEL VANDIVERE and KATHRYN
SNOW VANDIVERE, husband and wife
and their marital community, and
KATHRYN SNOW VANDIVERE, as the
legal guardian of W.V., a minor,

                    Plaintiff,

    vs.

VERTICAL WORLD, INC, a Washington
State Corporation,

                    Defendant.

No. 19-2-27385-2 SEA

**DECLARATION OF DARRELL L.
COCHRAN IN SUPPORT OF
PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND
LITIGATION COSTS**

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 1 of 14 | 19-2-27385-2 SEA



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

I, **DARRELL L. COCHRAN**, hereby declare under penalty of perjury under the laws of the state of Washington and the United States that the following is true and correct:

1. I am an attorney in the State of Washington and a shareholder at the law firm Pfau Cochran Vertetis Amala, PLLC, (PCVA) in Seattle/Tacoma, Washington. I am over 18 years of age and I am competent to testify to the facts herein.

2. I represent the Plaintiffs in the above-entitled matter. Plaintiffs retained PCVA to represent them in this action on a contingency fee basis.

3. I am a 1993 graduate of the University of Michigan Law School in Ann Arbor, Michigan. I have been a member of the Washington State Bar since 1993, and I am admitted to practice before the United States District Courts for the Western and Eastern Districts of Washington, the United States Court of Appeals for the Ninth Circuit, as well as the United States Supreme Court. From 1993 until 1997, I was an associate at the law firm Gordon Thomas Honeywell (GTH) in Tacoma, Washington, until I became a partner in 1998. I was partner at GTH until I helped co-found PCVA in 2008.

4. In 2015, I was named as the 'Trial Lawyer of the Year' by the Washington State Association for Justice (WSAJ) and I served as WSAJ's President for the 2017-2018 term. I have been selected to Washington Law & Politics Magazine's list of Super Lawyers for the past 20 years and have been rated in the Top 100 for Washington State since 2015. I am rated by Martindale-Hubbell as AV Preeminent. I am also a member of the Damages Award Round Table (DART) and a member of the Washington State Supreme Court's Pattern Jury Instruction Committee.

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 2 of 14 | 19-2-27385-2 SEA

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

5.      Over the past 29 years, I have won a significant number of multimillion-dollar verdicts and settlements for my clients, both in Washington state and around the country.  My legal philosophy is guided by the desire to assist those severely injured or damaged by well-funded defendants who have abused their power, acted recklessly in their disregard for others, or violated their civil rights.  A few examples of my casework include a $7.5 million settlement against the Puyallup School District and injunction requiring special negotiations and procedures in the school district to remediate discrimination; a nationally-recognized damages award, injunction, and consent decree secured for Latino school students against the Brewster School District requiring measures to eliminate racism; a $1 million settlement with Pierce County regarding illegal strip search practices against a jail detainee; a $95 million class action verdict against the Washington DSHS for breach of contract; a $7.5 million class action settlement against Multicare Health System for deceptive billing practices; and a $60 million settlement for Oso landslide victims against Washington State and the timber company.  My practice areas include catastrophic injury or death, medical malpractice, sexual abuse, insurance bad faith, product liability, class action and general serious personal injury.  Many of my cases attract local and national media attention, including high-profile litigation involving Puget Sound Energy, Hunter Donaldson, Washington DSHS, Apple Computers, Washington State DOC and various school districts.  I often accept difficult case requests from across the Northwest, and several of my jury verdicts have prompted important changes in Washington state law.

6.   Some of my representative cases include the following:

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 3 of 14 | 19-2-27385-2 SEA



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

a. *Rekhter v. DSHS*, Thurston County Cause No. 07-2-00895-8, $95,000,000 judgment on jury verdict;

b. *Oso Landslide Lawsuit*, King County Cause No. 14-2-18401-8 SEA, $60,000,000 settlement;

c. *Joyce v. Department of Corrections*, Pierce County Cause No. 99-2-10179-6, $22,500,000 jury verdict;

d. *Couch v. State of Washington,* Pierce County Cause No. 99-2-11902-4, $15,000,000 jury verdict;

e. *Aba Sheikh v. King County, DSHS & Shell Oil*, King County Cause No. 02-2-05199-5, $10,300,000 jury verdict;

f. *Hunter Donaldson and Multicare Class Action*, Pierce County Cause No. 13-2-08746-0, $7,500,000 settlement;

g. *Thomas v. Puyallup School District,* Pierce County Cause No. 01-2-08646-0, $7,500,000 settlement;

h. *Confidential v. Confidential*, US District Court Cause No. Confidential, $5,000,000 settlement;

i. *Seyler v. Blair Construction*, Pierce County Cause No. 01-2-08881-1, $4,750,000 settlement;

j. *Larson v. Department of Corrections*, Pierce County Cause No. 09-2-13355-2, $4,250,000 settlement;

k. *Carlisle v. CTI, Inc.*, King County Cause No. 93-2-19696-2, $3,500,000 settlement;

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 4 of 14 | 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

l. *J.M. v. DSHS*, Clark County Cause No. 16-2-02502-5, $3,100,000 settlement;

m. *R.R. v. DSHS*, Pierce County Cause No. 12-2-08056-4, $3,000,000 settlement;

n. *Thomas v. Puyallup School District*, Pierce County Cause No. 01-2-08646-0, $7,500,000 settlement and injunction requiring anti-discrimination procedures within the school district;

o. *Mendoza v. Brewster School District*, U.S.D.C. E. Wa. Cb-05-327-rhw, large damages award, injunction, and consent decree requiring anti-racial discrimination measures within school district; and

p. *Plemmons v. Pierce County*, Pierce County Cause No. 04-2-07032-1, $1,000,000 settlement with Pierce County for illegal strip searches of jail detainee.

7. Over the years, I have been involved in a number of complex civil claims, frequently involving large numbers of plaintiffs. I have extensive civil and criminal trial experience as well as extensive appellate experience, including appellate advocacy at all levels in the State of Washington, the Ninth Circuit Court of Appeals and in the United States Supreme Court.

**A. PCVA'S Reasonable Time Spent on this Matter and the Nature of its Representation**

8. I have been involved in all aspects of this case since shortly after its inception. I supervised a team of attorneys, a paralegal and a legal assistant from PCVA in doing the work

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 5 of 14 | 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

necessary to develop the factual record in this case and conduct litigation. Working with me on this matter were the following PCVA partners and associates:

9. Andrew S. Ulmer is a partner at PCVA. He graduated from University of Washington School of Law in 2016. Following law school, he worked as an attorney for a general practice civil litigation firm for approximately one year before serving for approximately three years as a law clerk. He joined PCVA in 2019. He has been selected to Thomas Reuters *Washington Super Lawyers* Rising Stars and has received the "Abogado Exceptional Award" by the Latino/a Bar Association of Washington. During his time at PCVA, Mr. Ulmer has worked on complex litigation involving catastrophic injury or death, sexual abuse, product liability, class actions and general serious personal injuries. Mr. Ulmer has tried multiple cases to jury verdict in both federal and state courts and has first-chair experience in trial. Some representative cases include the following:

    a. *Madeleine Garza v. National Railroad Passenger Corporation d/b/a Amtrak*, W.D. Wash. No. 3:18-cv-05106-BHS, $4,500,000 jury verdict.

    b. *Than Orn et. al v. City of Tacoma et. al.*, W.D. Wash. No. 3:13-cv-05974, $8,000,000 settlement after a seven-day jury trial.

    c. *T.V. v. State of Washington*, Pierce County Superior Court Cause No. 21-2-06819-9, $1,500,000 settlement after an eleven-day jury trial.

    d. *Milhans v. Bosnick Roofing, Inc., et al.*, Pierce County Cause No. 21-2-07505-5, $7,500,000 settlement.

    e. *C.B. v. Black Hills Football Club, et al.*, Thurston County Cause No. 18-2-02416-34, $7,500,000 settlement.

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 6 of 14 | 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

f. *R.K. et. al v. Kiwanis International et. al*, Pierce County Cause No. 18-2-13370-5, $6,000,000 settlement.

g. *T.M. v. United States Bowling Congress, et al.*, King County Cause No. 18-2-56563-4 SEA, $6,000,000 settlement.

h. *Maria Joyner v. Aberdeen School District No. 5, et. al.*, Snohomish County Cause No. 19-2-01675-31, $2,000,000 settlement.

i. *S.C. v. Black Hills Football Club, et ano.*, W.D. Wash. No. 3:21-cv-05147-RAJ, $1,500,000 settlement.

j. *J.L. v. United States Bowling Congress, Inc. et. al*, King County Cause No. 19-2-15185-4, $750,000 settlement.

k. *Mary Sanchez v. Aberdeen School District No. 5, et al.*, W.D. Wash. No. 3:21-cv-05236-RAJ, $750,000 settlement.

l. *Raelyn Mason v. Randy K. Kell et. al.*, Pierce County Cause No. 19-2-09910-6, $350,000 settlement.

10. Alexander Dietz is an associate at PCVA. He graduated from Duke University School of Law in 2018. Following law school, he served for two years as an appellate law clerk for The Honorable Stephen J. Dwyer at the Washington State Court of Appeals, Division One. He joined PCVA as an associate in 2020. He has been selected to Thomas Reuters *Washington Super Lawyers* Rising Stars. During his time at PCVA, Mr. Dietz has worked on complex litigation involving catastrophic injury or death, sexual abuse, insurance bad faith, product liability, class actions and general serious personal injuries. Some representative cases include the following:

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

a. *Than Orn et. al v. City of Tacoma et. al*, U.S. District Court No. 3:13-cv-05974, $8,000,000 settlement after a seven-day jury trial.

b. *R.K. et. al v. Kiwanis International et. al*, Pierce County Cause No. 18-2-13370-5, $6,000,000 settlement.

c. *J.L. v. United States Bowling Congress, Inc. et. al*, King County Cause No. 19-2-15185-4, $750,000 settlement.

d. *Raelyn Mason v. Randy K. Kell et. al*, Pierce County Cause No. 19-2-09910-6, $350,000 settlement.

11. PCVA's representation of Plaintiffs was on a wholly contingent basis. The contingent nature of this representation imposed significant opportunity costs: PCVA was unable to accept other potentially profitable work and was forced to allocate resources to this case that might have been more profitably invested in other litigation matters. In addition, PCVA financed this litigation, including the advancement of expenses, through careful cash-flow management and the firm's available line of credit.

12. All attorneys at PCVA are instructed to maintain contemporaneous time records reflecting the time spent on this and other matters. In all instances, the timekeeper indicates the date and amount of time spent on a task to the one-tenth of an hour; describes the work that was performed during the indicated time period; and identifies the case to which the time should be allocated. My firm has kept contemporaneous records documenting in detail all time spent on this matter, including tasks performed by each timekeeper on each day, in increments of 0.1 of an hour.

