Hon. John C. Coughenour

# UNITED STATES DISTRICT COURT

## DISTRICT OF WASHINGTON - WESTERN DIVISION

JEAN LUBKEN and WILLIAM LUBKEN, husband and wife and their marital community,

Plaintiff,

v.

FRED MEYER STORES, INC. an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the state of Washington,

Defendants.

Case No.: 3:24-cv-05811-JCC

**DECLARATION OF SCOTT LASALLE IN SUPPORT OF GATEKEEPER SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR: May 12, 2026

ORAL ARGUMENT REQUESTED

I, Scott LaSalle, declare as follows:

1.     I am an attorney duly licensed to practice before all the courts of the State of Washington and authorized to practice before this Court.  I am a partner with the law firm The Aguilera Law Group, APLC, which is counsel of record for defendant Gatekeeper Systems, Inc.

2.     I have personal knowledge of the matters stated in this declaration and could

DECLARATION OF SCOTT LASALLE IN SUPPORT OF
GATEKEEPER SYSTEMS, INC.'S NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT - PAGE 1

CASE NO. 3:24-cv-05811-JCC)

THE AGUILERA LAW GROUP, APLC
1201 PACIFIC AVE, STE. 600
TACOMA, WA 98402

competently testify to them if called as a witness.

3.     Attached hereto as **Exhibit A** is a true and correct copy of relevant excerpts of the deposition of Jean Lubken taken on July 8, 2025.

4.     Attached hereto as **Exhibit B** is a true and correct copy of relevant excerpts of the deposition of Angela Padilla taken on July 23, 2025.

5.     Attached hereto as **Exhibit C** is a true and correct copy of relevant excerpts of the deposition of Kenneth Smittling taken on November 10, 2025.

6.     Attached hereto as **Exhibit D** is a true and correct copy of relevant excerpts of the deposition of Chad Peterson taken on November 7, 2025.

7.     Attached hereto as **Exhibit E** is a true and correct copy of relevant excerpts of Defendant Gatekeeper Systems, Inc.'s Requests for Production to Defendant Fred Meyer Stores, Inc. with Responses Thereto.

8.     Attached hereto as **Exhibit F** is a true and correct copy of relevant excerpts of Plaintiffs' First Set of Interrogatories and Requests for Production to Defendant Fred Meyer Stores, Inc. and Answers and Responses Thereto.

9.     Attached hereto as **Exhibit G** is a true and correct copy of relevant excerpts of Plaintiffs' First Set of Interrogatories and Requests for Production to Defendant the Kroger Co. and Answers and Responses Thereto.

10.     Attached hereto as **Exhibit H** is a true and correct copy of relevant excerpts of Defendant Gatekeeper Systems Inc.'s Interrogatories to Plaintiff Jean Lubken with Answers Thereto.

///

///

///

DECLARATION OF SCOTT LASALLE IN SUPPORT OF
GATEKEEPER SYSTEMS, INC.'S NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT - PAGE 2

CASE NO. 3:24-cv-05811-JCC)

THE AGUILERA LAW GROUP, APLC
1201 PACIFIC AVE, STE. 600
TACOMA, WA 98402

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed this 9th day of April, 2026 at Laguna Hills, California.

_____
Scott LaSalle

DECLARATION OF SCOTT LASALLE IN SUPPORT OF
GATEKEEPER SYSTEMS, INC.'S NOTICE OF MOTION
AND MOTION FOR SUMMARY JUDGMENT - PAGE 3

CASE NO. 3:24-cv-05811-JCC)

THE AGUILERA LAW GROUP, APLC
1201 PACIFIC AVE, STE. 600
TACOMA, WA 98402

# Exhibit A

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON


JEAN LUBKEN and WILLIAM LUBKEN, )
husband and wife and their      )
marital community,              )
                                )
                                )
                                )
              Plaintiffs,        )
                                ) CASE No.
                                ) 3:24-cv-05811-SKV
        vs.                      )
                                )
                                )
                                )
FRED MEYER STORES, INC., etc.,  )
et al.,                         )
                                )
                                )
              Defendants.        )
_____)


Remote Deposition via Zoom videoconference of

JEAN LUBKEN, taken on behalf of Defendant Gatekeeper

Systems, Inc., at University Place, Washington,

commencing at 10:04 a.m., Tuesday, July 8, 2025, before

Marivon H. Christine, CSR No. 3735.

APPEARANCES OF COUNSEL:

For the Plaintiffs:

    PFAU COCHRAN VERTETIS AMALA, PLLC
    BY:  ANDREW S. ULMER, ESQ.
    909 A Street
    Suite 700
    Tacoma, Washington  94802
    aulmer@pcvalaw.com

        and

    LOMBINO MARTINO, PS
    BY:  JOSEPH M. LOMBINO, ESQ.
    9315 Gravelly Lake Drive SW
    Suite 201
    Lakewood, Washington  98499
    joey.lombino@lombinomartino.com

For the Defendant Gatekeeper Systems, Inc.:

    THE AGUILERA LAW GROUP, APLC
    BY:  SCOTT LaSALLE, ESQ.
    23046 Avenida De La Carlota
    Suite 300
    Laguna Hills, California  92653
    Slasalle@aguileragroup.com

For the Defendants Fred Meyer Stores, Inc.,
and The Kroger Company:

    SCHEER LAW, PLLC
    BY:  AHBRA FRANCO, ESQ.
    701 Fifth Avenue
    Suite 3860
    Seattle, Washington  98104
    ahbraf@scheer.law

ALSO PRESENT:

    Gigi Fadich, Videographer
    Andrew Koumas, Zoom Administrator

I N D E X

DEPONENT                    EXAMINED BY                 PAGE

JEAN LUBKEN                    MR. LaSALLE                  5

                              MR. ULMER                   109


EXHIBITS FOR IDENTIFICATION:

2    Defendant Gatekeeper Systems, Inc.'s           23
     Interrogatories to Plaintiff Jean Lubken
     with Answers Thereto

3    St. Joseph Hospital Emergency Department       74
     Note

4    No Document was Marked

5    Wage and Tax Statements                        89

Q   So you were still looking for the hand mixer aisle; correct?

A   Yes.

Q   And at some point I understand from your interrogatory responses that the cart stopped; correct?          11:39

A   Abruptly.

Q   What happened when the cart stopped abruptly?

A   When the cart stopped, I continued my motion forward, and it pushed me back because it just -- just because it had stopped.          11:39

So at that point my right foot heel interacted with the cart, and it caused me then to fall to the right side to the floor onto my right side into the side aisle.

Q   Okay.  So when the cart stopped, was it your impression that it had stopped at one of the wheels in          11:40 the front or the back or it was all together the whole thing?

A   I'm not a person who's designed to know about shopping carts, but I know that that cart stopped on the spot, and I was jolted.          11:40

Q   Okay.  So it just stopped on the spot, and then you were continuing forward, and you bumped into the handle of the cart?

A   Well, I still had my hands on the cart so that part was attached.  The part I was saying to you about my          11:40

right shoe is that in taking that step forward it was to the right side of the right back wheel, and then I became involved in the fall.

Q    Okay.  Let me make sure I understand exactly what happened here.    11:41

Earlier you said when the cart stopped, it pushed you back.

A    Yes.

Q    Okay.  Was that you pushing into the back of the cart or did the cart actually push you backward into your    11:41 stride?

A    Okay.  Let's construct this.

I'm holding on to the cart.  I'm walking in a normal pace.  The cart blocks.  My body motion continues, and then when it stopped, my body motion reversed.  Still    11:41 holding on to the cart, my right foot proceeded forward, and on the right-hand side of the right back wheel is where the contact with the cart was made, and that is at that point I fell to the right-hand side onto the side aisle.    11:42

Q    Okay.  How many steps did you take after the cart stopped?

A    Counting steps was certainly not on my mind.  It was a reflex action that it was, as far as I can recall, the only one before the fall transpired.    11:42

floor; correct?  Is that right?

A    Yes.  The tile is cement.

Q    Okay.  Sure.  A hard surface?

A    Yes.

Q    So when the cart came down on top of you, did the cart hit your right leg on the inside of your leg or the outside of your leg?

A    It hit my left side.  I'm laying on the floor at this point, and the cart is on top of me.

Q    Sure.  Okay.  So the cart came down on your left side?

A    Correct.

Q    Got it.  You said that there were two people that were there afterward.  Were they there when the cart fell or do you believe they came shortly, thereafter?

A    They looked surprised to see me laying there, but they didn't stop.  So I do not believe they saw it happen.  I do not believe they did.  They gave me no mind and turned their heads and kept on shopping.

Q    Did you say anything to those people at all?

A    Not to those people.  I was not doing well at that point.

Q    All right.  So how long were you laying there on the ground with the shopping cart on top of you?

A    A good two minutes until another singleton lady

there to maneuvering myself up the shelving to maneuvering my heels forward to get to the merchandise cart.

I felt that I was going to be more securely supported by that cart, and that there would be a good chance that by waving at the surveillance camera I would get some assistance.

Q    At any point during that time did you ever check your shopping cart to see what it was that caused it to stop?

A    I was not interested in the shopping cart at that time, no.  I was looking to not further have any more harm.

Q    So you never checked the shopping cart to see if there was anything wrong with it?

A    That was not my emphasis at that time.  It was my safety.

Q    All right.  And did you check the ground to see if there was anything that the shopping cart might have hit, like, anything on the ground or any kind of gravel or sand or anything at all?

A    There was nothing that I saw that would indicate that to be the case.

Q    Okay.  So you start to wave into the camera in the hope that someone would see you and come to help you;

11:53

11:53

11:54

11:54

11:54

A    Correct.

Q    And then you fell over and the cart fell over; correct?

A    Yes.

Q    Okay.  Did you ever receive or obtain any information that the cart locked in any way?

MR. ULMER:  Object as to form.

Go ahead.

THE WITNESS:  I know that the cart locked because I was the one experiencing it, and when it did so, I then could not move forward.

BY MR. LaSALLE:

Q    So the cart came to a stop and then you tried to move forward, again?

MR. ULMER:  I object as to form.

Go ahead.

THE WITNESS:  I repeat.  I was walking with the cart.

BY MR. LaSALLE:

Q    Right.  We know all that.

MR. ULMER:  Counsel, do not interrupt the witness, and you're misstating her testimony.  Please let her finish.

BY MR. LaSALLE:

Q    Okay.  We can go ahead.  We can keep going.

A   Okay.  Let's please do.  I'm pushing the cart. The cart wheel locked.  The cart itself locked.  I don't know.  I'm not an engineer as to whether it malfunctioned or what word you're having trouble with there, but I was in a situation where the cart locked and that is what happened ahead of the fall.

Q   Okay.  So the cart came to a stop, but you don't know why, and --

A   Actually --

MR. ULMER:  I object as to form.  Misstates her testimony.

Go ahead.

THE WITNESS:  Um-hum.

BY MR. LaSALLE:

Q   Do you know why the cart stopped?

A   The system locked.

Q   And you checked that?

A   I was not in a position to be looking at whether that was the case.  I was falling.

Q   So how do you know that the system locked?

A   It was unable to move, and I was propelled to the ground.

Q   Okay.  All right.  So we're back at the hospital now.  We're back at the emergency department encounter note.

CERTIFICATE

OF

CERTIFIED SHORTHAND REPORTER


I, Marivon H. Christine, Certified Shorthand Reporter, Certificate No. 3735, for the State of California do hereby certify:

That the foregoing proceeding was taken remotely before me at the time and place therein set forth, at which time the witness was duly sworn by me;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed, said transcript being a true and correct copy of my shorthand notes thereof;

I hereby certify that I am not interested in the event of the action.

IN WITNESS WHEREOF, I have subscribed my name this date: July 16, 2025.


_____
MARIVON H. CHRISTINE, CSR
Certificate No. 3735

Marivon H. Christine, Certified Shorthand Reporter, CSR No. 3735, hereby certify:

The foregoing is a true and correct copy of the original transcript of the proceedings taken by me as thereon stated.

