**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

JEAN LUBKEN and WILLIAM LUBKEN, husband and wife and their marital community,

       Plaintiffs,

  vs.

FRED MEYER STORES, INC., an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the State of Washington,

       Defendants.

NO. 3:24-CV-05811-JCC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT GATEKEEPER, INC.'S MOTION FOR SUMMARY JUDGMENT**

**NOTED FOR HEARING:**
**MAY 12, 2026**

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION FOR
SUMMARY JUDGMENT

No. 3:24-CV-05811-JCC



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

## I.    INTRODUCTION

Plaintiffs respectfully request that the Court deny Defendant Gatekeeper Systems, Inc.'s (hereinafter "Gatekeeper") motion for summary judgment with respect to Plaintiffs' claims brought under Washington's Product Liability Act ("WPLA") and for loss of consortium.

With respect to Plaintiffs' WPLA claim, Gatekeeper does not argue that its product is free from defects, is not unsafe, or that its product is not unsafe beyond what would be expected from ordinary consumers of the product. Rather, Gatekeeper's sole contention bears on the element of proximate causation. Gatekeeper falsely asserts that there is no evidence regarding the cause of Plaintiff Jean Lubken's fall, however witnesses have testified that Ms. Lubken's fall was caused by the anti-theft wheel manufactured by Gatekeeper. Ms. Lubken clearly and unequivocally testified that Gatekeeper's anti-theft wheel locked within the store, directly causing her fall. She testified that there was no other condition within the premises that caused the shopping cart to suddenly brake. Gatekeeper failed to advance any evidence of any other cause of the fall other than its product.

Further, the only expert opinion advanced in this case is that there were no other biomedically plausible influences on Ms. Lubken that were present that may have caused a fall, nor any other mechanically plausible influences on the cart's abrupt braking or swerving that would have caused the fall but for Gatekeeper's anti-theft wheel locking, including floor debris, displaced shopping items, or random wheel hub resistance. The only expert opinion in this case is that the **only reasonably plausible cause** of the at-issue traumatic event was the hazard posed by Gatekeeper's anti-theft product itself. Given that all legal authorities stand for the proposition that the issue of proximate causation is an issue of fact for a jury to decide,

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT



Gatekeeper's motion seeking dispositive relief on a "factually disputed" issue must fail.[1]

The sole argument advanced by Gatekeeper regarding Plaintiffs' WPLA claim was that its wheel was not a cause of the fall. As this is untrue, Gatekeeper's motion must be denied particularly where issues bearing on causation are not appropriate for summary judgment. Importantly, Gatekeeper does not argue that its product was not defective or unsafe beyond that which an ordinary consumer would anticipate. Nor could it – scores of incident reports which Fred Meyer concealed from Plaintiffs and this Court which Plaintiffs obtained from a different plaintiff who has filed claims against Defendants document many injuries customers sustained from Gatekeeper's anti-theft wheel. Defendants' fraudulent concealment of this evidence is the subject of a contemporaneous Motion for Contempt and Sanctions which Plaintiffs filed.[2] The evidence clearly establishes that Gatekeeper's product caused many injuries similar to the fall sustained by Ms. Lubken, revealing an unsafe condition with the design of the subject product. The pattern of injuries caused by Gatekeeper's product provides additional evidence establishing that Plaintiff Jean Lubken's fall was caused by the anti-theft wheel.

Gatekeeper's remaining arguments pertain to Plaintiffs' common law claims of negligence, gross negligence, and premises liability. Given that these claims are focused on Fred Meyer as negligence claims are subsumed under the WPLA, the Court's order should reflect that the WPLA provides for the exclusive remedy for product liability claims and that

---

[1] This is not technically in "factual dispute" where Gatekeeper failed to present any evidence that there was any other cause of the abrupt brake other than its own product. To the contrary, it is Gatekeeper that is speculating that there **might** have been some other cause, yet this assertion is entirely unsupported by the record.

[2] Additionally, Plaintiffs move the Court for a spoliation finding against Fred Meyer for failing to preserve the subject product. It would be fundamentally unfair for Gatekeeper to gain a tactical advantage by arguing that there is no evidence that its product locked the wheel and caused Ms. Lubken's fall when its co-defendant and customer, Fred Meyer, failed to preserve the evidence in its custody despite admitting that it anticipated litigation immediately when responding to Ms. Lubken's fall.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 2 | No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

this statute supplants, but does not abrogate, the common law. Accordingly, Plaintiffs' claims against Gatekeeper are subsumed under the WPLA.

Finally, given that there is sufficient evidence to establish that Gatekeeper is liable for Ms. Lubken's fall under the WPLA, Plaintiff William Lubken, Jean Lubken's husband, may recover for consortium damages as permitted under Washington common law. Accordingly, Plaintiffs request that the court enter an order which: (1) denies Gatekeeper's motion as to Plaintiffs' WPLA claim; (2) holds that the WPLA provides for the exclusive remedy for Plaintiffs' product liability claims against Gatekeeper and therefore Plaintiffs' common law negligence, gross negligence, and premises liability claims are subsumed under the WPLA; and (3) denies Gatekeeper's motion as to Plaintiffs' loss of consortium claim.

