**SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY**

MICHAEL VANDIVERE and KATHRYN
SNOW VANDIVERE, husband and wife
and their marital community, and
KATHRYN SNOW VANDIVERE, as the
legal guardian of W.V., a minor,

                       Plaintiffs,

    vs.

VERTICAL WORLD, INC., a Washington
State Corporation; C3 MANUFACTURING,
LLC, a Colorado Company,

                      Defendant.

NO. 19-2-27385-2 SEA

**ORDER GRANTING IN PART
PLAINTIFFS' MOTION FOR
SANCTIONS**

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 1 of 39 | No. 19-2-27385-2 SEA

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## I.    INTRODUCTION

This matter came before the Court on Plaintiffs' Motion for Sanctions [Dkt. 396] ("**Motion**").  Having reviewed the evidence presented and heard the parties' oral arguments at multiple hearings on the issue of sanctions, the Court incorporates by reference the oral ruling made during the June 14, 2023 hearing.  Additionally, the Court makes the following Findings of Fact and Conclusions of Law, and enters a ruling on Plaintiffs' Motion to the extent described below.

## II.    DOCUMENTS CONSIDERED

The Court has considered the pleadings and documents filed by the parties in this case, and in particular the following items, including their attachments:

1.    Plaintiffs' Motion for Sanctions [Dkt. 396];

2.    Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions [Dkt. 400];

3.    Defendant Vertical World, Inc.'s Response to Plaintiffs' Motion for Sanctions [Dkt. 408];

4.    Defendant Vertical World, Inc.'s Supplemental Response to Plaintiffs' Motion for Sanctions and Request for Fees and Costs [Dkt. 410];

5.    Defendant C3 Manufacturing, LLC's Response in Opposition to Plaintiffs' Motion for Sanctions Relating to Disclosure of Insurance Coverage Issues [Dkt. 412];

6.    Declaration of Rachel Tallon Reynolds in Support of 4.    Defendant C3 Manufacturing, LLC's Response in Opposition to Plaintiffs' Motion for Sanctions Relating to Disclosure of Insurance Coverage Issues [Dkt. 413];

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 2 of 39 | No. 19-2-27385-2 SEA



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

7.    Plaintiffs' Reply in Support of Plaintiffs' Motion for Sanctions Regarding Insurance [Dkt. 421];

8.    Defendant Vertical World, Inc.'s Reply Re Motion for Sanctions [Dkt. 423];

9.    Supplemental Memorandum Regarding Plaintiffs' Motion for Sanctions [Dkt. 438];

10.    Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions [Dkt. 439];

11.    Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions [Dkt. 443];

12.    Defendant C3 Manufacturing, LLC's Response in Opposition to Plaintiffs' Supplemental Motion for Sanctions Relating to Prior Counsel [Dkt. 441];

13.    Declaration of Rachel Tallon Reynolds in Support of Defendant C3    — SPP Manufacturing, LLC's Response in Opposition to Plaintiffs' Supplemental Motion for Sanctions Relating to Prior Counsel [Dkt. 442];

14.    Sinars Firm and Christopher Furman's Opposition to Motion for Sanctions [Dkt. 445];

15.    Declaration of Chris Furman in Support of the Sinars Firm and Mr. Furman's Opposition to Plaintiffs' Motion for Sanction [Dkt. 446];

16.    Declaration of James Hicks in Support of The Sinars Firm and Mr. Furman's Opposition to Plaintiffs' Motion for Sanction [Dkt. 447]; of

17.    Declaration of Mark J. Fucile in Support of The Sinars Firm and Mr. Furman's Opposition to Plaintiffs' Motion for Sanction [Dkt. 448];    — SPP

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

18.    Declaration of John Strait in Support of The Sinars Firm and Mr. Furman's Opposition to Plaintiffs' Motion for Sanction [Dkt. 449]; — SRP

19.    Declaration of Bradley S. Keller in Support of The Sinars Firm and Mr. Furman's Opposition to Plaintiffs' Motion for Sanction [Dkt. 450]; — SRP

20.    Plaintiffs' Reply in Support of Plaintiffs' Motion for Sanctions [Dkt. 451];

21.    Sinars Slowikowski Tomaska LLC's and Christopher Furman's Joinder and Supplemental Filing [Dkt. 457];

22.    Plaintiffs' Supplemental Memorandum Regarding Plaintiffs' Motion for Sanctions [Dkt. 459];

23.    Third Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions [Dkt. 460];

24.    Declaration of James H. Moss in Support of Defendant C3's Opposition to Plaintiffs' Motion for Sanctions [Dkt. 462]; — SRP

25.    Defendant C3 Manufacturing, LLC's Response to Vertical World, Inc.'s Proposed Order of Findings of Fact, and Conclusions of Law;

26.    The existing records and files in this case.

## III.    FINDINGS OF FACT

The Court makes the following findings of fact.  To the extent that any findings of fact may be deemed to be a conclusion of law, it should be considered to be such.

### A.    PROCEDURAL HISTORY OF CLAIMS AND DEFENSES

1.    Plaintiffs filed the original Complaint for Damages on October 16, 2019 [Dkt.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

2.     On May 21, 2021, Plaintiffs filed their Second Amended Complaint for Damages ("**SAC**"), wherein they allege that C3 Manufacturing, LLC ("**C3**") manufactured the Perfect Descent auto-belay device that Mr. Vandivere used on the incident date of August 1, 2019, that C3 sold the Perfect Descent auto-belay to Vertical World, Inc. ("**Vertical World**"), and that Mr. Vandivere's injuries were proximately caused by C3's defective product, including its failure to provide adequate warnings and instructions.  SAC at ¶ 1.2 [Dkt. 132].

3.     Based on the facts and the specific causes of action alleged in the SAC, the Plaintiffs have alleged against C3 claims under the Washington Product Liability Act ("**WPLA**"), codified at RCW 7.72.  SAC at ¶¶ 7.1-7.8 [Dkt. 132].

4.     On August 27, 2021, C3 filed its Answer to Plaintiffs' SAC, admitting that "it manufactured the Perfect Descent auto-belay device that Mr. Vandivere may have used on the incident date" and that C3 "sold the Perfect Descent auto-belay to Vertical World."  Answer at pg. 1 [Dkt. 149].

5.     In its Answer, C3 asserted certain affirmative defenses, such as asserting that "Plaintiffs' damages, if any, were proximately caused in whole or in part by the negligent or intentional acts or omissions of third parties over whom C3 had no control or right of control and for whom C3 has no legal responsibility including but not limited to Vertical World. As a result, C3 has no liability to Plaintiffs, or C3's' liability should be reduced by an amount to be demonstrated at trial."  Answer at pgs. 4-5 [Dkt. 149].

6.     In its Answer, C3 asserted certain affirmative defenses, such as asserting that "[i]n the event that C3 is found to be at fault herein, it is entitled to have its respective fault duly apportioned with the fault of all other persons or entities that proximately caused or contributed

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 5 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

to any loss, damage, or injury claimed, including the fault of Plaintiffs, Vertical World, and any other persons or entities." Answer at pg. 5 [Dkt. 149].

7.    In its Answer, C3 asserted certain affirmative defenses, such as asserting that "[a]ny duty to warn was discharged by Vertical World and its intervening duty to give required warnings as a learned intermediary. Any breach of that duty was a superseding cause of Plaintiffs' damages." Answer at pg. 5 [Dkt. 149].

