**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

JEAN LUBKEN and WILLIAM LUBKEN, husband and wife and their marital community,

Plaintiffs,

vs.

FRED MEYER STORES, INC., an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the State of Washington,

Defendants.

NO. 3:24-CV-05811-JCC

**DISPUTED MOTIONS *IN LIMINE***

**TRIAL DATE:**
**SEPTEMBER 14, 2026**

## I. JOINT SUMMARY OF THE CASE

Defendants Fred Meyer Stores, Inc. and The Kroger Co. ("Fred Meyer") operated a retail store located at 4505 S. 19th Street, Tacoma, Washington, 98405. Defendant Gatekeeper Systems, Inc. ("Gatekeeper") is a manufacturer of anti-theft wheel devices which are installed in shopping carts used by Fred Meyer at the Tacoma retail store location. On December 23, 2023, Plaintiff Jean Lubken patroned the Fred Meyer store in Tacoma, and used a shopping cart containing the anti-theft wheel manufactured by Gatekeeper. While pushing the shopping cart inside the store in aisle 86, Mrs. Lubken fell. Plaintiffs contend that the wheel of her cart locked which caused her fall. Defendants dispute this contention.

This Court found that *Fred Meyer* engaged in spoliation by not preserving the shopping cart Ms. Lubken was pushing and ordered the following sanction: "The Court will instruct the finder of fact that it can infer Fred Meyer's failure to preserve the cart resulted in lost evidence which, if available, would have been unfavorable ***to Fred Meyer***." (Doc. No. 53 at 4:6 – 4:7)(emphasis added.) The Court also found that Fred Meyer engaged in discovery violations and issued an adverse inference sanction. (Doc. No. 56 at 1:26 – 2:3).

## II. DISPUTED MOTIONS *IN LIMINE*

### A. PLAINTIFFS' DISPUTED MOTIONS *IN LIMINE*

#### 1. <u>Preclude opinion and argument that the post-incident surveillance footage depicts the subject cart.</u>

**(a) Plaintiffs' Motion:**

Plaintiffs request that the Court preclude any expert opinions or argument from counsel that the post-incident surveillance footage depicts the subject cart used by Ms. Lubken when she fell. The fall incident in this case was not captured on camera. Rather, some time after the fall incident when store management is filling out a claim report with Ms. Lubken, a store employee pans a security camera over to Ms. Lubken capturing her filling out a claim report with the manager. Gatekeeper's expert witnesses, Thomas Kulaga and Christopher Chen, wrote

in their reports that a small shopping cart is seen nearby Ms. Lubken and they speculate that this cart must have been her cart and that the video shows the cart moving normally. Ulmer Decl., Ex. 1 at 6-9; Ex. 2 at 7-9, 21.

However, Gatekeeper's experts testified at deposition that they have no way to tell if the cart displayed in the post-incident footage even depicts Ms. Lubken's cart. Dr. Chen testified that: he has no idea who picked up Ms. Lubken's cart off the floor; whether an employee deactivated the cart prior to the camera panning over to Ms. Lubken as she is filling out paperwork; and that there is no one identifying the cart in the footage to the cart used by Ms. Lubken. Cochran Decl., Ex. 3 at 52:1-56:13. Dr. Chen says this cannot be determined because Fred Meyer failed to preserve the cart. *Id*. at 56:10-13.

Mr. Kulaga testified that he suspects that the post-incident surveillance displays the subject cart because "Ms. Padilla testified that she moved a small cart out of the aisle when she was at the scene of the incident, and we can see the small cart in the video confirming that that was the cart that Ms. Padilla moved." Cochran Decl., Ex. 4 at 19:4-8. However, Ms. Padilla did not give this purported testimony, instead testifying that the cart "was somewhere off" but that she didn't "remember exactly the location." Cochran Decl., Ex. 5 at 49:18-23. She did not know who lifted the cart up. *Id*. at 52:23-25. She testified that she doesn't know where the cart went, and expressly testified that she did not inspect or push the cart. *Id*. at 68:22-69:22.

