Hon. John C. Coughenour

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JEAN LUBKEN and WILLIAM LUBKEN, husband and wife and their marital community,<br><br>Plaintiffs,<br><br>vs.<br><br>FRED MEYER STORES, INC., an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the State of Washington,<br><br>Defendants. | Case No.: 3:24-cv-05811-SKV<br><br>**DEFENDANT GATEKEEPER SYSTEMS, INC.'S TRIAL BRIEF** |

## I. <u>INTRODUCTION</u>

Plaintiff Jean Lubken seeks money from Gatekeeper Systems, Inc. for claimed personal injuries arising out of a December 23, 2023, fall in a Tacoma Fred Meyer store. Her husband William Lubken claims loss of consortium. Lubken claims she was pushing a shopping cart in the aisle when it suddenly stopped causing her to be "thrown", landing on the ground with the shopping cart falling over on her. Lubken alleges the cart stopped due to the anti-theft wheel suddenly locking up. However, following the incident store employees found nothing wrong with

the cart or the wheel and simply put it back into circulation with the other carts. Therefore, the cart was unavailable for inspection, and as such, plaintiffs cannot establish the anti-theft wheel malfunctioned or was defective in any way.

Lubken sustained a right hip fracture requiring surgical repair, a five-day hospital stay, a seven-day rehabilitation facility and 15 physical therapy sessions. She made a full recovery within months. Her unrelated complicated medical history indicates that many of her limitations since the accident are not related to her hip fracture. She requires no further care.

Plaintiffs have entered into a settlement with Fred Meyer Stores, Inc. and The Kroger Co., the specifics of which have not been conveyed to Gatekeeper. Regardless, any judgment in this matter is subject to an offset for the Fred Meyer / Kroger settlement amount.

## II. LIABILITY ISSUES

### A. Legal Issues

Plaintiffs allege Gatekeeper's wheel was defective pursuant to Washington's Product Liability Act, RCW 7.72.030. All plaintiff's common law claims against Gatekeeper (other than William Lubken's loss of consortium claims) have been dismissed. [Court Order on Gatekeeper's Motion for Summary Judgment, Document 47.]

Plaintiffs further allege punitive damages, despite the fact that such damages are contrary to Washington's public policy and not recoverable under Washington law unless expressly authorized by statute. WPI 35.01. RCW 7.72.030 makes no allowance for the recovery of punitive damages.

The cart was never inspected after the incident but instead simply put back into use with the other carts. There is no video footage of the incident. There is video footage of the cart before the incident showing several customers electing not to use the cart due to difficulty moving the cart, before plaintiff ultimately used the cart, also with visibly detectable difficulty pushing the cart. There is also video footage of the cart after the incident depicting all four wheels moving independently. It therefore appears the wheel never locked up at all. However, because Fred Mayer failed to preserve the cart, the Court has issued an evidentiary sanction that "this resulted



THE AGUILERA LAW GROUP, APLC
1201 PACIFIC AVE, STE. 600
TACOMA, WA 98402

in lost evidence which, if available, would have been unfavorable to Fred Meyer." This, however, cannot also serve as a basis to establish liability against Gatekeeper.

Plaintiffs also allege failure to warn. However, the store has warnings regarding the anti-lock carts on each cart. While plaintiff alleges Fred Meyer did not in fact have such warnings on every cart, this is a moot point as plaintiff has testified she was previously aware the carts had ani-theft wheel locks.

Plaintiffs attempt to use the existence of approximately 60 Fred Meyer incident reports to establish the anti-theft wheel locks are not reasonably safe, despite the fact that the reports are irrelevant to whether the wheel locked on plaintiff's cart. In reality, all but one other incident occurred at a store exit, where the anti-theft wheels are designed to engage. Many involved a failure to take the cart through the check-out or a failure of the check-out to transmit the clear signal to allow the cart to freely exit the store. In the sole incident report involving a claimed wheel-lock in the aisle, the shopper changed their story several times, such that in the end the claim maintained no credibility. The reports are therefore not "other similar incidents" as in plaintiff's case, it is alleged the wheel lock engaged when it was not intended. Finally, the prior incident reports are from dozens of Fred Meyer stores spanning several years, hardly indicating the wheels are a "problem" given the millions of times shoppers use such a cart.

