Hon. John C. Coughenour

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JEAN LUBKEN and WILLIAM LUBKEN, husband and wife and their marital community,<br><br>Plaintiffs,<br><br>vs.<br><br>FRED MEYER STORES, INC., an Ohio corporation doing business in the State of Washington; THE KROGER CO., an Ohio corporation doing business in the State of Washington; GATEKEEPER SYSTEMS, INC., a California corporation doing business in the State of Washington,<br><br>Defendants. | Case No.: 3:24-cv-05811-SKV<br><br>**[~~PROPOSED~~] PRE-TRIAL ORDER** |

COMES NOW, Plaintiffs Jean Lubken and William Lubken, Defendants Fred Meyer Stores, Inc. and The Kroger Co., and Defendant Gatekeeper Systems, Inc., by and through their respective counsels of record, and pursuant to Local Civil Rule 16.1 of the United States District Court for the Western District of Washington, provide the following Proposed Pretrial Order.

## I. JURISDICTION

This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1). Plaintiffs and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00.

## II. CLAIMS

Plaintiffs allege the following claims:

### A. Washington Common Law – Negligence, Gross Negligence, and Premises Liability (As to All Defendants)

1. Plaintiffs' Statement

Plaintiffs bring this claim for negligence, gross negligence, and premises liability against Defendants based on the safety failures and breakdowns that led to Jean Lubken's severe and preventable injuries.

Defendants owed a duty of care to Jean Lubken, its business invitee and customer, to provide a safe facility and equipment for retail use; provide instruction and supervision; ensure that proper safety precautions are taken prior to her fall; and provide proper inspection of the equipment. Defendants breached those duties owed to Jean Lubken by providing unsafe equipment which created an unreasonably hazardous condition within the retail store thereby causing Mrs. Lubken to sustain injuries.

Defendants Kroger and Fred Meyer, as the owners and operators of the retail store where Mrs. Lubken fell, owed her a duty to maintain a safe and usable premises. Defendants knew or should have known that the anti-theft device was dangerous in that it would unexpectedly lock, thereby creating an unreasonable risk of harm to invitees by serving as a sudden tripping hazard. Defendants knew or should have known that invitees like Mrs. Lubken would not discover or realize the dangers on the premises given that the device locks without warning or notice. Defendants breached their duty by having invitees use retail equipment – the shopping cart – which posed as an unexpected tripping hazard at the premises which caused Mrs. Lubken's injuries.

As a result of Defendants' negligence, gross negligence, and other acts and omissions,

Plaintiffs has suffered significant damages, including medical expenses, general damages, and other damages in an amount to be proven at trial.

2. Defendants' Fred Meyer and Kroger's Statement

Defendants Fred Meyer and Kroger deny liability.

3. Defendant Gatekeeper's Statement

Plaintiff's common law claims against Gatekeeper for negligence, gross negligence and premises liability were dismissed on May 13, 2026 (Document 47.) Defendant Gatekeeper denies liability and denies that an anti-theft wheel lock activated in the incident involving Jean Lubken.

**B. Products Liability – RCW 7.72.030 (As to Defendant Gatekeeper)**

1. Plaintiffs' Statement

Defendant Gatekeeper designed, assembled, and thereby manufactured and distributed a defective product, the anti-lock device installed on the shopping cart used by Mrs. Lubken.

The anti-lock device was not reasonably safe as designed or manufactured or was not reasonably safe because adequate warnings or instructions were not provided.

The anti-lock device was defectively designed and unreasonably dangerous because, at the time of manufacture, the likelihood that the anti-lock device would cause Jean Lubken's harm or similar harms, and the seriousness of those harms, outweighed the burden on Gatekeeper to design a product that would have prevented those harms and any adverse effect a practical, feasible alternative would have on the product's usefulness. Upon information and belief, if Gatekeeper had used a higher quality product, such as the ones sold by competitors, Jean Lubken would never have been injured.

Given its defects, the anti-lock device was not reasonably safe because it was unsafe to an extent beyond that which would be contemplated by the ordinary consumer. An ordinary of the retail store thereby creating a tripping hazard, even while not at the store exits.

Alternatively, Gatekeeper failed to exercise reasonable care in the manufacture and design of the anti-lock device.