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 8 of 14 | 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

13. I made every effort to litigate this matter efficiently by coordinating the work of PCVA's attorneys and staff, minimizing duplication, and assigning tasks in a time and cost-efficient manner, based on the timekeeper's experience levels and talents.

14. I reviewed the records of all time that all PCVA timekeepers billed to this matter. I exercised billing judgment by deleting time entries that were duplicative, inefficient, vague, administrative, or otherwise non-compensable. I have also decided, in an effort to ensure the reasonableness of Plaintiff's fee request, not to seek recovery for any of the billable time entered by supporting staff, including paralegal time, legal assistant time, and tech support. The remaining hours PCVA billed were properly and necessarily spent on the firm's assigned tasks and projects.

## B. PCVA's Reasonable Hourly Rates

15. Because of the importance of recovery of attorneys' fees in such cases to a plaintiffs' contingency practice such as mine, my firm keeps current on legal developments in the subject of attorneys' fees. As such, I am familiar with the prevailing market rates for leading attorneys nationally and locally, both private and public interest.

16. Together with my partners, I periodically establish hourly rates for the billing personnel at our firm. I establish the rates based on prevailing market rates for attorneys and law firms in the Seattle area that have attorneys and staff of comparable skill, experience, and qualifications. I obtain information concerning market rates from other attorneys in the area that have similar work experience doing similar work, from information that occasionally appears in the local press and national bar publications, and in orders awarding attorney's fees.

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 9 of 14 | 19-2-27385-2 SEA

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

17.     The bulk of PCVA's practice is contingent, and many of my firm's cases have resulted in substantial settlements or verdicts, as set forth above. In contingent putative class action cases, my firm and other firms doing this type of work frequently advance tens or hundreds of thousands of dollars in expenses and costs and defer all payment of our fees for several years, with no guarantee that any of the fees we incurred or costs we advanced would ever be recovered.

18.     The financial burden on contingent fee counsel is far greater than it is on firms that are paid on an ongoing basis throughout lengthy and complex litigation.

19.     I have calculated our attorneys' fees incurred in this matter using PCVA's 2022 hourly rates.

20.     I am a 1993 law school graduate with 28 years of complex litigation and appellate experience, and my hourly rate for 2022 was $725.00.  Using our 2022 rates, my firm calculated our lodestar hourly rates in this matter at $500.00 for partner Andrew Ulmer, a 2016 law school graduate with 7 years of complex litigation experience and experience trying several complex civil cases; and $400.00 for associate Alexander Dietz, a 2018 law school graduate with 5 years of complex litigation and appellate experience.

21.     In setting these hourly rates, my firm consulted with attorneys with national reputations, experience and practices like ours. We determined that the rates we charge are reasonable for attorneys of our experience, reputation and expertise and are consistent with the prevailing market rates for attorneys of comparable levels of expertise and reputation at Seattle area law firms that practice complex litigation. The following supporting documents validate our rates:

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 10 of 14 | 19-2-27385-2 SEA

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

a. Attached as **Exhibit 1** is a true and correct copy of a 2017 Order in *IDS Property and Casualty Ins. Co. v. Fellows*, No. 2:15-cv-02031, 2017 WL 4122565 (W.D. Wash. 2017) authorizing a reasonable award of attorney fees in a contingency fee case involving successful bad faith and CPA claims against an insurer. In this now four years old order, the Court approves rates for partners at $475/hour and a rate of $600/hour for a senior partner with decades of experience. It is my opinion as a current active practitioner in the Washington legal market that reasonable hourly rates for attorneys have increased since 2017, so the rates approved in 2017 should not serve as a ceiling on what is currently reasonable.

b. Attached as **Exhibit 2** is a true and correct copy of a 2019 Order in *Byles v. Ace Parking Management, Inc.*, No. 2:16-cv-00834, 2019 WL 3936663 (W.D. Wash. 2019), approving of PCVA's hourly rates from 2016 of $550/hour for Darrell Cochran, $400/hour for Loren Cochran, and $300/hour for then associates Christopher Love and Kevin Hastings following settlement of an ADA class action lawsuit. In keeping with the rise in market rates, PCVA's hourly rates have increased since 2016.

c. Attached as **Exhibit 3** is a true and correct copy of a 2021 Order Denying in Part Granting in Part Plaintiff's Motion for Attorneys' Fees and Motion for Judgment Notwithstanding the Verdict in *Hopkins v. Integon Gen. Ins. Corp.*, No. 2:18-cv-01723, 2021 WL 568243 (W.D. Wash. 2021), approving of hourly rates of $575/hour for name partners and $500 for non-name partners in a bad faith insurance case.

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

d. Attached as **Exhibit 4** is a true and correct copy of the National Law Journal's 2011 survey of nation-wide billing rates.

e. Attached as **Exhibit 5** is a true and correct copy of the National Law Journal's 2015 survey of nation-wide billing rates.

22.  On June 14, 2023, the Court granted Plaintiffs' Motion for Sanctions. In the Court's oral ruling, the Court granted Plaintiffs leave to file a motion to present their fees and costs that were reasonably expended from January 26, 2023 to the date of the Court's June 14, 2023 ruling.

23.  Attached as **Exhibit 6** is a true and correct copy of reasonable litigation costs incurred from January 26, 2023 to June 14, 2023. The total amount of litigation costs is $27,229.42.

24.  Darrell L. Cochran, Andrew S. Ulmer, and Alexander G. Dietz were the primary attorneys who worked on this case. Messrs. Cochran, Ulmer, and Dietz have been licensed to practice law in the State of Washington since 1993, 2016, and 2019, respectively. Messrs. Cochran and Ulmer are partners at Pfau Cochran Vertetis Amala, PLLC ("PCVA"). Mr. Dietz is an associate attorney at PCVA. The hourly rate for Messrs. Cochran, Ulmer, and Dietz is $725, $500, $400, respectively, which is comparable to rates for other attorneys in the Tacoma area with their level of experience.

25.  The following table reflects the hourly billing rate, time spent on the case, and total value for each attorney who worked on this case from February 24, 2023 to June 14, 2023:

//

//

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 12 of 14 | 19-2-27385-2 SEA

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

| Attorney | Hourly Billing Rate | Time Spent on Case | Total Value of Fees |
|---|---|---|---|
| Darrell L. Cochran | $725 | 213.39 Hours | $154,707.75 |
| Andrew S. Ulmer | $500 | 203.2 Hours | $101,600.00 |
| Alexander G. Dietz | $400 | 12.6 Hours | $5,040.00 |

26.  The total amount of attorneys' fees is $260,297.75.  Attorneys' fees and litigation costs incurred between January 23, 2023 to June 14, 2023 totals to $287,527.17.  If the Court applies a 1.5 multiplier, then the award amount would be $431,290.75.

SIGNED this 19th day of June, 2023.

By: /s/ Darrell L. Cochran
DARRELL L. COCHRAN

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 13 of 14 | 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## CERTIFICATE OF SERVICE

I, **Jessica Gott**, hereby declare under penalty of perjury under the laws of the State of Washington that that I am employed at Pfau Cochran Vertetis Amala PLLC. I served the foregoing via **Email**, indicated below, by directing delivery to the following individuals:

**Attorneys for Defendant Vertical World, Inc.:**

Ann E. Trivett
Robert L. Christie
Christie Law Group PLLC
21600 Westlake Ave N, Suite 206
Seattle, WA 98109

Mark A. Clausen
Clausen Law Firm PLLC
701 5th Ave. Suite 4400
Seattle, WA 98104

**Attorneys for Defendant C3 Manufacturing, LLC:**

Rachel Tallon Reynolds
Erin M. Thenell
Lucy Boateng-Agyei
Lewis Brisbois Bisgaard & Smith LLP
1111 Third Avenue, Suite 2700
Seattle, WA 98101

Dated this 19th day of June, 2023.

/s/ Jessica Gott
Jessica Gott
Legal Assistant

DECLARATION OF DARRELL L. COCHRAN IN
SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 14 of 14 | 19-2-27385-2 SEA



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IDS PROPERTY AND CASUALTY
INSURANCE COMPANY,

                    Plaintiff,                          C15-2031 TSZ

          v.                                            ORDER

CHARLES H. FELLOWS,

                    Defendant.

THIS MATTER comes before the Court on defendant/counterclaimant Charles H. Fellows's motion for attorney fees and costs, docket no. 206.  Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

IDS Property and Casualty Insurance Company ("IDS") initiated this declaratory judgment action to obtain a ruling that, under a homeowners' policy issued to Fellows and his former wife, Michaela Osborne, it did not owe coverage for the following losses: (i) damage to the residence caused by Osborne and her two children, (ii) additional living expenses ("ALE") necessarily incurred by Fellows to reside elsewhere while the dwelling

ORDER - 1

was uninhabitable, and (iii) theft or other improper disposition of Fellows's personal property, including business attire and formal wear. Fellows brought six counterclaims against IDS. Two of them, for constructive fraud and negligence, were dismissed with prejudice on IDS's oral motion pursuant to Federal Rule of Civil Procedure 50(a). *See* Minute Order at ¶¶ 1(a) & (b) (docket no. 198). In addition, all counterclaims premised on the lost business attire and formal wear were dismissed. *See id.* at ¶ 1(c). After a six-day trial, the jury rendered a verdict in favor of Fellows on his four remaining counterclaims, for breach of contract, violation of the Insurance Fair Conduct Act ("IFCA"), violation of Washington's Consumer Protection Act ("CPA"), and insurance bad faith. *See* Verdict (docket no. 201). Based on the jury's factual findings, the Court ruled against IDS on its claim for declaratory relief, holding that coverage is owed for the damage to residence caused by Osborne and/or her children, as well as for Fellows's related ALE. *See* Order (docket no. 204). Judgment was entered in favor of Fellows and against IDS with respect to coverage and in the following amounts: (i) $164,798.24 in contract damages; (ii) $494,394.72 in increased damages under the IFCA; (iii) $102,600 in actual damages on the CPA and bad faith counterclaims; (iv) $10,000 in increased damages under the CPA; and (v) $145,000 in noneconomic damages on the bad faith counterclaim, for a total of $916,792.96, together with costs to be taxed as set forth in Local Civil Rule 54(d) and post-judgment interest. Judgment (docket no. 205).

The pending motion for attorney fees and costs was filed before IDS sought judgment as a matter of law or, in the alternative, a new trial or remittitur. The Court has since denied IDS's post-judgment motions, *see* Order (docket no. 241), and IDS has

ORDER - 2

appealed, *see* Notice (docket no. 243). The Court, however, continues to have jurisdiction to resolve the issues of attorney fees and costs. *See Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955 (9th Cir. 1983). Fellows seeks: (i) $32,876 for legal services provided by Lether & Associates PLLC, as well as deposition and trial testimony given by Thomas Lether; (ii) $626,523.50 for work performed by Keller Rohrback L.L.P., taking into account agreed reductions and fees incurred after the pending motion was filed; and (iii) $88,399.91 in costs. Fellows also requests a multiplier of 2.0 with respect to the fees associated with Keller Rohrback's efforts.