Dated:  July 16, 2025

MARIVON H. CHRISTINE, CSR, RPR
Certificate No. 3735

# Exhibit B

# Angela Padilla

# Lubken v. Fred Meyer Stores, Inc.

# July 23, 2025



1325 Fourth Avenue, Suite 1840  Seattle, Washington  98101
6 South Second Street, Suite 718  Yakima, Washington  98901
Bellingham | Everett | Tacoma | Olympia | Yakima | Spokane
Seattle 206.287.9066    Tacoma 253.235.0111    Eastern Washington 509.624.3261
**www.buellrealtime.com**
email: transcripts@buellrealtime.com

Lubken v. Fred Meyer Stores, Inc.                     Angela Padilla

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

_____

JEAN LUBKEN and WILLIAM          )
LUBKEN, husband and wife         )
and their marital                )
community,                       )    No. 3:24-CV-05811-JCC
                                 )
            Plaintiffs,          )
                                 )
       vs.                       )
                                 )
FRED MEYER STORES, INC., an      )
Ohio corporation doing           )
business in the State of         )
Washington; THE KROGER CO.,      )
an Ohio corporation doing        )
business in the State of         )
Washington; GATEKEEPER           )
SYSTEMS, INC., a California       )
corporation doing business       )
In the State of Washington,      )
                                 )
            Defendants.          )
_____

VIDEOCONFERENCE VIDEOTAPED DEPOSITION

UPON ORAL EXAMINATION OF

ANGELA PADILLA

_____

Taken at 909 "A" Street, Suite 700

Tacoma, Washington

DATE TAKEN:   JULY 23, 2025

REPORTED BY:  LAURA L. OHMAN, RPR, CCR 3186

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                                    Angela Padilla

Page 2

                    A P P E A R A N C E S

FOR THE PLAINTIFFS:

                ANDREW ULMER
                PAIGE MAXA
                Pfau Cochran Vertetis Amala, PLLC
                909 "A" Street
                Suite 700
                Tacoma, WA 98402-4413
                253.948.0232
                Aulmer@pcvalaw.com


FOR THE DEFENDANT KROGER/FRED MEYER:

                AHBRA FRANCO
                Scheer.Law, PLLC
                701 5th Avenue
                Suite 3860
                Seattle, WA 98104
                206.666.3075
                AhbraF@Scheer.law


FOR THE DEFENDANT GATEKEEPER SYSTEMS, INC.:
(Appearing via Zoom)

                BRITTNEY ANNE RODRIGUEZ
                The Aguilera Law Group
                23046 Avenue De La Carlta
                Suite 300
                Laguna Hills, CA 92653-1577
                714.384.6600
                Brodriguez@aguileragroup.com


ALSO PRESENT:  Melody Sorenson, Videographer


                *   *   *   *   *

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                                    Angela Padilla

Page 3

VIDEOTAPED DEPOSITION OF ANGELA PADILLA

EXAMINATION INDEX

EXAMINATION BY:                                               PAGE NO.

MR. ULMER                                                        5


EXHIBIT INDEX

EXHIBITS FOR IDENTIFICATION                                   PAGE NO.

1       Claim report to Sedgwick dated          39
        12/23/2023 - CONFIDENTIAL

2       Subpoena to testify at a
        deposition in a civil action dated
        6/23/2025                               30

3       Defendant Gatekeeper Systems,
        Inc.'s requests for production to
        Defendant Fred Meyer Stores, Inc.,
        with responses thereto dated
        12/24/2024                              69

4       Plaintiff's first set of
        interrogatories and requests for
        production to Defendant Fred Meyer
        Stores, Inc., dated 3/17/2025           74

5       Video                                   20

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                          Angela Padilla

Page 4

TACOMA, WASHINGTON; JULY 23, 2025

9:26 A.M.

-o0o-

THE VIDEOGRAPHER:   We're now on the record. The time is now 9:27 a.m. on July 23rd, 2025.  This is the video-recorded deposition of Angela Padilla -- Padilla, sorry, in the matter of versus Lubken versus Fred Meyer Stores, Inc., noted in the United States District Court, Western District of Washington, at Tacoma.  The case number is 3:24-CV-05811-JCC.

My name is Melody Sorensen from Buell Realtime Reporting.

Will counsel please identify themselves for the record, after which, the court reporter will swear in the witness.

MR. ULMER:  So this is Andrew Ulmer on behalf of the plaintiffs, and present with me spectating is Paige Maxa.

MS. FRANCO:  Aubra Franco here on behalf of Kroger/Fred Meyer.

MS. RODRIGUEZ:  Brittney Rodriguez here on behalf of Defendant Gatekeeper Systems, Inc.

///

///

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 5

ANGELA PADILLA, witness herein, having been first duly

sworn under oath, was examined and

testified as follows:


E X A M I N A T I O N

BY MR. ULMER:

Q.   All right.  Let's start by getting your full
name for the record.

A.   Angela Renee Padilla.

Q.   And what's your address?

A.   813 East 62nd Street, Tacoma, 98408 -- or 404.
Sorry.

Q.   That's fine.

Have you ever had your deposition taken before?

A.   Yes.

Q.   How many times?

A.   Once.

Q.   Okay.  Do you remember the date that happened?

A.   2013 -- '12 or '13.

Q.   Okay.  So the rules probably are similar, but we
have a court reporter here taking down everything we're
saying.

To the best of your ability, let me get out my
full question before you provide your answer.  It
assists the court reporter in taking down a clear

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                            Angela Padilla

Page 13

do not go through a check stand, it will lock up at the door preventing people from walking out with carts full of unpaid for merchandise.

Q.    And what was the time period that you recall Fred Meyer first installing those?  And if you don't remember the specific date, if you remember the time of the year and what year.

A.    Oh, I -- I believe it was 2019.  It was before COVID.  I know that.

Q.    And to your memory, did Fred Meyer procure these wheels from different vendors, or was it always wheels provided by Gatekeeper?

A.    As far as I know, it was always Gatekeeper, but I didn't always see every box, and it wasn't until later in the years that I saw that that's who was providing it.

Q.    Okay.  And you were employed at Fred Meyer when the wheels started being installed in the store's carts?

A.    I'm sorry.  Repeat that.

Q.    You were employed by Fred Meyer --

A.    Yes.

Q.    -- at the time they started installing the wheels?

A.    Yes.

Q.    Okay.  And was there -- were the wheels

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                          Angela Padilla

Page 14

installed on all carts, or were they installed on certain carts?

A.   All carts.

Q.   Okay.  And is it installed on one wheel, two wheels, how -- how --

A.   Some --

Q.   -- how are they placed?

A.   Some carts, it's -- it's usually the -- one of the front ones, usually the front left one and the back right one.  I think when they first started installing, it was only one, and now it's both.

Q.   When do you recall them installing the device on both a -- on more than one wheel?

A.   I don't recall that at all.

Q.   Was it after the December 23, 2023, incident?

A.   I -- I believe so because I believe that incident, it was one wheel.  It was a smaller cart.

Q.   Okay.  And what is your understanding for how they work?  Like, they lock up.

What is the trigger from your understanding that causes them to lock up?

A.   If --

Q.   Is it a radio, or how does the technology work?

A.   It's -- if they just -- so when they come in the store, the longer they're in the store, it --

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 34

anywhere... (Pause.)

Q.   Just to be clear, 15 employees for the home department or the store?

A.   Oh.  For the home department.

Q.   For the home department.

A.   The store, there probably was a 180 to 200.

Q.   And how many employees would be working the floor on a Saturday on December 23, 2023?

A.   Pretty much everyone.  Everyone in the store.

Q.   Okay.  And they're doing various things like restocking, cleaning, organizing?

A.   December 23rd, you're helping customers. They're -- you're not restocking any of that.  That's for freight that night.  You're doing nothing but helping customers.

Q.   Okay.  So employees on the floor December 23, 2023, would be doing customer service, you know, helping customers find items, that type of work?

A.   Yes.

Q.   Okay.  And do you remember the -- you know, do you have a decent memory of that day when you interacted with Jean Lubken?

A.   Yes.

Q.   Okay.  Where were -- why don't you just share from your perspective how you first learned about this

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 35

fall that happened in the store and then what you remember seeing kind of from there after you received that notification?

A.   I got notified by walkie.  Someone said, There's someone down.  I don't recall the aisle number.  I know it wasn't housewares.  When I got to her, I got my third over Ken, had him go get her chair.  I went and printed off the paperwork, handed it to him to start asking her questions, getting her address, that kind of stuff.  Came back over.  You know, at this -- I know we asked her how she was doing several times.  That's pretty standard.  Came back over, asked him if the paperwork was done, checked it over.  Now, granted this was a time period of about 20 minutes.  It wasn't a short.  And then we got -- we got her -- her husband pulls the car around.  Ken was helping her out.  I was overlooking the paperwork, realized he forgot certain things, so I ran out and caught them as she was getting in her car.

Q.   You said that you were notified by walkie.

Is that -- do you mean walkie-talkie?  Is that short for that?

A.   Yeah.

Q.   You guys call it the walkie?

A.   Yeah.

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 36

Q.   Okay.  Do you remember who that was that made the dispatch on walkie?

A.   I don't recall who it was.  It was a female, but I don't recall who it was.  I do know that her fall happened and there wasn't anyone that was around.  She was already down.

Q.   The female who sent the notification on the walkie, do you remember if that was someone in the home department?

A.   Yes, it was.

Q.   Okay.  And you just don't remember the name of that employee?

A.   If you keep asking me questions, it may come to me.

Q.   Okay.

A.   I -- the person who I thought it was is a -- doesn't work on a Saturday.  That's why it has to be someone -- it will come to me.

Q.   I'm sure we can find those records.

So do you remember the names of the employees working in the home department that day besides Ken?

A.   Wow.  Let's see.  Patty would have been working.  Phet.  Emily would have been there because it was Saturday.  Nick, Aaron.  Adam was already out.  What time of the day?

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 49

Q.   And do you know if any of those cameras had the footage recorded?

A.   I do not.

Q.   Okay.  And so you go and you meet Jean, and she's on the floor.

What do you remember about what she was first telling you?

A.   She said that her cart locked up.  I do remember reading this, that she said it fell on her.  Again, I asked her if she could get up.  That was -- that's basically what she told me, that her cart locked up and she fell and the cart fell on her.

Q.   At the -- at the point where you contact -- where you met her, did -- was the cart nearby?

A.   It was.

Q.   Meaning, was she near the cart, or did she move away from it?

A.   I don't -- I remember the cart was standing there, but -- and she was sitting on the ground.  Where the cart was specifically, it was somewhere off -- I don't remember exactly the location, but it was I would say more towards me as I walked up to the aisle to the left-hand side.  She was sitting on the right-hand side.

Q.   When you were speaking with her and kind of understanding from her what had happened, did she point

BUELL REALTIME REPORTING, LLC
206.287.9066 I 800.846.6989

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                                    Angela Padilla

Page 52

walked by, and it could have been another customer. Somebody walked by, but they're not the one that radioed me because then they went and told someone, and that's who radioed me, and so most likely, it was the person who was up at U-scan is probably because they couldn't go, so they radioed. That's what -- that's kind of what I was thinking. That's why it seems familiar.

Q. So you didn't witness it, and you -- you know, so you don't personally have, you know, have seen it, but your understanding is a customer saw Jean and then told an employee who then sent the dispatch on the radio?

A. Yes.

Q. Okay. And so, again, when you were meeting with Jean, what do you remember her saying about how the fall happened?

A. She -- what she stated was she was walking, the wheel locked up, and she fell on her hip, and that the cart had fallen on top of her.

Q. When you went to see Jean, the cart was standing?

A. Yes.

Q. Okay. Do you know who had lifted it back onto its top?

A. I don't recall that.

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 53

Q.   Okay.  Jean was sitting on the floor with her back to the aisle, or how would you describe the position she was in?

A.   She was sitting like this with her back to the aisle.

Q.   Do you -- what do you remember her saying to you about what she was feeling?  If she said anything, what do you remember about that?

A.   I don't specifically recall.

Q.   Okay.  I'm going back to page 1 of Exhibit 1.

We see under claimant name, we see caller name, Angela Padilla.

Do you know if on that day you were the only person who spoke with a Sedgwick representative?

A.   Yes.

Q.   And the caller phone number there, is that the number to the store?

A.   Yes, it is.

Q.   Okay.  It says, "Client Number 1978."

Do you know what that means?

A.   I do not.

Q.   Okay.  And do you know if that is Kroger is the client or Fred Meyer is the client, if that's the client number for the purposes --

MS. FRANCO:  Object to form.