## II.   RELEVANT FACTS

### A.   Plaintiff Jean Lubken's Fall Was Caused by Gatekeeper's Anti-Theft Wheel Locking Inside the Middle of the Store

On December 23, 2023, Ms. Lubken was pushing a shopping cart inside a Fred Meyer store when the wheel of her shopping cart stopped abruptly, causing her to fall.[3] Ms. Lubken was familiar with the store having worked at the high school across the street and patroned the store a number of times over the years.[4] She was aware that the shopping carts had security features.[5] On this day, she went to the store at approximately 1:50 p.m. to purchase a hand mixer.[6] She was present at the store approximately five to ten minutes prior to the fall.[7] She

---

[3] Ulmer Decl., at Ex. 1 at 53:4-54:20, 54:9-20.

[4] *Id*. at 49: 3-18.

[5] *Id*. at 49:16-22.

[6] *Id*. at 50:1-4.

[7] *Id*. at 50:10-13.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 3  |  No. 3:24-CV-05811-JCC

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

testified that the first shopping cart she tried to use "wouldn't move" so she selected another cart and proceeded into the store to find a hand mixer.[8]  The only item she had in her cart was her purse.[9]

At some point within the store, the cart stopped abruptly.[10]  As Ms. Lubken's body was still in motion as the cart stopped, her right foot heel interacted with the cart causing her to fall onto her right side into the side aisle.[11]  The cart also fell on top of her as she fell.[12]  Ms. Lubken laid on the ground for two minutes until another customer came across her, moved the shopping cart off of her, and went to get Fred Meyer staff.[13]

When asked about her understanding about the cause of the fall, Ms. Lubken clearly testified that the cart's wheel locking and causing a sudden halt is what caused her fall.  She testified that although she is not in the profession of designing shopping carts, she knows that the cart stopped on the spot.[14]  She testified that there was nothing on the ground such as debris or gravel or sound that would have caused the shopping cart to abruptly brake.[15]  Her testimony about the shopping cart wheel locking was clear and unequivocal:

Q. So other than you experiencing that the cart halted are you aware of any other information that the cart in any way malfunctioned?

[…]

A. What? The cart did malfunction. The cart did halt. The cart did lock.

---

[8] *Id*. at 50:13-19.
[9] *Id*. at 51:3-14, 52:20-22.
[10] *Id*. at 53:4-6.
[11] *Id*. at 53:7-13.
[12] *Id*. at 56:9-14.
[13] *Id*. at 58:23-59:14.
[14] *Id*. at 53:14-20.
[15] *Id*. at 62:18-23.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 4  |  No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Q. Other than the cart halting what caused you to believe that the cart malfunctioned?

A. Because it locked, and I couldn't move it, and then I had the following fall.

Q. You said you couldn't move the cart?

A. Yes.

Q. So the cart halted and then you subsequently tried to move it?

A. The cart locked. As I said before I was pushing the cart forward and it locked.

Q. Right. The cart came to a halt?

A. Correct.

Q. And then you fell over and the cart fell over; correct?

A. Yes.

Q. Okay. Did you ever receive or obtain any information that the cart locked in any way?

A. I know that the cart locked because I was the one experiencing it, and when it did so, I then could not move forward.

[…]

Q. Okay. We can go ahead. We can keep going.

A. Okay. Let's please do. I'm pushing the cart. The cart wheel locked. The cart itself locked. I don't know. I'm not an engineer as to whether it malfunctioned or what word you're having trouble with there, but I was in a situation where the cart locked and that is what happened ahead of the fall.

[…]

Q. Do you know why the cart stopped?

A. The system locked.

[…]

Q. So how do you know that the system locked?

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 5 | No. 3:24-CV-05811-JCC



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

A. It was unable to move, and I was propelled to the ground.[16]

Fred Meyer home assistant manager Angela Padilla responded to Ms. Lubken's fall. Immediately after the fall incident, Ms. Padilla filled out an incident report with Ms. Lubken and submitted the claim to Sedgwick, Fred Meyer's insurance provider.[17] Ms. Padilla wrote in the incident report to the insurance carrier that Ms. Lubken reported that the shopping cart's wheel had locked up which caused her to be injured.[18]  Ms. Padilla had a phone conversation with Sedgwick insurance on the day of the incident.[19]  Ms. Padilla testified that the reason she filled out the incident report to send to the insurance carrier on the day of the incident was because litigation was anticipated as soon as the accident occurred.[20]

Despite submitting an insurance claim immediately after the incident and that litigation was anticipated, Fred Meyer failed to preserve the cart.  Ms. Padilla testified that the subject cart was located by Ms. Lubken when she located Ms. Lubken on the floor following her fall.[21] Ms. Padilla also testified that she was able to identify which cart was used during the incident.[22] Additionally, in filling out the insurance claim with Sedgewick, Ms. Padilla answered  "Yes" to the question, "Is there video of the actual incident?"[23]  However, when asked in her deposition why only 3 video tapes were produced in discovery – none of which depict the fall incident or what Kroger Defendants did with the cart after the fall – Ms. Padilla claimed that

---

[16] *Id*. at 76:2-78:22.