8.    On May 20, 2022, C3 filed a Motion for Summary Judgment, arguing in part that Plaintiffs' failure to warn claim under RCW 7.72.030(1)(b) should be dismissed under the "sophisticated purchaser" doctrine because Vertical World is a "learned intermediary" or "sophisticated purchaser" whom "C3 relied on to warn new and inexperienced users of the dangers associated with climbing generally and dangers specific to Perfect Descent devices, including the importance of clipping into its auto belays properly and of not climbing with slack in the line." Defendant C3 Manufacturing, LLC's Motion for Summary Judgment, pgs. 14-17 [Dkt. 221].

**B.    HISTORY OF THE SUBJECT PRODUCT**

9.    C3 was founded by Ronald Naranjo, who first incorporated his company in the State of Colorado in 2010. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 8 [Dkt. 400]. Today, Mr. Naranjo is the president of C3. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 6:17-21 [Dkt. 400].

10.    Prior to forming C3, Mr. Naranjo worked at Mine Safety Appliances ("MSA") from the 1990's to 2010. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 23:9-20 [Dkt. 400]. MSA is a maker of safety products for workers exposed to a variety of hazardous conditions in industries such as construction. Declaration of

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 6 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 28:7-14 [Dkt. 400]. During his tenure at MSA, Mr. Naranjo worked as production lead before transitioning to become the production manager. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 28:17-20 [Dkt. 400].    Both of these roles entailed overseeing the assembly of products made by MSA. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 32:20-33:22 [Dkt. 400].

11.    One of the products MSA made was a self-retracting fall arrest product called the Redpoint Descender. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 30:2-7, 49:5-9 [Dkt. 400].    On October 15, 2009, MSA issued an immediate stop use notice, announcing that all Redpoint Descenders were to be discontinued, effective immediately following the stop use notice.    Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 10 [Dkt. 400].    The defect with the Redpoint Descenders involved issues with the braking system resulting in climbers sustaining injuries by unexpected rapid descents while using the Redpoint Descenders. *Id*. MSA stated that "existing devices should not be used." Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 11 [Dkt. 400].

12.    During the same timeframe as the discontinuation of the Redpoint Descenders, Mr. Naranjo transitioned from his job with MSA in 2009 to form C3. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 35:4-11 [Dkt. 400]. C3 did not start out as the original manufacturer of the Perfect Descent auto belay but instead began by only manufacturing a component part used in the Perfect Descent auto belay—a secondary clutch.    Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 37:5-11 [Dkt. 400].    The origin of the Perfect Descent auto belay product line began by

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

modifying and relabeling MSA's discontinued Redpoint Descenders. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 52:5-53:10 [Dkt. 400]. Mr. Naranjo testified that a man named Derek Wagner, who used to work for the factory-authorized service center for MSA's discontinued Redpoint Descender, reached out to him to ask him to supply secondary clutches to install into the Redpoint Descenders which were relabeled as the Perfect Descent auto belays. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 45:11-19, 49:12-50:9, 51:17-22, 52:5-14 [Dkt. 400].

13.    Once the service center ran out of the discontinued Repoint Descenders to resell as Perfect Descent auto belays, C3 was approached to take over the entire manufacturing process of the Perfect Descent auto belays. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 52:15-53:10 [Dkt. 400]. To do this, Mr. Naranjo reverse engineered the Redpoint Descenders to replicate the design of this product. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 54:17-55:9 [Dkt. 400]. Mr. Naranjo did this reverse engineering job himself despite having no formal education, no college or technical degrees, nor any specialized training in engineering or metallurgy. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 9 at 21:4-5, 22:7-21, 55:1-9 [Dkt. 400].

14.    From as early as 2015, the Perfect Descent auto belays have experienced fracturing of the retraction springs. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 13; Ex. 9, at 79:10-13 [Dkt. 400]. Failure of the retraction spring creates slack in the lanyard as climbers ascend, resulting in increased risk of a free fall to the ground if enough slack is in the lanyard. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 14 [Dkt. 400]. On May 9, 2016, C3 began issuing Stop

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Use and Return for Repair notices for its products.    Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 13 [Dkt. 400]. C3 again issued a Stop Use and Return for Repair Notice in 2018 for the same defect.  Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 15 [Dkt. 400].   These defects occurred each year in 2015, 2016, 2017, 2018, and 2019.  Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Exs. 13, 15, 16 [Dkt. 400].  By 2018, Mr. Naranjo was in communication with the component supplier of the retraction springs, Lesjöfors, informing them that they've experienced no less than 13 product failures within the timespan of less than a month between July 13, 2018 and August 10, 2018.  Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 17; Ex. 9, at 80:21-25 [Dkt. 400].

15.    On October 3, 2019, C3 initiated a formal recall process with the USCPSC. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 18 [Dkt. 400]. On October 21, 2019, an Urgent Safety Recall Notice was issued.  Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 16 [Dkt. 400].  This recall notice identifies a variety of serial numbers affected by the notice, including the Perfect Descent Model 220 Speed Drive Auto Belays with serial numbers ranging from S-1695 through S-1762. *Id.*   The product used by Mr. Vandivere on the incident date fell within this range of serial numbers subject to the product recall.  The notice states that there are defects in the material used to manufacture the retraction spring which can result in partial or complete fracturing of the spring and loss of retraction force, causing the lanyard to stop retracting, possibly "paying out," and leading to possible serious injury or death.  *Id.*  This is the defect and effect alleged by Plaintiffs to have caused the fall that injured Plaintiff Michael Vandivere.

**C.**   **C3'S PRIOR ATTORNEY ACCESSES VERTICAL WORLD OVER ~~20~~ 38 times ~~TIMES~~ WITHOUT NOTIFYING COUNSEL**

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

16.    On April 27, 2023, a little over one month before trial, Christopher Furman withdrew as counsel for C3, requesting that all future pleadings be served on J. Scott Wood, Virginia Leeper, Elizabeth Bain, and Duncan Lemmon.  Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 1 [Dkt. 400].

17.    On May 5, 2023, Defendant Vertical World served its Notice of Documents Offered Under ER 904.  Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 2 [Dkt. 400].

18.    Contained in Vertical World's submission were several exhibits which showed that Mr. Furman, a lawyer representing C3, created a membership with Vertical World and visited the Vertical World gym *approximately 38* times from ~~February 2023~~ *April 1, 2022* to May 2023, within *days* of his *\* See page 38.* withdrawal as counsel for C3 and just a few weeks before the start of trial.  Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 3 [Dkt. 400].  The exhibits revealed that Mr. Furman had tested the use of C3's auto-belays in Vertical World, an issue which sits at the center of the product defect causes of action.

19.    On May 8, 2023, Vertical World's attorneys issued a letter indicating that this information just came to their attention and that they may call Mr. Furman as a witness at trial. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 4 [Dkt. 400].

20.    On May 11, 2023, Plaintiffs' counsel sent a letter to Defendants, stating in part:

> We have serious concerns about the professional ethics and the potential danger for misconduct involved in this situation. To be clear, Vertical World entered into a contractual business relationship with C3's attorney, Chris Furman, two months prior to trial. The details surrounding this quid pro quo business relationship and potentially ex parte conversations Mr. Furman may have had with witnesses remain unclear. Then, Vertical World's attorneys offered into evidence records of Mr. Furman's membership and usage of the Vertical Worlds facility. This conduct is particularly alarming when considering other backdoor

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

activities between C3 and Vertical World, which include Vertical World and C3 secretly meeting in Colorado soon after Michael Vandivere's catastrophic fall and then the inexplicable exchange of the defective auto belay devices used by Mr. Vandivere and their serial numbers. This conduct by C3's attorney, Chris Furman, and Vertical World must come under scrutiny, first by my office and almost certainly by the Court.