Simply put, Defendants have no basis to say the post-incident video displays the cart used by Ms. Lubken. No witness preserved the cart, which is what necessitated the spoliation ruling against Fred Meyer. Defendants should be prohibited from working around this ruling by speculating that a post-incident video displays a functional cart, when (1) no one identifies the cart in the post-incident footage to be Ms. Lubken's cart; and (2) no witness can say that the cart was not deactivated by an employee prior to the captured footage. Such argument would be misleading and thus violate FRE 403. Such expert opinion would likewise be unreliable in violation of FRE 702.

**(b) Defendant Gatekeeper's Response:**

This motion in limine should be denied because there is a factual basis for Mr. Kulaga and Dr. Chen's opinions that the post-incident surveillance footage depicts the subject cart. Preliminarily, there is no dispute that the video depicts the aisle where Ms. Lubken fell after the incident and shows a small shopping cart near her.

Mr. Kulaga explained his opinion the cart in the video is the subject cart because Ms. Lubken chose a small cart, and a small cart was pushed out of the aisle and the video depicts a small cart in the aisle. (Decl. LaSalle, Ex. G [Kulaga Depo] at 18:18 – 19:8.) Ms. Padilla testified that the cart was pushed from the aisle. (Decl. LaSalle, Ex. B [Padilla Depo.] at 68:22 – 69:5.) Dr. Chen indicates the small cart is next to Ms. Lubken in aisle 86 while she is talking to store employees, her purse appears to be in the basket, and a store employee placed a small package in the cart which appears to be the hand mixer Ms. Lubken was shopping for. (Decl. LaSalle, Ex. H [Chen Depo] at 53:17 – 54:15.)

Under the circumstances, Dr. Chen and Mr. Kulaga's inferences are reasonable and permissible. *See United States v. Stauffer,* 922 F.2d 508, 514 (9th Cir. 1990) ("Circumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred.") Plaintiffs may challenge the inferences drawn but there is no basis for wholesale exclusion of opinion or argument that the footage depicts the cart at issue.

## B. DEFENDANT GATEKEEPER'S DISPUTED MOTIONS *IN LIMINE*

### 1. <u>Preclude Ms. Lubken from testifying that the cart wheel "locked up"</u>

**(a) Defendant Gatekeeper's Motion:**

During her deposition, Ms. Lubken testified that her shopping cart stopped because the wheel "locked." (Decl. LaSalle, Ex. A [Pltf. Depo.] at 76:15 – 76:18.) However, her other testimony clarifies that she has no personal knowledge regarding what caused the shopping cart to stop:

> Q Okay. So when the cart stopped, was it your impression that it had stopped at one of the wheels in the front or the back or it was all together the whole thing?

> A I'm not a person who's designed to know about shopping carts, but I know that that cart stopped on the spot, and I was jolted.

(Decl. LaSalle, Ex. A [Pltf. Depo.] at 53:14 – 53:20.) When asked how she knew the wheel locked, Ms. Lubken's responded "[i]t was unable to move, and I was propelled to the ground." (Decl. LaSalle, Ex. A [Pltf. Depo.] at 78:20 – 78:22) She testified that she did not personally check the shopping cart to see why it stopped or observe anyone else inspect the cart. (Decl. LaSalle, Ex. A [Pltf. Depo.] at 62:8 – 62:12, 65:24 – 66:2.) After her fall, store employees rolled her shopping cart out of the aisle and put it back in circulation with the other carts. (Decl. LaSalle, Ex. A [Pltf. Depo.] at 66:7 – 66:9; Decl. LaSalle, Ex. B [Padilla Depo.] at 68:22 – 69:5.)