B. <u>Expert Testimony</u>

The anti-theft wheel locks engage at the store exits and the perimeter of the parking lot. When a shopper passes through the check stand, a signal is transmitted to the wheels which allow the carts to freely exit the store. If the signal is not transmitted, i.e. a shopper leaves the store with a cart without going through the check-out, the anti-theft wheel locks will engage at the store exit. There is no mechanism for the anti-theft wheel locks to engage in the aisles as plaintiff alleges, unless a store employee uses a remote transmitter to give the lock command, which needs to be within 2-3 feet of the wheel. This is the device the store employees use to unlock wheels that have locked at the store exit.

In an effort to establish the anti-theft wheel lock indeed engaged on plaintiff's cart, plaintiffs have retained biomechanical engineer Sean Kohles, Ph.D. and "grocery store" expert



THE AGUILERA LAW GROUP, APLC
1201 PACIFIC AVE, STE. 600
TACOMA, WA 98402

Joseph Welsh. However, both start with an assumption as fact that the anti-theft wheel lock engaged on plaintiff's cart and fail to understand that is ultimately what they need to prove, not start out assuming. They each base their assumption solely on plaintiff's testimony that the cart stopped because the anti-theft wheel engaged.

In reality, plaintiff merely experienced the sensation her cart came to a stop but had no idea why it did so. She has no idea how the anti-theft wheel locks work and never checked the anti-theft wheel after she fell and pulled the cart down on top of her. Following the incident, store employees found nothing wrong with the cart or the wheel and were not required to unlock the wheels. There is video footage of the cart immediately after the incident showing the cart with all the wheels freely moving independently. The available evidence in fact establishes the anti-theft wheel did not lock up.

Nevertheless, plaintiff's experts attempt to establish how the anti-theft wheel could have locked up, largely based on misunderstandings of how the anti-theft wheels operate. Plaintiff's experts ask that common sense be thrown out the window and rely only on what is merely theoretically "possible" no matter how improbable.

Despite having no engineering background and no understanding of how the anti-theft wheels operate, Welsh concludes the anti-theft wheel lock engaged. Again, this is not so much a conclusion as an assumed fact. He claims Fred Meyer is aware "locking wheels are a problem" based on the existence of the 60 other incident reports. However, he admits to having no idea how the wheels locked up in any of the incident reports. Both Welsh and Kohles admit they did not thoroughly review the reports or know how many involved alleged spontaneous locking wheels that weren't at the store exit where the wheel locks can engage.

While also assuming the wheel malfunctioned as a fact, Kohles attempts to opine how it would do so in the aisle. He claims video depicting plaintiff's cart moving freely after the incident could in fact be a different cart that happened to be in the same 20-foot long aisle where plaintiff fell at the same time she fell.

Kohles speculates the anti-theft wheel lock engaged based on the following possibilities:



THE AGUILERA LAW GROUP, APLC
1201 PACIFIC AVE, STE. 600
TACOMA, WA 98402

1. Inconsistent battery charge – This claim is based on a misunderstanding of how the anti-theft wheel locks operate. When a lock command is received, the battery-operated motor engages a belt which tenses to stop the wheel from moving. Therefore, if there is a low or dead battery, the wheel locks will not engage, and the cart will not stop. It is impossible that low battery could cause a spontaneous wheel-lock event.

2. Environmental exposure to the wheels, such as water intrusion, could short-circuit the anti-theft wheel – while theoretically possible that mineral deposits in water could short circuit such an electrical system, the odds that it could do so in the exact way as to cause the wheel-lock to engage (rather that fail to engage) are in the billions.