Alternatively, Gatekeeper breached express and implied warranties, including but not limited to the warranty of merchantability and the warranty of fitness regarding the anti-lock

device.

As a direct and proximate result of Gatekeeper's wrongful acts, Plaintiffs were injured, suffered physical disability and pain, emotional trauma, medical expenses, loss of earnings and earning capacity, and other damages in an amount to be determined at trial. Further, Plaintiffs claim consequential damages including costs and actual attorney fees.

2. Defendant Gatekeeper's Statement

Defendant Gatekeeper denies liability and denies that an anti-theft wheel lock activated in the incident involving Jean Lubken.

**C. Products Liability – RCW 7.72.040 (As to Defendants Kroger and Fred Meyer)**

1. Plaintiffs' Statement

Defendants Kroger and Fred Meyer qualify as product sellers under the applicable statute as they are engaged in the business of leasing or bailing equipment used for business purposes within its retail store, including their shopping carts containing the anti-theft device.

The severe injuries Jean Lubken suffered were proximately caused by Defendants' negligence in maintaining, inspecting, repairing, and providing safe products, including but not limited to functional and safe shopping carts containing anti-theft devices. Patrons like Jean Lubken look to the entity leasing or bailing products, like Defendants, to inspect, maintain, select, and provide safe products for their customers, which Defendants failed to do.

Alternatively, the severe injuries Jean Lubken suffered were proximately caused by Defendants' breach of express warranties.

Alternatively, the severe injuries Jean Lubken suffered were proximately caused by Defendants' intentional misrepresentation of facts about the products it provided to Jean Lubken.

Alternatively, the severe injuries Jean Lubken suffered were proximately caused by Defendants' intentional concealment of information about the product it provided to her. Defendants failed to warn Jean Lubken that the shopping cart with the anti-theft device would suddenly and unexpectedly lock in place, thereby causing her fall.

As a direct and proximate result of Defendants' wrongful acts, Plaintiffs were severely injured, suffered physical disability and pain, emotional trauma, medical expenses, loss of

earnings and earning capacity, and other damages in an amount to be determined at rail. Further, Plaintiffs claim consequential damages including costs and actual attorney fees.

2. Defendants' Fred Meyer and Kroger's Statement

Defendants Fred Meyer and Kroger deny liability.

**D. Washington Common Law – Loss of Consortium (As to All Defendants)**

1. Plaintiffs' Statement

As a direct and proximate cause of Defendants' negligence and tortious misconduct, Jean and William Lubken have suffered a continuing injury to the marital relationship, including the loss of emotional support, love, affection, care, services, companionship, including sexual companionship, as well as assistance from Mrs. Lubken.

2. Defendants' Fred Meyer and Kroger's Statement

Defendants Fred Meyer and Kroger deny liability.

3. Defendant Gatekeeper's Statement

Defendant Gatekeeper denies liability and denies that an anti-theft wheel lock activated in the incident involving Jean Lubken.

## III. FACTS NOT IN DISPUTE

**Per Plaintiffs, the following facts are undisputed:**

1. Defendants Fred Meyer and Kroger were corporations engaged, among other things, in the business of operating a store located at 4505 S. 19th Street, Tacoma, Washington,98405. Defendant Gatekeeper was a corporation engaged, among other things, in the business of manufacturing an anti-theft wheel installed in shopping carts which causes the shopping cart to suddenly and abruptly lock up.

2. In connection with its business, Defendants Fred Meyer and Kroger supplied a shopping cart for use by customers in the above-mentioned store containing the anti-theft wheel manufactured by Defendant Gatekeeper.

3. On December 23, 2023, Plaintiff Jean Lubken patroned the Fred Meyer store in Tacoma, Washington, and used a shopping cart containing the anti-theft wheel manufactured by Defendant Gatekeeper. While pushing the shopping cart inside the store in aisle 86, suddenly and without

warning, the anti-theft wheel locked up causing Jean Lubken to be thrown forward and land forcibly on the floor of the aisle.