**Discussion**

Both the IFCA and the CPA authorize the Court to award attorney fees and costs to Fellows. Because the jury found an unreasonable denial of a claim for coverage or payment of benefits, *see* Verdict (docket no. 201); Instruction No. 14 (docket no. 196), the IFCA allows Fellows to recover "reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees." RCW 48.30.015(3). The CPA entitles Fellows to "the costs of the suit, including a reasonable attorney's fee." RCW 19.86.090. The Court may also grant Fellows reasonable attorney fees pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), which holds that "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees." *Id.* at 54. For purposes of *Olympic Steamship*, reasonable attorney fees include "expenses necessary to establish coverage," including expert witness fees. *Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co.*, 144 Wn.2d 130, 143-45, 26 P.3d 910 (2001). In response to the pending

ORDER - 3

motion, IDS has disputed the reasonableness of both the attorney fees and costs requested by Fellows.

**A.      Attorney Fees**

When a fee-shifting statute is silent concerning how reasonable attorney fees should be calculated, Washington courts generally employ the lodestar method.  *See Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 666, 989 P.2d 1111 (1999).  The lodestar method involves two steps:  first, computing a lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter; and second, adjusting the lodestar figure either up or down to reflect factors that have not already been taken into account, namely the contingent nature of success and the quality of the work performed.  *See id.*; *see also Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593-99, 675 P.2d 193 (1983) (quoting *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir. 1982), and citing *Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980)).  The Court is not bound by the lodestar value, but rather, is charged with making "an independent decision" as to what represents a reasonable amount of attorney fees.  *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987).  With regard to reasonableness, an attorney's billing records, although relevant, are "in no way dispositive."  *Id.*  The fee applicant bears the burden of proving the reasonableness of the amount requested, *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993), and of justifying any upward deviation from the lodestar result, *see Bowers*, 100 Wn.2d at 598.

ORDER - 4

### 1. **Lether & Associates**

In this action, Lether & Associates never appeared as counsel of record on Fellows's behalf, but the firm represented Fellows until December 31, 2015, the day after this action was commenced, in extrajudicial efforts to obtain coverage for him under the homeowners' policy at issue. With respect to those services, Fellows owes fees pursuant to a written agreement with Lether & Associates, which sets forth a rate of $325 per hour for Thomas Lether's services and a rate of $275 per hour for the work of associates. *See* Ex. A to Lether Decl. (docket no. 209-1). The fee agreement contemplated that Fellows would be responsible for compensating Lether & Associates not only for its legal representation, but also for any time reasonably spent transferring the matter to another attorney. *See* *id.*

With respect to the period from September 10, 2015, to December 31, 2015, IDS challenges several billing entries. *See* Hill Decl. at ¶ 4 (docket no. 226). Having reviewed the explanations provided by Lether & Associates, *see* Colito Decl. at ¶¶ 4-9 (docket no. 234), the Court is satisfied that all but three (3) of IDS's objections lack merit. The Court agrees with IDS that Fellows is not entitled to fees for time spent pursuing contempt proceedings against Osborne or on the unsuccessful personal property claim, and the 0.6 hours ($165) recorded on November 3, 9, and 17, 2015 will be excluded.

As to billing entries after December 31, 2015, IDS has taken the position that no fees are owed because Lether & Associates did not represent Fellows after such date, and that, with regard to time expended by Thomas Lether in his capacity as a fact witness,

ORDER - 5

which might be treated as a litigation cost, Fellows has waived any recovery. The Court is of a different view. The Court concludes that, with one exception,[1] the services rendered in January, February, and March 2016 were necessary to transfer the representation to Keller Rohrback, and Fellows will be awarded fees for such efforts. With regard to Lether's deposition, trial testimony, and related preparations, the Court rejects the notion that Fellows's request for attorney fees operates as a waiver of the right to have such time compensated as witness fees. The Court treats Fellows's motion as seeking reimbursement of expenses associated with Lether's role as a witness, and addresses the merits of such request in the next section concerning costs.

For the foregoing reasons, the following amounts are awarded to Fellows as reasonable attorney fees for legal services provided by Lether & Associates:

| September 2015 | $2,325.50 |
|---|---|
| October 2015 | $1,667.00 |
| November 2015 | $2,440.00 |
| December 2015 | $2,059.50 |
| January 2016 | $3,324.50 |
| February 2016 | $302.50 |
| March 2016 | $2,532.00 |
| **TOTAL** | **$14,651.00** |

---

[1] The 0.2 hours ($65) spent on January 27, 2016, in a telephone call with Bruce Winchell concerning IDS's attorney, Daniel Thenell, has been excluded. *See* Ex. B to Lether Decl. (docket no. 209-2 at 19).

ORDER - 6

## 2. **Keller Rohrback**

With regard to the attorney fees sought for work performed by Keller Rohrback, IDS challenges the reasonableness of both the requested hourly rates and the amount of time spent on this matter. Some of IDS's arguments have merit and others do not.

### a. **Rates**

Keller Rohrback's services were provided in three different calendar years, 2015, 2016, and 2017, but Fellows seeks fees based on the rates charged in 2017. IDS has not objected to the use of current rather than historic rates in calculating the lodestar, and applying current rates is supported by Ninth Circuit jurisprudence. *See Gates v. Deukmejian*, 987 F.2d 1392, 1406-07 (9th Cir. 1992). With respect to the rates of the various members of the Keller Rohrback firm who worked on this matter, IDS disputes only those of Birk and Smart. Although, as IDS observes, Birk's rate for 2017 is higher than what Lether, a more experienced attorney, charges, *see* Lether Decl. at ¶ 3 (docket no. 209) ($395/hour), the Court is persuaded that Birk's rate is nevertheless consistent with the prevailing rates in the local legal community for comparable work, and with the range of rates applied in the last few years when the Court has computed attorney fees. *See Kroneman v. Country Mut. Ins. Co.*, No. C14-1223 TSZ, Talmadge Decl. at ¶ 5 (docket no. 94 at 19) (offering declarant's rate of $400/hour for comparison) & Minute Order at ¶ 1(d) (docket no. 110) (W.D. Wash. Jan. 12, 2016) (awarding $350/hour for lead counsel); *see also Straitshot Commc'ns, Inc. v. Telekenex, Inc.*, 2012 WL 5880293 at *3 (W.D. Wash. Nov. 20, 2012) (applying rate of $425/hour for partners).

ORDER - 7

Smart's rate for 2017, however, seems excessive.  Smart has indicated that over ninety percent (90%) of his work is performed on a contingency basis, which he believes reflects the inability of most of his clients to afford an attorney at any price.  Smart Decl. at ¶ 10 (docket no. 208).  Thus, Smart's billing rates are not routinely tested by the crucible of the marketplace, and the Court is reluctant to view them as what a reasonable homeowner would be willing to pay to pursue a first-party insurance coverage claim. The Court will apply a rate of $600 per hour for Smart's services in this matter, which is reasonable in light of Smart's experience, the nature of his practice, and the type of litigation at issue.

### b.    Services

IDS faults Keller Rohrback for (i) engaging in block billing, (ii) charging for intra-office meetings, (iii) including time spent on clerical or administrative tasks, and (iv) seeking payment for excessive, redundant, or unnecessary hours.  IDS appears to propose reducing by half (50%) every block-billed entry in which an objectionable or non-compensable task appears, citing _Lehman v. Nelson_, 2015 WL 11233094 (W.D. Wash. Aug. 4, 2015), _aff'd in part & rev'd in part_, 862 F.3d 1203 (9th Cir. 2017) (vacating award of attorney fees).  The Ninth Circuit, however, has discouraged blanket or across-the-board deductions for block billing, _see Welch v. Metro. Life Ins. Co._, 480 F.3d 942, 948 (9th Cir. 2007), and the Court declines to adopt such approach.

Moreover, Birk, who spent far more time on this case than any other timekeeper at Keller Rohrback, did not engage in block billing.  Instead, Birk consistently identified discrete efforts and the time associated therewith, often recording multiple entries on the

ORDER - 8

same day.[2] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 & n.12 (1983) (a lawyer should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

IDS contends that Keller Rohrback should not be paid for intra-office meetings. The Court disagrees. To the extent that Smart and Birk delegated time-consuming work to associates or paralegals with lower billing rates, the relatively small amount of time they spent assigning tasks and reviewing the results operated to IDS's advantage by producing overall lower fees. In addition, in numerous instances, when Smart and Birk conferred with each other, only one of them billed for such time, alleviating any significant concern about duplicative entries. Finally, unlike in *Welch* (which was cited in *Lehman*, the case on which IDS relies), in which the experienced attorney who was seeking fees had "assumed *sole* responsibility for several hundred" similar cases and was therefore not compensated for time spent in intra-office conferences, *see* 480 F.3d at 949 (emphasis added), in this matter, a team of individuals at Keller Rohrback worked together to conduct discovery and motion practice, prepare for trial, and obtain a favorable verdict. A reasonable amount of intra-office communication was required and is recoverable.

Keller Rohrback is not entitled, however, to compensation for non-legal services, purely clerical or administrative tasks, or time spent on unsuccessful claims or arguments

---

[2] For example, on February 5, 2016, Birk billed for this matter on four (4) different occasions, once for 1.2 hours (reviewing correspondence from Thenell), again for 0.6 hours (finalizing amended answer), then for another 0.2 hours (editing Rule 30(b)(6) deposition notice), and finally for 0.7 hours (emailing opposing counsel about deposition scheduling). *See* Ex. A to Birk Decl. (docket no. 235-1 at 6).

ORDER - 9

or on matters unrelated to the IFCA, CPA, or insurance bad faith claims.[3]  The Court has carefully and thoroughly reviewed the spreadsheets submitted by Keller Rohrback, *see* Ex. B to Smart Decl. (docket no. 208); Exs. A & B to Birk Decl. (docket no. 235), as well as IDS's specific objections, *see* Hill Decl. at ¶ 5 (docket no. 226), and concludes that the following fees are reasonable, given the nature of the counterclaims on which Fellows prevailed, the course of the proceedings, the results achieved at trial and post judgment, and the purposes underlying the IFCA, the CPA, and the *Olympic Steamship* doctrine.

| Timekeeper[4] | Hours | Rate | Fees |
|---|---|---|---|
| William Smart | 265.6 | $600/hr | $159,360.00 |
| Ian Birk | 522 | $475/hr | $247,950.00 |
| Isaac Ruiz | 5.0 | $475/hr | $2,375.00 |
| Kathryn Knudsen | 202.8 | $310/hr | $62,868.00 |
| Gabe Verdugo | 25.9 | $310/hr | $8,029.00 |
| Nicole Dyakanoff | 205.8 | $250/hr | $51,450.00 |
| TOTAL | | | $532,032.00 |

[3] The Court has excluded fees associated with attempts to identify alternative housing for Fellows, locating deposition exhibits or transcripts, intra-office meetings about scheduling, cleaning the witness room, efforts to disparage opposing counsel (Thenell), and contempt proceedings against Osborne. Fellows has conceded that he may not recover fees connected with unfiled motions or motions on which he did not prevail, but he has not discounted for motions or oppositions that were partially unsuccessful, as to which he is entitled to only a pro rata share of the correlated fees, and the Court has reduced the hours at issue accordingly.