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                          Angela Padilla

Page 68

happens to it.

Q.    Okay.  The paperwork you filled out, did you fill it out in the presence of Jean?

A.    Yes.

Q.    You were asking her questions, and as she's providing you information, you're writing into the incident report?

A.    Yes.

Q.    At any point, did you hand her the incident report?

A.    No.

Q.    Okay.  And you said Ken filled out some parts of it?

A.    Yeah.  When -- I left him for a few minutes to go do something, and he continued with the rest of it.

Q.    Do you remember what portion he had filled in?

A.    No, I do not.

Q.    Do you remember taking a look at the cart that Jean had used?  And to clarify, when I say take a look, did you kind of push it around or kind of --

A.    I did not.

Q.    Okay.  What do you remember about what happened with the cart?

A.    I don't recall.  I know it had to have been taken out of the aisle, pushed out of the aisle.  I

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                          Angela Padilla

Page 72

A.    Yes.

Q.    All right.  Do you remember the -- the date that the first conversation happened?

A.    What's the date on the -- when I was served.

Q.    The subpoena duces tecum?

A.    Yes.

MS. FRANCO:  I think it was June 23rd, if I'm not mistaken.

MR. ULMER:  Sometime in June.

MS. FRANCO:  June 23rd.  Oh, I'm so good.

THE WITNESS:  Okay.  So that was on a Saturday.  I was off Sunday.  So it was the Monday, June 25th, is when I called.

BY MR. ULMER:

Q.    Okay.  So taking a look at Exhibit 3, I'm going to turn over to page 5.

Again, these requests and then the answers thereto you have not seen before; is that correct?

A.    Yes.

Q.    Okay.  Request For Production No. 2 says, "Please produce for inspection the shopping cart involved in the incident."  And the answer is, "Subject shopping cart was not preserved upon conclusion of investigation."

Is that accurate to you?

BUELL REALTIME REPORTING, LLC
206.287.9066  l  800.846.6989

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 73

A.   Yes.

Q.   Okay.  And who do you remember employed by Fred Meyer had, you know, looked over the cart that Jean had used?

A.   I don't recall.

Q.   Okay.  Do you have a memory of looking over the cart?

A.   I do not recall that.

Q.   Okay.  And you didn't -- you do not know whether Ken did or not?

A.   I don't.

Q.   Was this -- is there a general store manager for the Fred Meyer?

A.   For that location?  Yes.

Q.   Do you know if that person was working that day?

A.   I -- I don't -- actually, most likely, yes.  It was two days before Christmas, so Chad would have been there.

Q.   What's his last name?

A.   Peterson.

Q.   So Chad is the general store manager, or what's the title called?

A.   Store leader.

Q.   Do you remember having a conversation with him on the day of the incident about the incident?

Lubken v. Fred Meyer Stores, Inc.                                    Angela Padilla

Page 74

A.    I probably, like, said there was an incident that happened in home.  I sent over the paperwork.  Again, it's two days before Christmas.

Q.    Okay.  You do not know one way or the other, or you do not remember what employee had looked over the cart?

A.    I do not.

Q.    Okay.  The cart was not set aside or, you know, preserved; right?

A.    Yes.

Q.    Okay.  I'm going to hand you -- you can hand me that document.  Now, this document has paperclips.  Watch out for that.

                    (Exhibit No. 4 marked.)

BY MR. ULMER:

Q.    Handing you Exhibit 4.

          MS. FRANCO:  Thank you.

          MR. ULMER:  So, Brittney, Exhibit 4 is "Plaintiff's First Set of Interrogatories and Requests For Production to Defendant Fred Meyer Stores, Incorporated, and Answers and Responses Thereto," dated March 17, 2025.

          MS. RODRIGUEZ:  Okay.  Thank you.

          MR. ULMER:  Yeah.

BY MR. ULMER:

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 81

up, and what do you remember her telling you about what happened next that led to the fall?

A.   I don't remember the specific of that.  I remember telling me the cart locked up and she fell.  I don't remember anything beyond that.

Q.   Was it your understanding that she tripped over the cart or something to that effect?

A.   It was my understanding, and, again, this could only be what I assumed, is that she was walking, it kind of jolted her and made her fall over.

Q.   Okay.  And, you know, when -- when you're writing up the incident report and submitting the claim to Sedgwick, you were documenting that the cart was involved in the fall; correct?

A.   Yes.

Q.   And you -- did you tell Sedgwick that she claimed that the wheel had locked?

A.   Yes.

Q.   Do you remember -- do you remember telling Sedgwick if the wheel that locked was one with an antilock -- or antitheft lock?

A.   I don't believe they asked me that.

Q.   Okay.  All right.  And you, yourself, do not recall inspecting the cart?

A.   I do not.

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                                   Angela Padilla

Page 82

Q.    Do you know if that may have happened?

A.    It may have.

Q.    Okay.

A.    But... (Pause.)

Q.    And do you have any memory of talking with any employee who had looked at the cart and had made their own opinion about how the cart was working?

A.    It would have been between me and Ken.  I don't recall us having a conversation.

Q.    Okay.  Do you remember Jean or her husband coming back after the -- after she initially left to request to look at the cart?

A.    I don't remember that.

Q.    You -- strike that.

Do you remember being on shift and hearing that either Jean or her husband came back to the store?

A.    I don't recall that.

Q.    Okay.  Ken, who was working that day, do you remember if his shift would carry on after 2 into the afternoon hour?

A.    Yes.

Q.    Okay.  Do you remember talking with Ken about taking a look at that cart she was using?

A.    I do not.

Q.    Okay.  When it comes to, like, shopping cart,

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                    Angela Padilla

Page 83

you know, maintenance, you know, a complaint about a cart, who in the store did you kind of report that information to?

A. Like, if there's one specific cart, who do I go tell?

Q. Like, if you have a -- you know, a cart that's not really working or looks really worn, whose job, from your understanding, would it be to do something about that?

A. Well, like I said, it's usually the CCK manager. And, again, I don't remember if that person would call it in or if they report it to the assistant store leader to put in a work order.

Q. Okay. And do you know why the cart that Jean had used wasn't set aside?

A. I do not.

Q. Okay. Any question that the cart was related to the fall that she experienced?

A. Rephrase that, please.

Q. Yeah.

Was it clear to you that the cart was related to her fall incident?

A. Are you asking me if -- if I believe that this happened, or are you asking me if this is what she's telling me happened?

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

Lubken v. Fred Meyer Stores, Inc.                              Angela Padilla

Page 97

C E R T I F I C A T E

STATE OF WASHINGTON

COUNTY OF KING


    I, Laura L. Ohman, a Certified Shorthand Reporter in and

for the State of Washington, do hereby certify that the

foregoing transcript of the videotaped deposition of ANGELA

PADILLA, having been duly sworn on July 23, 2025, is true and

accurate to the best of my knowledge, skill, and ability.

    IN WITNESS WHEREOF, I have hereunto set my hand and seal

this 6th day of August, 2025.


LAURA L. OHMAN, RPR, CCR 3186


My commission expires:

MARCH 2025

BUELL REALTIME REPORTING, LLC
206.287.9066  I  800.846.6989

0ce60d6c-aaa0-4727-8fa4-c3dd6388fd73

# Exhibit C

# Kenneth Smittling

# Lubken v. Fred Meyer Stores, Inc., et al.

# November 10, 2025



1325 Fourth Avenue, Suite 1840  Seattle, Washington  98101
6 South Second Street, Suite 718  Yakima, Washington  98901
Bellingham  |  Everett  |  Tacoma  |  Olympia  |  Yakima  |  Spokane
Seattle 206.287.9066    Tacoma 253.235.0111    Eastern Washington 509.624.3261
**www.buellrealtime.com**
email: transcripts@buellrealtime.com

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 2

                         A P P E A R A N C E S
FOR PLAINTIFFS:

                    ANDREW S. ULMER
                    Pfau Cochran Vertetis Amala
                    909 A Street
                    Suite 700
                    Tacoma, WA 98402-4413
                    253.777.0799
                    aulmer@pcvalaw.com

                    JOSEPH M. LOMBINO
                    Lombino Martino, P.S.
                    9315 Gravelly Lake Drive SW
                    Suite 201
                    Tacoma, WA 98499-1502
                    253.830.2700
                    joey.lombino@lombinomartino.com


FOR DEFENDANT FRED MEYER STORES, INC.:

                    AHBRA FRANCO
                    Scheer.Law PLLC
                    701 Fifth Avenue
                    Suite 3860
                    Seattle, WA 98104
                    206.800.4070
                    AhbraF@scheer.law


FOR DEFENDANT GATEKEEPER SYSTEMS, INC.:

                    R. SCOTT LASALLE
                    The Aguilera Group
                    23046 Avenida De La Carlota
                    Suite 300
                    Laguna Hills, CA 92653
                    714.384.6600
                    slasalle@aguileragroup.com


ALSO PRESENT:   TYLER TODISH, videographer
                Buell Realtime Reporting, LLC

                    *   *   *   *   *

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 3

DEPOSITION OF KENNETH SMITTLING

EXAMINATION INDEX

EXAMINATION BY:                                              PAGE

Mr. Ulmer                                                      5


EXHIBIT INDEX

EXHIBITS FOR IDENTIFICATION                                  PAGE

Exhibit 1   Incident Report for Claim                         25
            No. 4A2312Q4CZ0001
            [CONFIDENTIAL]

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 7

A.  I think we had one or two.

Q.  And then do you remember the duration of those calls?

A.  It was maybe 45 minutes.

Q.  And you know Angela Padilla; correct?

A.  Yeah.  She was the assistant manager above me at the time.

Q.  And when you say "at the time," that's a reference to the date December 23, 2023?

A.  Yes.  Yes.  She's no longer that position at that store.

Q.  She got transferred to the South Tacoma store, which has since been closed; right?

A.  Yes.  Correct.  Yeah.

Q.  Okay.  And have you had any conversations with Ms. Padilla either about this case or about her deposition that she took?

A.  No.  I've not spoken to her about this particular thing.

Q.  Okay.  Do you remember the last time you've spoken to Ms. Padilla?

A.  It was a couple weeks ago because our regional manager was on vacation, and she came into the stores, doing her job.

Q.  Okay.  But did you have any conversations with

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 23

not to -- we're told just to unlock them.

Q. Sorry. Other way around. Have you either personally or heard from others using that remote to unlock carts that are located within the store, but away from the entrances?

A. Oh, oh. No. I've only ever have unlocked them or know of people unlocking them at the entrances or at the garden gates outside, which also have a sensor.

Q. Okay. And so have you -- do you know if carts have locked either inside the store in the aisles or out in the parking lot away from those entrances?

A. I know there is a sensor around the property perimeter outside, so we do get carts outside in the edge of the parking lot that will lock up. For inside the aisle, I can't recall a time where I've seen a cart locked up.

Q. Okay. And then -- okay. So you haven't seen a cart lock up in the aisles. What about outside, away from the property perimeter or the entrances? Have you ever seen one of the carts locked up in the parking area?

A. In the actual parking lot, I've not seen them lock up or -- or aware of any that have been locked up, not to my knowledge.

Q. All right. Are you a -- let me ask this.

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 24

There was an incident involving another woman, Linda Larocque, I believe is how it's pronounced. L-a-r-o-c-q-u-e.  Allegedly she was injured when a cart locked up on May 6, 2023.

　　Do you remember if you were working there that day?

A.  That specific day, I don't remember.

Q.  Okay.  And you've never been deposed, you haven't been deposed in that case; correct?

A.  No.

Q.  Okay.  This case is involving Jean Lubken.  I understand that's someone you interacted with.  Correct?

A.  I do not remember specifics about the actual incident or the person, for the most part.

Q.  Okay.  And is that because that was a few years ago, and in your line of work, you interact with a lot of customers?

A.  Yeah.

Q.  Okay.  So I'll ask, still.  So on December 23, 2023, Jean Lubken fell within the store, and you were working in the store on that day; correct?

A.  After reviewing the incident report, it does ring a very light, vague like rec- -- recollection of something like that happening, but specifics, like where -- where I was, I can't remember exactly well

Page 25

enough.

MR. ULMER:  Okay.  And let me -- I'll mark this as Exhibit 1 to the deposition.