[17] Ulmer Decl. at Ex. 2.

[18] *Id.*

[19] Ulmer Decl., Ex 3 at 53:10-15.

[20] *Id*. at 93:13-94:2.

[21] *Id.* at 49:13-23.

[22] *Id.* at 51:2-5.

[23] Ulmer Decl., Ex 2 at 4.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 6  |  No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

she did not know what happened with the footage because "the world of loss prevention is a secretive world" and was unable to provide testimony about the camera system at the store.[24] When Mr. Lubken returned to the store the day after Ms. Lubken's fall to request to inspect the cart, Fred Meyer staff indicated that the cart "had been put back into circulation."[25]

### B. Fred Meyer Documented Many Incident Reports of Injuries Sustained by Customers Using Gatekeeper's Product

Plaintiffs have filed a contemporaneous motion for contempt and sanctions relating to Fred Meyer's concealment of incident reports produced in parallel litigation documenting many injuries sustained by customers using Gatekeeper's anti-theft wheel.  Counsel for plaintiff in parallel litigation provided Plaintiffs in this matter over 400 pages of incident reports dated 2020 through 2026 occurring in the Fred Meyer stores located in Washington State, documenting many reported injuries due to Gatekeeper's anti-theft wheel abruptly stopping.[26] The many reported injuries are consistent with Ms. Lubken's incident, where the shopping cart locked without warning causing bodily injuries to many customers.

Included in the batch of incident reports are numerous incidents which occurred within the Fred Meyers store between the grocery store aisles and not at the exit doors, similar to Ms. Lubken, which involved a cart suddenly stopping and causing injury.[27]  There is likewise an incident report of a customer falling after the cart locked up where the cart, similar to Ms. Lubken's, flipped over.[28]

### C. Sean Kohles, An Expert in Mechanical Engineering and Biomechanics,

---

[24] Ulmer Decl., Ex. 3 at 18:1-20:20.

[25] Ulmer Decl., Ex. 1 at 66:3-9.

[26] Ulmer Decl., Ex. 4.

[27] *Id*. at Bates Pages DEF FRED MEYER_000193-199, 327-329.

[28] Id. at Bates Pages DEF FRED MEYER_000275-276.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 7  |  No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

**Opines That Gatekeeper's Product is Unsafe, Flawed in Its Design, and Was the Only Plausible Cause of Ms. Lubken's Fall**

Plaintiffs retained Sean S. Kohles, Ph.D., in this matter to inspect the subject product and premises. Dr. Kohles is a biomechanical engineer with fundamental training in engineering mechanics and bioengineering, disciplines that apply mathematics, physics, and engineering technologies toward the study of human and device function.[29] He has published over 250 journal articles, conference papers, and book chapters describing Dr. Kohles' research in cell, tissue, joint, biomaterials, implant, body, and device biomechanical engineering.[30] These articles describe the application of mechanical engineering, biomechanics, bioengineering, biomedical science, biostatistics, and epidemiology to living systems.[31] He is an active member of eight professional societies, having achieved the honor of Fellow Grade in the American Institute for Medical and Biological Engineering (AIMBE) and the Biomedical Engineering Society (BMES).[32]

Dr. Kohles has trained nearly 1,200 students in over 30 lecture-based courses relevant to biomechanics and bioengineering including fundamental courses in physics, mechanical engineering, biology, and design.[33] His forensic practice has led to opinions in cases addressing injury biomechanics, medical device failure, consumer product failure, toxic tort, medical malpractice, and criminal defense issues.[34] Dr. Kohles is routinely qualified as an expert in mechanical & materials engineering, biomedical engineering, bioengineering, biomechanics,

[29] Kohles Decl., ¶ 2.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 8 | No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

and clinical science in both civil and criminal courts at the circuit and federal levels (USA and Canada).[35]

Dr. Kohles reviewed the documents exchanged in discovery, incident reports of prior injuries related to the subject product, video recordings of the store from the date of the incident, Ms. Lubken's medical records, deposition transcripts of witnesses, and documents produced by Defendants Fred Meyer and Gatekeeper in the parallel litigation, *Larocque v. The Kroger Co., et al.*, W.D. Wash. No. 3:25-cv-05380-MJP.[36]  Additionally, Dr. Kohles conducted an inspection of the subject Fred Meyer store including a direct examination and testing of Fred Meyer's grocery carts and theft protection devices.[37]