In light of these serious issues, we request that both Vertical World and C3 review Plaintiffs' prior discovery requests and supplement their responses accordingly. Finally, we request the deposition of Chris Furman and ask that you make him available as soon as possible given that we commence trial in less than a month.

Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 5 [Dkt. 400].

21.    The day after Plaintiffs served this letter, C3's other attorneys, Elizabeth Bain, J. Scott Wood, and Virginia Leeper, filed notices of intent to withdraw from the case.

22.    On June 2, 2023, C3's former attorney, Christopher Furman, appeared for a deposition. For this deposition, he was represented by Bradley S. Keller of Brynes Keller Cromwell, LLP. *The deposition was ordered by the Court because the Sinars firm refused to accept service on his behalf*

23.    Mr. Furman graduated from law school in 2019 and is currently an associate *on May 18th and 19, 2023, -SRP* attorney at Sinars Slowikowski Tomaska LLC. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 5:5-11 [Dkt. 443]. He appeared in this case on March 22, 2022, as counsel of record for C3. This was three weeks after he started working at Sinars Slowikowski. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 7:13-19 [Dkt. 443]. In this case, Mr. Furman reported to partners Scott Wood and Duncan Lemmon, who was a pro hac attorney based in California. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 6:24-7:2 [Dkt. 443]. Duncan Lemmon and Scott Wood were the supervising attorneys on this case, with Mr. Lemmon being Mr.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Furman's direct report for the day-to-day issues in the case. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 8:3-10 [Dkt. 443]. On April 27, 2023, Mr. Furman withdrew from the case. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 1 [Dkt. 400]. He testified that he withdrew from the case "[b]ecause Scott Wood was leaving [Sinars Slowikowski]." Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 8:6:8-10 [Dkt. 443].

24.    Mr. Furman testified that he did not recall whether he familiarized himself with the Answer filed by C3 or the fact that C3 was seeking contribution for any judgment against Co-Defendant Vertical World. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 9:4-14 [Dkt. 443]. He testified that he familiarized himself with the depositions taken in this case, including those with Vertical World's employees and owners. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 9:15-10:12 [Dkt. 443].

25.    Mr. Furman revealed that his first time visiting Vertical World was actually on April 1, 2022. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 11:25-12:4 [Dkt. 443]. This was the same exact day as the X-ray inspection of the subject auto belay, and three days prior to the CR 34 inspection held at the Vertical World gym involving all counsel present. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 42 [Dkt. 400]. April 1, 2022, was also the date in which it was alerted that C3 had in its possession auto belay S-1714, which possessed the retraction spring defect. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 42 [Dkt. 400].

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 12 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

26.     Mr. Furman testified that at no point before or after his April 1, 2022 visit to the Vertical World gym did he seek permission or even advise counsel for Vertical World or Plaintiffs that he would be accessing the Vertical World facility or be in potential contact with witnesses in this case. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 33:24-34:4 [Dkt. 443]. ~~Mr. Furman claimed in his testimony that he had been to most climbing facilities in the Seattle region and that, out of the blue, he decided to go exercise at Vertical World on the same day that the subject product was being examined. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 34:5-35:5 [Dkt. 443].~~ ~~This visit was not purely~~ Mr. Furman's ~~own doing, as he~~ testified that he ~~received permission from~~ *advised* pro hac attorney Duncan Lemmon *of his intention to* access Vertical World's facility *and was told by Lemmon that it was a "non-event." — SRP*. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 38:5-39:1 [Dkt. 443]. Then, after opening an account at Vertical World on April 1, 2022, Mr. Furman never visited this gym until a year later in February of 2023. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 3 [Dkt. 400]. Mr. Furman claimed in testimony that he did not notify anyone either at Vertical World or their legal team that he was going to a facility owned by a co-defendant. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 12:18-21 [Dkt. 443]. He testified that he saw no reason to do that. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 12:22-24 [Dkt. 443].

27.     Mr. Furman again received permission from pro hac attorney Duncan Lemmon to access Vertical World's facilities in February 2023. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 41:9-21 [Dkt. 443].

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 13 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Although Mr. Furman repeatedly testified that he did not think his accessing Vertical World's facilities was an issue, he nevertheless sought and received authorization from a second partner at Sinars Slowikowski to visit Vertical World – firm partner, Jim Hicks – who "volunteered he agreed there was no issue with it." Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 45:19-47:10 [Dkt. 443]. With the consult of his partners, Mr. Furman continued to access Vertical World's facilities and also accessed a climbing course at Vertical World on February 17, 2023. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 44:7-14 [Dkt. 443].

28.    The first time Mr. Furman disclosed his activities to Vertical World's counsel was on April 26, 2023. Second Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. A at 48:9- [Dkt. 443]. Mr. Furman explained why he finally reported his activities to Vertical World's attorneys:

Q. Tell us about that conversation.

A. Sure. So the last, I don't know, **handful of times that I'd gone to Vertical World, I felt like I was kind of getting some side-eye or kind of being observed by people in the gym**. And while I knew Scott was leaving and I wanted -- you know, I wanted to keep climbing there. So I just, you know, thought I would make -- emphasize that this was just me personally climbing. It had nothing to do with the case.

Q. And tell us about the side-eye. What are you meaning when you are saying you got the side-eye from people at Vertical World?

A. I felt like people were watching me.

Q. Anyone in particular?

A. No. But it was -- it was consistent enough that I thought, well, **sounds like somebody was, you know, at least uncomfortable with this, so I should just tell them, look, this is personal**. Has nothing do with the case. Because wanted to keep climbing there.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Q. What employees were those?

A. I don't know.

Q. Men? Women? Young? Old?

A. I don't even know if they were employees but they were adults.

Q. What did they look like?

A. I don't know. I was there to climb. I just noticed people kind of staring at me and it made me uncomfortable. And I just, like I said, wanted to keep climbing there and wanted them to know that it didn't have anything to do with the case.

Q. We're all interpreting your testimony as being -- as indicating that there were people at Vertical World who understood that you were a lawyer for co-defendant C3 and that might be raising concerns with them. So much so that it prompted you to call John Barry, who represented Vertical World. So I'm trying to understand who were these people, and if you are telling me you don't know, I'd like a description of who they were or what their gender was, what their ages were, that type of information.

A. I -- I don't recall. I just can recall there were people. Like I would get off a climb and feel people staring at me and I'd turn around and sure enough there would be.

Q. I want the record to be clear. I'm not asking about something that happened in 2012. I'm asking what happened roughly 37 days ago.

A. What happened in 2012? Why is that relevant? I don't understand.

Q. Exactly. You are indicating -- you are telling us under oath that you don't have any recollection of any identifying characteristics, including gender or age about who was giving you the, quote/unquote, side-eye. And I'm saying, I'm asking you about something that happened a little over a month ago, not something that happened over a decade ago. So why can't you give us some identifying information?

A. Because I was not there to -- I wasn't there to try and recall these faces for you today. I was there to climb. I can tell you that some of them appeared to be female and some of them appeared to be male, but that's about all I could say.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Q. So what did you tell John Barry about who they might have been?

A. I don't even know if I told him that. I just said, "Listen, **I think you guys already know that I'm climbing here** and I just want you to know that it has nothing to do with the case and I'd like to keep climbing here," and that Scott is leaving and I'll be not on this case. So that was it.

Q. Why didn't you tell John Barry, "As I think you already know, I'm climbing there"?

A. Because like I said, I felt like people were giving me side-eye.

Q. And what was John Barry's response?

A. **He said that they didn't know** and that was it.

Cochran Supp. Decl., Ex. 1, at 48:17-51:20.