Under Fed. R. Evid. 602, a witness may testify only if there is evidence that the witness has personal knowledge of the matter. Further, a witness may only offer lay opinion testimony if it is (1) "rationally based on the witness's perception"; (2) helpful; and (3) "not based on scientific, technical, or other specialized knowledge within the scope of [Fed. R. Evid. 702]." While Ms. Lubken may have personal knowledge that her cart stopped, she does **not** have personal knowledge regarding what *caused* her cart to stop. She did not inspect the cart or observe an inspection of the cart. Her opinion that the cart stopped because a wheel locked is pure speculation. *U.S. v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015) (lay opinion witness may not testify based on speculation.) Further, to opine whether the wheel locked under the circumstances requires scientific, technical, or other specialized knowledge regarding the mechanics of anti-theft wheels and shopping carts, which she does not have. Fed. R. Evid. 701, 702.

Finally, the testimony should be excluded because the likely prejudicial impact of Ms. Lubken's testimony outweighs any probative value. Fed R. Evid. 403. Whether a wheel locked is a disputed issue that Plaintiffs must prove. Allowing Ms. Lubken to testify as a conclusion that the wheel "locked" would invite the jury to assume that the wheel locked even though Ms. Lubken does not know why the cart stopped.

**(b) Plaintiffs' Response:**

This Court already overruled Gatekeeper's same motions to exclude evidence requested in reply to its motion for summary judgment. In denying in part Gatekeeper's summary judgment motion, this Court ruled that "Plaintiff presents significant circumstantial and/or inferential evidence supporting the causal link between her injuries and Gatekeeper's theft deterrence system. (See, e.g., Dkt. Nos. 39, 40, 41, 42.)" Dkt. 47. Indeed, Mrs. Lubken does not need to be an engineer to know that the wheel of her shopping cart was locked up as her own physical use of the product provides her with sufficient foundation to offer testimony based on her own personal observations.

Mrs. Lubken testified that the first shopping cart she tried to use "wouldn't move" so she selected another cart and proceeded into the store to find a hand mixer. Ulmer Decl., Dkt. 40, Ex. 1 at 50:13-19. Further into the store, the cart stopped abruptly. *Id*. at 53:4-6. As Ms. Lubken's body was still in motion as the cart stopped, her right foot heel interacted with the cart causing her to fall onto her right side into the side aisle. *Id*. at 53:7-13. The cart also fell on top of her as she fell. *Id*. at 56:9-14.

When asked about her understanding about the cause of the fall, Ms. Lubken clearly testified that the cart's wheel locking and causing a sudden halt is what caused her fall. She testified that although she is not in the profession of designing shopping carts, she knows that the cart stopped on the spot. *Id*. at 53:14-20. She testified that there was nothing on the ground such as debris or gravel or sound that would have caused the shopping cart to abruptly brake. *Id*. at 62:18-23. Her testimony about the shopping cart wheel locking was clear and unequivocal. *Id*. at 76:2-78:22.

Fred Meyer home assistant manager Angela Padilla responded to Ms. Lubken's fall. Immediately after the fall incident, Ms. Padilla filled out an incident report with Ms. Lubken and submitted the claim to Sedgwick, Fred Meyer's insurance provider. Ulmer Decl., Ex. 40, Ex. 2. Ms. Padilla wrote in the incident report to the insurance carrier that Ms. Lubken reported

that the shopping cart's wheel had locked up which caused her to be injured. *Id.*

FRE 602 provides that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Personal knowledge can include "inferences and opinions, as long as they are grounded in personal observations and experience." *United States v. Rodriguez*, 162 F.3d 135, 144 (1st Cir.1998) (quoting *United States v. Neal*, 36 F.3d 1190, 1206 (1st Cir.1994)). A witness may testify about her opinions or inferences if they are rationally based on the perception of the witness and aid the jury in understanding the witness's testimony or the determination of a fact. *See* FRE 701. FRE 701 permits such testimony if it is "rationally based on the witness's perception." "The general application of Rule 701 indicates that a lay witness may testify about facts within his or her range of generalized knowledge, experience, and perception." *United States v. Espino*, 317 F.3d 788, 797 (8th Cir.2003).