3. Rolling surfaces of the wheels are worn or damaged – It is no secret that shopping carts are subject to abuse, and the wheels can become worn or damaged. However, this is not an explanation as to how the anti-theft wheel locks could engage, but rather a fairly good explanation as to how plaintiff's cart may have in fact stopped, if such a worn or damaged wheel did not roll evenly. Video footage of the cart before the incident shows several customers electing not to use the cart for this very reason, and the uneven condition of the cart wheels can also be seen when plaintiff pushes the cart.

4. Worn or damaged wheel brake – Again, this would prevent the wheel-lock from engaging, and it would be impossible for this to cause a spontaneous wheel-lock event.

5. Spurious wireless signals – Wireless signals are now all around us all of the time. The signal required to engage the anti-lock wheel is at a precise frequency and magnitude, but also in the exact correct code sequence. Therefore, while such a spurious wireless signal activating the wheel-lock is theoretically possible, the odds are in the billions if not the trillions.

6. Inconsistent stopping time – Kohles utilized the store's remote device the activate the wheel-locks on several carts. Some exhibited a delay of a few seconds in stopping. This is again not any evidence of a spontaneous wheel-lock event, but in fact an indication that if the remote malfunctions at all, it fails to stop the carts rather than causing a spontaneous wheel-lock. In fact, with all of Kohles' testing, he never encountered a single event where a wheel locked without the proper command.



THE AGUILERA LAW GROUP, APLC
1201 PACIFIC AVE, STE. 600
TACOMA, WA 98402

Further, Kohles found that when the anti-theft wheel lock was activated with the remote, the average stopping distance was 47-52 inches. This gradual slowing during a wheel-lock activation is inconsistent with plaintiff's description of her cart abruptly stopping.

Plaintiffs cannot show any evidence that the wheel ever locked or any mechanism for such an alleged spontaneous lock. The store videos depict the cart having a bent or damaged wheel before the incident, and the cart moving freely after the incident, indicating the wheel did not lock. None of the store employees indicate that the wheel needed to be unlocked. She also has a history of at least five documented falls prior to the incident at Fred Meyer.

## III. CLAIMED DAMAGES

Plaintiff claims a right hip fracture which is still painful, ongoing neck pain and right arm pain that is now resolved. Causation between plaintiff's fall and her right hip fracture appears well established. However, she appears to have no reasonably related neck claims, and her complicated medical history indicates that many of her limitations since the accident are not related to her hip fracture.

On February 17, 2022, she had an unrelated C1-C2 fusion in her neck. On March 10, 2023, she had a right knee replacement. In July 2023 she reinjured her right knee in an automobile accident but made no injury claim (as the other party was uninsured.) She was scheduled for a left knee replacement in January 2024 which was delayed until April 22, 2024, due to her hip fracture. Her left knee pain and replacement are likely the major contributor to her current claimed limitations.

Despite this, plaintiff claims she will require a hip replacement in the future. However, she has developed no necrosis or arthritis after nearly three years and is therefore unlikely to do so. She would only require a hip replacement in the future if she developed necrosis or arthritis, and even then, the chances are still only 15%. Plaintiff requires no further treatment, and any current limitations are from her ongoing pre-existing medical issues, not the fall.

## IV. CONCLUSION

Gatekeeper does not control and maintain the carts at Fred Meyer. Gatekeeper simply makes the anti-theft wheels and designs and maintains the door and perimeter wheel engagement


THE AGUILERA LAW GROUP, APLC
1201 PACIFIC AVE, STE. 600
TACOMA, WA 98402

system. Plaintiff has not and cannot present any evidence the anti-theft wheel lock malfunctioned or was defective in any way.

Any evidentiary finding regarding Fred Meyer's failure to maintain the cart for inspection cannot be used to establish a negative finding against Gatekeeper, but in fact equally allows Gatekeeper the same inference that any inspection of the cart would have been unfavorable to Fred Meyer, i.e. had nothing to do with Gatekeeper's wheel.