4. The anti-theft device installed on the shopping cart was an unsafe hazard for customers like Jean Lubken. The ordinary user of the shopping cart would not anticipate the anti-theft wheel to suddenly and without warning lock in place while shopping in the middle of the store, away from store exits. This device, which serves the sole purpose of saving retailers like Fred Meyer and Kroger money by preventing the theft of a shopping cart, created an unsafe tripping hazard for patrons of the store. Defendants put their financial interests ahead of the risks that this device poses to ordinary users of the shopping carts. The device did not operate correctly by braking within the store aisle due to the failure of Defendants to safely install, maintain, inspect, and operate the device. The device was unsafe as manufactured, unsafe as designed, and unsafe because Defendants failed to supply adequate warnings for the product.

5. As a proximate cause of Defendants' acts and omissions, Plaintiff Jean Lubken suffered personal injuries. Jean Lubken and William Lubken also suffered damage to the marital community and consortium damages.

**Per Defendants Fred Meyer, Kroger and Gatekeeper, the following facts are undisputed:**

1. Defendants Fred Meyer and the Kroger Co. were corporations that owned and operated a store located at 4505 S. 19th Street, Tacoma, Washington 98405.

2. Defendant Gatekeeper is a corporation that manufactures an anti-theft locking wheel mechanism that can be purchased by retailers and installed on shopping carts.

3. Fred Meyer supplied shopping carts to customers at 4505 S. 19th Street. Tacoma, Washington 98405. Many of those shopping carts contained the anti-theft locking wheel mechanism manufactured by Defendant Gatekeeper.

4. On December 23, 2023, Defendant Jean Lubken was shopping in the Fred Meyer shopping store located at 4505 S. 19th Street, Tacoma, Washington 98405. While pushing a small shopping cart down Aisle 86, she had an unwitnessed fall and she landed on the floor.

5. Plaintiff Jean Lubken suffered injuries as a result of the fall.

**Per Defendant Gatekeeper, the following additional facts are undisputed:**

1. Jean Lubken never checked the cart or the wheels after her fall.

2. The shopping cart next to Jean Lubken was retrieved by store employees who found nothing wrong with the shopping cart or the wheels. No anti-theft wheel lock had to be unlocked. The shopping cart was therefore put back into service with the other shopping carts in the store.

3. No other shopping carts were observed in the aisle. Video footage following the incident depicts the only shopping cart in the aisle with all four wheels moving freely.

4. The anti-theft wheels in the Fred Mayer store engage at the store exits and the perimeter of the parking lot. When a shopper passes through the check stand, a signal is transmitted to the wheels which allow the carts to freely exit the store. If the signal is not transmitted, i.e. a shopper leaves the store with a cart without going through the check-out, the anti-theft wheel locks will engage at the store exit.

5. There is no mechanism for the anti-theft wheel locks to engage in the aisles, including aisle 86, unless a store employee uses a remote transmitter to give the lock command, which needs to be within 18-36 inches of the wheel. This is the device the store employees use to unlock wheels that have locked at the store exit.

6. When an anti-theft wheel receives lock command, the battery-operated motor engages a belt which tenses to stop the wheel from moving. Therefore, if there is a low or dead battery, the wheel lock mechanism will not engage.

7. The wireless signal required to engage the anti-lock wheel is at a precise frequency and magnitude, but also in an exact correct code sequence.

8. When an anti-theft wheel lock is activated with the remote, the average stopping distance of the cart is 47-52 inches.

**Per Defendant Gatekeeper, the following issues are in dispute:**

1. Whether the shopping cart used by Juan Lubken had any anti-theft wheels.

2. Whether any anti-theft wheel on Jean Lubken's cart locked up.

3. Whether Jean Lubken fell as a result of any defect with her shopping cart, or her pre-existing medical conditions and history of falls.

4. Whether the anti-theft wheels are an unsafe hazard for customers like Jean Lubken.

5. Whether the anti-theft wheels are unsafe as manufactured or designed.

6. Whether Jean Lubken had adequate warning regarding the potential for anti-theft wheel locks on the Fred Meyer carts.

5. Whether, and the extent of which, Jean Lubken suffered any injury as a result of any act or omission of defendants.

6. Whether ,and the extent of which, William Lubken suffered damage to the marital community and consortium damages as a result of any act or omission of defendants.

## IV. ISSUES OF LAW

Other than motions in limine to be filed by the parties, this case does not present any novel legal issues for the Court to decide.