[4] The Court has not awarded fees for time billed by associate Beth Strosky, paralegals Paige Lewis and Shannon McKeon, or information specialists Jennifer Hill, John Evans, and Carly Eyler.  Strosky merely participated in the "roundtable" or focus group for which Keller Rohrback has agreed not to seek fees. *See* Ex. B to Smart Decl. (docket no. 208-2 at 45-46).  Lewis devoted a total of two hours to the matter, one of which was spent on a verdict form that was not used by the Court. *See id.* (docket no. 280-2 at 53). All of McKeon's time (2 hours) and over half of Eyler's time (1.6 hours) was dedicated to collecting material about Thenell, a task for which the Court declines to require IDS to pay fees. *See id.* (docket no. 280-2 at 5, 31).  Finally, no credit was given for Eyler's other billings (1.1 hours) or the time charged by Hill (0.7 hours) or Evans (2.5 hours), which appear to be in the nature of overhead. *See id.* (docket no. 280-2 at 13, 21-22, 51).

ORDER - 10

**3.**     **Multiplier**

Fellows seeks to double *all* of the attorney fees associated with Keller Rohrback's services, asserting that such departure from the lodestar amount is justified by both the contingent nature of such fees and the quality of the law firm's work.  Fellows has not made the requisite showing for any multiplier.  Contingency enhancements are generally not available under federal fee-shifting statutes, *City of Burlington v. Dague*, 505 U.S. 557 (1992), and they are reserved for "rare" occasions under Washington law, *see Sanders v. Washington*, 169 Wn.2d 827, 869, 240 P.3d 120 (2010); *see also Van Pham v. City of Seattle*, 159 Wn.2d 527, 542, 151 P.3d 976 (2007).  A contingency adjustment considers the experience of the marketplace, which indicates that lawyers might not provide legal representation on a contingent basis unless they receive a premium for taking the risk that they might not be compensated for their time and effort.  *See Bowers*, 100 Wn.2d at 598 (quoting Samuel R. Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U. PA. L. REV. 281, 324-25 (1977)).  Because such enhancement applies only when a risk exists concerning the recovery of attorney fees, a multiplier may not be awarded with respect to time expended after payment is assured, for example, on post-judgment motion practice or in seeking attorney fees and costs.  *See id.* at 599.  Thus, Fellows's request to double the fees related to Keller Rohrback's post-judgment efforts lacks merit.

An increase for the quality of the representation is appropriate only when the services provided were unusually good, "*taking into account the level of skill normally expected* of an attorney commanding the hourly rate used to compute the 'lodestar.'"

ORDER - 11

*Bowers*, 100 Wn.2d at 599 (emphasis in original, quoting *Copeland*, 641 F.2d at 893). The Court is satisfied that neither the contingent-fee agreement between Fellows and Keller Rohrback nor the manner in which this matter was litigated justify a lodestar multiplier. In seeking a multiplier, Fellows focuses primarily on IDS's conduct toward its insured. Fellows, however, was amply compensated by the jury for the improper ways in which IDS handled the first-party insurance claim at issue, and to the extent that, in response to Thenell's practices or those of his client, the lawyers at Keller Rohrback expended more time than would ordinarily be required in a coverage dispute, the lodestar amount reflects the resulting attorney fees.

**B.      Costs**

**1.      Witnesses**

Fellows seeks witness fees in the amount of $49,203.72, related to (i) the work of his experts Roger Howson, Paul Pederson, and Dennis Smith, (ii) the deposition of IDS's expert Mark Lawless, (iii) consultation with Jeff Fishbach, a cell data expert, (iv) a real property appraisal performed by Lamb Hanson Lamb Appraisal Associates, Inc., and (v) fees paid in connection with the depositions of Robby Dickerson, Michaela Osborne, and Sheila Phillips. *See* Ex. E to Smart Decl. (docket no. 208-5 at 53-55 & 57-81). IDS has specifically disputed only the appraisal fee, on the ground that the appraisal was not offered as evidence at trial, and the fee associated with Dickerson's deposition, because she did not testify at trial. The Court agrees that Fellows is not entitled to the appraisal fee because the value of the home in April 2016, when the appraisal was performed, as opposed to before August 31, 2015, when the damage was discovered, was not an issue in

ORDER - 12

the case. Fellows may, however, recover the fee related to Dickerson's deposition; Dickerson, who is Osborne's sister, submitted a declaration in the state court proceedings between Fellows and Osborne, which was used as an exhibit by IDS in dispositive motion practice. *See* Ex. 13 to Thenell Decl. (docket no. 61).

Fellows has also asked for fees associated with Thomas Lether's deposition and trial testimony. Contrary to IDS's assertion, Fellows has not waived this request, and the Court concludes that such actual litigation costs are recoverable, *see* RCW 48.30.015(3); *see also Panorama Vill.*, 144 Wn.2d at 144 (an insured is entitled to "**all** of the expenses necessary to establish coverage" (emphasis in original)). The Court awards witness fees for Lether's deposition, trial, and preparation time, as well as for his firm's efforts in securing payment, calculated at the rate that Lether ($325/hr) and his associates ($275/hr) charge for legal services, as opposed to the higher rate ($450/hr) for testimony. *See* Lether Decl. at ¶ 3 & Exs. A & B (docket no. 209). No showing has been made that either Fellows or Keller Rohrback actually paid witness fees to Lether at the higher rate of $450 per hour, and Lether's firm will be adequately compensated by fees computed at its standard rates. The witness fees to be included as litigation costs are reflected in the following table.

| Witness | Costs Awarded |
|---|---|
| Roger Howson (ICDR, Inc.) | $10,878.35 |
| Paul Pederson (Pederson Associates, Inc.) | $5,829.19 |
| Dennis Smith - Attorney at Law | $26,280.00 |
| Mark Lawless (Constr. Sys. Mgmt. Inc.) | $510.00 |

ORDER - 13

| Witness | Costs Awarded |
|---|---|
| Jeff Fishbach (SecondWave, Inc.) | $5,000.00 |
| Robby Dickerson ($67.00); Michaela Osborne ($46.48); Sheila Phillips ($42.70) | $156.18 |
| Thomas Lether (Lether & Associates) | $11,982.50 |

| Task | Attorney | Hrs | Rate | Amount | |
|---|---|---|---|---|---|
| Preparation for Deposition | Lether | 6.4 | 325 | $2,080.00 | |
| | Colito | 1.1 | 275 | $302.50 | |
| Deposition | Lether | 5.7 | 325 | $1,852.50 | |
| | Colito | 3.0 | 275 | $825.00 | **TOTAL:** |
| Preparation for Trial Testimony | Lether | 5.8 | 325 | $1,885.00 | **$60,636.22** |
| | Colito | 5.2 | 275 | $1,430.00 | |
| Trial Testimony | Lether | 9.9 | 325 | $3,217.50 | |
| Declaration Regarding Fees | Lether | 1.2 | 325 | $390.00 | |

## 2. Court Reporter and Videographer Charges

Fellows seeks to tax $22,063.76 in costs for court reporter and videographer charges. IDS contends that none of these expenses should be allowed because Fellows has not indicated which, if any, of the transcripts or videos were used at trial or in connection with successful motions or oppositions. IDS's position ignores the distinction between (i) actual costs, which are authorized by the IFCA, and (ii) statutory costs, which are more limited than actual costs. *Compare* RCW 48.30.015(3) *with* RCW 4.84.010 *and* RCW 4.84.090; *see also* 28 U.S.C. § 1920(2) (allowing fees "for printed or electronically recorded transcripts necessarily obtained for use in the case"). Fellows is awarded costs associated with deposing IDS's witnesses or potential witnesses and obtaining transcripts

ORDER - 14

of the depositions of his own witnesses, which total $20,378.26. _See_ Ex. E to Smart Decl. (docket no. 208-5 at 83, 85-95, 97, 99-103, 105-14). Transcript charges, however, for discovery or telephonic conferences, as well as for opening statement on an expedited basis, are excluded.

### 3. Document Reproduction

Keller Rohrback paid vendors for the reproduction of trial exhibits, some of which were mounted onto foam core. _See id._ (docket no. 208-5 at 117-18). The firm should be reimbursed for these costs. Keller Rohrback also paid vendors to print almost 2,000 electronic documents onto paper (also known as "blowback") and to perform over 9,000 Tag Image File Format ("TIFF") conversions. _See id._ (docket no. 208-5 at 119-20). These activities did not occur near the date of trial, and the firm has not explained whether they were related to discovery or motion practice and, if the latter, whether the motion or opposition was successful. These costs, in the amount of $874.89, are therefore excluded.

With respect to the requested $8,430.90 in in-house document reproduction charges, the Court agrees with IDS that insufficient information has been provided concerning whether such expenses were related to counterclaims or motions on which Fellows prevailed. Because the bulk of the color copies were generated during the month leading up to trial, _see id._ (docket no. 208-5 at 44-46), most of those costs (_i.e._, from March 3, 2017, forward) will be allowed, but the other copying charges, _see id._ (docket no. 208-5 at 5-43), will be reduced by forty percent (40%) to reflect the extent to which they were likely related to unsuccessful claims, arguments, motions, or oppositions. The

ORDER - 15

amounts awarded for document reproduction are therefore as follows: $1,389.46 for trial exhibits produced by vendors, $1,282.50 for in-house color copies, and $4,159.65 for all other in-house document reproduction, for a total of $6,831.61.

### 4. Legal Research

In seeking $3,229.55 in Westlaw charges, *see id.* (docket no. 208-5 at 51), Keller Rohrback offers no evidence that such costs were incurred in the pursuit of successful counterclaims. The Court will again use the forty percent (40%) figure to account for the counterclaims and motions practice on which Fellows did not prevail, and Fellows shall receive $1,937.73 for Westlaw expenses.