(Exhibit No. 1 marked.)

BY MR. ULMER:

Q.  All right.  Can you see a document on your screen?

A.  Yeah.  That's the one I saw.

Q.  Yeah.  So is this an incident report that Angela filled out?

A.  Yeah.  That's pretty standard for how we have to fill them out.

Q.  Do you remember if any part of this, you had filled out?  I'm kind of scrolling to see if you recognize your handwriting anywhere.  I think that's about it.

A.  Yeah, no, none of my handwriting for what I can remember.  I might have handled the actual form, maybe handed it to the person, Jean, when the incident happened, and I gave her the paper to write, but it's -- usually the responding manager is the one that writes on the form, so it's all the same person, so it would have been Angela.

Q.  Okay.  And so it says here on the incident report, December 23, 2023, incident occurring in Tacoma

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 33

Q.    Okay.  What about any interactions or statements with her husband?  Do you remember any statements he provided to you or in your presence?

A.    No.  I don't even remember the husband.

Q.    Okay.  The cart itself that Ms. Lubken was pushing, do you remember looking at the cart or manipulating the cart, anything like that?

A.    I don't remember the cart.  I believe, by the time I arrived, they were already at the front door or off in a different spot.  The aisle's not the biggest space.  I think they moved her down, or she moved over to a different location.

Q.    Okay.  And so do you have any knowledge what happened with that cart?

A.    I do not recall anything happening.  I cannot remember if something happened to that cart or not.

Q.    Okay.  And then filling out the incident form, do you remember any role you played with that?

A.    I can't remember specifically, but it would have either been to go retrieve the form while Angela stayed and spoke with Ms. Lubken, or it would have been hand her the witness statement paper because Angela went to go grab it.  I can't remember the exact order of events that happened.

Q.    And when Ms. Lubken is eventually picked up,

Page 34

gets into a car, do you remember if you witnessed that or if you were there for that when that happened?

A.   That very vaguely sounds familiar.  I think we all made sure she was able to get into the car safely and be on her way, and we still had the form filling out, I think.  But I can't remember, like, exactly. Like, I don't even remember what side of the store it was on.

Q.   All right.  Do you remember either Ms. Lubken or Mr. Lubken ever asking to see the cart or the footage?

A.   I don't recall, no.

Q.   Okay.  And I take it December 23, that would be a rather busy day at the store?

A.   Yeah.  That's a very busy time, from opening to close, a very busy time of the year.

Q.   Okay.  Do you remember -- kind of switching gears -- anyone from Gatekeeper, to your knowledge, ever coming to the store to take a look at their product?

A.   To my knowledge, no.  I can't recall that specific company coming in.

Q.   Do you have any memory of any -- anyone ever reaching out to Gatekeeper about their product?

A.   I don't know if anyone did.  I'm not sure. That's not a part of my job responsibilities.

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 35

MR. ULMER:  All right.  We've been going for about 50 minutes, but why don't I already take a five-minute break here.

THE VIDEOGRAPHER:  Going off the record. The time now is 12:51 p.m.

(Recess from 12:51 p.m. to 1:04 p.m.)

THE VIDEOGRAPHER:  Going back on the record. The time now is 1:04 p.m.

E X A M I N A T I O N (Continuing)

BY MR. ULMER:

Q.  Okay.  So just to finish this up here, sir, you do not know what happened with the shopping cart that Ms. Lubken was using when she fell; right?

A.  Correct.  I don't know what happened to the cart that she was using on that day.

Q.  And do you remember any discussions to preserve the cart or set it aside?

A.  I'm not aware of any conversations while I was present.

Q.  And it was Angela Padilla that was the one responsible for writing up the incident report to submit to the Fred Meyer carrier; correct?

A.  Yes.

Q.  Does Fred Meyer, you know, to your knowledge as an employee who's worked for them for years, have any

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 36

internal policies on preserving products that are related to some customer injury incident within the store?

A.   I know, when there is an incident, we are to take photograph evidence if we're able to.  About preserving, I can't recall if there's anything explicitly written or we have to preserve it.  I'm sure there is, but I can't say explicitly, for sure, 100 percent.

Q.   Okay.  And, you know, injuries relating to shopping carts, like kids falling out of them or whatnot, are you aware of that being a type of, you know, risk that grocery stores, you know, try to plan around?

A.   Yeah.  Cart injuries are a thing we've probably taken into account.

Q.   And so do you specifically remember having taken training on, you know, cart injuries and employees preserving the cart related to an injury claim?

A.   I personally have received no training about specifically cart injuries.  Me specifically, no.

Q.   A little different.  Not on cart injuries, but in writing up a -- or in following up with an incident related to an injury by a cart.  Right?  Have you been trained on preserving the carts, setting aside the carts

Lubken v. Fred Meyer Stores, Inc., et al.                    Kenneth Smittling

Page 41

C E R T I F I C A T E

STATE OF WASHINGTON

COUNTY OF PIERCE

        I, Cindy M. Koch, a Certified Court Reporter in and for the State of Washington, do hereby certify that the foregoing transcript of the deposition of Kenneth Smittling, having been duly sworn, on November 10, 2025, is true and accurate to the best of my knowledge, skill and ability.

        IN WITNESS WHEREOF, I have hereunto set my hand and seal this 17th day of November, 2025.

                                    _____
                                    CINDY M. KOCH, CCR, RPR, CRR

My commission expires:

JUNE 9, 2026

# Exhibit D

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON


JEAN LUBKEN and WILLIAM LUBKEN,    )
husband and wife and their marital )
community,                         )
                                   )
     Plaintiffs,                   )
                                   )
vs.                                )    Case No.:
                                   )    3:24-cv-05811-SKV
                                   )
FRED MEYER STORES, INC., an Ohio   )
corporation doing business in the  )
State of Washington; THE KROGER    )
CO., an Ohio corporation doing     )
business in the State of           )
Washington; GATEKEEPER SYSTEMS,    )
INC., a California corporation     )
doing business in the State of     )
Washington,                        )
                                   )
     Defendants.                   )
                                   )
                                   )
_____)


VIDEOTAPED REMOTE DEPOSITION OF CHAD PETERSON

Friday, November 7, 2025


REPORTED BY:
MELISSA THAI
CSR No. 14721

**AMK Reporting, Inc.**                              1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

JEAN LUBKEN and WILLIAM LUBKEN,    )
husband and wife and their marital )
community,                         )
                                   )
     Plaintiffs,                   )
                                   )
vs.                                )   Case No.:
                                   )   3:24-cv-05811-SKV
                                   )
FRED MEYER STORES, INC., an Ohio   )
corporation doing business in the  )
State of Washington; THE KROGER    )
CO., an Ohio corporation doing     )
business in the State of           )
Washington; GATEKEEPER SYSTEMS,    )
INC., a California corporation     )
doing business in the State of     )
Washington,                        )
                                   )
     Defendants.                   )
                                   )
                                   )
_____)


          Videotaped Remote Deposition of CHAD PETERSON,

taken on behalf of the Defendant, commencing at 10:02 a.m.

and ending at 11:03 a.m., on Friday, November 7, 2025,

before Melissa Thai, CSR No. 14721, a Certified Shorthand

Reporter in and for the State of California.


                    **AMK Reporting, Inc.**                       **2**

APPEARANCES:

For Plaintiffs:

       PFAU COCHRAN VERTETIS AMALA PLLC
       BY: ANDREW S. ULMER, ESQ.
       909 A Street
       Suite 700
       Tacoma, Washington 98402
       (253) 289-1412
       aulmer@pcvalaw.com

       -AND-

       LOMBINO MARTINO PS
       BY: JOSEPH J.M. LOMBINO, ESQ.
       9315 Gravelly Lake Drive SW
       Suite 201
       Lakewood, Washington 98499
       (253) 830-2700
       joey.lombino@lombinomartino.com

For Defendant GATEKEEPER SYSTEMS, INC.:

       THE AGUILERA LAW GROUP, APLC
       BY:  R. SCOTT LASALLE, ESQ.
       23046 Avenida De La Carlota
       Suite 300
       Laguna Hills, California 92653
       (714) 384-6600
       slasalle@aguileragroup.com

For Defendants FRED MEYER STORES, INC., and THE
KROGER CO.:

       SCHEER.LAW PLLC
       BY: AHBRA FRANCO, ESQ.
       701 Fifth Avenue
       Suite 3860
       Seattle, Washington 98104
       (206) 800-4070
       ahbraf@scheer.law

APPEARANCES (Continued):

Also Present:

       JONATHAN PAULINO, Videographer
       ANDREW KOUMAS, Zoom Admin

INDEX


EXAMINATION                                                PAGE

BY MR. LASALLE                                                7
BY MR. ULMER                                                31



                        INDEX OF EXHIBITS

PREVIOUSLY MARKED                                          PAGE

Exhibit 1                                                   28

they were filing a claim.  And the claim had already been filled out by Angela.  That's all I really remember.  I don't remember hearing anything more past that.

Q   Okay.  Let me -- let me break that down a little bit, if we could.

A   Sure.

Q   On December 23rd, 2023, so two days before Christmas, were you working that day?

A   I'm -- I don't know.  Officially, I don't know.

Q   Okay.  If there is an incident in a store, where somebody is claiming that they have been injured, is that something that you would typically be notified of?

A   Correct.

Q   So if you -- do you believe you were told the same day while you were working, or were you told some other day when you came in?

A   I can't remember.  I just remembered it was post.

Q   Okay.  Do you recall who told you?

A   I do not specifically remember if it was an e-mail or personally.  So I -- I can't remember.

Q   Okay.  Were you told what happened to the cart?

A   No.

Q   Do you have any understanding as to whether or not anyone from your store inspected the cart after the incident?

A    I do not.    10:25:24

Q    Do you have any understanding as to whether or not anyone from your store found anything wrong with the cart after the incident?    10:25:24 10:25:27 10:25:30

A    I do not.    10:25:32

Q    Do you have any understanding if the cart was put back into service or was put somewhere else into the cart graveyard, if there is one, for damaged carts?  Anything like that?    10:25:33 10:25:36 10:25:43 10:25:47

A    I do not.    10:25:47

Q    Okay.  We've heard mention of a cart graveyard. Is that -- is there an area where -- where damaged carts are kept?    10:25:48 10:25:52 10:25:54

A    Yeah.  If a cart is -- we've had wheels stolen, things like this.  We take that cart.  We put it behind the store in a gate until the repair service shows up.    10:25:55 10:26:00 10:26:03

Q    Okay.  And approximately how many carts are back there at any given time?    10:26:06 10:26:09

A    Maximum, usually 30 is -- that's when we call in for the repairs to happen.    10:26:11 10:26:14

Q    Okay.  So -- so that's when, like, a wheel gets bent or broken or stolen?    10:26:16 10:26:18

A    Stolen, damaged in any way.    10:26:21

Q    Are you ever aware of any carts going back there because the anti-lock wheels somehow malfunctioned?    10:26:27 10:26:29

REPORTER'S CERTIFICATE

I, MELISSA THAI, a Certified Shorthand Reporter, in and for the State of California, Certificate No. 14721, do hereby certify:

That prior to being examined, the witness named in the foregoing proceedings was by me first duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken before me at the time and place therein set forth and were taken down by me in shorthand and thereafter transcribed;

Pursuant to Federal Rule 30(e), transcript review was requested;

I further certify that I am neither counsel for, nor related to, any party to said action, nor in any way interested in the outcome thereof.

In witness whereof, I have hereunto subscribed my name.

Dated: November 18, 2025

_____
MELISSA THAI
CSR NO. 14721

I, Melissa Thai, Certified Shorthand Reporter, CSR No. 14721, hereby certify:

The foregoing is a true and correct copy of the original transcript of the proceedings taken by me as thereon stated.

Dated: _November 18, 2025_____

_____
Melissa Thai, CSR No. 14721

**AMK Reporting, Inc.**

# Exhibit E

Hon. John C. Coughenour

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEAN LUBKEN and WILLIAM LUBKEN, husband and wife and their marital community,<br><br>            Plaintiffs,<br><br>      vs.<br><br>FRED MEYER STORES, INC., an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the State of Washington,<br><br>            Defendants. | Case No.: 3:24-cv-05811-SKV<br><br>**DEFENDANT GATEKEEPER SYSTEMS, INC.'S REQUESTS FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC. WITH RESPONSES THERETO** |

PROPOUNDING PARTY:       DEFENDANT, GATEKEEPER SYSTEMS, INC.