Dr. Kohles' mechanical engineering, biomedical engineering, biomechanics, and clinical science conclusions are as follows:

1) Inspection, repair, and maintenance flaws associated with the grocery cart theft prevention system included:

    a. Degradation associated with environmental exposures,

    b. Inconsistent wheel battery charge,

    c. Worn and damaged wheels including rolling surfaces,

    d. Worn and damaged wheel brake mechanisms,

    e. Spurious wireless signals throughout the store,

    f. No evidence of wheel functional status inspection,

    g. Inconsistent basic wheel performance including rolling and swiveling freedom;

2) Design, manufacturing, and functional flaws within the grocery cart theft-

---

[35] *Id.*

[36] Kohles Decl., Ex. 2 at 1.

[37] *Id.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT GATEKEEPER, INC.'S MOTION FOR SUMMARY JUDGMENT

Page 9  |  No. 3:24-CV-05811-JCC

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

protection system included:

a. Inconsistent wireless signal responsiveness,

b. Delayed master to slave wheel interactions,

c. Inconsistent placement of lockable wheels,

d. Inconsistent permission time periods for cart use,

e. Differing normal and brake wheel material properties including wear resistance,

f. Lack of weatherproofing of brake wheel hubs;

3) The overall inconsistent nature of the grocery cart theft-prevention system created a consumer product that has been shown to cause injuries within any population of users;

4) Proper maintenance of an improved alternative design could have mitigated the hazardous nature of the at-issue product;

5) Minimal warnings were evident representing the hazardous nature of spontaneous cart wheel braking situations;

6) The biomechanical motions and forces experienced by Ms. Lubken including a dynamic impact load of ~903 pounds during her fall to the floor were directly responsible for causing her diagnosed traumatic injuries.[38]

Dr. Kohles opines that Ms. Lubken's "body experienced such trauma during the grocery cart's unexpected deviation from its pathway and her subsequent fall so as to have loaded her musculoskeletal and nervous tissues in a manner consistent with known injury mechanisms."[39] Gatekeeper "designed and manufactured a product with functional flaws which also directly contributed to the hazardous incident."[40]  Based on his review of the many similar injury complaints, "the product poses an unreasonable and unsafe hazard to any user" and that had a

---

[38] *Id*. at 6-7.

[39] *Id*. at 7.

[40] *Id*.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT GATEKEEPER, INC.'S MOTION FOR SUMMARY JUDGMENT

Page 10 | No. 3:24-CV-05811-JCC

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

"full failure mode effects analysis had been conducted on the present functionality within the subject shopping environment prior to any hazardous event and in response to the many reported failures, the at-issue braking malfunction could have been predicted."[41]

In support of his opinions and conclusions, Dr. Kohles performed an analysis of the incident mechanics and injury biomechanics as described in detail in his report.[42]  His analysis included a direct inspection of exemplar grocery carts and store environment as well as an exploration of the statistical variances and sensitivities associated with the known and assumed contributing variables.[43]  Overall, this approach demonstrated that the physical exposure to an inconsistently performing consumer product such as the product at issue in this case has the likelihood to cause the type of injuries sustained by Ms. Lubken.[44]

In an effort to assess cart kinematic performance during free-rolling and controlled wheel braking, testing was conducted within the at-issue Aisle #86 where Ms. Lubken fell.[45] Dimensions of the aisle were noted as 20.25 feet long and 5.4 feet wide.[46]  The flooring surface appeared to be polished concrete.[47]  A store-owned, Gateway Cart Key was used to engage the wheel brakes at prescribed moments.[48]  A velocity sensor (Stalker Sport Pro3 Radar Gun) was used to accurately determine cart release speeds at the moment of controlled wheel braking.[49]

---

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 7-8.

[45] *Id.* at 9.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 11 | No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Approximately 12 total rolling tests were run from a random selection of three different small and large carts each.[50]  Carts were manually pushed down the aisle perpendicular to a floor marker and released just prior to that marker.[51]  Subjective cart speeds were maintained as consistently as possible in the range of ~2.5 to 3.5 miles per hour (3.7 to 5.1 feet per second).[52]  The overall inconsistent braking of a front wheel, back wheel, or both wheels led to variable skid distance results:

- Small Cart frictional skidding (braking): 47 to 52 inches;

- Large Cart frictional skidding (braking): 34 to 51 inches.[53]

During the brake and skid phase of motion, each cart consistently veered its movement pathway generally towards the side of the front Gateway wheel, whether mounted on the left or right side of the cart.[54]

A review of the security room as well as an entrance arrangement also identified how the theft prevention system was arranged.[55]  The intended wheel brake deployment of any particular cartwheel would occur at the exits as a would-be thief would attempt to remove a cart beyond or without the system's 'permission' time period.[56]  Contrary to the intended design, Dr. Kohles opined that there were spurious wireless signals throughout the store and that the product displayed inconsistent wireless signal responsiveness and delayed master to slave

---

[50] *Id*. at 9.