29.    C3 failed to disclose any of this conduct in response to Plaintiffs' discovery requests which expressly requested this information in Interrogatory No. 7 to Plaintiffs' Second Set of Interrogatories and Requests for Production to C3 Manufacturing, LLC. Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 2 [Dkt. 439].

30.    C3 and its attorneys from the Sinars law firm failed to disclose this information in responding to Plaintiffs' Second Set of Interrogatories and Requests for Production.

31.    Mr. Furman's repeated acts of accessing the Vertical World facilities was conduct responsive to Plaintiffs' discovery requests.

32.    Due to the late timing of this disclosure regarding Mr. Furman's conduct, Plaintiffs and Defendant Vertical World, Inc. were deprived of their ability to further investigate the nature and extent of Mr. Furman's conduct or determine which Vertical World employees, who are witnesses in this case, he may have engaged with - SRP within orientations, supervision, trainings, or other potential interactions that could create its trial advantage.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 16 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

**D.    C3'S CONCEALMENT OF RECORDS PERTAINING TO THE ALLEGED RESCISION OF COVERAGE BY HCC**

33.    On May 22, 2023, exactly three weeks before the start of trial, C3 supplemented its discovery responses with communications from HCC which C3's attorneys had in their possession for several months. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 7 [Dkt. 400]. The first communication is a letter from HCC dated January 26, 2023, notifying C3's president, Ronald Naranjo, that HCC is rescinding its insurance policy. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 7 at bates page number 004339 [Dkt. 400].

34.    In this letter, HCC states the basis for its rescission—alleged fraud—and identifies other communications with C3's lawyers which C3 to this day has continued to conceal from Plaintiffs:

APPLICATION

On August 31, 2018, Mr. Naranjo signed a Veracity Insurance Solutions' Products Liability Insurance Application while attempting to obtain an excess insurance policy. This Application was provided by Veracity to HCC and HCC relied on C3's representations when underwriting the Excess Policy. In Section 9 of the application, Mr. Naranjo warranted that (1) the information provided, after reasonable inquiry, was true and complete and (2) was the basis of the policy and deemed incorporated therein.

**In the Application, Section 3, Question 11 asked, "Has the Applicant ever recalled or is it considering recalling any product?" C3's response was "No." Section 6, Question 2 to the Application asked, "Is (are) any person(s) or organization(s) proposed for this insurance aware of any fact, incident, circumstance, situation, condition, defect or suspected defect which may result in a Products Liability claim?" C3's response was "No."**

As set forth in the policy language, by accepting the Excess Policy, C3 agreed that the statements in the Declarations were based upon representations C3 made to HCC and that HCC issued the Excess Policy in reliance upon C3's representations. Here, the representations were

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

made in the application process. Further, the Excess Policy provides that it is void in any case of fraud by C3 as it relates to the Excess Policy. See Form HXC1 001 0814, Sec. IV, 13.

INVESTIGATION

Following the July 2022 notice of the Michael Vandivere et al v. Vertical World, Inc., et al., King County, Washington Superior Court, Case No. 19-2-2738502 lawsuit, for the first time, HCC became aware that C3 may have had prior recalls of its product that pre-dated the issuance of the Excess Policy. More specifically, HCC reviewed a deposition summary from retained counsel that indicated Mr. Naranjo had testified about recalls Thereafter, in September 2022, subject to a reservation of rights, HCC submitted a request for information to C3 to provide further information for HCC's consideration regarding whether there had been a material misrepresentation in the Application. **Through its counsel, by letter dated November 2, 2022,** C3 refused to provide the requested information but suggested HCC contact defense counsel to access some of the requested documents HCC complied with that suggestion and acquired copies of Mr. Naranjo's deposition transcripts and exhibits.

HCC has reviewed the transcripts and referenced exhibits. In the February 4, 2022 deposition, Mr. Naranjo testified under oath concerning recalls of C3's product. The first recall occurred on May 9, 2016, and the second occurred on August 15, 2018. When asked to identify Exhibit 1, Mr. Naranjo testified, "So that is a recall notice that we issued on May 18th of 2016." See February 4, 2022 Deposition Transcript, 78:25-79:1. When asked to identify Exhibit 4, Mr. Naranjo stated, "That's a recall notice from August 15, 2018." See id. at 108:13. Exhibit 1 stated, "C3 Manufacturing recently became aware of a material defect which may cause the device to cease to retract the lanyard. Our investigation indicates that defects in the material used to manufacture the retraction spring of the affected device may cause partial or complete fracture of the retraction spring in the affected units causing inadequate or complete loss of retraction." Exhibit 4 had similar language and also stated, "Complete fracture of the retraction spring will result in loss of retraction and the possibility of the lanyard 'paying out', thereby losing tension on the line." Both letters directed consumers to immediately remove affected auto belays from service and return them for repairs. In addition, at the deposition, Mr. Naranjo agreed that the retraction spring defect could increase the risk of injury to climbers using the product. See February 4, 2022 Deposition, 99:5-9.

In Exhibit 3, Mr. Naranjo's August 13, 2018 email identified his knowledge of 13 failures occurring between July 13 and August 10, 2018. Mr. Naranjo's email to representatives of Lesjdfors Springs

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

America Inc., stated, "I am going to have to recall our devices with springs from the lots that we had talked about previously We have had 15 failures with 13 happening since July 13."

MATERIAL MISREPRESENTATION

From review of the 2022 deposition and its exhibits, **HCC concludes that Mr Naranjo, on behalf of C3, made material misrepresentations in the application process to obtain the Excess Policy.** Had Mr. Naranjo accurately responded to the questions, HCC would not have issued the Excess Policy.

More specifically, in the month prior to signing the Application, Mr. Naranjo knew of 13 failures and the need for a recall, but indicated he was not aware of any defect, which may result in a products liability claim. This was less than 3 weeks before he signed the Application representing otherwise. Further, given he issued a recall approximately two weeks prior to affirming the application, his representation in the application that C3 never had any recalls was also false. When signing the Application, Mr. Naranjo declared that to the best of his knowledge and belief, after reasonable inquiry, the statements in the Application were true and complete. **In fact, the representations were false and concealed information. Further, given the recent communications about recalls and defects, C3 knowingly made the false statement and concealed information. The false statement and concealed information materially affected the acceptance of the risk by HCC because providing excess liability coverage for products that have been subject to recalls and are known to fail inherently creates more risk.** This is especially true when the product is utilized in rock climbing and the failure to retract can lead to bodily injury. Mr. Naranjo agreed at his deposition that the retraction spring defect could increase the risk of injury to climbers using the product. HCC had no knowledge of the true facts at the time the Excess Policy incepted. When issuing the Excess Policy, HCC relied, to its detriment, on the false statements and lack of presented information. All elements of material misrepresentation are satisfied and, under Colorado law, HCC is permitted to rescind the Excess Policy.

Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 7 at bates page number 004339-004341 [Dkt. 400].

35.    On February 27, 2023, C3's Colorado counsel replied to HCC's letter, contesting the rescission.   Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 7 at bates page number 004335-004338 [Dkt. 400].   On March 17, 2023, attorneys from the Gordon Rees law firm—the same law firm that C3 attorney Scott Wood

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 19 of 39 | No. 19-2-27385-2 SEA

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

decided to move to prior to withdrawing from representing C3 just weeks before the start of trial—sent a letter to C3's Colorado attorneys stating that Gordon Rees represents HCC and that HCC maintains its decision to rescind the insurance policy. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 7 at bates page number 004333-004334 [Dkt. 400].