Mrs. Lubken personally witnessed her fall. She personally moved the shopping cart and felt it lock up. She testified that it locked up based on what she perceived and physically experienced. There is no greater foundation to offer testimony under FRE 602 than firsthand testimony. Likewise, any inferences and opinions Mrs. Lubken may express about the cause of her fall is rationally based on her own perception, satisfying the requirements of FRE 701.

2. **<u>Preclude Plaintiff's Expert Joseph Welsh from testifying the cart wheel "locked-up."</u>**

**(a) Defendant Gatekeeper's Motion:**

Fed. R. Evid. 702 permits an expert "who is qualified as an expert by knowledge, skill, experience, training, or education," to provide opinion testimony where, among other requirements, "the testimony is based on sufficient facts or data" and reflects a reliable application of reliable principles and methods to the facts. Experts may rely on inadmissible information only "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.

Here, Mr. Welsh's opinions are premised on his preliminary assumption that the wheel

on Ms. Lubken's shopping cart locked. (Decl. LaSalle, Ex. C [Depo. Welsh] at 79:18 – 80:1.; Decl. LaSalle, Ex. D [Expert Report] at ¶ 12.) This is based solely on Ms. Lubken's testimony. (*Id.* at 81:17 – 81:23.) As addressed in Gatekeeper's Motion in Limine No. 1, Ms. Lubken has no personal knowledge that a wheel on her cart locked. Accordingly, Mr. Welsh's opinion is not based on sufficient facts or data as required by Fed. R. Evid. 702.

Moreover, by his own account, Mr. Welsh is an expert in "retail operations, safety" and "operational science, operations of various retail and wholesale stores, markets, big-box, food and non-food formats." (Decl. LaSalle, Ex. D [Expert Report] at ¶¶ 2-3.) His education, training, and experience are focused on retail operations such as store design, merchandising, loss prevention, and safety. (*Id.* at ¶ 3.) Mr. Welsh testified that he is offering opinions in this case as "business retail operations and retail safety expert" and this is the first wheel lock case in which he has been retained as an expert. ((Decl. LaSalle, Ex. C [Depo. Welsh] at 12:20 – 12:23 and 143:14 – 143:17.)

Nothing in Mr. Welsh's background qualifies him to testify regarding whether an anti-theft shopping cart wheel mechanically locked or malfunctioned. Fed. R. Evid. 702 (expert must be qualified to provide an opinion). His expertise in retail operations and retail safety does not provide him with the specialized knowledge necessary to evaluate and determine what caused the cart to stop. He has no background in engineering or any other field that would provide him with the expertise to opine on the mechanics of the anti-theft wheel system and whether the system was engaged in this case.

Further, Mr. Welsh's opinion that the wheel locked is not the product of applying reliable principles and methods. Fed. R. Evid. 702(c) – (d). Rather, his "opinion" is merely a recitation of Ms. Lubken's allegation that the wheel locked. Mr. Welsh cannot transform Ms. Lubken's speculative testimony into an admissible expert opinion merely by repeating it. See 29 Charles Alan Wright, Arthur R. Miller & Victor J. Gold, *Federal Practice and Procedure* § 6273 (2d ed. 2020) (Fed. R. Evid. 703 does not permit admitting inadmissible evidence "on the

pretense that it is the basis for expert opinion" when the expert merely transmits the inadmissible evidence to the factfinder.)

Finally, any probative value permitting Mr. Welsh to testify that the wheel "locked" would unfairly prejudice Gatekeeper as it would improperly mislead the jury into believing that Mr. Welsh independently determined that the wheel locked through reliable procedures and methods. Fed. R. Evid. 403 (even relevant evidence may be excluded if its probative impact is outweighed by a danger prejudicial effect.); Fed. R. Evid. 703 (if facts relied on by expert "would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value substantially outweighs their prejudicial effect.)