Dated this 30th of July, 2026

THE AGUILERA LAW GROUP, APLC

By: ______________________

Scott LaSalle, WSBA # 57862
1201 Pacific Ave., Suite 600
Tacoma, WA 98402
Telephone: (714) 384-6605
slasalle@aguileragroup.com

*Attorneys for Defendant, GATEKEEPER SYSTEMS, INC.*

CERTIFICATE OF SERVICE

I, Juana Huber, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of 18 and am not a party to the within-action. My business address is 23046 Avenida de la Carlota, Suite 300, Laguna Hills, CA 92653. On ***September 10, 2026***, I served a copy of the following documents:

DOCUMENT(S) SERVED:

**DEFENDANT GATEKEEPER SYSTEMS, INC.'S TRIAL BRIEF**

SERVED UPON: **SEE ATTACHED SERVICE LIST**

☒ (BY ELECTRONIC FILING WITH THE U.S. DISTRICT COURT) I certify that on ***September 10, 2026***, I electronically transmitted the attached document to the United States District Court and/or the US District Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants/recipients registered with the United States District Court according to Federal District Court Rules requirements.

☐ (ONLY BY ELECTRONIC TRAMSMISSION) Only by e-mailing the document(s) to the persons at the email address(es) listed based on notice provided on ***September 10, 2026,*** that during the Coronavirus (COVID-19) pandemic, this firm is working remotely, not able to send physical mail as usual, and is, therefore, using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on ***September 10, 2026***, at Laguna Hills, CA.

Juana Huber

# SERVICE LIST

Jean Lubken, et al. vs. Fred Meyer Stores, Inc., et al.
United States District Court Washington – Western Division
Case No. 3:24-cv-05811-SKV

| Recipient: | Manner of Service: |
|---|---|
| Darrell L. Cochran, Esq.<br>Andrew S. Ulmer, Esq.<br>Alexander G. Dietz, Esq.<br>**PFAU COCHRAN VERTETIS AMALA PLLC**<br>909 A Street, Suite 700<br>Tacoma, WA 98402<br><br>*Attorneys for Plaintiffs* | ☐ BY U.S. MAIL<br>☐ BY HAND DELIVERY<br>☐ BY OVERNIGHT DELIVERY<br>☐ BY FACSMIILE:<br>☒ BY EMAIL:<br>darrell@pcvalaw.com<br>aulmer@pcvalaw.com<br>adietz@pcvalaw.com<br>jmeadows@pcvalaw.com<br>hannahgrant@pcvalaw.com |
| Joseph J.M. Lombino, Esq.<br>Joseph M. Lombino, Esq.<br>**LOMBINO MARTINO PS**<br>9315 Gravelly Lake Drive SW, Suite 201<br>Lakewood, WA 98499<br><br>*Attorneys for Plaintiffs* | ☐ BY U.S. MAIL<br>☐ BY HAND DELIVERY<br>☐ BY OVERNIGHT DELIVERY<br>☐ BY FACSMIILE:<br>☒ BY EMAIL:<br>j.lombino@lombinomartino.com<br>joey.lombino@lombinomartino.com |
| Jennifer L. Crow, Esq.<br>Ahbra Franco, Esq.<br>**SCHEER.LAW PLLC**<br>2101 Fourth Avenue, Suite 830<br>Seattle, WA 98121<br><br>*Attorneys for Defendants Fred Meyer Stores, Inc. and The Kroger Co.* | ☐ BY U.S. MAIL<br>☐ BY HAND DELIVERY<br>☐ BY OVERNIGHT DELIVERY<br>☐ BY FACSMIILE:<br>☒ BY EMAIL:<br>jen@scheer.law<br>ahbraf@scheer.law<br>adriennek@scheer.law<br>sarahc@scheer.law<br>schuylert@scheer.law |