## V. FACT WITNESSES

### A. FACT WITNESSES

1. Plaintiff Jean Lubken
c/o Pfau Cochran Vertetis Amala
909 A Street, Ste. 700
Tacoma, WA 98402
(253) 777-0799
c/o Lombino Martino, P.S.
9315 Gravelly Lake Dr. SW, St. 201
Lakewood, WA 98499
(253) 830-2700

Plaintiff Jean Lubken is expected to testify regarding her recollection of the incident as well as the injuries and damages she sustained as a result.

2. Plaintiff Bill Lubken
c/o Pfau Cochran Vertetis Amala
909 A Street, Ste. 700
Tacoma, WA 98402
(253) 777-0799
c/o Lombino Martino, P.S.
9315 Gravelly Lake Dr. SW, St. 201
Lakewood, WA 98499
(253) 830-2700

Plaintiff Bill Lubken is expected to testify regarding his recollection of events following the incident as well as the damages the Plaintiffs sustained as a result.

3.Tera Timmons
156 Racoon Run,
Fortson, GA 31808

Tera Timmons is Plaintiffs' daughter and may testify regarding plaintiffs' damages, injuries, course of medical treatment and the impact they have had upon their family.

4. Andrea Nino
107 Summit
Fircrest, WA 98466

Andrea Nino is Plaintiffs' daughter and may testify regarding plaintiffs' damages, injuries, course of medical treatment and the impact they have had upon their family.

5. Brad Lubken
7710 115th Place NE
Kirkland, WA 98031

Brad Lubken is Plaintiffs' son and may testify regarding plaintiffs' damages, injuries, course of medical treatment and the impact they have had upon their family.

6. Employees and Representatives of Fred Meyer Stores, Inc and The Kroger Co.
Ethan Bowie
Alex Sidoff
Angella Padilla
Kenneth Smittling
Chad Peterson
c/o Scheer.Law PLLC
2101 Fourth Ave., Ste. 830
Seattle, WA 98121
(206) 800-4070

The employees and representatives of Defendant's Fred Meyer Stores, Inc. and The Kroger Co. are expected to testify regarding their recollection of the events prior to and following the incident, the inspection of the cart and the placing it back with the other carts, and their lack of any prior experience with anti-theft wheel locks in the aisles as described by plaintiff Jean Lubken.

7. Employees and Representatives of Gatekeeper Systems, Inc.
Zach Ball
Greg Meisenzahl
Craig Greenberg
c/o The Aguilera Law Group
1201 Pacific Ave., Ste. 600
Tacoma, WA 98402

The employees and representatives of Defendant's Gatekeeper Systems, Inc. have knowledge of the construction, design and operation of the anti-theft wheels.

B. TREATING PROVIDERS

8. Virginia Mason Franciscan Health
Franciscan Orthopedic Associate at St. Joseph Hospital
Stephen Ou, DO
Francis Prescott, DO
1608 S. J Street, 4th Floor
Tacoma, WA 98405
(253) 274-7504

9. Tacoma Radiology Associates
803 S. 15th St., Ste. 118
Tacoma, WA 98405
(253) 761-4200

10. Daniel N. Heller, MD (Radiologist)
2502 S. Union Ave.
Tacoma, WA 98405
(253) 761-9482

11. Desislava Hite, MD (ER Medicine Specialist)
315 Martin Luther King Jr. Way
Tacoma, WA 98405
(253) 403-1000

12. Hui Wang, MD (Physical Medicine & Rehabilitation)
3315 S. 23rd St., #200
Tacoma, WA 98405
(253) 366-5859

13. Raed N. Fahmy, MD (Cardiologist)
1802 Yakima Ave.
Tacoma, WA 98405
(253) 627-1244

14. CHI Franciscan Rehabilitation Hospital
Rijesh Shrestha, MD
815 S. Vassault St.
Tacoma, WA 98407
(253) 444-3320

15. Virginia Mason Medical Center
Ellen E Frechette, MD
Jonathan Clabeaux, MD
Venu Nemani, MD
1100 9th Ave.
Seattle, WA 98101
(206) 341-3000

16. Epic Physical Therapy
Dianne Hetland, LMP
Norman Fabula, PT
Andrew McMahon, PTA
5006 Center Street, Suite N
Tacoma, WA 98409
(206) 212-6352

Jean Lubken's medical providers may be called to testify regarding Plaintiff Jean Lubken's injuries and damages, their prognoses, and the treatment they provided Mrs. Lubken. To the extent that one or more of the above physicians may be considered an expert witness, they are expected to testify consistent with the records they authored, what they saw, heard and their opinions. Any testimony from one or more of the above physicians will be further based upon their experience, education, examination of the Plaintiff Jean Lubken, and review of pertinent medical history.