### 5. Miscellaneous Charges

Fellows also seeks messenger, delivery, and process service fees, postage, long distance and conference calling charges, parking fees, and travel and meal expenses. IDS has not specifically disputed any of these costs, and the Court will allow all but the parking fees incurred by Keller Rohrback personnel merely at the firm's office, *see id.* (docket no. 208-5 at 127-34), and the expenses of attorneys' meals on non-trial days, *see id.* (docket no. 208-5 at 135-37). The following costs, computed from the receipts and other documentation provided, *see id.* (docket no. 208-5 at 2-3, 47-50, 122-25, 139-42), are allowed:

| Item of Cost | Amount |
|---|---|
| Messenger and Delivery Fees | $570.34 |
| Process Service Fees | $367.00 |
| Postage | $32.44 |

ORDER - 16

| Item of Cost | Amount |
|---|---|
| Long Distance and Conference Calling | $5.98 |
| Parking and Mileage (settlement conference) | $73.20 |
| Travel (airfare, hotel, meals, taxis, and parking) | $1,117.78 |
| **TOTAL** | $2,166.74 |

## Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1. Defendant Charles H. Fellows's motion for attorney fees and costs, docket no. 206, is GRANTED in part and DENIED in part.

2. Attorney fees in the following amounts are awarded to Fellows pursuant to the Insurance Fair Conduct Act, Washington's Consumer Protection Act, and *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), and its progeny:

Lether & Associates **$14,651.00**

Keller Rohrback **$532,032.00**

Because the fees for the legal services of Lether & Associates were incurred before Keller Rohrback began representing Fellows, they should **not** be included in calculating the contingent fee owed to Keller Rohrback. *See* Agreement at ¶ 4 (docket no. 222-1).

3. Costs in the total amount of **$91,950.56** are awarded to Fellows. All costs, including witness fees owed to Lether & Associates, may be considered in computing the contingent fee owed to Keller Rohrback. *See id.*

ORDER - 17

4. The Clerk is DIRECTED to enter a supplemental judgment consistent with this order and to send a copy of such supplemental judgment and this order to all counsel of record.

IT IS SO ORDERED.

Dated this 14th day of September, 2017.

Thomas S. Zilly
United States District Judge

ORDER - 18

# EXHIBIT 2

THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE BYLES, individually, and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>ACE PARKING MANAGEMENT, INC.,<br><br>            Defendant. | CASE NO. C16-0834-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's unopposed motion for attorney fees and costs and for class representative service award (Dkt. No. 36). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained herein.

I.    **BACKGROUND**

The facts of this case have been discussed in prior orders, and the Court will not repeat them here. (*See* Dkt. Nos. 24, 33, 42.) Most recently, the Court granted Plaintiff's unopposed motion for final approval of class action settlement. (*See* Dkt. No. 42.) Plaintiff now moves for an award of attorney fees.

//

//

ORDER
C16-0834-JCC
PAGE - 1

## II.   DISCUSSION

### A.  Attorney Fee Request

Before the Court may award attorney fees to a prevailing party, the Court must determine that the award is "reasonable." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). District courts employ a two-step process to calculate a reasonable fee award. *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the Court calculates "the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Second, the Court may adjust this figure based on several factors not included in the lodestar calculation. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). There is a "strong presumption" that the lodestar figure represents the reasonable fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

To determine a reasonable billing rate, the Court generally looks to "the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The reasonable hourly rate is determined "by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). The Court finds that the proposed rates for the attorneys—$550 per hour for Darrell L. Cochran, $300 per hour for Christopher E. Love, $400 per hour for Loren A. Cochran, $450 per hour for Thoams B. Vertetis, and $300 per hour for Kevin M. Hastings—are reasonable compared to similar attorneys in the Seattle area. (*See* Dkt. No. 37.)

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Hensley*, 461 U.S. at 434. The Court finds that the number of hours expended was reasonable.

ORDER
C16-0834-JCC
PAGE - 2

First, counsel put forward significant effort in ensuring that the majority of the work was performed by junior attorneys who billed at lower rates. (Dkt. No. 37 at 19–23.) Second, the total amount of hours spent on this litigation—288.3—is reasonable considering the age of the case, the procedural history which included an appeal, settlement negotiations, and dispositive motions practice. (*See* Dkt. No. 37.) Therefore, the Court finds that Plaintiff's calculation of a lodestar figure of $94,660 is accurate and reasonable.

Finally, under a percentage-of-recovery cross check, a requested fee award under fee shifting statutes is reasonable when it does not exceed "half of the total amount of money going to class members and their counsel." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, slip op. at 14 (C.D. Cal. 2015) (quoting *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)). The amount requested here—$80,000—constitutes half of the total $160,000 going to class members and their counsel. Additionally, class counsel is requesting $80,000, instead of the total $94,660 lodestar figure. This further supports the finding that class counsel's requested fee award of $80,000 is reasonable.

B. Plaintiff Byles's Service Award

Service awards given to lead plaintiffs help promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiff Byles participated meaningfully in a contested lawsuit, remained willing to provide assistance to the parties for over three years, and provided class counsel with evidence of the claims and his consent to make strategic decisions about the case. (*See* Dkt. No. 36 at 10.) Therefore, the Court finds that class counsel's request of a $15,000 award for Plaintiff Byles is reasonable.

III. CONCLUSION

For the foregoing reasons, Plaintiff's unopposed motion for attorney fees and costs and for class representative service award (Dkt. No. 36) is GRANTED.

//

ORDER
C16-0834-JCC
PAGE - 3

DATED this 20th day of August 2019.

Richard A. Jones
UNITED STATES DISTRICT JUDGE

# EXHIBIT 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL HOPKINS, | CASE NO. C18-1723 MJP |
| Plaintiff, | ORDER DENYING IN PART GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND LIMITATION OF UIM VERDICT; |
| v. | |
| INTEGON GENERAL INSURANCE CORPORATION, | |
| Defendant. | DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT |

This matter comes before the Court upon Defendant's Motion for Judgment as a Matter of Law and Limitation of Verdict on Plaintiff's UIM claim (Dkt. No. 95) and upon Plaintiff's Motion for Attorneys' Fees and Motion for Judgment Notwithstanding the Verdict (Dkt. No. 96). Having read the Motions, the Responses (Dkt. Nos. 98, 100), the Replies (Dkt. Nos. 102, 104), the supplemental briefing (Dkt. Nos. 115, 116, 118), and the related record, the Court DENIES

ORDER DENYING IN PART GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND LIMITATION OF UIM VERDICT; - 1

in part GRANTS in part Defendant's Motion and DENIES in part, GRANTS in part Plaintiff's Motion.

## Background

Plaintiff, Daniel Hopkins, brought this case against his insurer, Defendant Integon General Insurance Corporation, after he was rear-ended by another driver in 2016. The other driver's policy with Progressive Insurance Company was limited to $25,000, which Progressive paid to Plaintiff for his injuries. (Dkt. No. 78 at 3.) But when Plaintiff began experiencing severe vertigo shortly after the accident, exacerbated by a traumatic brain injury he sustained from a previous car accident, he understood that he would require additional coverage from Integon, who insured Plaintiff under an underinsured motorist ("UIM") policy.

The severity of Plaintiff's injury was contemplated by his neurologist, Dr. Carolyn Taylor, who evaluated Plaintiff after the accident. Dr. Taylor noted "[t]he impact [of the collision] did cause an inner ear disturbance resulting in new gravitational vertigo due to damage to the inner ear utricle." (Trial Ex. 6 at 2.) She concluded that Plaintiff suffered from "[r]ecurrent post-concussive symptoms likely as a result of his brain's inability to compensate as well because of his fatigue from the vertigo, or he may actually have sustained another mild concussion." (Id.)

On March 26, 2018, Plaintiff submitted a request to Defendant for payment of his UIM policy limit of $250,000. Integon's claims' adjustor, Mary Gordon, summarized her first conversation with Plaintiff's attorney in a note in Plaintiff's claim file: "Main injury is vertigo, which his attorney relates will not improve, according to his neurologist." (Trial Ex. 1 at 28.) Ms. Gordon understood that because of Plaintiff's prior brain injury "he was a potential eggshell," or someone who is more susceptible to injury. (Dkt. No. 109 at 79:1-2.) In an email

to her supervisor on April 17th, 2018, Ms. Gordon wrote: "His attorney claims that he'll never return to his pre-collision status, and his neurologist said it may never resolve but hopes it will continue to improve." The following week, Ms. Gordon offered $17,340, telling Plaintiff's lawyer that Integon "was not considering any permanency." (Dkt. No. 109 at 35:3-6; Trial Ex. 1 at 23.) Plaintiff rejected Integon's offer and once again demanded the policy limits.

Integon then searched for a doctor who would conduct an independent review of Plaintiff's medical situation, asking for a recommendation from one of Integon's defense attorneys. (Dkt. No. 109 at 40:5-13.) According to the claims file, the defense attorney told Ms. Gordon that in his experience doctors will not agree to review the records in a traumatic brain injury case without meeting with the patient because "[r]ecords won't show them what they need in order to provide an opinion." (Dkt. No. 109 at 57:10-58:1; 60:7-8.) When Ms. Gordon asked the defense attorney "if there's any downside to having an [in person medical exam], if that's the route we choose to go," his response was "not really, other than if you do an [in person medical exam], you'll have to share it with [Plaintiff]." (Id. at 62:21-25.) On the other hand, Ms. Gordon noted that if Integon only did a records review, "we don't have to give it to [Plaintiff] or tell [him] who we consulted with." (Id. at 63:3-4.) Integon hired neurologist Dr. Roman Kutsy who agreed to provide an opinion without evaluating Plaintiff in person. Dr. Kutsy concluded that with physical therapy Plaintiff could recover from his injuries within three months. (Dkt. No. 109 at 74:15-19; Trial Ex. 1 at 13.) After receiving Dr. Kutsy's report, Integon extended a second offer to Plaintiff, this time for $40,000. (Dkt. No. 109 at 75:4-8.)

On October 16, 2018, Plaintiff filed suit in King County Superior Court. Defendant removed the matter to this Court on November 30, 2018. Following a seven day jury trial beginning on October 5, 2020, the jury returned a verdict in favor of Plaintiff on his claim for

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 3

benefits under his UIM policy in the amount of $751,491; his Consumer Protection Act ("CPA")
claim in the amount of $16,931; and his claim that Defendant acted in bad faith in the amount of
$180,231. (See Dkt. Nos. 92-94.)  The jury also found that Defendant did not violate the
Insurance Fair Conduct Act ("IFCA") or act with negligence.  (Id.)

**Discussion**

**I.        Defendant's Motion for Judgment as a Matter of Law and Limitation of UIM
            Verdict**

**A.  Judgment as a Matter of Law**

Defendant moves for judgment as a matter of law on Plaintiff's CPA Claim, arguing that
the jury's award of unpaid medical bills and expert witness fees was improper as neither
category is compensable under the CPA.  (Dkt. No. 95.)