RESPONDING PARTY:        DEFENDANT FRED MEYER STORES, INC.

SET NO.:                ONE (1)

     Pursuant to Federal Rule of Civil Procedure Rule 34, Defendant GATEKEEPER SYSTEMS, INC. requests that Defendant FRED MEYER STORES, INC. produce and permit

DEFENDANT GATEKEEPER SYSTEMS, INC.'S REQUESTS FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC. WITH RESPONSES THERETO
- Page 1

inspection and copying and/or photographing of the following at Aguilera Law Group, APLC, 1201 Pacific Ave., Suite 600, Tacoma, Washington, within thirty (30) days from the date of service.

In answering these Requests for Document Production, furnish all information that is available to you.  If you cannot respond to a request completely, respond to it to the extent possible.  If you do not have personal knowledge sufficient to respond fully to a request, so state, but make a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations, unless the information is equally available to the propounding party.

## INSTRUCTIONS

1.     If you claim a privilege, in whole or in part, as to any document, or if you object to the production of any document, in whole or in part, identify the document you claim is privileged or to which you object with sufficient particularity to support a motion to compel the production of such document(s), specifying the particular privilege(s) or objections(s) upon which you rely, and set forth in complete detail each and every fact or ground upon which your claim of privilege or objection is based, including sufficient facts for a court to make a full determination of whether the claim of privilege or objection is valid.  In addition, please set forth, with respect to each such document, in addition to any other information requested, the following:

(a)     Its nature (e.g. letter, memorandum, etc.);

(b)     Its title, if any;

(c)     The date it was prepared;

(d)     The identity of its author (s);

(e)     The identity of the person or persons, including secretaries, typists and technicians, who prepared it, participated in its preparation in any way, or signed it;

(f)     The identity of the person(s) to whom it was addressed or to whom copies were directed to be transmitted;

(g)     The identity of the person(s) to whom the document or a copy was

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT FRED MEYER STORES, INC.
WITH RESPONSES THERETO
- Page 2

transmitted, directed, delivered or sent;

(h)    Its present location and the identity of the person(s) who presently has (have) custody of it;

(i)    A description which is sufficient to identify the particular written communication and its subject matter without revealing information for which a privilege is claimed;

(j)    Each and every fact or basis upon which you claim any such privilege.

## DEFINITIONS

1. "Store" refers to the Fred Meyer store located at 4505 19th Street in Tacoma, Washington, as referenced in plaintiffs' Complaint.

2. "Incident" refers to the December 23, 2023, events whereby plaintiffs allege Jean Lubken was injured at the Store.

3. "Gatekeeper" refers to defendant Gatekeeper Systems, Inc.

4. "Fred Meyer" refers to defendant Fred Meyer Stores, Inc.

5.  "Kroger" refers to defendant The Kroger Co.

6. "Document" means a writing or document of any kind of other tangible permanent record, including, without limitation, correspondence, e-mails, text messages, reports, records, schedules, charts, notes, summaries, memoranda, photographs, videos, depictions, drawings, renderings, blueprints, mechanical and electronic recordings, printed brochures and pamphlets, and all other taped, recorded, printed, written or typed matter of any kind or description.

7. "Identify," when used in relation to a natural person, means to state that person's full name, residence address, telephone number, and e-mail address.  When used in relation to a firm, association, organization, partnership, corporation, or other legal or commercial entity, "identify" means to state its name, its present or last known address and its principal place of business, to state its type (e.g., partnership, corporation, limited liability corporation, etc.) and, if it is incorporated, licensed, or otherwise registered as required by law, to state its place of

incorporation, licensing, or other registration.

8. "Identify," when used in relation to a communication, means to state the date on which the communication occurred and the means (e.g., by telephone, e-mail, letter, or otherwise) by which it occurred, to identify the persons who were present at or involved in the communication, and to state the substance of the communication.

9. "Identify," when used in relation to a document, means to identify the person who originated or prepared the document, to state the date of the document if it is dated or the date when it was prepared if it is undated, to state the type of document, to summarize its contents, to state the number of its pages and to identify its present custodian. In the event that any document which was at one time in your possession, custody, or control is no longer in your possession, custody or control, explain what the disposition of the document was, the reason for such disposition, and the date on which the disposition was made. With respect to production of electronically stored information, such data should be produced in its native file format, with metadata preserved, without additional processing of any kind. If you use proprietary software, including, but not limited to, internal accounting software not operating in a Windows environment, please make electronic data available for inspection in its native format using such software.

10. "Person" shall include any natural person, as well as any firm, association, organization, partnership, corporation, or other legal or commercial entity.

11. "You" and "your," unless otherwise noted, refers to defendant Fred Meyer Stores, Inc., and to your attorneys, agents, representatives and other persons acting on your behalf.

///

///

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT FRED MEYER STORES, INC.
WITH RESPONSES THERETO
- Page 4

**DEFENDANT FRED MEYER STORE INC.'S OBJECTION TO INSTRUCTIONS AND DEFINITIONS**

Defendant Fred Meyer Stores, Inc. ("Fred Meyer"), objects to Defendant Gatekeeper Systems instructions and definitions to the extent they seem to expand or alter Fred Meyer's obligations to respond beyond what is required by the Federal Rules of Civil Procedure.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1**:    Please attach copies of any and all documents relating to the Incident or plaintiff Jean Lubken's injuries alleged to have resulted from the Incident, including, but not limited to incident reports, investigation reports, medical records, diagrams, photographs, videos, and witness statements.

**ANSWER**:   Responsive documents are produced with this response to the extent they have been located.

**REQUEST FOR PRODUCTION NO. 2**:    Please produce for inspection the shopping cart involved in the Incident.

**ANSWER**:   Subject shopping cart was not preserved upon conclusion of investigation.

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT FRED MEYER STORES, INC.
WITH RESPONSES THERETO
- Page 5

Dated this 24th of December, 2024

By: */s/ Jennifer L. Crow*
Jennifer L. Crow, WSBA No. 43746
Ahbra Franco, WSBA No. 60860
jen@scheer.law
ahbraf@scheer.law
*Attorneys for Defendant, FRED MEYER STORES, INC.*

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT FRED MEYER STORES, INC.
WITH RESPONSES THERETO
- Page 6

CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Washington, that the following is true and correct:

I am employed by the law firm of Scheer.Law PLLC.

At all times hereinafter mentioned, I was and am a citizen of the United States of America, a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein.

On the date set forth below I served the document(s) to which this is attached, in the manner noted on the following person(s):

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| **CO/ Plaintiffs**<br>Darrell L. Cochran<br>Andrew S. Ulmer<br>Alexander G. Dietz<br>Pfau Cochran Vertetis Amala PLLC<br>909 A Street, Suite 700<br>Tacoma, WA 98402<br>darrell@pcvalaw.com<br>aulmer@pcvalaw.com<br>adietz@pcvalaw.com | ( )  **Via U.S. Mail**<br>( X )  **Via E-Mail**<br>( )  **Via E-Service**<br>( )  **Via Overnight Mail** |
| **CO/ Plaintiffs**<br>Joseph J.M. Lombino<br>Joseph M. Lombino<br>Lombino Martino PS<br>9315 Gravelly Lake Drive SW, Suite 201<br>Lakewood, WA 98499<br>j.lombino@lombinomartino.com<br>joey.lombino@lombinomartino.com | ( )  **Via U.S. Mail**<br>( X )  **Via E-Mail**<br>( )  **Via E-Service**<br>( )  **Via Overnight Mail** |
| **CO/ Defendant Gatekeeper System, Inc.**<br>Scott LaSalle<br>The Aguilera Law Group, APLC<br>1201 Pacific Ave, Ste 600<br>Tacoma, WA 98402<br>slasalle@aguileragroup.com | ( )  **Via U.S. Mail**<br>( X )  **Via E-Mail**<br>( )  **Via E-Service**<br>( )  **Via Overnight Mail** |

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S REQUESTS FOR PRODUCTION TO
DEFENDANT FRED MEYER STORES, INC.
WITH RESPONSES THERETO
- Page 7

DATED this 24th day of December, 2024 at Seattle, Washington.

/s/ Shiloh Angevine
Shiloh Angevine, Legal Assistant

# Exhibit F

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

JEAN LUBKEN and WILLIAM LUBKEN, wife and husband and their marital community,

                           Plaintiffs,

        vs.

FRED MEYER STORES, INC., an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the State of Washington,

                           Defendants.

No. 3:24-cv-05811-JCC

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.

**AND ANSWERS AND RESPONSES THERETO**

TO:         JEAN LUBKEN AND WILLIAM LUBKEN, PLAINTIFFS

AND TO:     ALL PARTIES AND ATTORNEYS OF RECORD

## I.    PROCEDURES

You have been served with the original of these interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure.  Please complete the answers within the spaces provided.  If needed, please complete each answer using additional pages.  You are requested to complete the enclosed interrogatories and **returning signed and verified answers to Darrell L. Cochran and**

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC. **AND ANSWERS AND RESPONSES THERETO** – PAGE 1 No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC** 2101 FOURTH AVE., STE 830 SEATTLE, WA 98121 P: (206) 800-4070

**Andrew S. Ulmer of Pfau Cochran Vertetis Amala at 909 A Street, Suite 700, Tacoma, WA 98402.  These answers shall be completed no later than 30 days after the date of service upon you.**

You have also been served with requests for production of documents pursuant to Rule 34 of the Federal Rules of Civil Procedure.  **You are requested to produce the documents listed which are within your custody, control or access for inspection and copying by delivering the original documents to Darrell L. Cochran of Pfau Cochran Vertetis Amala at 909 A Street, Suite 700, Tacoma, WA 98402. These documents shall be produced no later than 30 days from the date of service.**  If this date for production is not convenient, please contact the undersigned counsel at least five (5) business days prior thereto in order to arrange for an alternate time.

If you contend that any document encompassed by any request is privileged, in whole or in part, or if you otherwise object to its production, then with respect to each such document:

1.      State with particularity the reason or reasons for your objection and the nature of any privilege asserted;

2.      Identify each person having knowledge of the factual basis, if any, upon which the privilege or other objection is asserted; and

3.      State the following:

a.      The date of the document;

b.      The nature or type of the document (e.g. letter, memorandum, etc.);

c.      Identify each individual who prepared the document;

d.      Identify each person to whom the document, or a copy thereof, has at any time been provided;

e.      Identify each person from whom the document has been obtained;

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.
**AND ANSWERS AND RESPONSES THERETO** – PAGE 2
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

f.  Identify each person or entity having possession of the original of the document (or if the whereabouts of the original are unknown, identify each person or entity known or believed to have a copy or copies thereof);

g.  All other information necessary to identify the document with sufficient particularity to meet the requirements for its inclusion in a motion for production pursuant to FRCP 37; and

h.  If such document was, but is no longer within your care, custody, or control, state what disposition was made of it, who disposed of it, the reason for such disposition, and the date upon which it was so disposed.

In answering these Interrogatories and Requests for Production, you must provide all information available to you through due and diligent inquiry at this time. In addition, these Interrogatories and Requests for Production are deemed to continue in force throughout the pendency of the lawsuit. If at any time you become aware of additional information pertaining to the subject matter of these Interrogatories and Requests for Production of Documents, you must promptly supplement your previous responses. Failure to do so may result in the imposition of sanctions, including an award of attorney fees to the Plaintiff and other sanctions as provided by the Federal Rules of Civil Procedure.

CLAIMS OF PRIVILEGE: If any privilege or immunity is claimed as to any document otherwise covered by this Request, Plaintiffs hereby request that each document for which a privilege or immunity is claimed be identified in a manner such that Plaintiffs and the Court may determine whether or not each such document is entitled to be accorded such privileged status. Such information shall include, but is not limited to:

a.  the name or title of the document;

b.  the type of document;

c.  its date;

d.  its author;

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.
**AND ANSWERS AND RESPONSES THERETO** – PAGE 3
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

e.    addressee;

f.    a general description of its subject matter;

g.    its present location;

h.    custodians;

i.    each person who, to your knowledge, has seen it;

j.    the number and/or portion of the request to which each such document be responsive and the basis for such claim of privilege or immunity (e.g., attorney-client privilege, work product doctrine, etc.).