[51] *Id*.

[52] *Id*.

[53] *Id*. at 10.

[54] *Id*.

[55] *Id*. at 11.

[56] *Id*.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 12  |  No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

wheel interactions.[57]  Dr. Kohles also took issue with the wheel hub braking mechanics, opining that the wheels as currently designed are set to brake instantly upon triggered deployment, which is a feature that becomes more variable and less controlled as the brake and wheel surface experiences wear and degradation, along with weakening individual battery strength.[58]  Dr. Kohles opines that there was a feasible alternative design by incorporating a tapered brake load response which can still assure eventual full-stop braking but over a longer distance and distance.[59]  This redesign suggestion could give the unsuspecting consumer an opportunity to cognitively alter their gait pattern in order to avoid injury, while still deterring theft of the cart and contents.[60]

Dr. Kohles noted that in a recent published study, which queried the US Consumer Product Safety Commission's National Injury Surveillance System (NEISS) database, identified 21,731 physical contact-related injuries occurring inside retail stores in 2012, and of those reported incidents, shopping carts were involved in 29.4% of the injury narratives with cart-related fractures referenced in 23.4% of those incidents.[61]  This statistically high ration of injuries caused by carts is exacerbated by the sudden braking of the subject anti-theft wheel. Dr. Kohles opines that the unexpected nature of the grocery cart wheel's braking along with an altered cart pathway limited any protective user reaction.[62]  In comparison, the quickest average time a non-distracted driver can evasively react to a roadway situation has been reported to be

---

[57] *Id*. at 6-7.

[58] *Id*. at 13-14.

[59] *Id*. at 14.

[60] *Id*.

[61] *Id*. at 12.

[62] *Id*. at 15.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 13  |  No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

~0.4 seconds.[63]  Thus, the comparative time-frames would have limited Ms. Lubken's response time when controlling the cart to a similar time as her fall to the floor.[64]  Her instinctive reaction to continue grasping the grocery cart would not have prevented, slowed, or buffered her fall.[65]

Dr. Kohles also ruled out other factors as not having contributed to Ms. Lubken's fall. With respect to her physical health, Dr. Kohles reviewed Ms. Lubken's medical records and in considering her medical history, opines that despite a previous total knee replacement and cervical spine fusion, Ms. Lubken was fully functional with no restrictions in her daily activities.[66]  He finds that her reactive response during the incident was protective in nature.[67]

He also considered alternatively plausible influences on the disrupted cart pathway as associated with the traumatic event.[68]  Dr. Kohles opines that no other biomedically plausible influences on her at-issue injury mechanisms were present, including previous knee or spine surgeries or any associated altered joint function.[69]  In addition, he found there to be no other mechanically plausible influences on the cart's abrupt braking or swerving were present, including floor debris, displaced shopping items, or random wheel hub resistance.[70]  Dr. Kohles concludes that the only reasonably plausible cause of the at-issue traumatic event was the hazard posed by the product itself and its abrupt braking mechanism.[71]

---

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 16.

[67] *Id.*

[68] *Id.* at 16.

[69] *Id.*

[70] *Id.*

[71] *Id.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 14  |  No. 3:24-CV-05811-JCC



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

### III.    EVIDENCE RELIED UPON

This response relies upon the Declaration of Andrew S. Ulmer (Ulmer Decl.), Declaration of Sean S. Kohles, Ph.D. ("Kohles Decl."), as well as the records already on file.

### IV. LEGAL ARGUMENT

**A.    Summary Judgment Standard**

Rule 56 governs summary judgment motions and provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).

**B.    The WPLA Supplants Common Law Claims**

The WPLA is the exclusive remedy for product liability claims.  *Scott v. Amazon.com, Inc.*, 583 P.3d 1155, 1160 (2026) (citing *Potter v. Wash. State Patrol,* 165 Wash.2d 67, 87, 196 P.3d 691 (2008)).  It supplants all common law claims or actions based on harm caused by a product.  *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.,* 122 Wn.2d 299, 323, 858 P.2d 1054 (1993); *Wash. Water Power Co. v. Graybar Elec. Co.,* 112 Wn.2d 847, 853, 774 P.2d 1199, 779 P.2d 697 (1989).  Insofar as a negligence claim is product-based, the negligence theory is subsumed under the WPLA product liability claim.  *Hue v. Farmboy Spray Co., Inc.,* 127 Wn.2d 67, 87, 896 P.2d 682 (1995); *Wash. State Physicians Ins. Exch. & Ass'n,* 122 Wn.2d at 323, 858 P.2d 1054; *Wash. Water Power,* 112 Wn.2d at 853, 774 P.2d 1199.  Unlike Fred

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 15  |  No. 3:24-CV-05811-JCC



Meyer, whose liability is not limited to claims brought under RCW 7.72.040(1) but also for its negligence as a premises owner, Plaintiffs' claims against Gatekeeper as the manufacturer of the subject product are set forth under RCW 7.72.030.