36. The content discussed in the HCC rescission letter regarding the alleged "material misrepresentation" by C3 of the subject product in this case may have provided substantive evidence in support of Plaintiffs' WPLA claims according to Plaintiffs, not the least of which would be further evidence of a pattern of misrepresentation and deceit about the auto-belay product defect.

37. Due to the late timing of C3's disclosure of the HCC rescission letter, Plaintiffs have been prevented from engaging in meaningful discovery concerning this issue.

38. The HCC letters were responsive to Plaintiffs' First Set of Interrogatories and Requests for Production first served on May 21, 2021. Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 47 [Dkt. 400].

39. Plaintiffs and Vertical World settled claims against each other immediately after discovering that HCC rescinded its policy. Plaintiffs and Vertical World incurred substantial fees and costs in preparing to go to trial against one another which could have otherwise been avoided entirely had the HCC rescission letter been produced upon receipt by C3 and its attorneys.

## IV.    CONCLUSIONS OF LAW

The Court makes the following conclusions of law. To the extent that any conclusion may be deemed to be a finding of fact, it should be considered to be such.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 20 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

A.    **DISCOVERY VIOLATIONS**

1.    C3 represents to this Court that Plaintiffs "never requested" the discovery at issue on this Motion. C3 also argues that the statements it made in an application for a multi-million-dollar insurance policy relating to the subject product are not discoverable. The Court finds that these arguments are not accurate.

2.    The following interrogatories and requests for production sought identification of C3's insurance coverage as well as any documents identified in answering Plaintiffs' interrogatories:

> INTERROGATORY NO. 3: List all insurance policies including, but not limited to, liability, homeowners, automobile, or business policies providing coverage to YOU that were in effect at the time of the INCIDENT.

> INTERROGATORY NO. 4: List all excess or umbrella insurance policies of any kind providing coverage to YOU that were in effect at the time of the INCIDENT.

> REQUEST FOR PRODUCTION NO. 1: Please produce a certified copy of any policy of insurance including, but not limited to, liability, homeowners, automobile or business, which was in effect at the time of the INCIDENT through which YOU were or might be covered for the injuries and damages alleged by Plaintiffs.

> REQUEST FOR PRODUCTION NO. 2: Please produce certified copies of any and all excess/umbrella insurance policies that were in effect at the time of the INCIDENT through which YOU were or might be covered for the injuries and damages alleged by plaintiffs.

> REQUEST FOR PRODUCTION NO. 3: Please produce a certified copy of the declarations page of any policy of insurance that was in effect at the time of the INCIDENT through which YOU were or might be covered for the injuries and damages alleged by Plaintiffs.

> REQUEST FOR PRODUCTION NO. 4: Please produce a certified copy of the declarations page of any excess/umbrella insurance policies that were in effect at the time of the INCIDENT through which YOU were or might be covered for the injuries and damages alleged by Plaintiffs.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 21 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

REQUEST FOR PRODUCTION NO. 31: Please produce true and correct copies of all DOCUMENTS identified in YOUR responses to plaintiff's Interrogatories.[1]

Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 47 [Dkt. 400].

3.    Additionally, the following interrogatories and requests for production sought the production of all documents C3 received which allege that C3's product could be defective, unsafe, or cause injuries:

**INTERROGATORY NO. 11: IDENTIFY any and all complaints YOU received that the Perfect Descent Auto-Belay caused injuries or was otherwise unsafe.**

REQUEST FOR PRODUCTION NO. 28: Please produce ALL DOCUMENTS regarding any complaints YOU received that any Perfect Descent Auto-Belay caused injuries.

**REQUEST FOR PRODUCTION NO. 29: Please produce ALL DOCUMENTS regarding any complaints YOU received that any Perfect Descent Auto-Belay was defective.**

REQUEST FOR PRODUCTION NO. 30: Please produce ALL DOCUMENTS regarding any complaints in your possession that any Perfect Descent Auto-Belay cause physical injuries.

REQUEST FOR PRODUCTION NO. 31: Please produce true and correct copies of all DOCUMENTS identified in YOUR responses to plaintiff's Interrogatories.

Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 47 [Dkt. 400].[2]

---

[1] Cochran Decl., Ex. 47.

[2] The discovery requests in bold text were those which this Court previously ordered C3 to complete by January 31, 2022. C3's withholding of this discovery therefore violates the discovery order of this Court to produce all discovery responsive to those requests.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 22 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

4. The concealed HCC documents are responsive to these requests as the documents pertain to C3 allegedly misrepresenting the defect and safety history of its product to HCC. A fair reading of Plaintiffs' requests demonstrates that the withheld records were responsive to this interrogatory and requests for production.

5. Finally, the following discovery requests explicitly encompassed requests for documents concerning this litigation, which include the concealed records:

> REQUEST FOR PRODUCTION NO. 5: Please produce all statements made by YOU to anyone, including but not limited to any recorded statement provided by YOU, concerning the INCIDENT.

> REQUEST FOR PRODUCTION NO. 36: Please produce all documents relating to Vertical World, Inc.

Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 47 [Dkt. 400].

6. C3 cannot in good faith claim that the withheld records were not responsive to these requests. The communications between HCC and C3 repeatedly refer to this litigation and refer to Vertical World, Inc. To the extent C3 believed these requests were overbroad, it should have, but never did, seek a protective order from the Court. To the extent C3 believed it never had to supplement its prior discovery responses, CR 26(e)(2)(B) requires C3 to do so.

7. Additionally, the numerous undisclosed visits by C3's former attorney, Mr. Furman, to Vertical World were subject to disclosure in response to Plaintiffs' Interrogatory No. 7 in Plaintiffs' Second Set of Interrogatories and Requests for Production:

> INTERROGATORY NO. 7: **Please identify all dates and locations in which employees**, agents, attorneys, directors, and officers **of Vertical World met with** employees, agents, **attorneys**, directors, and officers **of C3**.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 23 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 2 (emphasis added) [Dkt. 439].

On August 25, 2022, in response to Interrogatory No. 7, C3 answered with what can only be perceived as an untrue statement:

> See C3's Preliminary Statement and General Objections. C3 objects because this Interrogatory seeks information protected by the work-product doctrine, attorney-client privilege, and/or the joint-defense privilege. C3 also objects because this request seeks irrelevant evidence and/or is not reasonably calculated to produce admissible evidence. It is also unduly burdensome. It's not reasonably tailored in terms of time or scope.
>
> Subject to and without waiving any objection, C3 responds as follows:
>
> In January of 2020, Vertical World's Richard Johnston asked to tour C3's facility, and C3 obliged. In April of 2022, representatives from C3, Vertical World, and Plaintiffs all met at Vertical World Seattle to test two Perfect Descent Auto Belays. C3 does not recall meeting with Vertical World on any other occasion.

Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 2 [Dkt. 439].

This answer to Interrogatory No. 7 was not truthful as it did not mention Christopher Furman's visit to Vertical World on April 1, 2022, nor did C3 ever supplement their answer to this interrogatory during Mr. Furman's approximately 38 - SPP additional visits to Vertical World.

8.  Accordingly, the withheld discovery was requested by Plaintiffs. Some of the requests which C3 ignored were subject to this Court's January 31, 2022 order compelling production. C3 abdicated its obligations to comply with the rules of discovery and this Court's discovery order.

**B.    SANCTIONS UNDER CR 11, CR 26(g), and CR 37(d)**

9.  The four purposes of discovery sanctions are deterrence, punishment, compensation, and education. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 24 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

191 (2009) (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 356, 858 P.2d 1054 (1993)).