**(b) Plaintiffs' Response:**

The rules of evidence permit Mr. Welsh to testify about the facts and data upon which his opinions are based. FRE 703 permits an expert to base an opinion on facts and data in the case that the expert has been made aware of or personally observed. Additionally, it is "well established that an expert may rely on the opinions of other experts in formulating the expert's own opinions." *Maney v. Oregon*, No. 6:20-CV-00570-SB, 2024 WL 1695083, at *13 (D. Or. Apr. 19, 2024) (citing *Moribe v. Am. Water Heater Co.*, No. 21-cv-00254 HG-WRP, 2023 WL 8998745, at *9 (D. Haw. Dec. 28, 2023); *see also Jensen v. EXC, Inc.*, 82 F.4th 835, 851 (9th Cir. 2023) (acknowledging that experts may base their opinions on reports of other experts); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-cv-2061-H (BGS), 2016 WL 7319524, at *2 (S.D. Cal. Jan. 12, 2016) ("[E]xperts routinely rely upon other experts hired by the party they represent for expertise outside of their field.")

As discussed in response to Gatekeeper's first motion, Mrs. Lubken clearly testified that the wheel to her shopping cart locked up which is testimony that is admissible under FRE 602 and 701. In turn, it is proper for Mr. Welsh to consider this admissible evidence as data upon which his other opinions rely, and explain the opinions he offers in this case regarding the retail operations as it relates to the fact that Mrs. Lubken's shopping cart wheel locked up.

Additionally, Gatekeeper does not seek to exclude Dr. Sean Kohles' opinions, which was data Mr. Welsh considered in forming his own opinions. Dr. Kohles is a biomechanical engineer with fundamental training in engineering mechanics and bioengineering, disciplines that apply mathematics, physics, and engineering technologies toward the study of human and device function. Kohles Decl., Dkt. 39, ¶ 2. Both Dr. Kohles and Mr. Welsh performed an inspection of the Fred Meyer and directly examined shopping carts at the store equipped with Gatekeeper's anti-theft wheel. Kohles Decl., Dkt. 39, Ex. 2 (Kohles Report) at 1. Dr. Kohles opines that no other biomedically plausible influences on her at-issue injury mechanisms were present, including previous knee or spine surgeries or any associated altered joint function. *Id.* at 16. In addition, he found there to be no other mechanically plausible influences on the cart's abrupt braking or swerving were present, including floor debris, displaced shopping items, or random wheel hub resistance. *Id.* Dr. Kohles concludes that the only reasonably plausible cause of the at-issue traumatic event was the hazard posed by the product itself and its abrupt braking mechanism. *Id.*

Under FRE 703, Mr. Welsh may testify about the wheel locking as it is based on the facts and data he considered in this case, including Mrs. Lubken's firsthand testimony and Dr. Kohles' engineering opinions based upon his testing and application of forensic engineering principles.

3. **Exclude the reports of other incidents as well as the *Larocque* claim.**

**(a) Defendant Gatekeeper's Motion:**

Plaintiffs' pretrial statement identifies, as intended exhibits, dozens of written incident reports[1], where shopping carts "locked" as well as, another case *Larocque v The Kroger Co, et. al*, No. 25-2-07770 (Pierce County Superior Court.). (Decl. LaSalle, Ex. E.)

The incident reports are from Fred Meyer stores across the state of Washington and

[1] There are five reports that Plaintiffs listed in their pre-trial statement as exhibits but have not yet produced to Gatekeeper. Plaintiffs exhibit numbers for those reports are Exhibit 8, 38, 41, 42, and 46. Gatekeeper's motion in limine is intended to encompass exclusion of these reports.

cover dates from February 2020 to July 2025. (Decl. LaSalle, Ex. E.) Only one incident report[2] is from the store where Ms. Lubken's accident occurred. All but one of the reports[3] involve a cart locking up at or adjacent to the store entrance, exit, or parking lot perimeter. (Decl. LaSalle, Ex. E.) Each report was completed by the customer and a Fred Meyer employee, none of whom are parties to the instant litigation.