Gatekeeper addition: Jean Lubken's medical providers are expected to testify regarding her pre-existing medical conditions and documented history of falls.

## VI. EXPERT WITNESSES

A. Plaintiffs' Expert Witnesses

1. Sean S. Kohles, Ph.D.
1731 SE 37th Avenue
Portland, OR 97214

Dr. Sean Kohles is a bioengineer, a discipline that applies mathematics, physics, and engineering technologies to the study of biology and medicine. He is also experienced and trained in mechanical engineering. A summary of Dr. Kohles' background and experience is outlined in his curriculum vitae previously produced in discovery. Dr. Kohles' opinions and conclusions to which he will testify at trial are outlined in his report which was previously produced in discovery.

2. Joseph G. Welsh
5573 Sumac Ridge Court
Las Vegas, NV 89149

Joseph G. Welsh has decades of professional experience in business and retail operations, primarily working on consulting with retail grocery stores and related businesses with a variety of business operational issues. A summary of Mr. Welsh's background and experience is outlined in his curriculum vitae previously produced in discovery. Mr. Welsh's opinions and conclusions to which he will testify at trial are outlined in his report which was previously produced in discovery.

3. Gary R. Schuster, M.D.
1600 116th Avenue Northeast
Bellevue, WA 98004

Dr. Gary R. Schuster has decades of experience in internal medicine, emergency medicine, and sports medicine. A summary of Dr. Schuster's background and experience is outlined in his curriculum vitae which was previously produced in discovery. Dr. Schuster's opinions and conclusions to which he will testify at trial are outlined in his report which was previously produced discovery.

B. Defendants Fred Meyer and Kroger's Expert Witnesses

1. Andrew Kanevsky
Retail Safety Expert
Rose Retail Safety Consulting, LLC
160 Fairway Avenue
Belleville, New Jersey 07109

Mr. Kanevsky is expected to offer expert opinions regarding general retail safety, retail store policies, procedures and protocol. Mr. Kanevsky's opinions will be based on his review of project documents and other materials produced in discovery, and the expert's knowledge, training, and expertise. He may testify in rebuttal to testimony from Plaintiff's witnesses. A summary of Mr. Kanevsky's background and experience is outlined in his curriculum vitae. Mr. Kanevsky'a opinions and conclusions are outlined in his report.

Plaintiffs' addition: Plaintiffs have a pending motion to exclude this expert.

2. Dr. Cameron Schick
Board Certified Orthopedic Surgeon
c/o Physician's Direct Services
406 Yauger Way SW, Suite A
Olympia, WA 98502

Dr. Schick reviewed all available documents related to Plaintiff's injuries suffered as a result of the incident. If called to testify, it is anticipated that Dr. Schick will testify consistent with his opinions in his report. A summary of Dr. Schick's background and experience is outlined in his curriculum vitae. Dr. Schick's opinions and conclusions are outlined in his report.

3. Dr. Manuel Meza-Arroyo
Biomechanics and Human Factors Expert
c/o ESi Ann Arbor
1174 Oak Valley Drive
Ann Arbor, MI 48108

Dr. Mez-Arroyo is expected to offer expert opinions regarding the biomechanics and human factors aspects of the subject incident. Dr. Meza-Arroy's opinions will be based on his review of project documents and other materials produced in discovery, and the expert's

knowledge, training, and expertise. He may testify in rebuttal to testimony from Plaintiff's witnesses. A summary of Dr. Meza-Arroy's background and experience is outlined in his curriculum vitae. Dr. Meza-Arroyo's opinions and conclusions are outlined in his report.

Plaintiffs' addition: Plaintiffs have a pending motion to exclude this expert.