1.  Medical Expenses

To begin, Plaintiff's unpaid medical bills are compensable under the CPA, as the
Washington Supreme Court has held that "the deprivation of contracted-for insurance benefits is
an injury to 'business or property' regardless of the type of benefits secured by the policy."
Peoples v. United Servs. Auto. Ass'n, 194 Wash. 2d 771, 779 (2019).  While Integon argues that
the Peoples holding applies only to the PIP claims at issue in that case, the Court's analysis
rooted the plaintiffs' injuries in the insurer's violation of their rights under the insurance
contract:

> An insured, therefore, has a legally protected property interest in benefits due
> under the contract and a related right to insurance dealings free from bad faith.
> Claims mishandling and wrongful denial of benefits invade this property interest,
> regardless of the type of event that triggers coverage.

Id. at 780.  Defendant has failed to explain why Plaintiff's UIM policy does not afford him the
same property interest in benefits due.

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION
FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 4

Integon also argues that Plaintiff cannot demonstrate that its denial of benefits is the "but for" cause of Plaintiff's medical expenses because these expenses were covered by the $25,000 from Progressive and $10,000 in PIP coverage from Integon. (Dkt. No. 116 at 5.) But Plaintiff incurred the $931 in unreimbursed medical expenses after these payments were made. (See Dkt. No. 118 at 5 (citing Dkt. No. 55, Ex. 1).) As determined by the jury, Integon's offers in combination with the Progressive payment and the PIP coverage were insufficient to compensate Plaintiff for his injuries and medical expenses. There is nothing to indicate, therefore, that these payments covered all future medical expenses. Plaintiff has established that Integon's failure to pay the UIM benefits caused his out-of-pocket medical expenses, which are compensable under the CPA. See Peoples, 194 Wash. 2d at 781 ("[T]o the extent proved, the plaintiffs may recover actual damages, including out-of-pocket medical expenses that should have been covered[.]")

Finally, Integon argues that Plaintiff waived his right to recover unreimbursed medical expenses by conceding in response to Integon's present motion, "that medical expenses are not recoverable under the CPA." (Dkt. No. 98 at 3 n. 2.) Because the Washington Supreme Court has held otherwise, see Peoples, supra, Plaintiff quickly corrected the mistaken concession in the hearing on the motion (Dkt. No. 113), and Defendant had an additional opportunity to brief Plaintiff's argument after the retracted concession (Dkt. No. 116), the Court declines to hold Plaintiff to a concession that was contrary to the law, especially where Integon has not demonstrated any prejudice.

2. Expert Witness Fees

Integon argues that the fees for Plaintiff's expert, Steven Strzelec, are not compensable under the CPA because Plaintiff did not hire Mr. Strzelec until after filing this lawsuit. Integon relies on Lock v. Am. Family Ins. Co., 12 Wash. App. 2d 905, 928 (2020), where the court held

that "[i]nvolvement in prosecuting a CPA claim is insufficient to show injury to business or property." Plaintiff argues that Integon relies on a false dichotomy between investigation and litigation, especially where Mr. Strzelec was only able to fully investigate Plaintiff's claim once Integon produced materials through discovery and it was only this investigation "that confirmed Mr. Hopkin[s'] belief that Integon had violated the CPA." (Dkt. No. 118 at 9.)

This Court has held that expert witness fees constitute "harm" under the CPA where the insured demonstrates the fees are the result of the insurer's "unfair or deceptive practices." Wall v. Country Mut. Ins. Co., 319 F. Supp. 3d 1227, 1235 (W.D. Wash. 2018) (citing Coventry v. American States Ins. Co., 136 Wash.2d 269, 281-83 (1998)). In this case, there was evidence that Integon was not fully transparent with Plaintiff (see Dkt. No. 109 at 62:21-25 (Integon's claims' adjustor discussing the benefits of hiring a doctor who would conduct a records-only review: "we don't have to give [the results] to [Plaintiff] or tell [him] who we consulted with"), the Court therefore finds persuasive Plaintiff's argument that Mr. Strzelec was only able to fully evaluate Plaintiff's claim after the discovery process.

The remainder of Integon's argument—that expert fees are not compensable at all under the CPA—has been addressed by this Court on three previous occasions and is contrary to Washington law. (See Dkt. Nos. 37, 67, 88.) The Court will not address this argument again here.

**B. Limitation of UIM Verdict**

Integon also moves to decrease the jury's verdict on the UIM benefits claim to the contractual limits of $250,000. (Dkt. No. 95 at 7.) Plaintiff concedes that in the first party UIM context, an award for benefits cannot exceed the UIM policy limits. (Dkt. No. 98 at 7.) The

Court therefore reduces the judgment to the policy limit of $250,000 on Plaintiff's UIM benefits claim.

## II. Plaintiff's Motion for Judgment Notwithstanding the Verdict

Plaintiff asks the Court to (1) amend the judgment to find Defendant violated IFCA, (2) treble the IFCA damages, (3) treble the damages under the CPA up to the $25,000 limit, (4) award reasonable attorneys' fees and expenses pursuant to Olympic Steamship or the CPA, (5) apply a lodestar multiplier between 1.5 and 2.0 to Plaintiff's attorneys' fees, and (6) award prejudgment interest and costs. Defendant objects to each request.

### A. IFCA Violation

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff moves to alter the jury's judgment that Defendant did not violate IFCA. "'Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion.'" Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir.1999) (en banc) (per curiam)). "But amending a judgment after its entry remains 'an extraordinary remedy which should be used sparingly.'" Allstate, 634 F.3d at 1111 (quoting McDowell, 197 F.3d at 1255 n.1).

The jury valued Plaintiff's UIM benefits claim at $750,000, more than 18 times Defendant's highest offer to Plaintiff. (Dkt. Nos. 92-94.) Plaintiff argues that Defendant's offer was therefore "unreasonably low" as a matter of law, which constitutes an IFCA violation. While courts in this district "have concluded that the 'payment of benefits' prong of IFCA covers scenarios where an insurer makes an unreasonably low offer" Heide v. State Farm Mut. Auto. Ins. Co., 261 F. Supp. 3d 1104, 1107 (W.D. Wash. 2017); see also Kovarik v. State Farm Mut. Auto. Ins. Co., No. C15-1058-TSZ, 2016 WL 4555465, at *2 (W.D. Wash. Aug. 31, 2016), the

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 7

Court finds that the difference between Integon's offer and the jury's valuation is insufficient evidence that the jury erred, and does not justify the "extraordinary remedy" of reversing the jury's judgment.

While Plaintiff asks the Court to find damages caused by the IFCA violation in the same amount as the jury's award for Integon's violation of good faith, "[c]laims under IFCA are similar to, but not identical with, related bad faith or Consumer Protection Act (CPA) claims." Cmt., Insurance Fair Conduct Act, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 320.06.01 (7th ed.). This is apparent when evaluating the elements of an IFCA violation, which requires Plaintiff to prove the insurer "<u>unreasonably</u> denied payment of benefits" (Jury Instruction No. 22 (emphasis added)), whereas the claim for failure to act in good faith requires Plaintiff to prove that Integon's "conduct was unreasonable, frivolous, <u>or</u> <u>unfounded</u>" (Jury Instruction No. 23 (emphasis added)). The jury could therefore have determined that Integon's offer was unfounded without determining that its conduct was unreasonable. The jury's finding that Integon was not negligent is additional evidence that the jury determined Integon's conduct was something less than unreasonable. The Court therefore DENIES Plaintiff's motion to amend or alter the judgment.

### III.    Treble CPA Damages

Plaintiff asks the Court to treble the Jury's award of $16,931 to the statutory maximum of $25,000. Such an award is within the Court's discretion and "may not exceed twenty-five thousand dollars [$25,000.00]." N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co., No. C14-1680JLR, 2016 WL 1643979, at *5 (W.D. Wash. Apr. 26, 2016) (citing Edmonds v. John L. Scott Real Estate, Inc., 942 P.2d 1071, 1081 (Wash. Ct. App. 1997); RCW 19.86.090).  While Integon's claims' adjustor concluded "[if Plaintiff's] injury complaints are substantiated, it's

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 8

very possible this case could potentially be worth the policy limits," Integon inexplicably "did not consider permanency" in making an initial offer to Plaintiff, disregarding the opinions of Plaintiff's treating physicians. (Trial Ex. 1 at 23; Dkt. No. 109 at 79:1-2.) When Integon's first offer was challenged, Integon sought out a doctor who would offer an opinion on Plaintiff's condition without evaluating him in person, even after being warned by Integon's own defense attorney that most doctors will not offer an opinion without meeting with the patient because "[r]ecords won't show them what they need in order to provide an opinion." (Dkt. No. 109 at 57:10-12; 60:7-8.) Nevertheless, Integon found such a doctor, noting that in case Integon did not approve of the doctor's opinion, "we don't have to give it to [Plaintiff] or tell [him] who we consulted with." (Id. at 63:3-4.) In light of this conduct, and Plaintiff's role in uncovering it, the Court finds Plaintiff is entitled to treble damages of $25,000, the maximum allowable amount under the CPA.

### IV. Attorneys' Fees

#### 1. Olympic Steamship Fees

Plaintiff contends he is entitled to attorneys' fees as the prevailing party on his breach of contract claim, pursuant to Olympic Steamship Co. v. Centennial Ins. Co., 117 Wn.2d 37, 52-54 (1991), where the Washington Supreme Court held that an insured should be awarded attorneys' fees "in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Id. at 54. Where the insurer does not deny coverage, but disputes the proper value of the claim, however, attorneys' fees are not warranted under Olympic Steamship. Pinney v. Am. Family Mut. Ins. Co., No. C11-175 MJP, 2012 WL 584961, at *5 (W.D. Wash. Feb. 22, 2012)).

In this case, Plaintiff has conceded that Integon accepted coverage immediately, and "[i]n response to Plaintiff's demand for the policy limits of $250,000, Defendant offered $17,340.00 on April 24, 2018." (Dkt. No. 78, Pretrial Order, Admitted Facts, ¶ 17.)  It is therefore clear that this litigation concerns a dispute over the value of Plaintiff's claim and Olympic Steamship fees do not apply.