ELECTRONICALLY STORED INFORMATION (ESI): Plaintiffs specifically reserve the right to have all ESI produced in native format, including metadata without alteration or deletion. Should Defendant object to producing ESI in native format, if such is required at a later date by Plaintiffs, Plaintiffs specifically request that Plaintiffs' counsel be contacted immediately so the form of production can be established.

DOCUMENTS IN COLOR: If the original document or ESI is kept in color, the Defendant is specifically requested to produce said document in color.

BATES STAMPING: All documents responsive to these requests are to be Bates stamped by Defendant for identification. If Defendant is unable to Bates stamp responsive documents, Plaintiffs' counsel should be contacted to make arrangements to have the documents Bates stamped.

## II.    DEFINITIONS

1.    As used herein, the term "DOCUMENT(S)" is used in the broadest possible sense and includes, but is not limited to, handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored. The term "DOCUMENTS" also includes

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.
**AND ANSWERS AND RESPONSES THERETO** – PAGE 4
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

information or programs stored in a computer, including electronic mail, whether or not ever printed out or displayed.

2.    As used herein, the term "ALL DOCUMENTS" shall mean every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

3.    As used herein, the term "YOU" or "YOUR" or "FRED MEYER" means Defendant Fred Meyer Stores, Inc, and any and all representatives, employees, accountants, attorneys, agents, and all others acting on its behalf or at its request.

4.    As used herein, the term "IDENTIFY" means to describe in detail the factual basis for your answer including all information directly or reasonably related to the request.

5.    As used herein, the term "INCIDENT" shall mean the incident that occurred on or about December 23, 2023, in the Fred Meyer store located at 4505 S. 19th Street, Tacoma, Washington, 98405 involving Plaintiff Jean Lubken which caused her to suffer personal injury.

6.    As used herein, the term "INCIDENT LOCATION" shall mean the Fred Meyer store located at 4505 S. 19th Street, Tacoma, Washington, 98405 which is the location where Plaintiff Jean Lubken suffered personal injury on or about December 23, 2023.

7.    As used herein, the term "ANTI-THEFT DEVICE" shall mean the device manufactured by Gatekeeper Systems, Inc. that was installed on the shopping cart used by Plaintiff Jean Lubken at the time of her fall on or about December 23, 2023, in the Fred Meyer store located at 4505 S. 19th Street, Tacoma, Washington, 98405.

8.    As used herein, the term "COMMUNICATIONS" is defined as any written transmission of information from one person or entity to another including, but not limited to, facsimiles, letters, emails, notes and memorandum.  "COMMUNICATIONS" also includes any

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.
**AND ANSWERS AND RESPONSES THERETO** – PAGE 5
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

RESPONSE: Respondent is not in possession of responsive documents.

REQUEST FOR PRODUCTION NO. 33: Please produce all photos and videos of the INCIDENT.

RESPONSE: Responsive documents are produced to the extent they have been located. Discovery is ongoing, and Defendant reserves the right to supplement this response in accordance with discovery rules.

REQUEST FOR PRODUCTION NO. 34: Please produce records regarding the inspection, maintenance, repair and installation of the ANTI-THEFT DEVICE on YOUR shopping carts.

RESPONSE: Respondent is not in possession of responsive documents. Upon information and belief, co-defendant Gatekeeper Systems has produced the relevant documents.

REQUEST FOR PRODUCTION NO. 36: Please produce the shopping cart and ANTI-THEFT DEVICE used by Plaintiff Jean Lubken when she fell in the Fred Meyer store on December 23, 2023.

RESPONSE: Respondent is not in possession of responsive shopping car or ANTI-THEFT DEVICE.

REQUEST FOR PRODUCTION NO. 37: Please produce all records relating to the marketing of the ANTI-THEFT DEVICE.

RESPONSE: Respondent is not in possession of responsive documents. Upon information and belief, co-defendant Gatekeeper Systems has produced the relevant documents.

//

//

//

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.
**AND ANSWERS AND RESPONSES THERETO** – PAGE 23
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

INTERROGATORY NO. 10: Please state the facts upon which each of your affirmative defenses is based.

ANSWER: Defendant objects to this interrogatory to the extent that it seeks the mental impressions of its attorneys, is overly broad and not reasonably calculated to lead to the discovery of relevant evidence. Defendant further objects to this interrogatory to the extent it seeks documents protected under attorney work product or that are privileged.

INTERROGATORY NO. 11: IDENTIFY the name, address, and phone number of the manufacturer of the shopping cart that Jean Lubken used in the Fred Meyer store on December 23, 2023.

ANSWER: Defendant objects to this interrogatory to the extent that it requires the responding party to marshal all of its available proof or the proof the party intends to offer at trial. Further, such an interrogatory is overly broad and not reasonably calculated to lead to the discovery of relevant evidence. Defendant further objects to this interrogatory to the extent it seeks documents protected under attorney work product or that are privileged.

Without waiving the objection above, Defendant answers the following:

Upon information and belief, co-defendant Gatekeeper Systems, Inc., was the manufacturer of the ANTI-THEFT DEVICE that was installed on the shopping car that was used by Jean Lubken.

INTERROGATORY NO. 12: IDENTIFY, by name, address, and telephone number, all entities responsible for the design, manufacture, sale, and distribution of the shopping cart and ANTI-THEFT DEVICE used by Jean Lubken in the Fred Meyer store on December 23, 2023.

ANSWER: Defendant objects to this interrogatory to the extent that it is duplicative of preceding interrogatories and requires the responding party to marshal all of its available proof or the proof the party intends to offer at trial. Further, such an interrogatory is overly broad and not

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND
ANSWERS AND RESPONSES THERETO** – PAGE 11
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

**ATTORNEY CERTIFICATION**

The undersigned attorney for Defendant has read the foregoing answers and responses and they are in compliance with FRCP 26(g).

DATED this 17th day of March, 2025.

SCHEER.LAW PLLC


/s/ Jennifer L. Crow
Jennifer L. Crow, WSBA No. 43746
jen@scheer.law
Attorney for Defendants Fred Meyer Stores, Inc. and The Kroger Co.

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.
**AND ANSWERS AND RESPONSES THERETO** – PAGE 27
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Washington that the following is true and correct:

I am employed by the law firm of Scheer.Law PLLC.

At all times hereinafter mentioned, I was and am a citizen of the United States of America, a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein.

On the date set forth below I served the document(s) to which this is attached, in the manner noted on the following person(s):

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| **CO/ Plaintiffs**<br>Darrell L. Cochran<br>Andrew S. Ulmer<br>Alexander G. Dietz<br>Pfau Cochran Vertetis Amala PLLC<br>909 A Street, Suite 700<br>Tacoma, WA 98402<br>darrell@pcvalaw.com<br>aulmer@pcvalaw.com<br>adietz@pcvalaw.com | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via E-Service**<br>☐ **Via Overnight Mail** |
| **CO/ Plaintiffs**<br>Joseph J.M. Lombino<br>Joseph M. Lombino<br>Lombino Martino PS<br>9315 Gravelly Lake Drive SW, Suite 201<br>Lakewood, WA 98499<br>j.lombino@lombinomartino.com<br>joey.lombino@lombinomartino.com | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via E-Service**<br>☐ **Via Overnight Mail** |
| **CO/ Defendant Gatekeeper System, Inc.**<br>Scott LaSalle<br>The Aguilera Law Group, APLC<br>1201 Pacific Ave, Ste 600<br>Tacoma, WA 98402<br>slasalle@aguileragroup.com | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via E-Service**<br>☐ **Via Overnight Mail** |

//

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.
**AND ANSWERS AND RESPONSES THERETO** – PAGE 28
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

# Exhibit G

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

JEAN LUBKEN and WILLIAM LUBKEN, wife and husband and their marital community,

Plaintiffs,

vs.

FRED MEYER STORES, INC., an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the State of Washington,

Defendants.

No. 3:24-cv-05811-JCC

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO.

**AND ANSWERS AND RESPONSES THERETO**

TO:        JEAN LUBKEN AND WILLIAM LUBKEN, PLAINTIFFS

AND TO:        ALL PARTIES AND ATTORNEYS OF RECORD

### I.        PROCEDURES

You have been served with the original of these interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure.  Please complete the answers within the spaces provided.  If needed, please complete each answer using additional pages.  You are requested to complete the enclosed interrogatories and **returning signed and verified answers to Darrell L. Cochran and**

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND ANSWERS AND RESPONSES THERETO** – PAGE 1
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

**Andrew S. Ulmer of Pfau Cochran Vertetis Amala at 909 A Street, Suite 700, Tacoma, WA 98402.  These answers shall be completed no later than 30 days after the date of service upon you.**

You have also been served with requests for production of documents pursuant to Rule 34 of the Federal Rules of Civil Procedure.  **You are requested to produce the documents listed which are within your custody, control or access for inspection and copying by delivering the original documents to Darrell L. Cochran of Pfau Cochran Vertetis Amala at 909 A Street, Suite 700, Tacoma, WA 98402. These documents shall be produced no later than 30 days from the date of service.**  If this date for production is not convenient, please contact the undersigned counsel at least five (5) business days prior thereto in order to arrange for an alternate time.

If you contend that any document encompassed by any request is privileged, in whole or in part, or if you otherwise object to its production, then with respect to each such document:

1.    State with particularity the reason or reasons for your objection and the nature of any privilege asserted;

2.    Identify each person having knowledge of the factual basis, if any, upon which the privilege or other objection is asserted; and

3.    State the following:

a.    The date of the document;

b.    The nature or type of the document (e.g. letter, memorandum, etc.);

c.    Identify each individual who prepared the document;

d.    Identify each person to whom the document, or a copy thereof, has at any time been provided;

e.    Identify each person from whom the document has been obtained;

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND ANSWERS AND RESPONSES THERETO** – PAGE 2
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

f.      Identify each person or entity having possession of the original of the document (or if the whereabouts of the original are unknown, identify each person or entity known or believed to have a copy or copies thereof);

g.      All other information necessary to identify the document with sufficient particularity to meet the requirements for its inclusion in a motion for production pursuant to FRCP 37; and

h.      If such document was, but is no longer within your care, custody, or control, state what disposition was made of it, who disposed of it, the reason for such disposition, and the date upon which it was so disposed.

In answering these Interrogatories and Requests for Production, you must provide all information available to you through due and diligent inquiry at this time.  In addition, these Interrogatories and Requests for Production are deemed to continue in force throughout the pendency of the lawsuit.  If at any time you become aware of additional information pertaining to the subject matter of these Interrogatories and Requests for Production of Documents, you must promptly supplement your previous responses.  Failure to do so may result in the imposition of sanctions, including an award of attorney fees to the Plaintiff and other sanctions as provided by the Federal Rules of Civil Procedure.

CLAIMS OF PRIVILEGE: If any privilege or immunity is claimed as to any document otherwise covered by this Request, Plaintiffs hereby request that each document for which a privilege or immunity is claimed be identified in a manner such that Plaintiffs and the Court may determine whether or not each such document is entitled to be accorded such privileged status. Such information shall include, but is not limited to:

a.      the name or title of the document;

b.      the type of document;

c.      its date;

d.      its author;

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND ANSWERS AND RESPONSES THERETO** – PAGE 3
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

e.      addressee;

f.      a general description of its subject matter;

g.      its present location;

h.      custodians;

i.      each person who, to your knowledge, has seen it;

j.      the number and/or portion of the request to which each such document be responsive and the basis for such claim of privilege or immunity (e.g., attorney-client privilege, work product doctrine, etc.).

ELECTRONICALLY STORED INFORMATION (ESI): Plaintiffs specifically reserve the right to have all ESI produced in native format, including metadata without alteration or deletion. Should Defendant object to producing ESI in native format, if such is required at a later date by Plaintiffs, Plaintiffs specifically request that Plaintiffs' counsel be contacted immediately so the form of production can be established.

DOCUMENTS IN COLOR: If the original document or ESI is kept in color, the Defendant is specifically requested to produce said document in color.

BATES STAMPING: All documents responsive to these requests are to be Bates stamped by Defendant for identification. If Defendant is unable to Bates stamp responsive documents, Plaintiffs' counsel should be contacted to make arrangements to have the documents Bates stamped.