It is worth noting that the Act provides that "[t]he previously existing applicable law of this state on product liability is modified only to the extent set forth in" the Act. RCW 7.72.020(1). Moreover, with respect to failure to warn claims in particular, courts have concluded that the legislature intended that the Act's provisions themselves carry forward principles that we previously recognized under the common law. Specifically, RCW 7.72.030 governs claims that a product manufacturer is liable in that the product is not reasonably safe because the manufacturer failed to provide adequate warnings or instructions. Strict liability principles apply to both defective design and failure to warn cases. RCW 7.72.030(1), (2); see *Falk v. Keene Corp.,* 113 Wn.2d 645, 782 P.2d 974 (1989) (design defects); *Ayers ex rel. Ayers v. Johnson & Johnson Baby Prods. Co.,* 117 Wn.2d 747, 762–63, 818 P.2d 1337 (1991) (failure to warn). These are the strict liability principles that were defined by the court under the common law prior to the WPLA. *Falk,* 113 Wn.2d at 650–54, 782 P.2d 974; see *Couch v. Mine Safety Appliances Co.,* 107 Wn.2d 232, 728 P.2d 585 (1986); *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975).

Accordingly, whilst Plaintiffs' product liability claims against Gatekeeper are subsumed under the WPLA, which therefore supplants Plaintiffs' negligence, gross negligence, and premises liability claims as to Gatekeeper, the Court may still look to those common law principles which were not strictly modified by the WPLA.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## C.    Defendant Gatekeeper Violated the WPLA

Under Washington law, product manufacturers have a duty to provide a reasonably safe product. *See Anderson v. Dreis & Krump Manufacturing Corporation,* 48 Wn. App. 432, 440, 739 P.2d 1177 (1987). The WPLA imposes a duty upon product manufacturers to design products that are reasonably safe. RCW 7.72.030.

A product manufacturer like Gatekeeper is liable to claimants like Plaintiffs if:

> (1)    "the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed" (**design defect**);

> (2)    "the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was ... not reasonably safe because adequate warnings or instructions were not provided" (**failure to warn at the time of sale);** or

> (3)    "the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction" (**construction defect**).

RCW 7.72.030(1), (2).

Here, the evidence establishes all of the elements of Gatekeeper's violations of the WPLA as to a design defect, construction defect, failure to warn, and causation as to Ms. Lubken's fall as a result of the WPLA violations. At a minimum, there are issues of fact which preclude summary judgment in favor of Gatekeeper.

### 1.    Construction Defect

RCW 7.72.030(2) provides:

> (2) A product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 17  |  No. 3:24-CV-05811-JCC



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

RCW 7.72.030(2)

"[T]here is no risk-utility balancing test required for this type of product liability claim." *Falk v. Keene Corp.*, 113 Wn.2d 645, 653, 782 P.2d 974, 979 (1989).  Rather, strict liability applies where the product at issue either: (1) does not operate as intended by the manufacturer's specifications, performance standards, or identical products; (2) does not conform with the manufacturer's express representations regarding how the device would operate; or (3) does not conform with the implied warranties of the manufacturer.  *See, e.g.*, *West v. Ride the Ducks International, LLC*, 18 Wn. App. 2d 1013 (affirming jury verdict in favor of plaintiff on construction defect claim when plaintiff was thrown from a moving vehicle when the axle housing on the vehicle fractured).[72]

Here, Gatekeeper's anti-theft wheel did not operate according to expected specifications, performance standards, or consistent with identical products.  The intended wheel brake deployment of the device is to occur at the store exits if the device was not given "permission" to pass by the exit or when being taken off property.[73]  However, contrary to the intended performance of the product, the device locked in the middle of the store and away from the zones where the product was intended to be actuated.  Dr. Kohles opines that the product is vulnerable to spurious wireless signals throughout the store and that the product displayed inconsistent wireless signal responsiveness and delayed master to slave wheel interactions.[74]  Dr. Kohles also found the brake mechanism in Gatekeeper's products performed

---

[72] Plaintiff cites to this unpublished opinion as persuasive authority only.

[73] Kohles Decl., Ex. 2 at 11.

[74] *Id*. at 6-7.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 18 | No. 3:24-CV-05811-JCC

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

inconsistent from one another despite being identical products.[75]  Accordingly, where the subject product did not perform consistent to its intended performance and where identical products fail to perform consistently, Gatekeeper's product demonstrates defects in its construction.