10.    Like CR 11, CR 26(g) is aimed at reducing delaying tactics, procedural harassment and mounting legal costs. *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 341, 858 P.2d 1054, 1076 (1993). On its face, Rule 26(g) requires an attorney signing a discovery response to certify that the attorney has read the response and that after a reasonable inquiry believes it is (1) consistent with the discovery rules and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; (2) not interposed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had, the amount in controversy, and the importance of the issues at stake in the litigation. *Fisons*, 122 Wn.2d at 343. The responses must be consistent with the letter, spirit and purpose of the rules. *Id.* at 344. In applying the rules to the facts of the present case, the trial court determines whether the attorneys' certifications to the responses to the interrogatories and requests for production were made after reasonable inquiry and (1) were consistent with the rules, (2) were not interposed for any improper purpose and (3) were not unreasonable or unduly burdensome or expensive. *Id.*

11.    CR 37 sets forth applicable rules regarding sanctions when a party fails to make discovery. "CR 37(d) authorizes a court to impose the sanctions in CR 37(b)(2), which range from exclusion of evidence to granting default judgment when a party fails to respond to interrogatories and requests for production." *Magaña v. Hyundai Motor Am.*, 167 Wn.2d at

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

583-84, 220 P.3d 191 (citing *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 324, 54 P.3d 665 (2002)).

12.    A trial court may impose one of the "harsher remedies" under CR 37(b) upon a showing that (1) the discovery violation was willful or deliberate, (2) the violation substantially prejudiced the opponent's ability to prepare for trial, and (3) the court explicitly considered less severe sanctions. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 496–97, 933 P.2d 1036 (1997); *Teter v. Deck*, 174 Wn.2d 207, 216-217, 274 P.3d 336 (2012); *Magaña v. Hyundai Motor Am.*, 167 Wn.2d at 584, 220 P.3d 191.  These sometimes are referred to as the *Burnet* factors.  Each factor will be considered below.

### 1.    **Willful Violation**

13.    A party's disregard of a court order, without reasonable excuse or justification, is deemed to be "willful." *Magaña v. Hyundai Motor America*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009), citing *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 686-87, 41 P.3d 1175 (2002).  But willfulness cannot automatically be presumed:

> [I]f willfulness follows necessarily from the violation of a discovery order, then the on-the-record finding of willfulness that *Burnet* requires is meaningless.

*Blair v. TA-Seattle East No. 176*, 171 Wn.2d 342, 350, fn. 3, 245 P.3d 797 (2011). The trial court therefore must consider and explicitly evaluate and reject on the record any reasons given for a party's violation of a discovery order.

14.    In order for a discovery violation to be "willful," it need not be the result of deliberate misconduct. *Carlson v. Lake Chelan Cmty. Hosp.*, 116 Wn. App. 718, 739, 75 P.3d 533 (2003) ("A showing of intentional conduct is not required as even an inadvertent failure to disclose is enough if there is a violation of the rule without a reasonable excuse."); *Smith v. Behr*, 113 Wn. App 306, 327, 54 P.3d 665 (2002); *Allied Fin. Servs. v. Mangum*, 72 Wn. App.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 26 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

164, 168, 864 P.2d 1 (1993) (noting a failure to comply with discovery obligations without adequate excuse is a "willful" violation under the rules); *Carlson*, 116 Wn. App. at 741 (finding testimony properly excluded following discovery violations).

15.     This Court has held multiple hearings in which it has heard from the attorneys from each party, including from C3's former attorneys, asked questions of the attorneys, posed questions to be answered by the parties themselves, invited input from the attorneys, invited further briefing and explanation, and followed up with additional hearings.  It has become apparent that C3 and its former counsel, the Sinars Firm, continue to withhold information from the Court about why certain events and conduct have transpired as it appears to have transpired.

16.     Viewing all the facts and circumstances described above, including the Defendant's delay in disclosing the alleged fraud by Defendant C3 in its application to HCC, its prior attorneys' conduct at Vertical World, its continuing pattern of violations of the civil discovery rules, its violation of the court's discovery orders, and its consistent lack of any adequate explanation for its conduct, which repeatedly blocked the Plaintiffs' efforts to prepare for trial, the court finds and concludes that the Defendant C3's above-described CR 37(b) violations were "willful" for purposes of the first *Burnet* factor.

17.     ~~Sanctions are also warranted under CR 11 for C3's inaccurate answers to Plaintiffs' discovery requests. CR 11 requires attorneys to date and sign all pleadings, motions, and legal memoranda. Such signature constitutes the attorney's certification that:~~



> ~~to the~~ best of the ... attorney's knowledge, information, and belief, ~~formed after reasonable~~ inquiry it [the pleading, motion or ~~memoranda~~] is well grounded in fact ~~and is warranted~~ by ~~existing~~ law or a good faith argument for the extension, ~~modification, or reversal~~ of existing law, and that it is not ~~interposed for~~ any improper purpose, ~~such as~~ to harass or to cause ~~unnecessary~~ delay or needless increase in the cost of ~~litigation.~~

~~CR 11~~

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

If it appears that CR 11 has been violated, the court, upon motion or upon its own initiative, may impose upon the person an appropriate sanction which may include reasonable attorney fees and expenses. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448, 451 (1994).

A fair reading of C3's answer to Interrogatory No. 7 in Plaintiffs' Second Set of Interrogatories and Requests of Production leads to the conclusion that the answer was not truthful. Supplemental Declaration of Darrell L. Cochran in Support of Plaintiffs' Motion for Sanctions, Ex. 2 [Dkt. 439]. This answer to Interrogatory No. 7 did not mention Christopher Furman's visit to Vertical World on April 1, 2022, nor did C3 ever supplement their answer to this interrogatory during Mr. Furman's 28 additional visits to Vertical World. The initial answer to this interrogatory occurred while Mr. Furman represented C3. Mr. Furman and the Sinars Firm have not offered any adequate explanation for why C3 provided this inaccurate answer to Interrogatory No. 7. The only conclusion the Court can draw, therefore, is that C3's prior attorneys at the Sinars Firm provided an untruthful answer to Interrogatory No. 7 so that neither Plaintiffs nor Vertical World, Inc. would learn about C3's counsel's access of the Vertical World gym and potential contact with Vertical World's employees, who are witnesses in this case.

### 2. Prejudice

The court finds that C3's conduct has placed the Plaintiffs at a serious investigative disadvantage in conducting discovery, and that this has caused substantial prejudice to the Plaintiffs. Due to the concealment of the HCC records, Plaintiffs were deprived of engaging in further discovery regarding the alleged "material misrepresentation" by C3 regarding the allegedly defective nature of the subject product. Such evidence would most



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

certainly have been probative to Plaintiffs' WPLA claims and C3's history of representations regarding the safety of its products.

18. Due to the withholding of this evidence, Plaintiffs were also deprived of taking any steps to address the rescission of $4 million dollars of coverage in this case which represents a majority of the coverage for C3. As Plaintiffs learned about the rescission days before trial started, Plaintiffs were not afforded sufficient time to depose insurance carriers and other witnesses to either take steps to re-establish coverage or reform case strategies based on the loss of coverage. This concealment also caused Plaintiffs and Vertical World to incur unnecessary fees and costs in preparing a trial against each other which would have otherwise been avoided had C3 complied with their obligation to produce this discovery.