The incident reports and *Larocque* claim should be excluded as inadmissible hearsay. Fed. R. Evid. 801, 802. Each report contains out of court statements offered to prove the truth of the matters asserted – most notably, statements that a shopping cart wheel locked or a cart suddenly stopped. Fed. R. Evid. 801, 802. Moreover, many contain multiple layers of hearsay as portions of the reports written by the Fred Meyers employee restate statements by the customer regarding the shopping cart they were using. Fed. R. Evid. 801, 802.

The reports should also be excluded as irrelevant. Fed. R. Evid. 401. A "showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect." *Cooper v. Firestone Tire & Rubber Co.,* 945 F.2d 1103, 1105 (9th Cir. 1991.) The substantial similarity requirement "rests on the concern that evidence of dissimilar accidents lacks the relevance required for admissibility under Federal Rules of Evidence 401 and 402." *Id*. at 1105.

Here, the incident reports and *Larocque* claim lack substantial similarity to Ms. Lubken's incident. The incident reports overwhelmingly involve different stores, different carts, different customers, different injuries, and different circumstances. Importantly, all but one of the incident reports involves an alleged wheel locking incident at or adjacent to store entrances and exits. These are areas where the wheel locking mechanism is intended to lock under certain conditions. In contrast, Ms. Lubken's incident occurred within an aisle in the

---

[2] Bates DEF FRED MEYER 000302 – 000309, located at p. 337- 343 of Exhibit D to the Declaration of Scott LaSalle

[3] The sole report that was not at one of these areas of the store is Bates DEF FRED MEYER 000193 – 000200, located at p. 228 - 235 of Exhibit D to the Declaration of Scott LaSalle.

store away from any mechanism to engage the wheel-lock.

The one incident report involving a wheel purportedly locking within an aisle is not sufficiently similar to be relevant. However, that incident: (1) occurred at a different store; (2) the report notes that the customer changed their story several times; and (3) the customer did not fall. (Decl. LaSalle, Ex. E [Incident Reports] at p. 228 – 235.) The incident report therefore lacks substantial similarity to the instant case. The only incident report involving the same store as Ms. Lubken is also too dissimilar to be relevant. That report occurred in the store entrance "lobby clear of obstacles and debris" and resulted in only wrist injuries to the customer. (Decl. LaSalle, Ex. E [Incident Reports] at p. 338.)

The *Larocque* claim alleges that the shopping cart locked up when the plaintiff exited without passing through the checkout area causing a knee injury. (Decl. LaSalle, Ex. F [Larocque Complaint] at ¶¶ 6 – 8.) This describes an anti-theft wheel functioning as intended. There are no allegations that a wheel unexpectedly locked in an interior aisle. These dissimilar allegations have no tendency to establish a material fact in this case -that the wheel on Ms. Lubken's cart locked.

Finally, the incident reports and *Larocque* claim should be excluded because they their probative value is significantly outweighed by the danger of unfair prejudice, confusing or misleading the jury, and wasting time. Fed. R. Evid. 403.

**(b) Plaintiffs' Response:**

First, Gatekeeper falsely asserts that five of the subject incident reports were not produced. A compendium of all incident reports Plaintiffs' obtained from counsel from Plaintiff Larocque were filed with the Court when Plaintiffs opposed Gatekeeper's motion for summary judgment. Later, Defendant Fred Meyer produced other incident reports in discovery. Gatekeeper has had these reports for months. Plaintiffs then sent a sharefile link to Defendant Gatekeeper with the subject trial exhibits on August 5, 2026, when Plaintiffs timely provided their pretrial statement. Ulmer Decl., Ex. 6. Trial exhibits 8, 38, 41, 42, and 46 are provided

herewith for the Court's own review. Ulmer Decl., Exs. 7-11.