C. Gatekeeper's Expert Witnesses

1. Thomas J. Kulaga, P.E.
Rimkus
21002 N. 19th Avenue, Suite 120
Phoenix, AZ 85027
(480) 489-9962

Mr. Kulaga is a licensed mechanical engineer with over 20 years of experience. He is knowledgeable regarding the Gatekeeper anti-theft wheel locks and the anti-theft system at the store. He may testify regarding the mechanics of the cart and the anti-theft wheel lock and system and respond to any engineering opinions expressed by plaintiffs' retained experts Sean S. Kohles, Ph.D. and/or Joseph G. Welsh. A copy of Mr. Kulaga's report and CV have been provided to all counsel.

2. Christopher Chen, Ph.D., P.E.
Rimkus
6221 Dean Martin Drive
Las Vegas, NV 89118
(702) 470-0232

Dr. Chen is a biomechanical engineer and licensed mechanical engineer with over 30 years of experience. He is knowledgeable regarding the Gatekeeper anti-theft wheel locks and the anti-theft system at the store. He may testify regarding the mechanics of the Incident and respond to any biomechanical opinions expressed by plaintiffs' retained experts Sean S. Kohles, Ph.D. and/or Joseph G. Welsh. A copy of Dr. Chen's report and CV have been provided to all counsel.

3. Cameron W. Schick, M.D.
Physician Direct Services
406 Yauger Way SW, Suite A
Olympia, WA 98502
(360) 867-4188

Dr. Schick is a licensed orthopedic surgeon with over 10 years of experience who has performed a record review of plaintiff Jean Lubken's medical treatment prior to and after the Incident. He may testify regarding his finding, diagnosis, prognosis and disability related to the injury, mitigation of damages and reasonableness and necessity of past and future treatments and respond to any opinions expressed by plaintiff Jean Lubken's treating providers and/or plaintiffs' retained expert Gary R. Schuster, M.D. A copy of Dr. Schick's report and CV have been provided to all counsel.

## VII. EXHIBITS

The parties list the following documents and exhibits for trial. Copies of these documents and exhibits have already been produced by one of more of the parties and/or experts in this litigation.

### A. Plaintiffs' Exhibits

Ex. # - Description

1. 2020-02-11 -- Incident Report
2. 2020-02-24 -- Incident Report
3. 2020-04-25 -- Incident Report
4. 2020-07-26 -- Incident Report
5. 2021-01-27 -- Incident Report (1)
6. 2021-01-27 -- Incident Report (2)
7. 2021-03-10 -- Incident Report (1)
8. 2021-03-10 -- Incident Report (2)
9. 2021-03-19 -- Incident Report
10. 2021-03-21 -- Incident Report
11. 2021-04-13 -- Incident Report
12. 2021-08-10 -- Incident Report
13. 2021-08-14 -- Incident Report
14. 2021-08-18 -- Incident Report (1)
15. 2021-08-18 -- Incident Report (2)

16. 2021-08-18 -- Incident Report (3)
17. 2022-02-11 -- Incident Report
18. 2022-03-17 -- Incident Report
19. 2022-07-15 -- Incident Report
20. 2022-08-03 -- Incident Report
21. 2022-08-13 -- Incident Report
22. 2022-12-03 -- Incident Report (1)
23. 2022-12-03 -- Incident Report (2)
24. 2022-12-31 -- Incident Report
25. 2023-02-06 -- Incident Report
26. 2023-02-12 -- Incident Report (1)
27. 2023-02-12 -- Incident Report (2)
28. 2023-04-28 -- Incident Report
29. 2023-05-05 -- Incident Repor
30. 2023-05-07 -- Incident Report
31. 2023-05-28 -- Incident Report (1)
32. 2023-05-28 -- Incident Report (2)
33. 2023-06-20 -- Incident Report
34. 2023-06-21 -- Incident Report
35. 2023-07-01 -- Incident Report
36. 2023-07-25 -- Incident Report
37. 2023-08-19 -- Incident Report
38. 2023-09-05 -- Incident Report
39. 2023-09-06 -- Incident Report
40. 2023-10-17 -- Incident Report
41. 2023-12-23 -- Incident Report (1)
42. 2023-12-23 -- Incident Report (2)
43. 2024-01-10 -- Incident Report