### 2.   Pursuant to the CPA

Plaintiff seeks to recover all attorneys' fees and expenses pursuant to the CPA, while Integon argues he can only recover those fees directly related to his CPA claim.  While Integon cites cases involving a CPA claim and a variety of other claims (see Dkt. No. 100 at 9 (citing Sing v. John L. Scott, Inc., 83 Wash. App. 55, 72 (1996), rev'd on other grounds, 134 Wash. 2d 24 (1997))), in cases involving the claims at issue here—breach of the insurance contract, bad faith, negligence, and violation of the CPA—courts have found the work done in support of the CPA claim could not be separated from that of the other claims.  See, e.g., Miller v. Kenny, 180 Wash. App. 772, 824 (2014) (where the Court found the several causes of action involved "a common core of facts and circumstances, in which the time devoted to discovery, pretrial motions and preparation and trial of this intertwined action cannot be reasonably segregated"); see also MKB Constructors v. Am. Zurich Ins. Co., 83 F. Supp. 3d 1078, 1089 (W.D. Wash. 2015) (finding it was not possible to segregate time spent on claims for breach of contract, violation of IFCA, and bad faith from the CPA claims: "The court cannot say, for example, that MKB would have spent less time in depositions, crafting written discovery questions or responses, or at trial, if MKB had never asserted its CPA claim.").

Here, each of Plaintiff's claims involves the same set of facts surrounding Integon's conduct and the extent of Plaintiff's injuries.  Further, many of the witnesses overlapped between

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 10

the UIM and extra-contractual claims. (Dkt. No. 45 at 4.) Without the CPA claim, Plaintiff would still have had to conduct depositions regarding Integon's claims' handling process, review the claims file, and hire expert Steven Strzelec, actions also required to prove elements of his CPA claim including Integon's deceptive acts or practices. The Court cannot say, therefore, that Plaintiff would have spent less time in depositions, on discovery, or at trial, if he had never asserted his CPA claim. The Court therefore finds that Plaintiff is entitled to recover his attorneys' fees pursuant to the CPA.

### 3. Reasonableness of Fees

Defendant challenges the reasonableness of Plaintiff's requested fees, arguing: (1) Plaintiff's CPA fees have not been segregated and (2) counsel's rates are unreasonable. As discussed above, the Court finds that work performed on Plaintiff's CPA claims cannot be reasonably segregated from work performed on other claims. The Court therefore analyzes whether the requested rates for Plaintiff's attorneys are reasonable and finds that that they are.

District courts have broad discretion to determine the reasonableness of fees. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992). A determination of reasonable attorney fees begins with a calculation of the "lodestar," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Mahler v. Szucs, 135 Wash.2d 398, 433-34 (1998). Integon has conceded that Plaintiff's requested rates for his paralegal, intern, and legal assistant are reasonable (Dkt. No. 116 at 13 n.5), but objects to Plaintiff's requested hourly rates for his attorneys. (Id. at 12.) Plaintiff requests $575 an hour for attorneys Michael Wampold, Ann Rosato, and Felix Luna, and $500 an hour for attorney Thomas Gahan.

The Court finds these rates are commensurate with the work performed in this matter and is not persuaded otherwise by the few hand-picked cases selected by Integon where the attorneys

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 11

were awarded less. This is especially so where Integon has not provided a tally of its own fees, a telling indication of the reasonableness of Plaintiff's request. See Miller, 180 Wash. App. at 821. Further, the Court approved an hourly rate of $550 for Mr. Wampold and $450 for Ms. Rosato and Mr. Luna nearly six years ago (see Dkt. No. 119, Ex. 4); Cox v. Cont'l Cas. Co., No. C13-2288 MJP, 2015 WL 3844270, at *7 (W.D. Wash. June 19, 2015), aff'd in part, vacated in part on other grounds, 703 F. App'x 491 (9th Cir. 2017), and has awarded fees at higher hourly rates for attorneys of comparable or even lesser experience and skill.

The Court also finds that Plaintiff's attorneys may apply their current hourly rates to all work performed in this matter. While Integon concedes that the Washington Supreme Court allows "using current rates or adjusting historic rates to account for inflation to compensate attorneys for delay in payment," it contends that such adjustment is only permissible in the "context of public litigation, but not for a dispute between two private parties." (Dkt. No. 100 at 13 (citing Fisher Properties, Inc. v. Arden-Mayfair, Inc., 115 Wn. 2d 364, 376-77 (1990).) But Washington courts have been explicit that "private prosecution of Consumer Protection Act violations is backed by public policy." Miller, 180 Wash. App. at 826. And "[t]he legislature has expressly declared that the insurance business is one 'affected by the public interest.'" Peoples, 194 Wash. 2d at 778.

4. Multiplier

Plaintiff requests that the Court apply a 1.5 to 2.0 multiplier to his attorneys' fees award. Typically, the quality of work performed will not justify an enhancement because "in virtually every case the quality of the work will be reflected in the reasonable hourly rate." Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 599 (1983). The Court finds that Plaintiff has failed to justify a multiplier here. Much of the egregious conduct Plaintiff contends justifies the

multiplier—for example, Integon's "regular[] assert[ion] of improper defenses and arguments" (Dkt. No. 96 at 5)—can alternatively be described as advocacy on behalf of a client. And Plaintiff points to no other factors that indicate this matter was the rare occasion that justifies a multiplier. Plaintiff's request is DENIED.

        5. <u>Prejudgment Interest</u>

Plaintiff seeks prejudgment interest on his UIM breach of contract claim. Under Washington law, "[a] party is entitled to prejudgment interest where the amount due is 'liquidated.'" <u>Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co.</u>, 160 Wash.App. 912, 925 (2011) (citing <u>Weyerhaeuser Co. v. Commercial Union Ins. Co.</u>, 142 Wash.2d 654 (2000)). "A liquidated claim is one where the evidence furnishes data 'which, if believed, make it possible to compute the amount due with exactness, without reliance on opinion or discretion.'" <u>Unigard</u>, 160 Wash. App. at 925 (quoting <u>Weyerhaeuser</u>, 142 Wash.2d at 685.) Plaintiff's UIM claim is not liquidated. The jury was tasked with determining the extent of Plaintiff's injury and its effect on his life going forward, such effects cannot be computed with exactness. Further, although the claim was for the policy limit, a set amount, the jury's verdict could have been any amount up to the policy limit of $250,000, including no award. Because the UIM award was uncertain until the jury returned its verdict, Plaintiff is not entitled to prejudgment interest.

<b>Conclusion</b>

In conclusion, the Court holds:

(1) Defendant's Motion for Judgment as a Matter of Law Regarding Plaintiff's CPA Claim and Limitation of Verdict on UIM Benefits (Dkt. No. 95) is DENIED in part GRANTED in part:

    a. Defendant's Motion is DENIED as to Plaintiff's CPA claim;

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 13

b. Defendant's Motion is GRANTED as to the limitation of benefits claim.

Plaintiff's UIM benefits claim is limited to $250,000.

(2) Plaintiff's Motion for Fees and Motion Notwithstanding the Verdict on IFCA (Dkt. No. 96) is DENIED in part GRANTED in part:

a. Plaintiff's Motion Notwithstanding the Verdict on IFCA is DENIED;

b. Plaintiff's request for treble damages under the CPA is GRANTED and Plaintiff is awarded the statutory maximum of $25,000 on his CPA claim;

c. Plaintiff's Motion for attorneys' fees is GRANTED:

i. The Court finds that Plaintiff's attorneys' fees for his CPA claim cannot be reasonably segregated from his remaining fees;

ii. The requested hourly rates of Plaintiff's attorneys are reasonable;

d. Plaintiff's request for a fee multiplier is DENIED;

e. Plaintiff is not entitled to prejudgment interest.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 16, 2021.

Marsha J. Pechman
United States Senior District Judge

DENYING IN PART GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT - 14

# EXHIBIT 4

Case 2:16-cv-01161-JHCV Document 85-14 Filed 01/06/26 Page 118 of 131

## 2011 BILLING SURVEY
### A SPECIAL REPORT

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys* | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker, Donelson, Bearman, Caldwell & Berkowitz | Memphis, Tenn. | 527 | $311 | $310 | $595 | $250 | $357 | $345 | $315 | $160 | $228 |
| Best Best & Krieger | Riverside, Calif. | 195 | $358 | $360 | $575 | $275 | $417 | $420 | $375 | $205 | $265 |
| Briggs and Morgan | Minneapolis | 185 | | | $625 | $325 | | | $305 | $230 | |
| Broad and Cassel | Orlando, Fla. | 160 | $377 | $350 | $575 | $295 | $435 | $395 | $350 | $180 | $265 |
| Bryan Cave | St. Louis | 908 | $475 | $460 | $795 | $375 | $565 | $553 | $540 | $200 | $356 |
| Butzel Long | Detroit | 176 | | | $700 | $325 | $440 | | $425 | $225 | $274 |
| Carlton Fields | Tampa, Fla. | 270 | $397 | $400 | $815 | $320 | $470 | $470 | $380 | $195 | $262 |

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys* | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kaye Scholer | New York | 425 | $661 | $665 | $1080 | $685 | $831 | $835 | $705 | $310 | $519 |
| Kelley Drye & Warren | New York | 321 | $474 | $400 | $925 | $480 | $634 | $645 | $595 | $275 | $425 |
| Knobbe, Martens, Olson & Bear | Irvine, Calif. | 268 | $439 | $415 | $735 | $415 | $525 | $500 | $495 | $295 | $346 |
| Lane Powell | Seattle | 180 | $405 | $425 | $645 | $340 | $460 | $450 | $360 | $225 | $295 |
| Lathrop & Gage | Kansas City, Mo. | 281 | $337 | $340 | $735 | $275 | $390 | $390 | $410 | $205 | $246 |
| Lewis, Rice & Fingersh | St. Louis | 162 | $275 | | $470 | $270 | | | $320 | $150 | |
| Lowenstein Sandler | Roseland, N.J. | 249 | $478 | $480 | $895 | $435 | $613 | $595 | $660 | $250 | $400 |
| Manatt, Phelps & Phillips | Los Angeles | 322 | $602 | $620 | $850 | $540 | $676 | $670 | $550 | $215 | $464 |
| McElroy, Deutsch, Mulvaney & Carpenter | Morristown, N.J. | 272 | $245 | $275 | $575 | $295 | $350 | $375 | $325 | $185 | $250 |

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys^ | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nexsen Pruet | Columbia, S.C. | 178 | | | $550 | $235 | | | $265 | $170 | |
| Patton Boggs | Washington | 512 | $546 | $540 | $990 | $410 | $659 | $645 | $570 | $240 | $410 |
| Pepper Hamilton | Philadelphia | 459 | | | $825 | $380 | $557 | | $460 | $235 | $344 |
| Perkins Coie | Seattle | 693 | $462 | | $875 | $285 | $550 | $545 | $590 | $215 | $368 |
| Phelps Dunbar | New Orleans | 280 | $236 | $225 | $465 | $190 | $281 | $275 | $245 | $150 | $189 |
| Polsinelli Shughart | Kansas City, Mo. | 466 | | | $630 | $275 | | | $335 | $205 | |
| Saul Ewing | Philadelphia | 220 | $431 | $450 | $750 | $350 | $502 | $490 | $495 | $245 | $326 |
| Schulte Roth & Zabel | New York | 406 | $615 | $630 | $935 | $770 | $846 | $840 | $675 | $285 | $608 |
| Seyfarth Shaw | Chicago | 702 | $437 | $425 | $790 | $355 | $528 | $525 | $505 | $225 | $341 |
| Sheppard, Mullin, Richter & Hampton | Los Angeles | 465 | | | $860 | $505 | | | $635 | $275 | |

# EXHIBIT 5



**2015 NLJ Billing Survey**

**Source: National Law Journal**
**Category: National Law Journal**

ALM Legal Intelligence, in association with The National Law Journal, collected 2015 hourly billing rates for partners, associates, of counsel and paralegals. The data sources include the published rates from the 20 largest federal bankruptcy jurisdictions and a survey of the nation's 350 largest firms conducted during October and November of 2015.  Individual firm rates are not identified.