## II.    DEFINITIONS

1.    As used herein, the term "DOCUMENT(S)" is used in the broadest possible sense and includes, but is not limited to, handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored. The term "DOCUMENTS" also includes

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND
ANSWERS AND RESPONSES THERETO** – PAGE 4
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

information or programs stored in a computer, including electronic mail, whether or not ever printed out or displayed.

2.　　As used herein, the term "ALL DOCUMENTS" shall mean every document, whether an original or copy, known to you or which you can locate or discover by reasonably diligent effort, within your custody, possession or control, or the custody, possession or control of your present or former attorneys, accountants, insurance carriers, representatives, employees and/or agents.

3.　　As used herein, the term "YOU" or "YOUR" or "KROGER" means Defendant The Kroger Co., and any and all representatives, employees, accountants, attorneys, agents, and all others acting on its behalf or at its request.

4.　　As used herein, the term "IDENTIFY" means to describe in detail the factual basis for your answer including all information directly or reasonably related to the request.

5.　　As used herein, the term "INCIDENT" shall mean the incident that occurred on or about December 23, 2023, in the Fred Meyer store located at 4505 S. 19th Street, Tacoma, Washington, 98405 involving Plaintiff Jean Lubken which caused her to suffer personal injury.

6.　　As used herein, the term "INCIDENT LOCATION" shall mean the Fred Meyer store located at 4505 S. 19th Street, Tacoma, Washington, 98405 which is the location where Plaintiff Jean Lubken suffered personal injury on or about December 23, 2023.

7.　　As used herein, the term "ANTI-THEFT DEVICE" shall mean the device manufactured by Gatekeeper Systems, Inc. that was installed on the shopping cart used by Plaintiff Jean Lubken at the time of her fall on or about December 23, 2023, in the Fred Meyer store located at 4505 S. 19th Street, Tacoma, Washington, 98405.

8.　　As used herein, the term "COMMUNICATIONS" is defined as any written transmission of information from one person or entity to another including, but not limited to, facsimiles, letters, emails, notes and memorandum.  "COMMUNICATIONS" also includes any

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND ANSWERS AND RESPONSES THERETO** – PAGE 5
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

auditory records containing information like voicemails, video containing audial statements, and audio recordings of statements.

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND ANSWERS AND RESPONSES THERETO** – PAGE 6
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

RESPONSE: Respondent is not in possession of responsive documents.

REQUEST FOR PRODUCTION NO. 33: Please produce all photos and videos of the INCIDENT.

RESPONSE: Responsive documents are produced to the extent they have been located. Discovery is ongoing, and Defendant reserves the right to supplement this response in accordance with discovery rules.

REQUEST FOR PRODUCTION NO. 34: Please produce records regarding the inspection, maintenance, repair and installation of the ANTI-THEFT DEVICE on YOUR shopping carts.

RESPONSE: Respondent is not in possession of responsive documents.  Upon information and belief, co-defendant Gatekeeper Systems has produced the relevant documents.

REQUEST FOR PRODUCTION NO. 36: Please produce the shopping cart and ANTI-THEFT DEVICE used by Plaintiff Jean Lubken when she fell in the Fred Meyer store on December 23, 2023.

RESPONSE: Respondent is not in possession of responsive shopping car or ANTI-THEFT DEVICE.

REQUEST FOR PRODUCTION NO. 37: Please produce all records relating to the marketing of the ANTI-THEFT DEVICE.

RESPONSE: Respondent is not in possession of responsive documents.  Upon information and belief, co-defendant Gatekeeper Systems has produced the relevant documents.

//

//

//

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND ANSWERS AND RESPONSES THERETO** – PAGE 23
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

**ATTORNEY CERTIFICATION**

The undersigned attorney for Defendant has read the foregoing answers and responses and they are in compliance with FRCP 26(g).

DATED this 17th day of March, 2025.

SCHEER.LAW PLLC

/s/ Jennifer L. Crow
Jennifer L. Crow, WSBA No. 43746
jen@scheer.law
Attorney for Defendants Fred Meyer Stores, Inc. and The Kroger Co.

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND ANSWERS AND RESPONSES THERETO** – PAGE 27
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

CERTIFICATE OF SERVICE

I certify under penalty of perjury under the laws of the State of Washington that the following is true and correct:

I am employed by the law firm of Scheer.Law PLLC.

At all times hereinafter mentioned, I was and am a citizen of the United States of America, a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein.

On the date set forth below I served the document(s) to which this is attached, in the manner noted on the following person(s):

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| **CO/ Plaintiffs**<br>Darrell L. Cochran<br>Andrew S. Ulmer<br>Alexander G. Dietz<br>Pfau Cochran Vertetis Amala PLLC<br>909 A Street, Suite 700<br>Tacoma, WA 98402<br>darrell@pcvalaw.com<br>aulmer@pcvalaw.com<br>adietz@pcvalaw.com | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via E-Service**<br>☐ **Via Overnight Mail** |
| **CO/ Plaintiffs**<br>Joseph J.M. Lombino<br>Joseph M. Lombino<br>Lombino Martino PS<br>9315 Gravelly Lake Drive SW, Suite 201<br>Lakewood, WA 98499<br>j.lombino@lombinomartino.com<br>joey.lombino@lombinomartino.com | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via E-Service**<br>☐ **Via Overnight Mail** |
| **CO/ Defendant Gatekeeper System, Inc.**<br>Scott LaSalle<br>The Aguilera Law Group, APLC<br>1201 Pacific Ave, Ste 600<br>Tacoma, WA 98402<br>slasalle@aguileragroup.com | ☐ **Via U.S. Mail**<br>☒ **Via E-Mail**<br>☐ **Via E-Service**<br>☐ **Via Overnight Mail** |

//

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND ANSWERS AND RESPONSES THERETO** – PAGE 28
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

DATED this 17th day of March, 2025 at Seattle, Washington.

/s/ Schuyler Todd
Schuyler Todd, Legal Assistant
schuylert@scheer.law

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT THE KROGER CO. **AND
ANSWERS AND RESPONSES THERETO** – PAGE 29
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

# Exhibit H

HONORABLE JOHN C. COUGHENOUR

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

JEAN LUBKEN and WILLIAM LUBKEN, husband and wife and their marital community,

Plaintiffs,

vs.

FRED MEYER STORES, INC., an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the State of Washington,

Defendants.

Case No.: 3:24-cv-05811-JCC

DEFENDANT GATEKEEPER SYSTEMS, INC.'S INTERROGATORIES TO PLAINTIFF JEAN LUBKEN WITH ANSWERS THERETO

Plaintiff Jean Lubken submits the following responses to Defendant Gatekeeper Systems, Inc.'s ("Gatekeeper") Interrogatories and Requests for Production.

GENERAL OBJECTIONS

Plaintiff makes the following general objections whether or not separately set forth in response to each Interrogatory and each and every Definition by Defendant.

DEFENDANT GATEKEEPER SYSTEMS, INC.'S INTERROGATORIES TO PLAINTIFF JEAN LUBKEN W/ ANSWERS THERETO - Page 1



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1. Plaintiff's responses to these Discovery Requests are based on Plaintiff's current understanding of the facts after conducting a reasonable investigation, and Plaintiff reserves the right to develop and produce additional information and documents at a later time, including at trial.  In responding to the Discovery Requests, Plaintiff has used reasonable diligence to determine responsive facts and information, and is responding to Defendant's Discovery Requests based upon their good-faith understanding of the Discovery Requests being made.

2. Plaintiff objects to each Discovery Request to the extent it calls for disclosure of material or information that is subject to the attorney-client privilege, the work-product doctrine, or any other applicable privilege and/or immunity recognized by the Federal Rules of Civil Procedure, federal statute, or any other applicable federal or state rule law.  Plaintiff declines to provide such materials or information in response to any Discovery Request, and nothing in these responses and objections is intended to be or is a waiver of the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  To the extent any such privileged or protected information is produced, the production will have been inadvertent and should not be deemed a waiver of any privilege or protection from production.

3. Plaintiff objects to each Discovery Request to the extent it calls for disclosure of Plaintiff's or any other third party's confidential or proprietary information, trade secrets, research, development, commercial information, or any other competitively sensitive information.  Plaintiff also objects to each Discovery Request to the extent it seeks confidential or proprietary information, trade secrets, research, development, commercial information, or any other competitively sensitive information belonging to a third party but entrusted to Plaintiff on conditions of confidentiality and nondisclosure, or joint confidential information of Plaintiff and a third party.

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 2

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

4.       Plaintiff objects to each Discovery Request to the extent it requires responses that would infringe upon the legitimate privacy rights of Plaintiff or other individuals, to the extent such privacy rights and expectations are protected by constitution, statutes, contract, court order, or public policy.

5.       Plaintiff objects to each Discovery Request to the extent it calls for the disclosure of material or information beyond the scope of permissible discovery or not proportionate to the needs of this case, or seeks information that is not relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

6.       Plaintiff objects to each Discovery Request to the extent it is unnecessarily broad or unduly burdensome, or uses vague or ambiguous terms.

7.       Plaintiff objects to each Discovery Request to the extent it calls for the disclosure of material or information not within Plaintiff's exclusive possession, custody, or control, and to the extent it seeks documents or information not available to Plaintiff through a reasonable inquiry. Plaintiff further objects to each Discovery Request to the extent it seeks production of materials that do not exist.  Plaintiff will only produce materials and information maintained in their possession, custody, or control.

8.       Plaintiff objects to each Discovery Request to the extent it calls for disclosure of material or information already available to Defendants or Defendant's counsel or is otherwise available in the public domain.

9.       Plaintiff objects to each Discovery Request to the extent it calls for speculation, opinion, expert testimony, or a legal conclusion.

10.      Plaintiff objects to the Discovery Requests to the extent they are cumulative of Defendant's other discovery requests and the information sought under such Discovery Requests

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 3

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

is more appropriately and efficiently obtained through other discovery methods such as requests for admissions.

11.　　Plaintiff objects to each Discovery Request to the extent it calls for information or documents in the possession of third parties or seeks information or documents provided by third parties to counsel for Plaintiff.

12.　　Plaintiff objects to those Discovery Requests that are improperly compound, conjunctive, or disjunctive, or contrary to any agreements of the parties regarding the scope of discovery.

13.　　Plaintiff objects to each Discovery Request to the extent it seeks to impose duties or obligations on Plaintiff exceeding the requirements of the Federal Rules of Civil Procedure, the Local Rules, or any order of this Court.  Plaintiff will construe and respond to the Discovery Requests in a manner consistent with the Federal Rules of Civil Procedure and the Local Rules.

14.　　Plaintiff objects to each Discovery Request to the extent it seeks the production of "all" information responsive to the requested categories on the grounds that such Discovery Requests are overly broad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence, and not proportionate to the needs of this case. Plaintiff's responses to Discovery Requests that use such phrases are limited to the materials that Plaintiff and her counsel were able to obtain using reasonable diligence and judgment.  Such phraseology should not be construed as a representation that each and every document in Plaintiff's possession or control has been examined in connection with these responses or any related production.

15.　　Defendant's Discovery Requests also repeatedly ask for all information "relating" or "relating" to certain matters.  But federal courts have roundly and repeatedly rejected such "relating" or "related" discovery requests under the federal rules governing discovery as

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 4

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

necessarily vague and overbroad.  The word "relate", like the phrase "relating in any way" is overbroad and is capable of being construed to encompass all of history and humankind.  *See Cotracom Commodity Trading Co. v. Seabord Corp.,* 189 F.R.D. 655, 656-66 (D. Kan. 1999) (use of the phrase ""relating to"" is "facially over broad"-so much so that responding party is under no duty to attempt a response or to respond to any inclusive unobjectionable portion of the request containing that phrase); *Doricent v. American Airlines, Inc*., No. 91-12084Y, 1993 U.S. Dist. LEXIS 15143, at *21-22 (D. Mass. Oct. 19, 1993) ("as all life, like law, is a seamless web, . . . , employment of the phrase "relating to" is essentially meaningless. The 'relating to' rubric of itself mandates nothing and explains nothing."); *see also W. Restaurant, Inc. v. Union Pacific R.R. Co*., No. 00-2043-CM, 2002 U.S. Dist. LEXIS 14796, at *5-6 (D. Kan. July 23, 2002) ("Use of broad terms such as "relate to" or "relating to" provides no basis upon which an individual or entity can reasonably determine what documents may or may not be responsive. . . . the phrases 'relate to' and 'relating to' do not modify a specific type of document, but rather all documents; thus, their very use make the requests overly broad on their face."); *Robbins v. Camden City Bd. Of Educ*., 105 F.R.D. 49, 60 (D.N.J. 1985) ("A literal reading of [the discovery request] would require the defendant to provide a copy of every document in its possession, since all of these documents could conceivably 'refer or relate' to plaintiff's employment. Such a request is too broad and ambiguous").  As stated by Judge William J. Young in *Doricen, supra*:

> The phrase 'relating to' is the darling of young litigators--those lawyers who abuse the discovery and trial process by substituting harassment for thought. So vague and imprecise is the usage, however, that it has frequently been held improper when found in document requests since it does not apprise the recipient of the scope of the documents to be produced.