### 2.    Design Defect

A manufacturer's liability for a defective design is established under RCW 7.72.030 in two distinct ways.  *Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 326, 971 P.2d 500 (1999).  "On the one hand, a plaintiff may attempt to establish liability by showing that, at the time of manufacture, the likelihood that the product would cause the plaintiff's harm or similar harms, and the seriousness of those harms, outweighed the manufacturer's burden to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative would have had on the product's usefulness."  *Id*.; RCW 7.72.030(1)(a)).  "This is the so-called 'risk utility test.' "  *Soproni*, 137 Wn.2d at 326.  "Alternatively, a plaintiff may employ the 'consumer expectations' test, which requires the plaintiff to show that the product was 'unsafe to an extent beyond that which would be contemplated by the ordinary consumer.'"  *Id*. at 326-27 (*citing Falk*, 113 Wn.2d at 654; RCW 7.72.030(3)).

The consumer expectations test recognizes that certain situations exist where the type of accident itself may establish a defect:

> "In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user."

---

[75] *Id*. at 6-7.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 19 | No. 3:24-CV-05811-JCC

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

*Pagnotta v. Beall Trailers of Or., Inc.*, 99 Wn. App. 28, 37, 991 P.2d 728 (2000). Relevant considerations under the consumer expectations test include "[t]he relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk." *Falk*, 113 Wn.2d at 649. Additionally, "'[i]n other instances the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.'" *Id*.

The evidence in this case establishes Gatekeeper's violation of the WPLA under both the "risk-utility" theory and the "reasonable consumer expectation" theory. Dr. Kohles criticizes the wheel hub braking mechanics of the subject product, opining that the wheels as currently designed are set to brake instantly upon triggered deployment, which is a feature that becomes more variable and less controlled as the brake and wheel surface experiences wear and degradation, along with weakening individual battery strength.[76] As demonstrated by the over 400 pages of incident reports of substantially similar injuries suffered by customers using the subject product, the product as designed poses a clear hazard to the ordinary consumers of said product. The evidence presented establishes that the risk of harm was outweighed by a feasible alternative design. Dr. Kohles opines that Gatekeeper could have incorporated a tapered brake load response which can still assure eventual full-stop braking but over a longer distance and distance.[77] He concludes that such a redesign could give the unsuspecting consumer an opportunity to cognitively alter their gait pattern in order to avoid injury.[78] The evidence at a minimum creates a disputed issue of fact as to whether the faulty design of the subject product

---

[76] *Id*. at 13-14.

[77] Kohles Decl., Ex. 2 at 14.

[78] *Id*.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 20 | No. 3:24-CV-05811-JCC

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

is unsafe to an extent beyond that which would be contemplated by the ordinary consumer, in light of the scores of injuries that many of Fred Meyer's customers have suffered when using the subject product.

### 3.    Failure to Warn

RCW 7.72.030 states in pertinent part:

> A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe … because adequate warnings or instructions were not provided.

RCW 7.72.030(1).

Under Washington law, a plaintiff may establish liability by using either a risk-utility test or a consumer expectation test for both design defect and failure to warn claims. *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 818 P.2d 1337 (1992) (*en banc*) (failure to warn claim); *Falk v. Keene Corp.*, 113 Wn.2d 645, 782 P.2d 974 (1989) (*en banc*) (design defect claim).   Although RCW 7.72.030 uses the term "negligence," strict liability is the applicable standard for a failure to warn or a design defect claim maintained under RCW 7.72.030(a) or (b).  *Ayers*, 117 Wn.2d at 765, 818 P.2d 1337.  However, for failure to warn claims involving a danger that becomes known after manufacture, a negligence standard is applied.  *Ayers*, 117 Wn.2d at 765, 818 P.2d 1337.

To determine whether a warning is adequate requires an analysis of the warnings as a whole and the language used in the package insert. *Laisure-Radke v. Par Pharm., Inc.*, 426 F. Supp. 2d 1163, 1172 (W.D. Wash. 2006) (*citing Estate of LaMontagne v. Birstol-Myers Squibb*, 127 Wn. App. 335, 344, 111 P.3d 857 (2005).  The court must examine the meaning and context of the language and the manner of expression to determine if the warning is accurate, clear and

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT



Page 21  |  No. 3:24-CV-05811-JCC

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

consistent and whether the warning portrays the risks involved. *Martin v. Hacker*, 83 N.Y.2d 1, 10–11, 628 N.E.2d 1308, 607 N.Y.S.2d 598 (1993); *cf. Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 594 P.2d 911 (1979) (determining the adequacy of a warning by examining whether the warning sufficiently attracted the attention of the product users and informed them of the dangers of the product).

As already described extensively herein, the subject product engages in abrupt braking which has caused many injuries to many customers. Dr. Kohles concluded that the product is unsafe in part due to the unexpected and sudden nature of the braking mechanism which poses a hazard in that customers using said product may not expect the sudden change and alter their gait in time to respond. Particularly in the situation of Ms. Lubken's fall due to a brake actuation occurring within the store, there is no evidence presented that any warnings were displayed on the cart used by Ms. Lubken suggesting that the cart may experience an abrupt stop at any moment anywhere within the store. Moreover, Gatekeeper did not raise this issue nor present evidence as to warnings for the subject product, therefore making summary judgment on this issue inappropriate.