19. C3's concealment of its prior attorney's extensive visits to Vertical World also deprived Plaintiffs of the ability to investigate the nature and extent of his contact he had with Vertical World and its employees. The Vertical World gym, its gym practices, its recreational equipment, and the practices of its employees are all central issues in this case. Plaintiffs made express discovery requests to learn about any contact between C3's attorneys and Vertical World's employees and C3 willfully provided false answers to those discovery requests. The Court can only construe these inaccurate discovery answers as an effort by C3 and its attorneys to conceal its conduct from Plaintiffs and Vertical World. Because of the late revelation of this conduct and Mr. Furman's alleged lack of memory about the employees he did have some level of contact with, Plaintiffs are deprived from investigating the extent of C3's attorney's conduct, determine which witnesses may have been impacted, or understand what information C3 acquired during these over 38 visits. — PP

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

20. C3's intentional concealment of evidence until the very eve of trial severely undermined Plaintiffs' ability to prepare for a trial and in turn undermined the fact finder's ability to render a verdict based on the evidence, has disrupted the evidentiary balance essential to the accuracy of the fact-finding process, and has threatened the "orderly administration of justice." *Omnigen Research v. Wang*, 321 F.R.D. 367, 369-70 (D. Or. 2017) (citing *Leon v. IDX Systems Corp.*, 464 F.2d 951, 958 (9th Cir. 2006)); *In re Napster, Inc.*, 462 Fed.Supp.2d 1060, 1074 (N.D. Cal. 2006); *Peschel v. City of Missoula*, 664 F.Supp.2d 1137, 1146 (D. Mont. 2009).

21. To the extent that C3 argues or implies that there is little or no prejudice to the Plaintiffs, the Court disagrees. Such an argument must be rejected because it is C3's misconduct that has prevented Plaintiffs from knowing what additional evidence exists regarding alleged "material misrepresentations" about the subject product or about the extent of C3's prior attorney's conduct. See *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) (holding that where "the relevance and resulting prejudice from destruction of documents cannot be clearly ascertained because the documents no longer exist ... the culpable party can hardly assert any presumption of irrelevance as to the destroyed documents" (internal quotations omitted). While this is not a case involving destruction of records, the late disclosure prevents Plaintiffs from engaging in any meaningful ability to further investigate and determine what other probative information exists).

### 3. **Appropriate Remedies**

22. The Supreme Court explained the purposes of remedies for sanctions in *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993): [T]he least severe sanction that will be adequate to serve the purpose of the particular sanction

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

should be imposed. … **The sanction should insure that the wrongdoer does not profit from the wrong**… The purposes of sanctions orders are to deter, to punish, to compensate and to educate. *Fisons*, 122 Wn.2d at 355-356, 858 Pl.2d 1054 (Emphasis added).

24. A trial court must make clear on the record whether lesser sanctions would be effective and why it is imposing the sanction it has chosen. *Snedigar v. Hoddersen*, 114 Wn.2d 153, 170, 786 P.3d 781 (1990); *Rivers v. ate Conf. of Mason Contractors*, 145 Wn.2d 674, 697, 41 P.3d 1175 (2002); *In re Dep. of M.P.*, 185 Wn. App. 108, 118, 340 P.3d 908 (2014).

25. The court has considered possible sanctions that may be appropriate.

26. An existing court order had been entered in this case confirming that this case had been delayed long enough and that no further continuances would be permitted for any reason. Continuing the trial to allow further discovery would not be productive under the circumstances, given the fact that this case is four years old and any continuance would be a substantial detriment to Plaintiff who has sought resolution of this personal injury case for bodily harms. Additionally, given the history of concealment, lack of cooperation in discovery, and what appears now to be a complicated sequencing of withdrawals of law firms and attorneys, overlapping fiduciary duties and ethical concerns, it is unlikely that Plaintiffs would be able to meaningfully investigate the extent of these issues. Additionally, any additional continuance of the trial date would only cause the memories of witnesses to grow fainter. *Smith v. Behr*, 113 Wn. App. at 329, 54 P.3d 665.

27. A monetary fine will certainly be an appropriate remedy here for part of the misconduct with respect to the incurred fees and costs in Plaintiffs and/Vertical World (possibly) preparing for trial against each other, but a monetary fine on its own would be an unsatisfactory remedy for Plaintiffs because it is difficult to know what dollar amount would be suitable for an insured

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 31 of 39 | No. 19-2-27385-2 SEA



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

manufacturer like C3. Nor would a monetary sanction address the substantial prejudice caused to the Plaintiffs and the judicial system caused by C3's willful discovery violations. *See Magaña*, 167 Wn.2d at 592, 220 P.3d 191. As the trial court stated in *Smith v. Behr*, a monetary sanction does not "rectify a wrong; it just sets a price on it. It punishes the defendant to some extent, but it doesn't determine the plaintiffs' damages. It doesn't do anything to resolve the reason the plaintiffs came to court in the first place." *Smith v. Behr*, 113 Wn. App. at 329, 54 P.3d 665 (quoting the trial court's ruling).

28. Striking C3's affirmative defenses alone also would be an insufficient sanction because the Plaintiffs would still need to prove liability against the unknown evidence accumulated by C3's attorneys towards establishing a "causation" defense, but without the benefit of any discovery concerning the alleged fraud conducted by C3 as to HCC. Plaintiffs would also not have the benefit of an investigation of the extent of C3's prior counsel's conduct and what impact it may have on witnesses in this case, Plaintiffs would be in a disadvantaged position in proving liability in that situation. Notably, C3's chief affirmative defense is to assign fault and blame to Vertical World as a "learned intermediary" and C3's surreptitious conduct at Vertical World may be interpreted as an effort by C3 to, outside the knowledge of Plaintiffs or Vertical World, acquire information in support of its affirmative defenses intended to defeat Plaintiffs' claims.

29. When a party engages in violations of discovery rules and orders, more severe sanctions are warranted. *J.K. by Wolf v. Bellevue Sch. Dist. No. 405*, 20 Wn. App. 2d 291, 313, 500 P.3d 138, 151 (2021). CR 37(d) also authorizes the imposition of sanctions when a party violates a discovery order. *Magana*, 167 Wn.2d at 583–84, 220 P.3d 191. Division I's 2021

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 32 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

*J.K.* decision offers further guidance on the Court's authority to enter more severe sanctions where a party's discovery misconduct impacted a plaintiff's ability to prepare their case:

> In addressing prejudice, **the trial court emphasized its prior findings that [the defendant's] conduct placed [the plaintiff] at a serious investigative disadvantage in conducting discovery and concluded that it caused [the plaintiff] substantial prejudice**. It concluded that [the defendant's misconduct] undermined the fact finder's ability to render a verdict based on the evidence, **disrupted the evidentiary balance necessary for the accuracy of the fact-finding process**, and **threatened the "orderly administration of justice."**

*J.K.*, 20 Wn. App. 2d 291, 318–21.

Division I also took specific consideration into the defendant's evasive and untimely discovery responses when affirming the trial court's entry of more severe sanctions:

> Compounding the effects of the spoliation, [the defendant's] untimely, evasive, incomplete, and misleading discovery responses affected [the plaintiff's] ability to prepare for trial. For instance, because [the defendant] did not produce the e-mail exchange between Lesco and Roberts about video software until August 2019, [the plaintiff] seemingly did not know to question Lesco about whether he reviewed footage during his deposition in January 2019. The trial court acted within its discretion in concluding that [the defendant's] conduct substantially prejudiced [the plaintiff].

*J.K.*, 20 Wn. App. 2d 291, 318–21.