Second, Gatekeeper already moved to exclude the incident reports when it moved for summary judgement and it was denied. It raises the same exact arguments against, which should again be denied. The disputed documents are authentic as they are produced by Fred Meyer. Documents produced by a party are deemed authentic. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 (9th Cir. 2002) (citing *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir.1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent); 31 Federal Practice & Procedure: Evidence § 7105, at 39 ("Authentication can also be accomplished through judicial admissions such as ... production of items in response to ... [a] discovery request.").

The Court should overrule Gatekeeper's other boilerplate objections based on relevance, foundation, hearsay, and prejudice. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) ("objections for relevance are generally unnecessary on summary judgment because they are duplicative of the summary judgment standard itself"); *Sernoffsky v. Novak*, 773 F. Supp. 3d 988, 999 (S.D. Cal. 2025) ("The Court begins with the general position that most, if not all, evidentiary objections are inappropriate at summary judgment… objections such as lack of foundation, speculation, hearsay, relevance, or that evidence is argumentative or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself and unnecessary to consider") (internal quotes and citation omitted).

The Ninth Circuit has held that evidence of "Other Similar Incidents" is not hearsay as they are admissible under the business records exception to the hearsay rule and that they are relevant in product defect cases. *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003) ("[a]s for the customer reports, they were clearly admissible under the business records exception to the hearsay rule to show that Ford had notice of rollaways"). The incident reports are relevant as they show the harmful nature of the locking anti-theft wheel. Gatekeeper has chosen to contest that its product

is not unsafe to the ordinary consumer, yet it now has numerous incident reports rebutting that position. Gatekeeper's expert, Dr. Chen, also makes the astonishing opinion that it is not physically possible to be tripped by Gatekeeper's product. Ulmer Decl., Ex. 2 at 2. Plaintiffs are entitled to rebut this opinion by showing that many consumers have been injured by Gatekeeper's product, including those that have fallen and at least one incident of the cart locking within a Fred Meyer store away from the store exits. These non-hearsay business records of Fred Meyer are clearly relevant to this product case.

4. **Exclude general inference any wheel inspection will show the wheel locked up or alternatively, bifurcate or sequence the issues**

**(a) Defendant Gatekeeper's Motion:**

Gatekeeper requests that this Court: (1) enter an order precluding a *general* inference that a wheel inspection would show that the wheel locked up and that any jury instruction limit the adverse inference to Fred Meyer, or (2) alternatively, bifurcate the issues to prevent the sanction imposed against Fred Meyer from prejudicing Gatekeeper.

The evidentiary sanction allowing an adverse inference for failure to preserve the cart is directed against *Fred Meyer only*, not Gatekeeper. (Doc. No. 53 at 4:6 – 4:7)(sanction is that court will instruct fact finder that the missing evidence from failure to preserve the cart "would have been unfavorable *to Fred Meyer*.")(emphasis added.) Gatekeeper did not fail to preserve the cart and is not subject to any evidentiary sanctions. However, an instruction allowing a general inference that the cart wheel locked would operate against Gatekeeper by allowing the jury to assume a critical fact: that the Gatekeeper wheel actually locked up.

To prevent substantial unfair prejudice to Gatekeeper, any jury instruction should expressly limit the adverse inference to Fred Meyer. For example, an instruction could provide that "an inspection would reveal cart stopped due to actions of Fred Meyer alone and not having anything to do with Gatekeeper wheel design, manufacture or installation."