44. 2024-10-15 -- Incident Report
45. 2025-07-28 -- Incident Report
46. 2026-01-26 -- Incident Report
47. Fred Meyer plans
48. Incident Reports
49. Kohles CV
50. Kohles Report
51. Kroger Purchase Order
52. Larocque Complaint
53. Schuster CV
54. Schuster Report
55. Welsh CV
56. Welsh Report
57. Inspection_Photo (1)
58. Inspection_Photo (2)
59. Inspection_Photo (3)
60. Inspection_Photo (4)
61. Inspection_Photo (5)
62. Inspection_Photo (6)
63. Inspection_Photo (7)
64. Inspection_Photo (8)
65. Inspection_Photo (9)
66. Inspection_Photo (10)
67. Inspection_Photo (11)
68. Inspection_Photo (12)
69. Inspection_Photo (1)
70. Inspection_Photo (2)
71. Inspection_Video (1)

72. Inspection_Video (2)
73. Inspection_Video (3)
74. Inspection_Video (4)
75. Inspection_Video (5)
76. Inspection_Video (6)
77. Inspection_Video (7)
78. Inspection_Video (8)
79. Inspection_Video (9)
80. Inspection_Video (10)
81. 12/23/23 Incident Video (1)
82. 12/23/23 Incident Video (2)
83. 12/23/23 Incident Video (3)
84. 12/23/23 Incident Report (4)

**B. <u>Fred Meyer and Kroger's Exhibits</u>**

| Exhibit | Description |
|---|---|
| A-1. | 12/23/23 Incident Video (1) |
| A-2. | 12/23/23 Incident Video (2) |
| A-3. | 12/23/23 Incident Video (3) |
| A-4. | 12/23/23 Incident Report |
| A-5. | 2015 Master Services Agreement |
| A-6. | 2024 Master Services Agreement |
| A-7. | Demonstrative |
| A-8. | Demonstrative |
| A-9. | Demonstrative |
| A-10. | Demonstrative |

**C. <u>Gatekeeper's Exhibits</u>**

| Exhibit | Description |
|---|---|

A-101. Cart Sign Guidelines
A-102. Fred Meyer Store Plans
A-103. Fred Meyer Store Layout Photos
A-104. Wheel Install Guidelines
A-105. Kulaga CV
A-106. Kulaga Report
A-107. Video of Plaintiff at Store Entrance (1)
A-108. Video of Plaintiff at Store Entrance (2)
A-109. Video of Aisle 86 Post-Incident
A-110. Still Frames from Video of Aisle 86 Post-Incident
A-111. Store Inspection Photos
A-112. Chen CV
A-113. Chen Report
A-114. Video of Store Entrance
A-115. Still Frames from Video of Store Entrance
A-116. Schick CV
A-117. Schick Report
A-118. St. Joseph Medical Center January 8, 2024, Left Hip Films
A-119. Virginia Mason August 27, 2024, Left Hip Diagnostic Reports
A-120. Epic Physical Therapy April 29, 2021, records
A-121. Epic Physical Therapy June 30, 2021, records
A-122. Epic Physical Therapy July 21, 2021, records
A-123. Epic Physical Therapy March 24, 2023, records

RESPECTFULLY SUBMITTED this 4th day of September, 2026.

**PFAU COCHRAN VERTETIS AMALA, PLLC**

By /s/ Andrew S. Ulmer
Darrell L. Cochran, WSBA No. 22851
Andrew S. Ulmer, WSBA No. 51227
*Attorney for Plaintiffs*

**THE AGUILERA GROUP, APLC**

By /s/ Scott LaSalle
Scott LaSalle, WSBA No. 57862
*Attorney for Defendant Gatekeeper Systems, Inc.*

**SCHEER LAW, PLLC**

By ______________________
Jennifer L. Crow, WSBA No.
Sarah K. Z. Campbell, WSBA No. 61892
*Attorneys for Defendants Fred Meyer Stores, Inc. and The Kroger Co.*

**ACTION BY THE COURT**

A. This case is scheduled for trial to commence on September 14, 2026 at 8:30 AM.

B. The Court has the following motions pending before it:

a. Parties' Disputed Motions *in Limine*;

b. Parties' Stipulated Motions *in Limine*;

This order has been approved by the parties as evidenced by the signatures of their counsel. This order shall control the subsequent course of the action unless modified by agreement of the parties or to prevent manifest injustice.

Dated this 12th day of September, 2026.

UNITED STATES DISTRICT COURT JUDGE
JOHN C. COUGHENOUR