## Hourly Billing Rates for 2015

| | Partner | | | Associate | | |
|---|---|---|---|---|---|---|
| | High | Low | Median | High | Low | Median |
| Overall Hourly Rates | $1,295 | $90 | $395 | $950 | $50 | $350 |

### Rates by Firm Size

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 - 25 lawyers | $1,080 | $90 | $350 | $950 | $90 | $300 |
| 26 - 150 lawyers | $1,050 | $190 | $460 | $900 | $100 | $300 |
| 151 or more lawyers | $1,295 | $100 | $595 | $975 | $125 | $325 |

### Rates by State

| | | | | | | |
|---|---|---|---|---|---|---|
| AL | $725 | $200 | $375 | $375 | $175 | $300 |
| AZ | $750 | $125 | $375 | $750 | $175 | $250 |
| CA | $1,080 | $200 | $495 | $950 | $300 | $350 |
| CO | $893 | $350 | $443 | $642 | $150 | $325 |
| CT | $1,200 | $295 | $350 | $625 | $175 | $350 |
| DC | $1,095 | $975 | $1,035 | $655 | $350 | $375 |
| DE | $1,050 | $295 | $650 | $850 | $260 | $388 |
| FL | $625 | $175 | $375 | $525 | $100 | $300 |
| GA | $500 | $250 | $358 | $450 | $110 | $275 |
| IL | $985 | $200 | $420 | $710 | $150 | $300 |
| IN | $400 | $250 | $305 | $400 | $200 | $275 |
| KY | $340 | $200 | $290 | $350 | $200 | $275 |
| LA | $575 | $150 | $333 | $500 | $100 | $250 |
| MA | $650 | $300 | $475 | $500 | $260 | $350 |
| MD | $560 | $250 | $363 | $580 | $150 | $325 |
| MI | $375 | $190 | $265 | $400 | $125 | $275 |
| NC | $675 | $250 | $425 | $435 | $150 | $275 |

1

| | High | Low | Median | High | Low | Median |
|---|---|---|---|---|---|---|
| NJ | $880 | $250 | $400 | $400 | $150 | $298 |
| NM | n/a | n/a | n/a | $350 | $175 | $200 |
| NV | $450 | $295 | $375 | $500 | $200 | $325 |
| NY | $1,295 | $100 | $420 | $975 | $90 | $350 |
| OH | $545 | $250 | $313 | $330 | $155 | $250 |
| OR | $485 | $315 | $370 | $325 | $230 | $300 |
| PA | $875 | $200 | $350 | $565 | $86 | $257 |
| PR* | $300 | $100 | $200 | $350 | $100 | $200 |
| TN | $735 | $225 | $300 | $350 | $150 | $250 |
| TX | $925 | $90 | $395 | $650 | $150 | $298 |
| VA | $545 | $220 | $335 | $495 | $175 | $295 |
| WA | $965 | $275 | $460 | $375 | $150 | $350 |
| WI | $595 | $560 | $578 | n/a | n/a | n/a |

| | Of Counsel | | | Paralegal | | |
|---|---|---|---|---|---|---|
| | High | Low | Median | High | Low | Median |
| **Overall Hourly Rates** | $1,120 | $125 | $350 | $325 | $25 | $125 |

**Rates by Firm Size**

| | High | Low | Median | High | Low | Median |
|---|---|---|---|---|---|---|
| 1 - 25 lawyers | $645 | $125 | $350 | $325 | $25 | $115 |
| 26 - 150 lawyers | $620 | $225 | $393 | $305 | $75 | $173 |
| 151 or more lawyers | $1,120 | $270 | $610 | $325 | $35 | $220 |

**Rates by State**

| | High | Low | Median | High | Low | Median |
|---|---|---|---|---|---|---|
| AL | $495 | $290 | $393 | n/a | n/a | n/a |
| AZ | $750 | $250 | $300 | $250 | $75 | $125 |
| CA | $595 | $175 | $450 | $325 | $25 | $150 |
| CO | $400 | $325 | $363 | $285 | $75 | $158 |
| CT | $550 | $325 | $438 | $290 | $75 | $100 |
| DC | $775 | $275 | $750 | n/a | n/a | n/a |

# EXHIBIT 6



Vandivere, Michael v Vertical World Climbing Gym 41195.01
Cost Report to Date
Costs Totaled by Category

| Category | Total |
| --- | ---: |
| Copy Charges | $42.51 |
| Court Fees | $294.16 |
| Deposition transcript fees | $1,939.70 |
| Expert Services | $23,155.30 |
| Interest | $489.67 |
| Private Investigation Fees | $825.00 |
| Process Service | $483.08 |
| **Total Costs** | **$27,229.42** |
| **Balance Due** | **$27,229.42** |

| Date | Class | Paid Amount | Memo | Payee |
|------|-------|-------------|------|-------|
| 1/30/2023 | Deposition Transcript Fees | $0.00 | 41195.01 Deposition Transcript - Wilson Hayes | Advancedone Legal |
| 1/30/2023 | Deposition Transcript Fees | $1,939.70 | 41195.01 Deposition Transcript - Wilson Hayes | Advancedone Legal |
| 2/13/2023 | Expert Services | $9,566.30 | 41195.01 Expert Services | Hayes & Associates, Inc. |
| 3/8/2023 | Expert Services | $2,274.50 | 41195.01 Expert Services | Hayes & Associates, Inc. |
| 3/13/2023 | Court Fees | $32.49 | 41195.01 Court Fees | King County Superior Court |
| 3/13/2023 | Court Fees | $1.75 | 41195.01 Court Fees | King County Clerk |
| 5/17/2023 | Private Investigation Fees | $75.00 | 41195.01 Private Investigation Fees | West Coast Investigations, Inc |
| 5/23/2023 | Process Service | $241.54 | 41195.01 Process Service - Christopher Furman | Seattle Legal Messengers |
| 5/23/2023 | Process Service | $241.54 | 41195.01 Process Service - Christopher Furman | Seattle Legal Messengers |
| 5/24/2023 | Court Fees | $32.49 | 41195.01 Court Fees - Working Copies | King County Superior Court |
| 5/25/2023 | Court Fees | $32.49 | 41195.01 Court Fees - Working Copies | King County Superior Court |
| 5/25/2023 | Court Fees | $32.49 | 41195.01 Court Fees - Working Copies | King County Superior Court |
| 5/30/2023 | Court Fees | $32.49 | 41195.01 Court Fees | King County Superior Court |
| 6/1/2023 | Private Investigation Fees | $750.00 | 41195.01 2023.04 Private Investiagation Fees | KO Security Triage, LLC |
| 6/1/2023 | Court Fees | $32.49 | 41195.01 Court Fees | King County Superior Court |
| 6/5/2023 | Court Fees | $32.49 | 41195.01 Court Fees | King County Superior Court |
| 6/5/2023 | Court Fees | $32.49 | 41195.01 Court Fees | King County Superior Court |
| 6/7/2023 | Court Fees | $32.49 | 41195.01 Court Fees | King County Superior Court |
| 6/8/2023 | Expert Services | $11,314.50 | 41195.01 Expert Services | Hayes & Associates, Inc. |

# EXHIBIT 7

**SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY**

MICHAEL VANDIVERE and KATHRYN
SNOW VANDIVERE, husband and wife
and their marital community, and
KATHRYN SNOW VANDIVERE, as the
legal guardian of W.V., a minor,

                        Plaintiffs,

vs.

VERTICAL WORLD, INC., a Washington
State Corporation; C3 MANUFACTURING,
LLC, a Colorado Company,

                        Defendant.

NO. 19-2-27385-2 SEA

**ORDER GRANTING PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES
AND LITIGATION COSTS**

ORDER GRANTING PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 1 of 3 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

**THIS MATTER** came before the Court on Plaintiffs' Motion for Attorneys' Fees and Litigation Costs. The Court having considered the following pleadings submitted:

1. Plaintiffs' Motion for Attorneys' Fees and Litigation Costs;

2. Declaration of Darrell L. Cochran;

3. The existing records and files in this case.

Finding itself fully appraised of the matters raised, and the Court having reviewed the Court file, it is hereby:

**ORDERED ADJUDGED AND DECREED** that Plaintiffs' Motion for Attorneys' Fees and Litigation Costs is **GRANTED**. The Court approves of the following award:

☒ Plaintiffs are awarded their reasonable attorneys' fees and litigation costs in the amount of $287,527.17. *

☐ Plaintiffs are awarded 1.5 times their reasonable attorneys' fees and litigation costs in the amount of $431,290.75.

Defendant C3 Manufacturing, LLC and the law firm Sinars Slowikowski Tomaska LLC are joint and severally responsible for paying this amount. A check for fifty percent of this amount must be served to Plaintiffs by ~~/~~ _Close of business on_ June 23, 2023. A check for the remaining fifty percent of this amount must be served to Plaintiffs by July 5, 2023.

DONE IN OPEN COURT this 21st day of June, 2023.

* _The court carefully considered the multiplier request but declines to order it. While C3's conduct would support it, the court finds that some portion of the fees/costs from Jan. 26th onward would have been incurred in the ordinary course of trial preparation -- regardless of coverage/issue. - SRP_

_____
THE HONORABLE SUZANNE PARISIEN

ORDER GRANTING PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

Page 2 of 3 | No. 19-2-27385-2 SEA

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

**PRESENTED BY:**

PFAU COCHRAN VERTETIS AMALA, PLLC

By: ___*/s/ Darrell L. Cochran*___
Darrell L. Cochran, WSBA No. 22851
Thomas B. Vertetis, WSBA No. 29805
Andrew S. Ulmer, WSBA No. 51227
Alexander G. Dietz, WSBA No. 54842

909 A Street, Suite 700
Tacoma, WA 98402
Main: (253) 777-0799
Fax: (253) 627-0654
E-mail: darrell@pcvalaw.com
       tom@pcvalaw.com
       aulmer@pcvalaw.co
       adietz@pcvalaw.com

ORDER GRANTING PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND LITIGATION COSTS

Page 3 of 3 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654