Plaintiff accordingly objects to any and all "relating" or "related to" requests by Defendants.

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 5

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

16.     Each response is subject to all appropriate objections (including, but not limited to, competency, relevancy, materiality, propriety, and admissibility objections). All such objections are expressly reserved. Each response is without prejudice to, and does not constitute a waiver of, Plaintiff's right to contend at trial or any other proceeding that any materials produced by Plaintiff are inadmissible, irrelevant, or immaterial, or to object to the use of any materials based on authenticity, foundation, privilege, vagueness, ambiguity, or any other appropriate ground.  Nor do Plaintiff's responses to these Discovery Requests constitute any admission or acknowledgement that the requested information is properly discoverable, and Plaintiff do not waive and has not waived any objection to any further discovery requests propounded by Defendant.

DATED this 13th day of January, 2025.


LOMBINO ● MARTINO, P.S.
By */s/ Joseph M. Lombino*
Joseph M. Lombino, WSBA No. 52156


PFAU COCHRAN VERTETIS AMALA, PLLC

By */s/ Darrell L. Cochran*
Darrell L. Cochran, WSBA No. 22851
Andrew S. Ulmer, WSBA No. 51227
Alexander D. Dietz, WSBA No. 54842
*Attorneys for Plaintiffs*

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 6



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

# **INTERROGATORIES**

INTERROGATORY NO. 1:  Describe all injuries, ailments or pains which you claim to have suffered as a result of the Incident, stating the parts of your body so affected, the severity of such injuries, ailments or pain and the duration of each.

**ANSWER: Objection: Unduly burdensome, vague, and calls for expert opinion. Without waiving objections, Plaintiff provides the following response:**

**As a result of the incident, Plaintiff suffered a Fractured Right Hip and injury to her neck and pain on the right side of her body where Plaintiff fell.**

- **Plaintiff is still suffering from pain on the right side from her hip through the thigh.  Plaintiff no longer has pain in her right arm.  Plaintiff continues to have pain in her neck.**

- **Plaintiff continues to have weakness on the right side. When giving a person a hug, Plaintiff tends to fall into them for support until she can become stabilized.**

- **Plaintiff attends church regularly. Prior to the injury, Plaintiff would typically kneel during different segments of the service. Since the incident, kneeling is painful and cannot be accomplished and as a result, Plaintiff no longer kneels during church services.  Kneeling for daily tasks is also unmanageable.**

- **Whereas Plaintiff used to walk for several miles at a time at a very brisk pace, she can no longer walk at even close to the pace she used to walk.  Moreover, she can no longer walk at the distances she used to walk.**

- **Engaging in an intimate marital relationship is uncomfortable.**

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 7

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

at schools in the community. January 2024 Plaintiff was responsible for four pre-internship students and five student teachers.

Occupation 2:    Vacation Consultant

1.    Ms. Victoria Reyder

Franchise Owner

6940 Kimball Dr.

Gig Harbor, WA98335

Phone: 253-387-7770

vreyder@expediacruises.com

2.    Vacation Consultant

6940 Kimball Dr.

Gig Harbor, WA98335

Plaintiff has helped customers plan detailed air, land, and sea vacations and other travel accommodations since February of 2019.

Discovery is ongoing and Plaintiff reserves the right to supplement this response.

INTERROGATORY NO. 6:  Describe in detail how the Incident occurred.

ANSWER: In Plaintiff's own words:

DEFENDANT GATEKEEPER SYSTEMS, INC.'S INTERROGATORIES TO PLAINTIFF JEAN LUBKEN W/ ANSWERS THERETO - Page 15

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

- **I was at the Fred Meyer Store on 19th and Stevens, Tacoma, WA to buy a hand mixer.**

- **I selected a shopping cart and proceeded toward the appropriate aisle to select a hand mixer.**

- **As I was walking down the center of the aisle, the wheel on the right side of the cart abruptly stopped. My body continued forward and, as I took a step forward, the cart wheel tripped me resulting in my falling into a side aisle on the right. I was holding onto the handle of the cart. The cart fell on top of me.**

- **I fell on my right side with my hip striking the floor before the rest of my body.**

- **I immediately experienced tremendous pain and was lying on the floor unable to move or get up.**

- **There were no store employees nearby to assist. Two shoppers saw me lying there but continued walking by without offering to help. Another shopper then stopped to ask me if I'd like her to lift the cart off from me. I replied, "Yes, I would." She lifted the cart to an upright position and said that she was going to notify a cashier that I needed help. The shopper left. There were still no store employees anywhere around to assist me. The shopper returned to tell me that she had made the notification and was assured that someone would be coming to help me. I thanked her and she left, presumably to continue her shopping. Despite the assurance the shopper told me she had received, no store employee came to my aid.**

- **With great difficulty, I went from lying flat on my right side to a sitting position. This was extremely painful. Having no one there to help, I used the support of the shelves to raise myself to a standing position and to edge myself closer to the center aisle**

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 16



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

hoping to be seen and get assistance. There was a mobile display that I leaned into to stop me from falling. I positioned myself in front of one of the security cameras and motioned into the camera that I needed assistance. All this effort failed to attract or obtain any help from any store employees.

- I supported myself between two rows of shelving. A female store employee finally saw me as she walked by and asked me if I was looking for something that she could help me find. I told her, "Yes," and that I needed help as I couldn't stand up by myself. I told her about the incident involving the cart. She checked to see that I was able to lean against the shelving and then went to summon assistance. She returned and seven (7) other Fred Meyer staff also came.

- One of the store personnel that came was the store manager/supervisor, Kenny.  He was wearing a white shirt with his name on it. A woman brought a clip board with paperwork for me to complete.  Two (2) male security guards and additional workers also arrived.

- I was offered a chair to sit in while filling out the forms. I was asked if I was going to drive myself home. I replied that I knew that I couldn't drive because the pain was too great and limitations too severe.  Despite this, no one offered to give me a ride home nor did anyone call 911 or an ambulance.  The store personnel seemed to be focused on how I was going to pay for the hand mixer and get home. While I was completing the paperwork, the manager asked if I thought I could sit there for a few minutes. He had an idea about how I could pay for the mixer and get to an exit door avoiding longer lines at the cash register. He then returned to me with an office chair on wheels. He assisted me into this chair which was very painful. The store manager selected a mixer for me, assuring me that it was the best

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 17



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

choice of what was available in the store and Kenny began wheeling me to a register for the purpose of my paying for the mixer.  At no time did Kenny or anyone else inquire about further help for me or transportation from the store to a hospital or home nor did anyone call 911 or an ambulance despite my being in obvious pain with extremely limited movement. I believe I was in shock as I did not think to call 911 myself or insist that store personnel do this.  During this time, my pain was elevating and, in retrospect, being in a sitting position increased the pain I was feeling.

• I then thought of calling my husband to see if he could come to the store to assist me. Not connecting with him, I then called my grandson, Nicholas, who said that he would come right away. I called my husband again and reached him that second time and my husband left to come to the store.

• Having reached someone to come to the store to help me, the store manager had me get out my credit card, hold the mixer and my purse on my lap and he wheeled me to the cashier at the rear of the store. I paid for the mixer.  Nicholas arrived before my husband.  (He took a picture of me being rolled toward the exit of the store in the office chair). Shortly thereafter, my husband, Bill, arrived. He saw Nicholas, the store manager and me. It was decided that he would get my car and meet us at the exit near the Milgard Center.

• The store manager, Nicholas, and I proceeded outside of the building.

• With great difficulty and pain, Bill and Nicholas were able to transfer me into my car.

• Bill transported me to St Joseph Hospital Emergency Room. We were offered a wheelchair to use by hospital staff.  I required assistance in getting into the wheelchair.

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 18

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

- **I registered in the Emergency Room. I was unable to bear weight. X-rays were taken and confirmed a fracture of my right hip which would require surgery.**

- **I was admitted to the hospital.**

- **Emergency surgery scheduled for the morning of December 24, 2023.**

INTERROGATORY NO. 7: Describe in detail the particular acts or omissions that Gatekeeper, or its agents, did or did not perform which constitute the basis for your complaint.

**ANSWER: Objection: This interrogatory improperly requires Defendant to describe the evidence it will rely on to prove facts and improperly seeks a "Dress rehearsal" of Plaintiff's case for trial. See, e.g., Weber v. Biddle, 72 Wn.2d 22, 29, 431 P.2d 705 (1967). requests information that will not be known until after additional discovery is completed.**

**Without waiving, Plaintiff provides the following response:**

**Please refer to Plaintiff's Complaint and Plaintiff's description of how the incident occurred in answering Interrogatory No. 6. Discovery is ongoing, and Plaintiff reserves the right to supplement this response.**

INTERROGATORY NO. 8: Describe in detail the particular acts or omissions that Fred Meyer, or its agents, did or did not perform which constitute the basis for your complaint.

**ANSWER: Objection: This interrogatory improperly requires Defendant to describe the evidence it will rely on to prove facts and improperly seeks a "Dress rehearsal"**

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 19



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

DATED this 17th day of March, 2025 at Seattle, Washington.


/s/ Schuyler Todd
Schuyler Todd, Legal Assistant
schuylert@scheer.law

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS
FOR PRODUCTION TO DEFENDANT FRED MEYER STORES, INC.
**AND ANSWERS AND RESPONSES THERETO** – PAGE 29
No. 3:24-cv-05811-JCC

**SCHEER.LAW PLLC**
2101 FOURTH AVE., STE 830
SEATTLE, WA 98121
P: (206) 800-4070

## VERIFICATION

I, _Jean A Lubken_ , acknowledge and affirm under penalty of perjury under the laws of the United States of America that I have read Defendant's interrogatories and requests for production, and the answers and responses thereto, know the contents thereof and state the foregoing answers and responses are true and complete to the best of my knowledge.

DATED this **13** day of **January** , 2025.

By: _Jean A Lubken_
Plaintiff

## ATTORNEY CERTIFICATION

The undersigned attorney for Plaintiff has read the foregoing answers and responses and they are in compliance with FRCP 26(g).

DATED this 13th day of January, 2025.

By: _Andy S Ulmer_
Darrell L. Cochran, WSBA #22851
Andrew S. Ulmer, WSBA #51227
Alexander G. Dietz, WSBA #54842
*Attorneys for Plaintiffs*

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 30

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## CERTIFICATE OF SERVICE

I, Katie Hedger, hereby declare under penalty of perjury under the laws of the United States of America that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date, I placed for service the foregoing via E-mail by directing delivery to the following individuals:

Jennifer L. Crow
Ahbra Franco
Sheer Law, PLLC
2101 Fourth Ave, Suite 830
Seattle, WA 98121
Jen@scheer.law; ahbraf@scheer.law; josephm@sheer.law; shiloha@scheer.law

*Counsel for Defendant Fred Meyer Stores, Inc. and The Kroger Co.*

Scott La Salle
The Aguilera Group, APLC
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
slasalle@aguileragroup.com

*Counsel for Defendant Gatekeeper Systems, Inc.*

DATED this 14th day of January, 2025.

/s/ Katie Hedger
Katie Hedger
Legal Assistant

DEFENDANT GATEKEEPER SYSTEMS,
INC.'S INTERROGATORIES TO
PLAINTIFF JEAN LUBKEN W/ ANSWERS
THERETO - Page 31



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654