**D.    Defendant Gatekeeper's Defective Product Proximately Caused Ms. Lubken's Injuries**

Gatekeeper does not argue that its product is free from defects but instead argues that its product did not cause Ms. Lubken's injuries. However, issues pertaining to causation are issues of fact and not proper for summary judgment, particularly here with all facts support a finding of causation. The "WPLA incorporates common law principles of proximate cause." *Scott v. Amazon.com, Inc.*, 583 P.3d 1155, 1160 (2026). Proximate cause is generally a fact question for the trier of fact. *Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275, 979

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

P.2d 400, 406 (1999).

Here, Ms. Lubken testified clearly and unequivocally that the shopping cart wheel locked abruptly and caused her fall.[79]  Her fall is consistent to the many fall injuries sustained by Fred Meyer customers who, like Ms. Lubken, were injured due to the abrupt braking of the subject device.[80]  Dr. Kohles considered alternative plausible causes to Ms. Lubken's fall, including biomedical conditions or mechanical influences such as debris or conditions in the environment, and concluded that the only reasonably plausible cause of the fall was the hazard posed by the product itself and its abrupt braking mechanism.[81]

At a minimum, this evidence creates a disputed issue of fact as to causation therefore requiring denial of Defendant's motion for summary judgment as to Plaintiffs' claims brought under the WPLA.

**E.    As Gatekeeper is Liable Under the WPLA, Plaintiffs May Sustain Their Consortium Claims**

As Plaintiffs have viable claims against Gatekeeper under the WPLA, they may bring claims for loss of spousal consortium.  Loss of consortium is typically thought of as a loss of society, affection, assistance and conjugal fellowship, and loss or impairment of sexual relations in the marital relationship.  *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 773, 733 P.2d 530, 536 (1987).  "In Washington, either a husband or wife may recover for loss of consortium when that person's spouse is injured."  *Id.*  A party may maintain a consortium claim when their spouse is injured as a result of a manufacturer's violation of the WPLA.  *Erickson v. Pharmacia*

---

[79] Ulmer Decl., Ex. 1 at 76:2-78:22.

[80] Ulmer Decl., Ex. 4.

[81] *Id.*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT GATEKEEPER, INC.'S MOTION FOR SUMMARY JUDGMENT

Page 23  |  No. 3:24-CV-05811-JCC

**PFAU COCHRAN VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

*LLC*, 5 Wn.3d 585, 597, 578 P.3d 306, 314 (2025), *as amended on denial of reconsideration* (Jan. 21, 2026) ("Following two days of deliberations, the jury found for Erickson on all four WPLA claims. The jury awarded compensatory damages of $15 million to Erickson, $17 million to Marquardt, $18 million to Leahy, and $150,000 to Leahy's spouse for loss of consortium due to Leahy's injuries.")

Given the evidence supporting Plaintiffs' WPLA claims, the Court should deny Gatekeeper's motion as to their consortium claims.

### IV.    CONCLUSION

Given the foregoing, Plaintiffs respectfully request that the Court deny Defendant Gatekeeper's motion for summary judgment as to her claims brought under the WPLA and her loss of consortium claims.

RESPECTFULLY SUBMITTED this 30th day of April, 2026.

**PFAU COCHRAN VERTETIS AMALA, PLLC**

*I certify that this memorandum contains 6,247 words in compliance with the Local Rules.*



By

Darrell L. Cochran, WSBA No. 22851
Andrew S. Ulmer, WSBA No. 51227
*Attorney for Plaintiffs*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 24  |  No. 3:24-CV-05811-JCC

**PFAU COCHRAN VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## CERTIFICATE OF SERVICE

I, **Katie Hedger,** hereby declare under penalty of perjury under the laws of the United States and the State of Washington that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date I served the foregoing via **ECF** by directing delivery to the following individuals:

Jennifer L. Crow
Ahbra Franco
Sheer Law, PLLC
2101 Fourth Ave, Suite 830
Seattle, WA 98121
Jen@scheer.law;          ahbraf@scheer.law;          josephm@sheer.law;
shiloha@scheer.law

*Counsel for Defendant Fred Meyer Stores, Inc. and The Kroger Co.*

Scott La Salle
The Aguilera Group, APLC
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
slasalle@aguileragroup.com

*Counsel for Defendant Gatekeeper Systems, Inc.*

DATED this 10th day of February, 2026.

/s/ Katie Hedger
Katie Hedger
Legal Assistant

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT GATEKEEPER, INC.'S MOTION
FOR SUMMARY JUDGMENT

Page 25  |  No. 3:24-CV-05811-JCC