Additionally, Division I emphasized that the Court must not permit a wrongdoer from profiting from its misconduct by going with the least severe sanction for discovery misconduct:

> The discovery sanction should be proportional to the discovery violation and the circumstances of the case." *Magana*, 167 Wash.2d at 590, 220 P.3d 191. Before ordering a default judgment, a trial court must "'clearly indicate on the record that it has considered less harsh sanctions.'" *Id.* (quoting *Rivers*, 145 Wash.2d at 696, 41 P.3d 1175). A trial court should impose the "'least severe sanction that will be adequate to serve the purpose of the particular sanction.'" *Id.* (quoting *Fisons*, 122 Wash.2d at 355–56, 858 P.2d 1054). **But a sanction "'must not be so minimal, however, that it undermines the purpose of discovery.'"** *Id.* (quoting *Fisons*, 122 Wash.2d at 355–56, 858 P.2d 1054). **"'The sanction should insure [sic] that the wrongdoer does not profit from the wrong.'"** *Id.* (quoting *Fisons*, 122 Wash.2d at 355–56, 858 P.2d 1054).

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

29.

30.     At this time, the Court declines to enter an order of default against C3 as requested by Plaintiffs in their Motion. However, the weight of Washington jurisprudence supports the alternative relief requested by Plaintiffs, which is to grant Plaintiffs leave to draft jury instructions from which the jury may draw an adverse-inference against C3. Accordingly, the Court grants Plaintiffs' motion for instructions to be read to the jury regarding C3's discovery misconduct.

31.     This Court finds that the compounding effect of C3's concealment of alleged material misrepresentations about the subject product to HCC, along with the undisclosed conduct of C3's former attorney at the Vertical World gym, has substantially prejudiced Plaintiffs and therefore warrants the imposition of sanctions in the form of adverse-inference jury instructions. To that end, Plaintiffs are to submit to the Court proposed instructions regarding the discovery misconduct.

32.     The Court finds that this is the least harsh sanction which adequately addresses the prejudice to Plaintiffs. Plaintiffs are mere days away from trial and entirely prevented from taking any further discovery to investigate HCC's rescission, the nature and extent of C3's alleged material misrepresentation, or take depositions of HCC, C3 or C3's former legal counsel regarding this issue. Plaintiffs could have developed this evidence through discovery to serve as much more substantive evidence supporting Plaintiffs' failure to warn claim but for C3's misconduct. C3's actions were also willful given that this evidence was responsive to Plaintiffs discovery requests and subject to this Court's prior order to compel. This was not evidence that was inadvertently withheld from Plaintiffs. There is no other evidence more important to produce than evidence that insurance coverage was rescinded due to C3's alleged fraud regarding the subject product.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 34 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Additionally, the deposition of Mr. Furman demonstrates that his extensive visits to Vertical World were not innocuous. Mr. Furman testified that he disclosed his visits to the gym only after individuals at Vertical World, seemingly employees, were uncomfortable with his visits to the gym. His deposition left more questions than it offered answers, as Mr. Furman alleges that he cannot recall the name or identifiers for the employees he would interact with when checking into the gym, the employee who administered his test, or the identifiers for the employees who were uncomfortable with his presence in the gym. Plaintiffs are deprived of any leads to further investigate this conduct due to counsel's alleged lack of memory regarding basic information about the gym employees he would interact with. This Court finds that Plaintiffs are deprived of their ability to investigate potential misconduct days before trial is prejudicial.

32. As Division I recently noted, severe sanctions are warranted where a defendant's discovery misconduct puts a plaintiff in a "serious investigative disadvantage." *J.K.*, 20 Wn. App. 2d 291, 318–21. Plaintiffs have been placed in a position of being foreclosed from investigating both the HCC issue and potential attorney misconduct. The deprivation of Plaintiffs' ability to investigate is entirely caused by C3's own willful conduct.

33. The Court concludes that the measures described above will be a sufficient remedy for the Plaintiffs, and that they also will serve the proper purposes of discovery sanctions. *Fisons*, 122 Wn.2d at 355-356, 858 P.2d 1054.

34. The court also concludes that any sanctions less than the measures described above "would not fully address the 'goals of deterrence, punishment, compensation, and education.'" *Smith v. Behr*, 113 Wn. App. at 329, 54 P.3d 665.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

Page 35 of 39 | No. 19-2-27385-2 SEA

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

36.    Separate and apart from the remedies needed to address the prejudice dealt to Plaintiffs which impaired their ability to prepare for the upcoming trial with C3, the Court also finds that sanctions are needed to address the needless and avoidable costs and fees incurred by Plaintiffs and Vertical World, Inc. in preparing a trial against each other.  CR 37(b)(2) provides for a spectrum of remedies for discovery violations, including a mandate that "the court shall require the party failing to obey the order . . . to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

37.    The Court finds that C3's failure to comply with the court's discovery orders and the rules of discovery was not substantially justified for purposes of CR 37(b).  C3 was not justified in concealing the rescission of $4 million dollars in insurance coverage.  The disclosure of this evidence immediately changed the landscape of this case.  Plaintiffs and Vertical World reevaluated the risks of going to trial against each other with the loss of the coverage by HCC and immediately settled their claims with each other.  Specifically, Vertical World explained to the Court that it only intended to go to trial with the prospect of the $4 million dollar policy available to cover a verdict that C3 and Vertical World may potentially be subject to.  Both Plaintiffs and Vertical World relied on C3's representations of available coverage to their detriment.  The alleged rescission of that policy immediately changed Vertical World's exposure and resulted in Plaintiffs and Vertical World reaching a settlement.  Had C3 timely produced this evidence, resolution would have occurred months ago, avoiding the needless expense.

38.    The Court finds that C3 should have timely supplemented its discovery responses within a week of receiving HCC's rescission letter.  Thus, Plaintiffs are entitled to

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 36 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

recover their reasonable costs, including their reasonable attorneys' fees and litigation costs, incurred after the date of the rescission letter of January 26, 2023 to the date of this Order.

39.    The Court reserves ruling on the issue of whether to award Vertical World its fees and costs at this time.  The Court instructs the parties to submit additional briefing on the issue of whether Vertical World may rely on the discovery requests Plaintiffs made regarding insurance coverage.

## V.    ORDER

The Court incorporates all oral rulings, findings of fact, and conclusions of law made during the hearing held on June 14, 2023.  Based on the foregoing Findings of Fact and Conclusions of Law, and for the reasons stated above and during the June 14 hearing, the Court orders as follows:

1.    The Court grants the Plaintiffs' Motion for Sanctions [Dkt. 396] in part, to the foregoing extent.

2.    At the commencement of the trial, the jurors shall be given adverse-inference jury instructions, to be drafted by Plaintiffs at a later date.

3.    Plaintiffs shall be awarded their reasonable attorney's fees and litigation costs incurred from January 26, 2023 to June 14, 2023, paid by C3 Manufacturing, LLC and/or its prior attorneys at the Sinars Firm.[3]

4.    The Court reserves ruling on the issue of the award of reasonable fees and costs incurred by Vertical World, subject to further briefing by the parties as previously stated.

DONE IN OPEN COURT this 21ˢᵗ day of June, 2023.

---

[3] The Sinars Firm has argued that its attorneys cannot be held jointly and severally liable for any monetary sanction, however CR 26(g) provides that sanctions may be imposed upon the signing attorney, the party on whose behalf the response is made, or both. *Fisons*, 122 Wn.2d at 355.

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

SN

THE HONORABLE SUZANNE PARISIEN

*

18. Mr. Furman first accessed Vertical World on April 1, 2022, the very same day he attended an examination of the auto-belay device in question. It is unclear when Mr. Furman        Vertical World.

actually
became
a member of

ORDER GRANTING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS

Page 38 of 39 | No. 19-2-27385-2 SEA

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654