Alternatively, Gatekeeper requests that this Court bifurcate or sequence the issues so that the jury must decide whether the wheel locked up before proceeding to the other issues in

this case. Bifurcation or sequencing of issues is within this Court's authority. Fed. R. Civ. Pro. 42(b); *Blackwelder v. Allstate Prop. & Cas. Ins. Co.,* No. C10-739 MJP, 2010 WL 11565183, at *1 (W.D. Wash. Oct. 27, 2010)("the Court has the ability to sequence the issues in a single trial.") (unreported). Bifurcation or sequencing would promote fairness by ensuring that the evidentiary sanction does not operate against Gatekeeper. It would also promote judicial economy because if the jury determines that the wheel did not lock, Plaintiffs' claims against Gatekeeper would be resolved at that point.

**(b) Plaintiffs' Response:**

It is unclear what relief Gatekeeper is seeking given that Mrs. Lubken herself testified that the wheel of her shopping cart locked and Plaintiffs' expert opines that the only plausible explanation for Mrs. Lubken's fall is that her wheel was locked. *See* Plaintiffs' responses to Gatekeeper's Motions Nos. 1-2. Accordingly, a jury does not need to "infer" that an inspection would have showed that the wheel locked – admissible evidence based on Mrs. Lubken's personal observations and forensic engineering analysis from Dr. Kohles establishes that the wheel locked. A jury does not need to "infer" that the wheel locked based on the lack of the preservation of the shopping cart.

5. **<u>Exclude Welsh testimony additional documents are expected from Gatekeeper or have been withheld by Gatekeeper.</u>**

**(a) Defendant Gatekeeper's Motion:**

During his deposition, Mr. Welsh made repeated references to missing documents he expected to receive from Gatekeeper. (See, e.g. Decl. LaSalle, Ex. C [Welsh Depo.] at 123:4 – 123:7, 135:3 – 135:8)(emphasis added.) Mr. Welsh is mistaken. Gatekeeper has responded to all discovery requests, thereare no pending discovery requests directed to Gatekeeper, and Plaintiffs have not filed any motions seeking additional discovery responses from Gatekeeper. ((Decl. LaSalle, ¶ 3, *Ibid*.) There is no basis for Mr. Welsh's claims as to Gatekeeper.

Assertions that Gatekeeper will or should have produced additional documents are inadmissible as they are irrelevant to the issues for the jury and highly prejudicial against

Gatekeeper. Fed. R. Evid. 401, 402, 403. Additionally, discovery compliance is not a proper subject for expert testimony. Fed. R. Evid. 702.

**(b) Plaintiffs' Response:**

Plaintiffs' experts should be permitted to discuss the records they reviewed in forming their opinions and the absence of records they would have expected Gatekeeper to have possessed considering Gatekeeper is a manufacturer of products sold to consumers all over the country. To the extent there was a lack of records evidencing sufficient testing of the subject product, that is information experts can testify about.

## III. CERTIFICATION

The parties certify that their counsel met and conferred in good faith in an attempt to resolve matters that remain in dispute. This joint brief presents only those disputes on which the parties were unable to reach agreement after meeting and conferring.

RESPECTFULLY SUBMITTED this 4th day of September, 2026.

**PFAU COCHRAN VERTETIS AMALA, PLLC**

By ______________________________
Darrell L. Cochran, WSBA No. 22851
Andrew S. Ulmer, WSBA No. 51227
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I, **Andrew S. Ulmer,** hereby declare under penalty of perjury under the laws of the United States and the State of Washington that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date I served the foregoing via **ECF** by directing delivery to the following individuals:

Jennifer L. Crow
Ahbra Franco
Scheer Law, PLLC
2101 Fourth Ave, Suite 830
Seattle, WA 98121
Jen@scheer.law; ahbraf@scheer.law; josephm@sheer.law; shiloha@scheer.law

***Counsel for Defendant Fred Meyer Stores, Inc. and The Kroger Co.***

Scott La Salle
The Aguilera Group, APLC
1201 Pacific Ave, Suite 600
Tacoma, WA 98402
slasalle@aguileragroup.com

***Counsel for Defendant Gatekeeper Systems, Inc.***

DATED this 4th day of September, 2026.

Andrew S. Ulmer